VICTOR JIH, State Bar No. 186515
Email: vjih@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329

ANTHONY J WEIBELL, State Bar No. 238850
Email: aweibell@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (866) 974-7329

*Attorneys for Defendants*
*TikTok Inc. and ByteDance Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BERNADINE GRIFFITH,<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK, INC., et al.,<br><br>Defendants.. | Case No.: 5:23-cv-00964-SB-E<br><br>**DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**<br><br>[Request for Judicial Notice and Declaration of Victor Jih in Support of Request For Judicial Notice filed concurrently herewith]<br><br>Judge: Hon. Stanley Blumenfeld, Jr.<br>Date: October 20, 2023<br>Time: 8:30 a.m.<br>Place: Courtroom 6C<br><br>Action Filed: May 26, 2023<br>Trial Date: None |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 20, 2023 at 8:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Stanley Blumenfeld Jr. of the United States District Court for the Central District of California, Courtroom 6C, 350 West 1st Street, Los Angeles, California 90012, Defendants TikTok Inc. and ByteDance Inc. (together, "Defendants") will move, and hereby do move, this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the claims asserted by Plaintiff Bernadine Griffith in this action in her purported Class Action Complaint (ECF No. 1) ("Complaint" or "Compl.") with prejudice for failure to state a claim.

Defendants' Motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in support thereof; Defendants' Request for Judicial Notice ("RJN"); the Declaration of Victor Jih, attached to Defendants' RJN, and its accompanying exhibits filed therewith; the [Proposed] Order; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

This Motion is made following the conference of counsel pursuant to Local Civil Rule 7-3 which took place on July 11, 2023, at which the parties were unable to resolve the substantive issues addressed in this Motion.

Respectfully submitted,

Dated: July 24, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Victor Jih
Victor Jih

*Attorney for Defendants*
TIKTOK INC. and BYTEDANCE INC.

# TABLE OF CONTENTS


| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 2 |
| | A. TikTok Provides A Piece of Code That Website Owners Can Incorporate On Their Sites To Collect Information About What Visitors Do On Their Websites | 2 |
| | B. Plaintiff Visits Three Websites That Use Code From TikTok | 4 |
| III. | THE CLAIMS FOR INVASION OF PRIVACY AND INTRUSION UPON SECLUSION FAIL AS A MATTER OF LAW | 5 |
| IV. | THE CIPA CLAIM FAILS AS A MATTER OF LAW | 9 |
| | A. The 631 Claim Fails Because Defendants Did Not Intercept Plaintiff's Data | 9 |
| | B. The 632 Claim Fails Because Defendants Did Not Use A Recording Device To Collect Confidential Communications | 10 |
| V. | THE CFAA CLAIM FAILS AS A MATTER OF LAW | 12 |
| | A. Defendants Did Not Access Plaintiff's Computer | 12 |
| | B. Plaintiff Has Not Alleged CFAA Harm | 13 |
| VI. | THE STATUTORY LARCENY AND COMMON LAW CONVERSION CLAIMS FAIL AS A MATTER OF LAW | 14 |
| VII. | THE UCL CLAIM FAILS AS A MATTER OF LAW | 15 |
| VIII. | CONCLUSION | 17 |

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) ........ 13

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ........ 16

*Colo. Republican Comm. v. Doe*,
No. 16-cv-01058-MSK-MJW, 2016 WL 3922156 (D. Colo. July 21, 2016) ........ 14

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ........ 13

*Deering v. CenturyTel, Inc.*,
No. CV-10-63-BLG-RFC, 2011 WL 1842859 (D. Mont. May 16, 2011) ........ 6

*Doe I v. Sutter Health*,
No. 34-2019-00258072-CU-BT-GDS, 2020 WL 1331948 (Cal. Super. Ct. Jan. 29, 2020) ........ 15

*G.S. Rasmussen & Assocs. v. Kalitta Flying Serv Inc..*,
958 F.2d 896 (9th Cir. 1992) ........ 15

*Gardiner v. Walmart, Inc.*,
No. 20-cv-04618-JSW, 2021 WL 4992539 (N.D. Cal. July 28, 2021) ........ 16

*GateGuard, Inc. v. Amazon.com Inc.*,
No. 21-cv-9321 (JGK), 2023 WL 2051739 (S.D.N.Y. Feb. 16, 2023) ........ 14

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018) ........ 15, 16

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........ 5

*Hammerling v. Google LLC*,
No. 21-cv-09004-CRB, 2022 WL 17365255, *appeal filed*, No. 22-17024 (9th Cir. Dec. 30. 3022) ........ 6, 7, 8

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........ 5, 6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ........ 12

*In re Facebook, Inc.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........ 16

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 9, 17

*In re Hulu Privacy Litig.*,
No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .......... 7

*In re Meta Pixel Healthcare Litig.*,
No. 22-cv-03580-WHO, 2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) .......... 6, 10

*Jackson v. Loews Hotels, Inc.*,
No. ED CV 18-827-DMG, 2019 WL 6721637 (C.D. Cal. July 24, 2019) .......... 15

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 22-cv-04792-RS, 2023WL 2838118 (N.D. Cal. Apr. 6, 2023) .......... 15

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 9

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003) .......... 14

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .......... 15

*Licea v. Am. Eagle Outfitters, Inc.*,
No. EDCV 22-1702-MWF (JPR), 2023 WL 2469630 (C.D. Cal. Mar. 7, 2023) .......... 9

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021) .......... 11

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 5, 14

*Noel v. Hall*,
568 F.3d 743 (9th Cir. 2009) .......... 9

*People v. Nakai*,
183 Cal. App. 4th 499 (2010) .......... 5

*Pruchnicki v. Envision Healthcare Corp.*,
845 F. App’x 613 (9th Cir. 2021) .......... 16

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 5, 6, 8, 10

*Siry Inv., L.P. v. Farkhondehpour*,
13 Cal. 5th 333 (2022) .......... 14

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) .......... 10

*Tellabs, Inc. v. Makor Issues & Rights., Ltd.*, 551 U.S. 308 (2007) .......... 3

*Ticketmaster L.L.C. v. Prestige Entm't, Inc.*, 306 F. Supp. 3d 1164 (C.D. Cal. 2018) .......... 12

*United States v. Abouammo*, No. 19-cr-00621-EMC-1, 2022 WL 17584238 (N.D. Cal. Dec. 12, 2022) .......... 14, 15

*United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012) .......... 12

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .......... 3

*United States v. Rodriguez*, 968 F.2d 130 (2d Cir. 1992) .......... 9

*Van Buren v. United States*, 141 S. Ct. 1648 968 F.2d 130 (2d Cir. 1992) .......... 13

*Valenzuela v. Kroger Co.*, No. CV 22-6382-DMG, 2023 WL 4418887 (C.D. Cal. June 23, 2023) .......... 10

**STATUTES**

18 U.S.C. § 1030, *et seq* .......... 2, 4, 12, 13, 14

18 U.S.C. §2510(4) .......... 9

Cal. Bus. & Prof. Code § 17200 .......... 2, 4, 15, 16, 17

Cal. Penal Code § 484 .......... 4

Cal. Penal Code § 496 .......... 4

Cal. Penal Code § 630, *et seq.* .......... 2, 8, 9, 10, 11

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Bernadine Griffith filed this lawsuit against TikTok Inc. and ByteDance Inc. ("Defendants") because data concerning her activities has allegedly been shared with them. Plaintiff alleges three websites—Hulu, Etsy and Build-a-Bear—have implemented TikTok's digital advertising technology and thus shared information about her activity ***on those*** websites with TikTok.

Plaintiff's complaint against data sharing, though, is equivalent to complaining about how the Internet works. The Internet functions as a network of information. For Plaintiff to visit any website, data must go from Plaintiff, to her Internet Service Provider who connects her online, to numerous computers along the way, and ultimately to the website she visits.

Advertising, of course, is a ubiquitous feature of the free Internet. TikTok, like many other platforms, provides a piece of code for website operators to incorporate on their websites. Such technology is widely used by website owners in order to evaluate the effectiveness of their ad campaigns on a platform.

Plaintiff herself is not a TikTok user. The Complaint alleges no special circumstances or promises from TikTok to give rise to any basis to make the common practice of sharing information on the Internet unlawful. Even so, TikTok separates data about its users from non-users like Plaintiff and takes its responsibility to guard all personal and sensitive data seriously. To that end, TikTok directs website owners to be careful about how they implement the code and to pay attention to the information that may be disclosed.

For her Complaint, Plaintiff tries to stretch laws directed at "hacking," "interception," and "recording devices" to encompass the otherwise ordinary practice of sharing online activity. Such claims, even when stretched, fail because the websites—*not* TikTok—decide whether to use the piece of code TikTok makes

available, determine which webpages the code should be implemented on, and configure it for the information they seek to capture and share with TikTok.

The Complaint advances seven claims, but none of them have merit even if Plaintiff's allegations are assumed true. The constitutional privacy and common-law intrusion claims fail because Plaintiff has not established a reasonable expectation of privacy. Plaintiff's claims are non-starters because all three websites clearly disclose that her information will be shared with third parties. The California Invasion of Privacy Act ("CIPA") claims fail because Plaintiff has not alleged an act of interception or the use of a recording device; at most, she has alleged the provision of a tool that was used by website owners. The Computer Fraud and Abuse Act ("CFAA") claim fails for similar reasons because there is no allegation that Defendants hacked into Plaintiff's computer. The larceny and conversion claims fail because Plaintiff has not established a property interest in any of the shared data. And the Unfair Competition Law ("UCL") claim fails because Plaintiff has not alleged the loss of either property or money.

For all of these reasons, the Complaint must be dismissed.

## II. STATEMENT OF FACTS

### A. TikTok Provides A Piece of Code That Website Owners Can Incorporate On Their Sites To Collect Information About What Visitors Do On Their Websites

TikTok is an entertainment platform where users (as long as they are at least 13 years old) can create, view, and share their own videos.[1] Compl. ¶ 2. Companies advertise on TikTok in order to reach TikTok's users. *Id.* ¶ 19.

In order to help advertisers on TikTok make their ads more effective, TikTok offers website owners a tool by which they can collect information about

---

[1]TikTok Inc. is the entity that provides the TikTok platform to users in the United States, as stated in the TikTok Terms of Service. ByteDance Inc. is a separate entity in the United States. Plaintiff improperly collapses allegations against these two distinct entities into generic allegations against "Defendants." Each of the named entities reserves their rights and defenses.

what their users do on their websites. Compl. ¶ 32. That tool is a piece of code[2] that website owners can incorporate into their websites. *Id.* ¶¶ 32, 36. When a user visits the website where the piece of code is included, the user's browser sends certain information to TikTok about certain actions taken by website users (for example, adding an item to a shopping cart) that the advertiser chooses to report back to Defendants, as well as identifying information to enable Defendants to link the event to a person's view or click of an ad on TikTok. *Id.* ¶¶ 34-36.

Website owners decide whether to incorporate the piece of code TikTok provides. TikTok offers it as a "solution" for websites to use, Compl. ¶ 32, but the website owner must implement the code on its own website, *id.* ¶¶ 32, 36. The website owner chooses which specific pages on the website that will incorporate the piece of code and determines what types of information will be shared. *See generally* TikTok Inc., *About TikTok Pixel*, RJN, Ex. A.[3] Plaintiff alleges website owners can use this tool to collect data such as webpages visited, search queries, User IDs, user agent, phone numbers, email addresses, and IP addresses. *See* Compl. ¶¶ 26, 30, 33.

---

[2]Plaintiff refers to a "TikTok SDK," but TikTok does not actually offer an SDK for use by websites. The only tools it offers to websites are a Pixel and an Events API. *See* TikTok Inc., *About TikTok Pixel*, TikTok Business Help Center, https://ads.tiktok.com/help/article/tiktok-pixel?redirected=2 (last viewed July 19, 2023), RJN, Ex. A; TikTok Inc., *About Events API*, TikTok Business Help Center, https://ads.tiktok.com/help/article/events-api?lang=en (last viewed July 19, 2023), RJN, Ex. B. The Complaint fails to distinguish between an SDK, Pixel, or Events API, resulting in an inaccurate description of the advertising tools TikTok offers. For purposes of this motion, those inaccuracies do not matter and Plaintiff's allegations about the code are accepted as true.

[3]Documents that are referenced in the Complaint or form part of the basis of Plaintiff's claims are incorporated by reference into the pleadings. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Courts can properly consider "documents incorporated into the complaint by reference" when ruling on a Rule 12(b)(6) motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Defendants have filed a request for judicial notice ("RJN") concurrent with this Motion.

### B. Plaintiff Visits Three Websites That Use Code From TikTok

Plaintiff Bernadine Griffith is not a TikTok user. Compl. ¶ 74. She alleges, however, that she has visited three websites that implement the piece of code TikTok provides to gauge ad effectiveness, and, as a result, her data was disclosed to Defendants. *Id.* ¶¶ 75-78. Since 2017, Plaintiff has from "time to time" subscribed to the Hulu video streaming service to watch her favorite shows. *Id.* ¶ 76. Since June 2018, Plaintiff has been a member of the e-commerce website Etsy, which she visits "frequently." *Id.* ¶ 77. And in or around early 2022, Plaintiff visited Build-a-Bear Workshop, a website that, not surprisingly, sells custom-made Teddy Bears. *Id.* ¶ 78.[4] Plaintiff alleges that information about the videos she searched for and watched on Hulu, the products she browsed through, purchased and sold on Etsy, and the bears she viewed and built on Build-a-Bear were disclosed to TikTok. *See id.* ¶¶ 75-78.

Plaintiff filed her Complaint on May 26, 2023, on behalf of a putative class of non-TikTok users who have visited any website that incorporates this piece of code from TikTok. *See* ECF No. 1. Plaintiff asserts seven claims: (1) violation of Sections 631 and 632 of the CIPA, Cal. Penal Code § 630 *et seq.*; (2) violation of the CFAA, 18 U.S.C. § 1030 *et seq.*; (3) statutory larceny under California Penal Code §§ 484 and 496; (4) common-law conversion; (5) violation of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*; (6) invasion of privacy under the California Constitution; and (7) intrusion upon seclusion. Compl. ¶¶ 82, 93-152.

---

[4]The Complaint identifies Telemundo and Upwork as other websites that allegedly use the code from TikTok to collect data from non-TikTok users. Compl. ¶ 43. Plaintiff, however, does not allege that she visited those websites nor does the Complaint make any specific allegations that those websites collected *her* data.

## III. THE CLAIMS FOR INVASION OF PRIVACY AND INTRUSION UPON SECLUSION FAIL AS A MATTER OF LAW

Plaintiff's sixth cause of action asserts a claim for invasion of privacy, while her seventh cause of action asserts a claim for intrusion upon seclusion. The invasion and intrusion claims fail for a basic, threshold reason: they both require a reasonable expectation of privacy. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022). Whether a plaintiff reasonably expected her data to remain private is a context-specific inquiry. *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 36 (1994). Courts consider a variety of factors, including the "circumstances surrounding the data collection" and the sensitivity of the data collected. *Hammerling*, 615 F. Supp. 3d at 1088. If Plaintiff's allegations fail to demonstrate a reasonable expectation of privacy, her invasion and intrusion claims may be dismissed as a matter of law. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012).

California courts have developed a presumption that Internet communications do not reasonably give rise to an expectation of privacy. *People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010); *Hammerling*, 615 F. Supp. 3d at 1089 ("there is no reasonable expectation of privacy when the data collection is within users' common-sense expectation"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (no reasonable expectation when inquiring about items of clothing on a retail website that embedded digital marketing code). Because the recipients of online communications can "easily" share them—it is reasonable to expect that such communications might be shared. *Nakai*, 183 Cal. App. 4th at 518; *see also Revitch*, 2019 WL 5485330, at *3 (collecting cases).

It is thus not enough for Plaintiff to simply allege that her online browsing and search data was disclosed and collected. She must allege "that there is something unique about these particular internet communications" that would

justify departing from the presumption. *In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2022 WL 17869218, at *25 (N.D. Cal. Dec. 22, 2022) (finding, for example, that communications with healthcare providers are "readily distinguishable from online communications in general").

Plaintiff cannot establish a reasonable expectation of privacy for two reasons. First, she has not alleged any particularly sensitive information that was disclosed to TikTok when she visited the Hulu, Etsy or Build-a-Bear websites. Simply searching for, viewing, or purchasing products on consumer websites is not the type of unique situation where courts recognize a reasonable expectation of privacy. *See Hammerling v. Google LLC*, No. 21-cv-09004-CRB, 2022 WL 17365255, at *9 (viewing foot massager, size nine women's slippers, anti-inflammatory meal subscriptions, coconut oil, and photo/editing app not "sufficiently personal" to overcome presumption) *appeal filed*, No. 22-17024 (9th Cir. Dec. 30. 3022); *Revitch*, 2019 WL 5485330, at *3 (inquiring about items of clothing on a retail website).[5]

Second, there "is no reasonable expectation of privacy when a plaintiff has been notified that his Internet activity may be forwarded to a third party." *Deering v. CenturyTel, Inc.*, No. CV-10-63-BLG-RFC, 2011 WL 1842859, at *2 (D. Mont. May 16, 2011). This "advance notice" can make even an otherwise serious intrusion of privacy not problematic. *Hill*, 7 Cal. 4th at 36.

**Hulu.** Plaintiff alleges that Defendants received information about the videos she searched for and watched on Hulu. Compl. ¶ 76. Plaintiff does not allege how this specifically happens, especially since Hulu has encrypted its URLs

---

[5]Plaintiff references a CONSUMER REPORTS article about a user searching for "erectile dysfunction" on WebMD, contraception on RiteAid, and insurance on Recovery Centers of America. Compl. ¶ 40, RJN, Ex. C. The article does not reference any of the websites Plaintiff alleges she visited. As such, the article does not give rise to any claim for Plaintiff.

so they do not reveal the title of videos. *See In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *2 (N.D. Cal. Apr. 28, 2014).

That said, assuming the truth of her allegations, she has no reasonable expectation of privacy. The Complaint does not make any specific allegations about her browsing data and search queries on the Hulu website, nor does Plaintiff allege that the videos she searched for, browsed and watched were particularly sensitive or personal. *See Hammerling*, 2022 WL 17365255, at *9.

In any event, Plaintiff agreed to the sharing of her data. When Plaintiff first subscribed to Hulu, the company disclosed up front in its privacy policy (which Plaintiff had to agree to when she signed up) that "advertising technology companies" and "service providers that perform advertising-related services for [Hulu]" "may use cookies and similar technologies . . . to collect information from or about you . . . in order to tailor advertisements, measure advertising effectiveness, and enable other enhancements." *See* Hulu LLC, *Privacy Policy* (July 19, 2016) https://web.archive.org/web/ 20170121010234/ https://www.hulu.com/privacy, RJN, Ex. E. Hulu's privacy policy clearly discloses that it collects "information" about "the content [users] view or post" and their "preferences" and shares this with third parties. *See* The Walt Disney Co., *Privacy Policy* (Mar. 3, 2023) https://privacy.thewaltdisneycompany.com /en/current-privacy-policy/, RJN, Ex. D. As a Hulu subscriber "from time to time," *see* Compl. ¶ 76, Plaintiff acknowledged and consented to these practices every time she subscribed. *See* Hulu LLC, *Create Your Account* https://signup.hulu.com/account, RJN. Ex. F.

**Etsy.** Plaintiff alleges that Defendants received information about the products she searched for, browsed, purchased and sold on Etsy. Compl. ¶ 77. But there are no specific allegations suggesting this information was sensitive or

personal, or that it went beyond divulging her interests or preferences for certain (unspecified) products. *See Hammerling*, 2022 WL 17365255, at *9.

Etsy, too, discloses that it shares user data: "Etsy also needs to engage third-party companies and individuals (such as research companies, and analytics and security providers) to help us operate, provide, and market the Services." *See* Etsy, Inc. *Privacy Policy*, (effective until July 23, 2023) https://www.etsy.com/legal/privacy-archived/, RJN, Ex. G. Plaintiff consented to this sharing *every time she logged in*, which she did "frequently." *See* Etsy, Inc., *Sign-in Prompt*, https://www.etsy.com/ (requiring consent to Privacy Policy upon each log-in), RJN Ex. H; Compl. ¶ 77 (Plaintiff uses Etsy "frequently"). Plaintiff thus cannot have reasonably expected her browsing data on Etsy to remain private.

**Build-a-Bear.** If allegations that a plaintiff searched for specific size shoes, foot massagers, types of clothing, anti-inflammatory meals, or coconut oil do not overcome the presumption that Internet communications are not confidential, *see Hammerling*, 2022 WL 17365255, at *9; *Revitch*, 2019 WL 5485330, at *3, it is hard to fathom how searching for a teddy bear can be considered sensitive, personal or private.

Regardless, Build-a-Bear, too, discloses that it shares information about visitors' "use of [its] site with our social media, advertising and analytics partners, who may combine it with other information" about those visitors. *See* Build-a-Bear Workshop, Inc., *Privacy Policy* (Feb. 6, 2023) https://www.buildabear.com/privacy-policy.html#k, RJN, Ex. I. This disclosure pops up whenever anyone goes to the Build-a-Bear website. *See* Build-A-Bear Workshop, Inc., *This Website Uses Cookies*, https://www.buildabear.com, RJN, Ex. J.

Without a reasonable expectation of privacy, Plaintiff's claims for invasion of privacy and intrusion upon seclusion fail as a matter of law. The sixth and seventh causes of action must be dismissed.

## IV. THE CIPA CLAIM FAILS AS A MATTER OF LAW

CIPA proscribes specific types of eavesdropping, including wiretapping others' conversations and recording confidential communications. Cal. Penal Code §§ 630, 631(a), 632(a). Plaintiff's first cause of action asserts claims under Sections 631 (wiretapping) and 632 (recording). Both fail.

### A. The 631 Claim Fails Because Defendants Did Not Intercept Plaintiff's Data

Plaintiff alleges violations of two subsections of Section 631. Specifically, she claims (1) a wilful attempt "to learn the contents or meaning of a communication in transit over a wire" and (2) an attempt "to use or communicate information obtained as a result." *See* Compl. ¶¶ 95-101. The two are interrelated, since a violation of the second requires a violation of the first. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020).

To state a claim under Section 631 (and either subsection), Plaintiff must allege that Defendants intercepted her communications while "in transit." Courts borrow from the federal Wiretap Act and cases decided under it to determine what constitutes an "interception." *See Licea v. Am. Eagle Outfitters, Inc.*, No. EDCV 22-1702-MWF (JPR), 2023 WL 2469630, at *8 (C.D. Cal. Mar. 7, 2023). The Federal Wiretap Act defines "intercept" as "the aural or other acquisition of the contents of any wire . . . communication through the use of any electronic, mechanical, or other device." 18 U.S.C. §2510(4). Such an acquisition occurs "when the contents of a wire communication are captured or redirected in any way." *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (quoting *United States v. Rodriguez*, 968 F.2d 130, 136 (2d Cir. 1992)). To state a claim, the interception must occur "contemporaneous with transmission." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002). In other words, the defendant must capture the communication as soon as the user sends it.

The Complaint fails to allege any interception by Defendants. All it alleges is that TikTok provides websites a tool, which the owners of those sites place on their own websites, and that Defendants receive information as a result. Providing a tool is not an interception in transit. Even where a website uses "technology created by others" to collect communications, the company that created that technology is not the one intercepting communications. *Valenzuela v. Kroger Co.*, No. CV 22-6382-DMG (AGRx), 2023 WL 4418887, at *3 (C.D. Cal. June 23, 2023) (dismissing Section 631 claim). This is true even if Defendants receive information. The California Supreme Court has made clear that a CIPA claim requires the affirmative act of "willfully attempting" to learn the contents of the message. *See Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978). Here, the Complaint fails to allege any act by Defendants that can be reasonably characterized as an affirmative act of interception of any communication while it is in transit.

### B. The 632 Claim Fails Because Defendants Did Not Use A Recording Device To Collect Confidential Communications

CIPA Section 632 penalizes someone who "uses" a recording device to record a "confidential communication." Cal. Penal Code § 632. This claim must be dismissed for two independent reasons.

First, Plaintiff fails to allege that any "confidential communications" were recorded. Whether a communication is "confidential" under CIPA requires the same analysis used to determine if there is a reasonable expectation of privacy. *See In re Meta Pixel Healthcare Litig.*, 2022 WL 17869218, at *15 n.12. As explained above, there was nothing confidential in Plaintiff's interactions with the Hulu, Etsy or Build-a-Bear websites. There are no allegations to overcome the general presumption against confidentiality of online communications. *See Revitch*, 2019 WL 5485330, at *3 (dismissing 632 claim). And finally, all of the websites disclosed to Plaintiff that such information would be shared.

Second, there is no allegation that Defendants used a recording device. Even if the TikTok code is considered a "recording device," it is used by website owners not Defendants. This piece of code is provided by TikTok, but individual website owners make the decision to actually use it, determine on which webpages to incorporate it, and choose what data to disclose when they configure it. *See* Compl. ¶¶ 30, 32-36; RJN, Ex. A.

These details matter. In *Lopez v. Apple, Inc.*, the plaintiffs alleged that Apple's voice-activated software, Siri, intercepted and disclosed private conversations when it was inadvertently triggered by users. 519 F. Supp. 3d 672, 679 (N.D. Cal. 2021). Although it created Siri, Apple argued that it did not "use[] an electronic . . . recording device to eavesdrop" because the plaintiffs, not Apple, "control[led] their iPhones." *Id.* at 690. The court disagreed. Apple put the Siri software on iPhones. *Id.* at 679. Apple programmed Siri. *Id.* at 690. Apple determined what words would trigger Siri. *Id.* In sum, Apple not only created Siri, it *placed* Siri on iPhones in order to capture information. *See id.* In contrast, Defendants did not place any code on the websites Plaintiff visited or determine how they use it—Hulu, Etsy and Build-a-Bear incorporated the piece of code, determined what data to share with TikTok, and configured it accordingly.

The legislative history confirms this narrow focus. Before January 1, 2017, the statute extended to "[e]very person who . . . by means of any electronic amplifying or recording device eavesdrops upon or records" a confidential communication. *See, e.g.*, Assemb. Bill No. 1671 (2015-2016 Reg. Sess.) as amended March 17, 2016, RJN, Ex. K. The statute was amended, though, to apply only to the person who "uses" the recording device. It is not enough, then, to receive information as a result of such a device; Section 632 requires active use.

For all of these reasons, the first cause of action must be dismissed.

## V. THE CFAA CLAIM FAILS AS A MATTER OF LAW

Plaintiff's second cause of action asserts a violation of the CFAA. This cause of action also fails and should be dismissed.

### A. Defendants Did Not Access Plaintiff's Computer

The CFAA was enacted to prevent "intentional intrusion," "forced entry," and "trespass" into computer systems. *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1195 n.13, 1196 (9th Cir. 2022). Thus, courts look at whether the conduct at issue is analogous to "breaking and entering" into the plaintiff's computer. *Id.* at 1197; *see also Ticketmaster L.L.C. v. Prestige Entm't, Inc.*, 306 F. Supp. 3d 1164, 1174 (C.D. Cal. 2018) (conduct prohibited is analogous to "computer trespass").

Nowhere in the Complaint does Plaintiff identify any conduct by Defendants that is akin to breaking and entering into her computer system. Defendants did not target Plaintiff, let alone place any code on the websites she visited. The website owners did that. *See* Compl. ¶ 34. Defendants merely gave them the piece of code to use if they so desired. *See id.* ¶¶ 30, 32-36; RJN, Ex. A

The crux of Plaintiff's Complaint is not that Defendants trespassed into her computer; it is that they obtained her data when she did not want them to. But the CFAA was designed to target hacking, not misappropriation or misuse of information. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012). The Ninth Circuit has thus rejected attempts to extend CFAA liability to commercial data collection, favoring "a narrow interpretation" of the CFAA for fear of "turn[ing] a criminal hacking statute into a 'sweeping Internet-policing mandate.'" *hiQ Labs*, 31 F.4th at 1200-01. Implemented the way Plaintiff wants, the CFAA would be exactly that: a mandate on how Internet data—including basic information about browsing on consumer-facing websites—can be collected or used.

### B. Plaintiff Has Not Alleged CFAA Harm

To state a CFAA claim, a plaintiff must also allege a type of harm recognized by that statute, all of which address the potential harms of hacking. *Van Buren v. United States*, 141 S. Ct. 1648, 1659-60 (2021). Plaintiff pleads two types of harm. First, she alleges that Defendants caused at least $5,000 in loss under CFAA Subsection (c)(4)(A)(i)(I). Compl. ¶ 108. Second, she alleges that Defendants' conduct is a "threat to public health or safety" under Subsection (c)(4)(A)(i)(IV). *Id.* ¶ 109. The Complaint contains no facts suggesting either requirement is met.

Plaintiff has not alleged CFAA loss. The only type of loss the CFAA recognizes is "costs caused by harm to computer data, programs, systems, or information services." *Van Buren*, 141 S. Ct. at 1659-60. Plaintiff has not identified any harm to her computer or to the websites she identifies (nor would she have standing to assert her claim based on harm to those websites). Instead, Plaintiff alleges that (1) Defendants collected her data "without providing anything of value" and (2) their access to her data diminished its value which, when aggregated with the rest of the class, will equal at least $5,000 in loss. Compl. ¶¶ 71, 108. Even assuming this were true and Plaintiff had tried to sell her information, this does not count. The denial of profits a party "might have received from commodifying . . . personal information" is not a loss under the CFAA. *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019). Nor is "diminished value." *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 486 (N.D. Cal. 2021).

Plaintiff also has not identified how the collection of her data could constitute a "direct threat to public health and safety." Compl. ¶ 109. A plaintiff can establish this type of harm by alleging that the defendant "disable[d] computers or delete[d] data essential to providing medical treatment, public

utilities, or emergency response services." *Colo. Republican Comm. v. Doe*, No. 16-cv-01058-MSK-MJW, 2016 WL 3922156, at *2 (D. Colo. July 21, 2016). This is a far cry from any harm Plaintiff alleges *she* experienced, which is limited to the collection of the URLs she visited and search terms she entered on a streaming service, e-commerce platform and teddy bear store's website. Moreover, Plaintiff must make "specific factual allegations" in support of her theory, and she does not. *See GateGuard, Inc. v. Amazon.com Inc.*, No. 21-cv-9321 (JGK), 2023 WL 2051739, at *4 n.3 (S.D.N.Y. Feb. 16, 2023) (plaintiff could not rely on the factor concerning public health or safety because the complaint "lack[ed] specific factual allegations to support that theory of CFAA liability").

For all of these reasons, Plaintiff's second cause of action must be dismissed.

## VI. THE STATUTORY LARCENY AND COMMON LAW CONVERSION CLAIMS FAIL AS A MATTER OF LAW

Plaintiff's third cause of action asserts a claim for statutory larceny, while her fourth cause of action asserts a claim for conversion. These causes of action also fail and must be dismissed. Plaintiff can only maintain those claims if she has a property right in the data that was taken from her. *See Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333, 354-55 (2022) (statutory larceny requires Plaintiff to show that her "property was stolen or obtained in a manner constituting theft"); *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) (conversion requires Plaintiff to show "ownership or right to possession of property").

Plaintiff cannot establish a property right in this data. Online activity data, like a user's ID, is not generated by the user in a vacuum—it is generated *with*, or even *by*, the website a user visits. *Low*, 900 F. Supp. 2d at 1030 (N.D. Cal. 2012) (no property interest in user ID or browsing history). It no more belongs to the user than it does to the website. Thus, a plaintiff cannot have exclusive possession over or right to control such publicly-available information. *See United States v.*

*Abouammo*, No. 19-cr-00621-EMC-1, 2022 WL 17584238, at *12 (N.D. Cal. Dec. 12, 2022); *see generally G.S. Rasmussen & Assocs. v. Kalitta Flying Serv Inc.*., 958 F.2d 896, 903 (9th Cir. 1992). Plaintiff cannot claim a property interest in browsing data (such as URLs and search queries). *See Doe I v. Sutter Health*, No. 34-2019-00258072-CU-BT-GDS, 2020 WL 1331948, at *14 (Cal. Super. Ct. Jan. 29, 2020) (plaintiff cannot have exclusive control of browsing history).

The third and fourth causes of action (larceny and conversion) must be dismissed.

## VII. THE UCL CLAIM FAILS AS A MATTER OF LAW

Plaintiff's fifth cause of action asserts a claim under the UCL. To bring a claim under the UCL, a plaintiff must "demonstrate some form of economic injury." *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 338 (2011). In other words, a plaintiff must have lost money or property. *Id.* Without such injury, a plaintiff has no standing to sue. *Id.*

As explained above, Plaintiff does not have a property right in her browsing data. *See generally Jackson v. Loews Hotels, Inc.*, No. ED CV 18-827-DMG (JCx), 2019 WL 6721637, at *4-5 (C.D. Cal. July 24, 2019) (no UCL claim because taking of personal information was not loss of property); *see also Katz-Lacabe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023WL 2838118, at *8 (N.D. Cal. Apr. 6, 2023) (mere misappropriation of personal information is not loss of property for UCL standing); *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1093 (N.D. Cal. 2018) (sharing of personal information does not establish UCL standing).

To establish UCL standing, then, Plaintiff must allege the loss of money. *See, e.g.*, *Jackson*, 2019 WL 6721637, at *4-5 (C.D. Cal. July 24, 2019) (dismissing UCL claim where plaintiff failed to allege that she lost money as a result of the theft of her personally identifiable information); *Katz-Lacabe*, 2023

WL 2838118, at *8 (N.D. Cal. Apr. 6, 2023) (similar); *Gonzales*, 305 F. Supp. 3d at 1093 (similar). Plaintiff asserts two theories, both of which have been explicitly rejected by courts in this Circuit.

First, Plaintiff alleges that Defendants' conduct diminished the value of her data. But while she makes theoretical allegations about the economic value of data, *see* Compl. ¶¶ 44-55, there are no specific factual allegations demonstrating that *her* personal information lost value, which is fatal to her theory. *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021). Assertions that people "can" monetize their data in certain markets are not enough, because she does not allege that she was aware of these marketplaces or attempted to sell her data in them. *In re Facebook, Inc.*, 402 F. Supp. 3d 767, 784, 804 (N.D. Cal. 2019) (no UCL standing where plaintiffs did not allege that they intended to sell their personal information). Plaintiff also fails to allege *how* her ability to participate in the marketplaces is impaired by Defendants' alleged conduct. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019) (no economic injury where plaintiff failed to allege a market for his personal information or the impairment of his ability to participate in that market).

Second, Plaintiff alleges that she suffered benefit-of-the-bargain damages because Defendants "took more data than authorized," *see* Compl. ¶ 60. That theory plainly does not apply to this situation. It only arises where the plaintiff purchased a product based on a false representation about its value and otherwise would not have bought it or paid as much. *Gardiner v. Walmart, Inc.*, No. 20-cv-04618-JSW, 2021 WL 4992539, at *5 (N.D. Cal. July 28, 2021). Plaintiff's Complaint fails to establish this inapplicable theory on many grounds: she does not identify who made promises to her about the value of her experience on the websites (and it was certainly not Defendants); she does not identify any out-of-pocket costs; she does not even allege that she paid to use TikTok or any of the

websites. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d at 834 (no viable benefit-of-the-bargain theory of damages because plaintiffs did not pay for defendants' services).

Because she has no UCL standing, Plaintiff's fifth cause of action must be dismissed.

## VIII. CONCLUSION

For the foregoing reasons, the Complaint must be dismissed.

Dated: July 24, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Victor Jih
Victor Jih

*Attorney for Defendants*
TIKTOK INC. and BYTEDANCE INC.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants TikTok Inc. and ByteDance Inc., certifies that this brief contains 5,213 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 24, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Victor Jih
Victor Jih

*Attorney for Defendants*
TIKTOK INC. and BYTEDANCE INC.

## CERTIFICATION OF MEET AND CONFER

I certify that the parties met by videoconference on July 11, 2023, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part.

Dated: July 24, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Victor Jih
Victor Jih

*Attorney for Defendants*
TIKTOK INC. and BYTEDANCE INC.