Ekwan E. Rhow (CA SBN 174604)
  erhow@birdmarella.com
Marc E. Masters (CA SBN 208375)
  mmasters@birdmarella.com
Christopher J. Lee (CA SBN 322140)
  clee@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
GLANCY PRONGAY & MURRAY,
LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Ave. of the Americas
32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
gpark@susmangodfrey.com

Attorneys for Plaintiff Bernadine Griffith

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| BERNADINE GRIFFITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TIKTOK, INC, a corporation; BYTEDANCE, INC., a corporation,<br><br>Defendants. | CASE NO. 5:23-cv-00964-SB-E<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**<br><br>Date:      September 29, 2023<br>Time:      8:30 a.m.<br>Crtrm.:   6C<br><br>Assigned to Hon. Stanley Blumenfeld, Jr.<br><br>Action Filed:   May 26, 2023<br>Trial Date:      TBD |

3882347.2

PLAINTIFF'S RESPONSE TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................ 3

III.  LEGAL STANDARD ......................................................................... 4

IV.   ARGUMENT ...................................................................................... 5

    A.   The Complaint Adequately Alleges Invasion of Privacy and Intrusion Upon Seclusion Claims. .......................................... 5

        1.   Plaintiff Alleges a Reasonable Expectation of Privacy. ............... 5

        2.   Defendants' Attempt to Benefit from the Disclosures of Non-TikTok Websites Fails ......................................................... 8

    B.   The CIPA Claims Survive Dismissal ............................................... 10

        1.   Section 631: Plaintiff Alleges "Interception" In Transit. ........... 10

        2.   Section 632: Plaintiff Alleges "Confidential Communications." ........................................................................ 11

        3.   Section 632: Plaintiff Alleges that the TikTok SDK Constitutes a "Recording Device." ............................................. 13

    C.   The Complaint Adequately Alleges a CFAA Claim. .......................... 14

        1.   Plaintiff Alleges Defendants' Trespass onto Plaintiff's Computer. .................................................................................... 14

        2.   Plaintiff Alleges Harm Cognizable Under the CFAA. ............... 14

    D.   The Complaint Adequately Alleges Statutory Larceny and Conversion Claims. ......................................................................... 15

    E.   The Complaint Adequately Alleges a UCL Claim. ............................ 18

        1.   Plaintiff alleges loss of property. ............................................... 18

        2.   Plaintiff alleges loss of money through the diminution of the value of her data ................................................................ 21

V.    CONCLUSION ................................................................................. 22

PLAINTIFF'S OPPOSITION TO DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5
*Adler v. Community.com, Inc.*,
  No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2,
6
  2021) ................................................................................................................ 12

7
*Bass v. Facebook, Inc.*,
  394 F.Supp.3d 1024 (N.D. Cal. 2019) .............................................................. 22
8

9
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 4
10

11
*Blaustein v. Burton*,
  9 Cal.App.3d 161 (Cal. Ct. App. 1970) ........................................................... 17
12

13
*Broidy Cap. Mgmt. LLC v. Muzin*,
  No. 19-cv-0150 (DLF), 2020 WL 1536350 (D.D.C. Mar. 31, 2020),
14
  *aff'd*, 12 F.4th 789 (D.C. Cir. 2021) ................................................................ 16

15
*Brown v. Google LLC*,
  525 F.Supp.3d 1049 (N.D. Cal. 2021) ........................................................... 8, 13
16

17
*Brown v. Google LLC*,
  No. 20-cv-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 1, 2022) ..20, 21, 22
18

19
*Brown v. Google LLC*,
  No. 4:20-cv-3664-YGR, 2023 WL 5029899 (N.D. Cal. Aug. 7,
20
  2023) ........................................................................................................ *passim*

21
*Calhoun v. Google LLC*,
  526 F.Supp.3d 605 (N.D. Cal. 2021) ......................................................... *passim*
22

23
*Callahan v. PeopleConnect, Inc.*,
  No. 20-cv-09203-EMC, 2021 WL 5050079 (N.D. Cal. Nov. 1,
24
  2021) ............................................................................................................ 20, 21

25

26
*Campbell v. Facebook, Inc.*,
  77 F.Supp.3d 836 (N.D. Cal. 2014) .................................................................... 9

27

28

3882347.2

iii

PLAINTIFF'S OPPOSITION TO DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

*Cappello v. Walmart Inc.*,
    394 F.Supp.3d 1015 (N.D. Cal. 2019)................................................................18

*CTC Real Estate Servs. v. Lepe*,
    140 Cal. App. 4th 856 (2006) ........................................................................18

*Deering v. CenturyTel, Inc.*,
    No. CV-10-63-BLG-RFC, 2011 WL 1842859 (D. Mont. May 16,
    2011) ..........................................................................................................8

*Doe I v. Sutter Health*,
    No. 34-2019-00258072-CU-BT-GDS, 2020 WL 1331948 (Cal.
    Super. Ct. Jan. 29, 2020) ......................................................................17, 18

*Flanagan v. Flanagan*,
    27 Cal. 4th 766 (2002) ................................................................................6

*G.S. Rasmussen & Assocs. v. Kalitta Flying Serv., Inc.*,
    958 F.2d 896 (9th Cir. 1992) ......................................................................17

*Gonzales v. Uber Techs., Inc.*,
    305 F.Supp.3d 1078 (N.D. Cal. 2018)........................................................19

*Hammerling v. Google LLC*,
    615 F.Supp.3d 1069 (N.D. Cal. 2022)..........................................................6

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    31 F.4th 1180 (9th Cir. 2022) ....................................................................14

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
    402 F.Supp.3d 767 (N.D. Cal. 2019).....................................................9, 12, 22

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ..............................................................*passim*

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
    440 F.Supp.3d 447 (D. Md. 2020)..........................................................18, 22

*In re Meta Pixel Healthcare Litig.*,
    No. 22-cv-03580-WHO, 2022 WL 17869218 (N.D. Cal. Dec. 22,
    2022) ......................................................................................................5, 12

*In re Toys R Us, Inc., Priv. Litig.*,
    No. 00-CV-2746, 2001 WL 34517252 (N.D. Cal. Oct. 9, 2001).....................14

3882347.2

iv

*Jackson v. Loews Hotels, Inc.*,
 No. ED CV 18-827-DMG, 2019 WL 6721637 (C.D. Cal. July 24,
 2019) ................................................................................................. 19

*Katz-Lacobe v. Oracle Am., Inc.*,
 No. 22-cv-04792-RS, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ................. 19

*Klein v. Facebook, Inc.*,
 580 F.Supp.3d 743 (N.D. Cal. 2022) ..................................................... 21

*Kwikset Corp. v. Superior Court*,
 51 Cal. 4th 310 (2011) ............................................................... 19, 20

*Low v. LinkedIn Corp.*,
 900 F.Supp.2d 1010 (N.D. Cal. 2012) ..................................................... 16

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
 519 F.3d 1025 (9th Cir. 2008) .............................................................. 4

*Mortensen v. Bresnan Commc'n, L.L.C.*,
 No. CV 10-13-BLG-RFC, 2010 WL 5140454 (D. Mont. Dec. 13,
 2010) ................................................................................................. 14

*People v. Gibbons*,
 215 Cal. App. 3d 1204 (Cal App. 4th Dist. 1989) ............................... 2, 13

*People v. Nakai*,
 183 Cal.App.4th 499 (2010) ........................................................... 6, 7

*Pruchnicki v. Envision Healthcare Corp.*,
 845 F.App'x 613 (9th Cir. 2021) ............................................. 19, 20, 21

*Revitch v. New Moosejaw, LLC*,
 No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ......... *passim*

*Saleh v. Nike, Inc.*,
 562 F.Supp.3d 503 (C.D. Cal. 2021) ..................................................... 11

*Troyk v. Farmers Grp., Inc.*,
 171 Cal.App.4th 1305 (Cal. Ct. App. 2009) ............................................ 20

*United States v. Abouammo*,
 No. 19-cr-00621-EMC-1, 2022 WL 17584238 (N.D. Cal. Dec. 12,
 2022) ................................................................................................. 17

3882347.2

v

*Valenzuela v. Kroger Co.*,
    No. CV 22-6382-DMG, 2023 WL 4418887 (C.D. Cal. Jun. 23,
    2023) .................................................................................................... 11

*Vaquero Energy, Inc. v. Herda*,
    No. 1:15-CV-0967-JLT, 2015 WL 5173535 (E.D. Cal. Sept. 3,
    2015) .................................................................................................... 15

**Statutes**

18 U.S.C. §1030 *et seq.* ........................................................................ 2, 14

Cal. Bus. & Prof. Code § 17200 *et seq* ............................................... *passim*

Cal. Civ. Code §§1798.120, 1798.125 ............................................... 17, 19

Cal. Penal Code §§ 484, 496 ............................................................. *passim*

Cal. Penal Code § 630 *et seq* ................................................................... 2

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 1

PLAINTIFF'S OPPOSITION TO DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendants—TikTok, Inc. and ByteDance, Inc.—have designed and deployed a mass surveillance system that reaches across "hundreds if not thousands of websites" to surreptitiously intercept and collect the private data of Americans. Defendants take private data from even those who have never downloaded the TikTok App and would have no reason to suspect that their private and personally identifiable data is taken by Defendants, whose data collection practices, including the sharing of data with the Chinese Communist Party ("CCP"), have been flagged as a national security threat by the U.S. government. Complaint, Dkt. 1 ("Compl.") at ¶¶21-24, 26.

The allegations demonstrating Defendants' impropriety are well-pleaded, and Defendants cannot escape liability for their unlawful practices by shifting blame to the websites that installed the TikTok SDK, and by distorting fact and law.

***Invasion of Privacy and Intrusion upon Seclusion***: Plaintiff has adequately pleaded a reasonable expectation of privacy as to her private data. Defendants' assertion that the data taken through the TikTok SDK is not "particularly sensitive information" ignores allegations that the intercepted data includes User IDs, phone numbers, email addresses, IP addresses, search terms, and a history of all websites visited. Compl. ¶¶26, 35. The Ninth Circuit recognizes that the expectation-of-privacy inquiry focuses not only on the **nature** of the data collected but also on the **method** and **amount** of collection. *See In re Facebook, Inc. Internet Tracking Litig.* ("*FB Tracking*"), 956 F.3d 589, 602-03 (9th Cir. 2020). Here, Plaintiff alleges surreptitious method of collection by Defendants, including by circumventing browser security settings. Compl. ¶38. Plaintiff further alleges "an enormous amount of private data" collected from "millions of Americans" who visited "hundreds if not thousands of [affected] websites" that Defendants aggregate to "assemble a comprehensive profile of these non-TikTok users." *Id.* ¶¶1, 39-42, 80. Defendants seek to evade responsibility by relying on the privacy policies of Hulu, Etsy, and Build-a-Bear to

1

argue that they have obtained consent for their practices. Yet none of these policies even mention Defendants specifically and fail to "explicitly notify" Plaintiff of Defendants' practices at issue. *See Brown v. Google LLC* ("*Brown SJ*"), No. 4:20-cv-3664-YGR, 2023 WL 5029899, at *7 (N.D. Cal. Aug. 7, 2023).

      *Violation of the California Invasion of Privacy Act ("CIPA")*: Defendants incorrectly argue that Plaintiff has not alleged (i) an act of interception (for Section 631) or (ii) the use of a recording device to record confidential communications (for Section 632). In fact, she has alleged both. First, Plaintiff alleges that Defendants intentionally use the TikTok SDK to read, learn, eavesdrop, record, or use electronic communications "while these electronic communications were and are in transit." Compl. ¶98; s*ee Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019). Second, by Defendants' own admission, the TikTok SDK is a "piece of code" that Defendants developed to collect data. That piece of code constitutes a "recording device" under Section 632 because it was intentionally designed to, and serves no other purpose than to, collect data. *People v. Gibbons*, 215 Cal. App. 3d 1204, 1208 (Cal App. 4th Dist. 1989) (CIPA's "prohibition is based on the purpose for which the device or instrument is used"). Finally, for the same reasons that Plaintiff has a reasonable expectation of privacy in her personal data, that data constitutes "confidential communications" under Section 632.

      *Violation of the Computer Fraud and Abuse Act ("CFAA")*: Plaintiff adequately alleges that Defendants accessed her computer via the cookies placed on it by the TikTok SDK. Compl. ¶34. Plaintiff also alleges two different types of harm cognizable under the CFAA, including a "threat to public health and safety" posed by Defendants' data collection that "threaten[s] to allow the [CCP] access to Americans' personal and proprietary information." Compl. ¶¶22, 109.

      *Statutory Larceny and Conversion*: Defendants are wrong as a matter of law to assert that Plaintiff does not have a property interest in her private data. *See, e.g.*,

*Calhoun v. Google LLC*, 526 F.Supp.3d 605, 635 (N.D. Cal. 2021) (collecting cases recognizing property interest in private data).

***Violation of California's Unfair Competition Law ("UCL")***: Each of the foregoing violations trigger liability under the UCL. Plaintiff has standing to pursue relief under the UCL because she has a property interest in her data and Defendants' conduct has deprived her of that property interest and has also resulted in the diminution of the value of her data. Compl. ¶¶58-61, 65-69.

## II.    FACTUAL BACKGROUND

TikTok operates a popular social-media application (the "TikTok App"), with over 100 million users in the United States alone. Compl. ¶2. The TikTok App's growth has been at the expense of user privacy, and TikTok has paid out nearly $100 million to settle allegations relating to their privacy violations. *Id.* at ¶¶20-21. Defendants' data collection through the TikTok App also presents national security risks. *Id.* at ¶4, 22-23. The TikTok App collects private data from TikTok users and transmits it to China, where companies have a legal obligation to assist the CCP with information gathering. *Id.* at ¶3. Consequently, the United States has banned the TikTok App on devices used by federal employees, Montana has banned the App outright, and Congress is considering a nationwide ban. *Id.* at ¶¶22-24.

Defendants' campaign to collect private data on unsuspecting Americans has expanded to *non*-TikTok users. *Id.* at ¶5. The TikTok SDK is an insidious "piece of code" developed by Defendants and marketed to websites as a way to deliver more effective targeted ads. *Id.* at ¶32.[1] But Defendants also use the TikTok SDK to illicitly

---

[1] While Defendants quibble with Plaintiff's use of the term "TikTok SDK," Mot. 3, n.2, even though that term has been used by TikTok to refer to the software at issue, they do not contest Plaintiff's description of this software as alleged in the Complaint (e.g., Paragraph 5 explains that the "TikTok software owned by Defendants" is installed on websites and "secretly intercepts and collects their private data and sends it to Defendants").

harvest a wide variety of private data from website visitors, without their consent, for Defendants' own benefit. Defendants collect private data such as the webpages visited, search queries, User IDs, phone numbers, email addresses, IP addresses, and user agent information. *Id.* ¶¶26, 33, 36.

Here's how it works: When you visit a website with the TikTok SDK installed, two cookies are downloaded onto your computer: (1) a "first-party" cookie that transmits information only to the website; and (2) a "third-party" cookie that transmits information directly to Defendants. *Id.* ¶33. Even if you configure your browser to block third-party cookies to prevent third-party tracking, "Defendants circumvent those settings to obtain Private Data anyway." *Id.* at ¶38. The TikTok SDK does so by "causing the website to share the first-party cookie with Defendants, in effect transmuting a first-party cookie into a third-party cookie[.]" *Id.*

Defendants utilize the private data stolen from unsuspecting website users for a practice known as "digital fingerprinting." Compl. ¶¶41-42. This practice involves combining private data from various sources to personally identify the website user and create a comprehensive online profile—in effect reconstructing the entirety of that website user's traits, behaviors, and preferences as expressed through every click, every video watched, and every word searched for. *Id.* ¶¶35, 39-42.

The TikTok SDK is installed on numerous popular websites visited by millions of U.S. residents. *Id.* ¶43. These websites have no visible affiliation with Defendants, and website users have not consented to their web activity being transmitted to Defendants. *Id.* ¶¶26, 39.

## III.   LEGAL STANDARD

At this stage, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Plaintiff needs only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

IV.  **ARGUMENT**

A.  **The Complaint Adequately Alleges Invasion of Privacy and Intrusion Upon Seclusion Claims.**

A violation of privacy rights under California law requires two elements: (1) that Defendants intentionally intruded upon an area where Plaintiff had a reasonable expectation of privacy; and (2) that the intrusion was highly offensive to a reasonable person. *FB Tracking*, 956 F.3d at 601. Defendants challenge the sufficiency of the privacy claim only as to the first element. Mot. 5. Because privacy claims involve factual questions best left to a jury, "[c]ourts are generally hesitant to decide claims of this nature at the pleading stage." *In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2022 WL 17869218, at *15 (N.D. Cal. Dec. 22, 2022).

1.  **Plaintiff Alleges a Reasonable Expectation of Privacy.**

In *FB Tracking*, the Ninth Circuit directly addressed when an online theft of private data violates a reasonable expectation of privacy. 956 F.3d at 601-02. Yet Defendants do not even mention this binding authority. The Ninth Circuit held that the applicable test is whether "a defendant gained unwanted access to data by electronic or other covert means, in violation of the law or social norms." *Id.* (citation omitted). The conduct at issue in *FB Tracking* was Facebook's use of cookies to collect browsing history and search terms from non-Facebook websites. *Id.* at 596. The Ninth Circuit concluded that this method of "surreptitious and unseen" collection violated the plaintiffs' reasonable expectation of privacy because websites utilizing the "Facebook plug-in" software downloaded cookies onto plaintiffs' devices which continued tracking them even when they were logged out of Facebook and would not reasonably expect to be sending data to Facebook. *Id.* at 603.

Here, Defendants' theft of private data is even more egregious. The class is not TikTok users who were merely logged out of the TikTok App at some time. This is a class of **_non-users_** who have "**_never been registered users of the TikTok app or held any TikTok accounts_**." Compl. ¶102 (all emphases added unless otherwise noted);

5

*see id.* at ¶5. Further, the TikTok SDK uses parallel first- and third-party cookies to bypass the "block third-party cookies" and "do not track" browser settings adopted by individual users. Compl. ¶¶33-38. This circumvention is analogous to the conduct alleged in *Calhoun*, which held that plaintiffs adequately alleged a violation of their reasonable expectation of privacy where Google collected data from Google Chrome users who had activated "do not sync" browser settings. 526 F.Supp.3d at 630.

Defendants claim that there is a "presumption that internet communications do not reasonably give rise to an expectation of privacy." Mot. 5. But *Brown (SJ)* recently clarified that "California courts have **never recognized a legal 'presumption' that internet communications are not confidential**." 2023 WL 5029899, at \*18 (explaining that certain cases, including *Revitch*, have made this statement but that the assertion is misplaced because those cases "refer[red] to *People v. Nakai*, 183 Cal.App.4th 499 (2010), which says nothing about a presumption").[2] Defendants point to *Hammerling v. Google LLC*, 615 F.Supp.3d 1069 (N.D. Cal. 2022), but it directly refutes their claim. *Hammerling* relied heavily on *FB Tracking* to hold that individuals have a reasonable expectation of privacy in Internet communications where the data collection exceeds "common-sense expectations." *Id.* at 1088-89. On this basis, the *Hammerling* court found that the plaintiffs **had** successfully alleged a reasonable expectation of privacy (even though the complaint was ultimately dismissed on other grounds). *Id.* at 1089.

Nor do the other cases cited by Defendants support their argument. Both *Nakai*, 183 Cal.App.4th 499, and *Revitch*, 2019 WL 5485330, pre-date *FB Tracking* and

---

[2] The *Brown* court rejected this supposed "presumption" in the context of a CIPA Section 632 claim. The analysis from *Brown* is nonetheless relevant here because a communication qualifies as confidential under Section 632 if a party to that conversation has an objectively reasonable expectation of privacy in that conversation, i.e., that "the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002).

involved a narrow set of data collection limited to a single set of chat dialogues or browsing activity on a single retail website. The conduct at issue in *Nakai* and *Revitch* is not comparable to Defendants' assembling "comprehensive profiles" of non-TikTok users from its massive, indiscriminate, and surreptitious data collection—all without the individual's consent and, in certain circumstances, in deliberate circumvention of browser privacy settings. *See* Compl. ¶¶38-39; *Brown (SJ)*, 2023 WL 5029899, at *20.

Defendants also argue that Plaintiff's allegations are insufficient because the data intercepted does not constitute "particularly sensitive information." Mot. 6. This defense-friendly spin on the allegations is false: Plaintiff alleges the theft of browsing history, search queries, user IDs, phone numbers, email addresses, IP addresses, and device information. *Id.* ¶¶26, 33, 36. The Ninth Circuit has found such categories of data to be sensitive. *See FB Tracking*, 956 F.3d at 605 (search terms are sensitive because they "could divulge a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform"). Further, such data not only is sensitive on its own but also can be used to derive additional sensitive and personally identifiable information, including what medical conditions you searched for, whether you shopped for Plan B emergency contraception, whether you searched for the location of an addiction treatment facility, which videos you watched, and whether you have young children. *Id.* ¶¶5, 40, 75. Plaintiff also alleges that Defendants can use the intercepted data to compile digital dossiers on individual users through "digital fingerprinting." *Id.* ¶¶41-42. These allegations mirror those held sufficient in *FB Tracking*. *See* 956 F.3d at 604 ("allegations that Facebook allegedly compiled highly personalized profiles from sensitive browsing histories and habits prevent us from concluding that the Plaintiffs have no reasonable expectation of privacy").

Moreover, Plaintiff need not allege the exact nature of the sensitive data stolen to survive dismissal. In *FB Tracking*, Facebook argued that the plaintiffs' allegations

7

were insufficient because they "need to identify specific, sensitive information that Facebook collected, and that their more general allegation that Facebook acquired 'an enormous amount of individualized data' is insufficient." *Id.* at 603. The Ninth Circuit disagreed, holding that courts must consider not only the ***nature*** of the data, but also the ***method*** and ***amount*** of collection. *Id.* The court found that the plaintiffs' allegations were sufficient because they alleged "surreptitious and unseen" collection by Facebook through non-Facebook websites. *Id.* The same conclusion follows here, where Plaintiff alleges that "an enormous amount of private data" is collected surreptitiously by Defendants from "millions of Americans" who visited "hundreds if not thousands of [affected] websites" that is aggregated to "assemble a comprehensive profile of these non-TikTok users." *Id.* ¶¶1, 39-42, 80; *accord Calhoun*, 526 F.Supp.3d at 630 (plaintiffs adequately alleged violation of reasonable expectation of privacy based on amount, sensitivity, and nature of data collected); *Brown v. Google LLC*, 525 F.Supp.3d 1049, 1076-77 (N.D. Cal. 2021) (same).

### 2. Defendants' Attempt to Benefit from the Disclosures of Non-TikTok Websites Fails.

Defendants attempt to rely on the privacy policies of three websites visited by Plaintiff—Hulu, Etsy, and Build-a-Bear—to argue that she consented to Defendants' data collection and thus had no reasonable expectation of privacy. Mot. 7. In all but name, Defendants assert an affirmative defense based on consent, and they carry the burden to prove a plaintiff consented explicitly. *See Calhoun*, 526 F.Supp.3d at 620.

As a preliminary matter, Defendants cite one case for their consent defense. Mot. 6. That case, *Deering v. CenturyTel, Inc.*, No. CV-10-63-BLG-RFC, 2011 WL 1842859 (D. Mont. May 16, 2011), is an unreported district court case applying Montana law which, in any event, involved more detailed disclosures regarding the data collected and with whom it was shared. *Id.* at *2.

Even if a consent defense was available to Defendants under California law, it would fail because the Hulu, Etsy, and Build-a-Bear privacy policies do not

8

"explicitly" warn users about TikTok's specific practice of intercepting and collecting their personal data. *See Brown (SJ)*, 2023 WL 5029899, at *1 ("Because Google never explicitly told users that it [collects their data while they were browsing in private mode], the Court cannot find as a matter of law that users explicitly consented to the at-issue data collection."); *Calhoun*, 526 F.Supp.3d at 620 ("In order for consent to be actual, the disclosures must 'explicitly notify' users of the practice at issue."); *Campbell v. Facebook, Inc*., 77 F.Supp.3d 836, 847-48 (N.D. Cal. 2014) (for a finding of consent, the disclosures must have given users notice of the "specific practice" at issue). If any reasonable user "could plausibly have interpreted the contract language as ***not*** disclosing . . . particular conduct," then dismissal based on consent is not appropriate. *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F.Supp.3d 767, 794 (N.D. Cal. 2019) (emphasis in original).

Here, the websites' privacy policies generally mention third-party data collection, but none of them specifically reference Defendants as third parties with whom data is shared. In fact, each website's policy contains an addendum titled "About Ads," "Cookies & Similar Technologies Policy," or "Cookie Declaration" that enumerates the third parties that use cookies to collect information through their websites. *See* Defs.' Request for Judicial Notice ("RJN"), Dkts. 25-6 (Hulu), 25-8 (Etsy), 25-10 (Build-a-Bear). Despite disclosing over a dozen such third parties ranging from Google and Facebook to Microsoft, none of these disclosures mentions TikTok or ByteDance. *Id.*; *see* Pltf.'s Resp. to RJN (Dkt. 36). As such, the disclosures are inadequate to establish Plaintiff's explicit consent to disclose data to Defendants.

Further, there is no consent (or, at a minimum, there is a disputed question of fact as to any such consent) when additional language in the privacy policy "could suggest to a reasonable user that" she could opt out of third-party data collection. *Calhoun*, 526 F.Supp.3d at 621. The Etsy, Hulu, and Build-a-Bear privacy policies are rife with such language:

- ▪ Etsy's Cookie Policy states that users can "opt out of third party marketing

9

cookies and similar technologies" through the website's privacy settings, and also "change your web browser's settings to reflect your cookie preferences." Dkt. 36-2.

▪ Hulu's privacy policy states that it offers "opt-out options for third-party interest-based or online behavioral advertising on websites," Dkt. 25-6.

▪ Build-a-Bear's privacy policy states that the website is "bound by contract to refrain from using the Personal Information we collect from you for any purpose other than providing the service to Build-A-Bear Workshop." Dkt. 25-10.

Defendants' consent defense relies on contractual language that is plainly insufficient to put any reasonable person on notice of the staggering amount of private data collected through the TikTok SDK.

## B.    The CIPA Claims Survive Dismissal.

Defendants argue that Plaintiff's CIPA claims fail (1) under Section 631 because there was no "interception," (2) under Section 632 because there were no "confidential communications," and (3) under Section 632 because there was no recording device. Defendants' arguments lack merit.

### 1.    Section 631: Plaintiff Alleges "Interception" In Transit.

Plaintiff alleges that Defendants used the TikTok SDK "to read, attempt to read, learn, attempt to learn, eavesdrop, record, and/or use electronic communications . . . *while these electronic communications were and are in transit*." Compl. ¶98. Plaintiff also alleges in detail how Defendants use the TikTok SDK to intercept such communications. *Id.* at ¶¶32-39.

Ignoring these allegations, Defendants argue that Plaintiff fails to demonstrate "interception," claiming that TikTok SDK is merely a "tool," and "providing a tool is not an interception in transit." Mot. 10. This argument ignores that the tool at issue was built and marketed *by Defendants* and that the data at issue is being taken *by Defendants* while "in transit." Comp. ¶98. Indeed, courts have upheld similar Section 631 allegations. In *Revitch*, 2019 WL 5485330, Moosejaw embedded software on its

10

webpages that allowed third-party NaviStone to scan a user's computer. The court upheld claims against both defendants, finding that the plaintiff "adequately alleges that NaviStone acted as a third party that eavesdropped on his communications with Moosejaw because the code embedded into the Moosejaw.com pages functioned as a wiretap that redirected his communications to NaviStone while he browsed the site." *Id*. at \*1; *Saleh v. Nike, Inc*., 562 F.Supp.3d 503, 519-21 (C.D. Cal. 2021) (upholding Section 631 claims where Nike embedded software on its webpages that allowed third-party Fullstory to capture and record user data).

*Valenzuela v. Kroger Co*., No. CV 22-6382-DMG (AGRx), 2023 WL 4418887 (C.D. Cal. Jun. 23, 2023), does not help Defendants. There, Judge Gee dismissed a Section 631 claim against Kroger, noting that this section "penalizes recording by a *third party*" and that Valenzuela had not identified any third party that eavesdropped on her communications with Kroger. *Id.* at \*3. Here, by contrast, Defendants themselves are the third party that eavesdrops on confidential communications between Plaintiff and the websites that have installed the TikTok SDK.

Furthermore, Defendants' arguments that Plaintiff has failed to plead "willfulness," Mot. 10, are unavailing. Plaintiff alleges that "Defendants ***knowingly and intentionally used*** and continue to use the TikTok SDK and receiving servers" to intercept communications. Compl. ¶98. The willfulness of Defendants' conduct is also evident from the fact that the TikTok SDK has no other function besides intercepting communications. *See id.* at ¶¶33-36.

### 2.    Section 632: Plaintiff Alleges "Confidential Communications."

Plaintiff has alleged that she and other class members "have an ***objectively reasonable expectation of privacy*** that their private browsing communications are not being intercepted, collected or disseminated by Defendants—particularly given that Plaintiff and Class and Subclass members ***had never been registered users of the TikTok app or held any TikTok accounts***." Compl. ¶102.

11

The Court should not decide this issue in favor of Defendants at the pleading stage because "whether a communication is 'confidential' turns on 'numerous specific factors' and is 'generally a question of fact.'" *Adler v. Community.com, Inc*., No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435, at *5 (C.D. Cal. Aug. 2, 2021) (citation omitted); *see In re Facebook*, 402 F.Supp.3d at 797 (collecting cases for proposition that "[u]nder California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is"). Even if the Court were to decide this issue now, as demonstrated above, Defendants violated Plaintiff's objectively reasonable expectation of privacy when they surreptitiously collected vast amounts of sensitive data from unsuspecting users. *See supra* at Sec. IV.A.1.

Defendants' cases are inapposite. In *In re Meta Pixel*, 2022 WL 17869218, the court noted that the relevant question to determine the confidentiality of a communication "is whether plaintiffs have shown that there is something unique about these particular internet communications." *Id*. at *14. The court held that healthcare information met that standard but did not limit the scope of "confidential communication" to only healthcare information. Likewise, the nature and amount of data collected here is incomparable to mere "inquir[ies] about items of clothing on a [single] retail website" as in *Revitch*. 2019 WL 5485330, at *3. Unlike the limited data at issue in *Revitch*, the data collected here includes "search terms and a history of all websites visited within Defendants' TikTok SDK network of websites," which "allows Defendants to track the web activity of an individual and build a digital dossier." *Id*. ¶35. This data-harvesting campaign was all the more egregious because of the insidious method of collection: Defendants collected data from individuals who never had a TikTok account, using software embedded into websites that had no visible affiliation with TikTok, and bypassed individuals' wishes to "block third-party cookies" by circumventing such settings on their browsers. The data collection here is more akin to that in *Brown*, where Google "require[d] website developers to embed

Google's code onto their websites," did "not tell website developers that it tracks their visitors even when they are in private browsing mode," and "t[ook] users' private browsing history and associate[d] it with their preexisting user profiles." 2023 WL 5029899, at *2. The Section 632 claim in *Brown* survived not only 12(b)(6) dismissal, *see* 525 F.Supp.3d at 1074, but also summary judgment, *see* 2023 WL 5029899, at *16-18.

Finally, Defendants' assertion that there is a "general presumption against confidentiality of online communications" (Mot. 10) is incorrect and ignores *Brown*'s recent clarification that no such presumption exists. *See supra* at Sec. IV.A.1.

### 3. Section 632: Plaintiff Alleges that the TikTok SDK Constitutes a "Recording Device."

Plaintiff alleges that Defendants "used and continue to use the TikTok SDK and receiving servers (where the Private Data was and is saved and recorded), ***both of which are recording devices under CIPA,*** to read, attempt to read, learn, attempt to learn, eavesdrop, record, and/or use electronic communications." Compl. ¶98. The Complaint thus directly refutes Defendants' assertion that "there is no allegation that Defendants used a recording device." Mot. 11. Further, in evaluating the allegations, the Court should construe "recording device" liberally, as CIPA makes "no reference . . . to a specific device or instrument," but rather prohibits any device "***based on the purpose*** for which the device or instrument is used." *Gibbons*, 215 Cal.App.3d at 1208. Here, regardless of the technical structure of the TikTok SDK, the Complaint alleges that the purpose of the TikTok SDK is to record electronic communications. Compl. ¶¶26, 33-36, 39.

Defendants' last-ditch effort to appeal to legislative history, Mot. 11, is of no import at the pleading stage where the facts alleged are accepted as true. As discussed above, Plaintiff has alleged Defendants' "use" of "the TikTok SDK and receiving servers . . . , both of which are recording devices under CIPA." *Id.* ¶98. Defendants'

argument that it is "not enough" to "receive information as a result of such a device" ignores that Defendants themselves use the TikTok SDK to collect data.

### C.   The Complaint Adequately Alleges a CFAA Claim.

#### 1.   Plaintiff Alleges Defendants' Trespass onto Plaintiff's Computer.

Contrary to Defendants' claim that Plaintiff has not identified conduct "akin to breaking and entering into her computer system," Mot. 12, the Complaint specifically alleges that "[w]hen a user visits a website that has the TikTok SDK installed, two cookies are downloaded ***onto the user's hard drive***: a 'first-party' cookie . . . and a 'third-party' cookie that is accessible directly by Defendants," Compl. ¶33. "The 'third-party' cookies are downloaded ***onto a user's computing device*** from each website where the TikTok SDK is installed." *Id.* at ¶34. In short, the access alleged is Defendants' placement of cookies on the Plaintiff's *computer*. Defendants' own case confirms that this pleading is sufficient to allege access in the CFAA context. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1195 n.13, 1196 (9th Cir. 2022) ("access" in CFAA context refers to "the act of entering a computer 'system itself' or a particular 'part of a computer system,' such as files, folders, or databases").

Further, Plaintiff alleges that Defendants placed cookies on her computer ***without her authorization***. *See, e.g.*, Compl. ¶¶38-39, 42-43. Courts in this Circuit have long recognized that an allegation of unauthorized placement of cookies on plaintiffs' computers is sufficient to state a CFAA claim. *See In re Toys R Us, Inc., Priv. Litig.*, No. 00-CV-2746, 2001 WL 34517252, at *9 (N.D. Cal. Oct. 9, 2001); *Mortensen v. Bresnan Commc'n, L.L.C.*, No. CV 10-13-BLG-RFC, 2010 WL 5140454, at *6, 8 (D. Mont. Dec. 13, 2010).

#### 2.   Plaintiff Alleges Harm Cognizable Under the CFAA.

Defendants misunderstand or misconstrue the Complaint to claim that Plaintiff alleges only harm to the value of her personal data. To the contrary, Plaintiff alleges a cognizable harm under the "threat to public health or safety" prong. *See* 18 U.S.C.

14

§1030(c)(4)(A)(i)(IV). Indeed, the Complaint alleges in detail recent government efforts to curb the threat posed by TikTok, including a Presidential executive order, proposed and signed congressional bills, and a state ban. Compl. ¶¶4, 22-24.

The reason for this governmental concern is clear: As articulated in the Presidential executive order, TikTok's surreptitious collection of personal data "threatens to allow the Chinese Communist Party access to Americans' personal and proprietary information—potentially allowing China to track the locations of Federal employees and contractors, build dossiers of personal information for blackmail, and conduct corporate espionage." *Id.* at ¶22. There is no greater "threat to public health or safety" than a national security concern addressed by the office of the President. *See Vaquero Energy, Inc. v. Herda*, No. 1:15-CV-0967-JLT, 2015 WL 5173535, at *8 (E.D. Cal. Sept. 3, 2015) (recognizing harm under CFAA where Defendants' conduct adversely affected plaintiff's "systems and computers, includ[ing] personally identifiable information and financial data of both personnel and customers").

In addition, Plaintiff has separately alleged that she has suffered "out-of-pocket costs" due to Defendants' conduct, Compl. ¶60, and that "Defendants increased the cost to Plaintiff and Class and Subclass members of mitigating the interception and collection of their Private Data by failing to notify them that Defendants were intercepting and collecting [their] Private Data," *id.* at ¶64. These costs include paying for "McAfee security software to protect her online privacy." *Id.* at ¶79. In short, Plaintiff incurred costs in attempting to keep her data private and will incur additional costs to do so. These costs are a "loss" recognized under Subsection (c)(4)(A)(i)(I).

### D. The Complaint Adequately Alleges Statutory Larceny and Conversion Claims.

Defendants' sole argument for dismissal of the statutory larceny and conversion counts is that Plaintiff has no property right in her "online activity data." Mot. 14. This argument is factually and legally meritless.

First, as a factual matter, the Complaint alleges that Defendants stole more than

15

just "online activity data": Defendants have developed software that "illicitly harvest[s] private and personally-identifiable data, such as the webpages visited by users, search queries, User IDs, User Agent, phone numbers, email addresses, IP addresses, and more." Compl. ¶26. Defendants track, via third-party cookies, "individual's unique ID number, IP address, browser screen resolution, search terms and a history of all websites visited within Defendants' TikTok SDK network of websites." Compl. ¶¶34-35.

Second, as a legal matter, Defendants' assertion that Plaintiff enjoys no property right in her extensive private data is outdated and incorrect. Defendants principally cite *Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010 (N.D. Cal. 2012), to support their argument, but they overlook more recent authorities expressly recognizing personal information as property. *Calhoun*, 526 F.Supp.3d 605, written by Judge Koh, who also authored *Low*, demonstrates the judiciary's recognition of the changed landscape concerning the nature and value of personal information.[3] There, users of Google's Chrome browser who chose not to sync their browsers with their Google accounts sued Google for collecting their personal information, notwithstanding Google's representation that Chrome will not send users' personal information to Google without the Sync feature turned on. *Id.* at 614-15. Google moved to dismiss the Plaintiffs' numerous claims, including their statutory larceny claim. Judge Koh denied Google's motion, holding that Plaintiffs "adequately alleged that they were deprived of a property interest" for purposes of a statutory larceny claim and noting the "growing trend across courts … to recognize the lost property value of personal information." *Id.* at 635 (collecting cases); *see Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-cv-0150 (DLF), 2020 WL 1536350, at *16 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021) (applying California law and holding that

---

[3] In *Calhoun*, Judge Koh chastised Google for doing what Defendants do here: relying on *Low* to the exclusion of "this Court's other rulings, both before and after *Low*." 526 F.Supp.3d at 635.

1  electronically stored information was "property" for purposes of statutory larceny
2  claim).

3        Recent changes to California statutory law confirm personal information has
4  property value. The California Consumer Privacy Act ("CCPA"), which was enacted
5  in 2018 and took effect on January 1, 2020, "permits businesses to purchase consumer
6  information from consumers themselves … and permits businesses to assess and
7  appraise—i.e., to place a monetary value on—consumer data." Compl. ¶57 (citing
8  Cal. Civ. Code §1798.125). The CCPA further provides consumers with the right to
9  direct businesses to refrain from selling their personal information to third parties.
10 Cal. Civ. Code §§1798.120(a), 1798.125(a). In short, personal data now encompasses
11 "the legal right to exclude others," which is "[a]n essential element of individual
12 property." *Blaustein v. Burton*, 9 Cal.App.3d 161, 177 (Cal. Ct. App. 1970).

13       Ignoring this caselaw and legislation, Defendants cite three additional
14 inapposite cases. *United States v. Abouammo*, No. 19-cr-00621-EMC-1, 2022 WL
15 17584238 (N.D. Cal. Dec. 12, 2022), upheld a criminal conviction of a former Twitter
16 employee who misused a Twitter user's confidential account information. *Id.* at *12.
17 The case has no bearing on a global corporation's surreptitious interception and
18 collection of data from millions of consumers. If anything, the *Abouammo* court found
19 that "Twitter's confidential user account information is 'property' under California
20 law." *Id.* at *11. Defendants likewise fail to explain the relevance of *G.S. Rasmussen*
21 *& Assocs. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896 (9th Cir. 1992), which involved
22 a certification scheme for alterations to airplanes, that the Ninth Circuit recognized as
23 a property right. *Id.* at 903. Finally, Defendants' citation to *Doe I v. Sutter Health*,
24 No. 34-2019-00258072-CU-BT-GDS, 2020 WL 1331948 (Cal. Super. Ct. Jan. 29,
25 2020), is misleading. Defendants summarize the court's recitation of a party's
26 position, not an actual holding from the court. Mot. 15. While the *Doe I* court
27 dismissed the plaintiffs' conversion claim, it observed that even intangible property
28 can undergird a conversion claim so long as "the property and the owner's rights of

17

1  possession and exclusive use are sufficiently definite and certain." *Id.* at *14.

2  Defendants' cases are not persuasive against the weight of authorities

3  reaffirming that Internet users enjoy a property interest in their personal information.

4  *E.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F.Supp.3d 447,

5  462 (D. Md. 2020) ("For years, we have witnessed China's voracious appetite for the

6  personal data of Americans, including the theft of personnel records from the U.S.

7  Office of Personnel Management [and other data breaches]. ***This data has economic***

8  ***value***" (quoting statement of former Attorney General William Barr)); *CTC Real*

9  *Estate Servs. v. Lepe*, 140 Cal. App. 4th 856, 860 (2006) ("One's 'personal identifying

10  information' can be the object of theft. … A person's identifying information is a

11  valuable asset." (citation omitted)).

12  **E.    The Complaint Adequately Alleges a UCL Claim.**

13  "[A] private [UCL] plaintiff must be able to show economic injury caused by

14  unfair competition," meaning "lost money or property." *Cappello v. Walmart Inc.*,

15  394 F.Supp.3d 1015, 1019 (N.D. Cal. 2019) (citing Cal. Bus. & Prof. Code §17204).

16  Plaintiff here has lost money or property in two ways, each of which is sufficient to

17  establish UCL standing.

18  **1.    Plaintiff alleges loss of property.**

19  First, Plaintiff has standing under the UCL because she has a property interest

20  in her private data, and Defendants' conduct has deprived her of that property and

21  diminished its value. Compl. ¶65; *see id.* at ¶¶58-61, 65-69. Indeed, in *Calhoun*, the

22  court observed that "the Ninth Circuit and a number of district courts, including this

23  Court, have concluded that plaintiffs who suffered a loss of their personal information

24  suffered economic injury and had standing." 526 F.Supp.3d at 636; *see Cappello*, 394

25  F.Supp.3d at 1019 (plaintiffs can establish UCL standing by "hav[ing] a present or

26  future property interest diminished").

27  This caselaw is buttressed by recent changes to California law to strengthen

28  protection for consumers' data. As discussed above, the CCPA now provides

18

consumers with the right to direct businesses to refrain from selling their personal information to third parties. *See supra* at Sec. IV.D. In addition, voters passed the California Privacy Rights Act ("CPRA") in November 2020, with the stated purpose of "further protect[ing] consumers' rights, including the constitutional right of privacy." CPRA §3. The CPRA strengthens the data protections provided by the CCPA, explaining that "[c]onsumers should know who is collecting their personal information…, how it is being used, and to whom it is disclosed," and that "[c]onsumers should be able to control the use of their personal information." CPRA §3(A)(1)-(2). Recently, in *Brown (SJ)*, the court rejected Google's summary judgment motion against plaintiffs' UCL claim, holding that "plaintiffs have identified an unopposed property interest for at least a portion of the class period under the California Consumer Privacy Act." 2023 WL 5029899, at *21.

Defendants' cases are unpersuasive. First, both *Jackson v. Loews Hotels, Inc.*, No. ED CV 18-827-DMG (JCx), 2019 WL 6721637 (C.D. Cal. July 24, 2019), and *Gonzales v. Uber Techs., Inc.*, 305 F.Supp.3d 1078 (N.D. Cal. 2018), pre-date the CCPA's effective date and the passage of the CPRA. Second, *Katz-Lacobe v. Oracle Am., Inc.*, No. 22-cv-04792-RS, 2023 WL 2838118, (N.D. Cal. Apr. 6, 2023), misinterprets the elements of UCL standing as articulated in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011), and improperly attempts to override Ninth Circuit and California Supreme Court precedent with district court and lower state court caselaw.[4]

In *Kwikset*, the California Supreme Court confirmed that a plaintiff satisfies the

---

[4] *Katz-Lacobe* cites one Ninth Circuit case, *Pruchnicki v. Envision Healthcare Corp.*, 845 F.App'x 613 (9th Cir. 2021), for the proposition that misappropriation of personal information "does not establish compensable damages." 2023 WL 2838118, at *8. *Pruchnicki* expressly recognized, however, that Plaintiff's pleadings about misappropriated personal data "alleged sufficient injury-in-fact to support standing." 845 F.App'x at 614. What the pleadings did not establish was cognizable injury to establish compensable damages **under Nevada law**.

1  "loss of money or property" element of the UCL where he suffers "economic injury"
2  for Article III standing purposes. *Id.* at 322-23. Put differently, the definition of
3  "injury in fact" under the UCL is co-extensive with "economic injury" under Article
4  III. *See id.* at 324. And under Article III, even an "identifiable trifle" of economic
5  injury is sufficient to establish standing. *Id.*; *see Troyk v. Farmers Grp., Inc.*, 171
6  Cal.App.4th 1305, 1338, 1340 (Cal. Ct. App. 2009) ("The UCL requires only that the
7  plaintiff must once have had an ownership interest in the money or property acquired
8  by the defendant through unlawful means." (citation omitted)).

9      In *FB Tracking*, the Ninth Circuit held that misappropriation of personal data,
10  including plaintiffs' browsing histories, constitutes economic injury for Article III
11  standing purposes. 956 F.3d at 600. More specifically, *FB Tracking* held that plaintiffs
12  sufficiently alleged "that their browsing histories carry financial value," that they have
13  a right to disgorgement of Facebook's profits resulting from the misappropriation of
14  their data, and that plaintiffs thus adequately pleaded economic injury for standing
15  purposes. *Id.* at 600-01. Critically, the fact that plaintiffs did not "demonstrate that
16  they either planned to sell their data, or that their data was made less valuable through
17  Facebook's use" did not detract from the standing analysis. *Id.* at 599. Courts in the
18  Ninth Circuit have since repeatedly found that personal data has economic value. *See*
19  *Brown (SJ)*, 2023 WL 5029899, at *21; *Brown v. Google LLC,* No. 20-cv-03664-
20  LHK, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 1, 2022) (plaintiffs lost money when
21  Google took "valuable data" and "received *no* money in return" (emphasis in
22  original)); *Callahan v. PeopleConnect, Inc.*, No. 20-cv-09203-EMC, 2021 WL
23  5050079, at *19 (N.D. Cal. Nov. 1, 2021) (plaintiffs' personal information is
24  "intellectual property" for which they were not paid).

25      Here, just as in *FB Tracking*, *Brown*, and *Callahan*, Plaintiff pleaded that
26  Defendants misappropriated her personal data, Compl. ¶¶33-38, 75-80, that her stolen
27  data had economic value, *id.* at ¶¶44-55, and that she is entitled to disgorgement or
28  restitution damages for the value of that data, *id.* at ¶59.

20

PLAINTIFF'S OPPOSITION TO DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

### 2.   Plaintiff alleges loss of money through the diminution of the value of her data.

The Complaint details the existence of a "robust market" for personal data that "undergirds the tech economy." Compl. ¶¶45-46; *id.* at ¶50. It includes specific citations that quantify the value of personal data. *Id.* at ¶46 (value of single Internet user's data "varied from about $15 to more than $40"), ¶53 (in "private market[s] for Internet users' personal information," such information sells for "as little as $1" or "at an average price of $25"). The Complaint further alleges that Plaintiff's personal data has diminished in value due to Defendants' surreptitious collection of that data because Plaintiff can no longer bring her private data to market. *Id.* at ¶67. These allegations are sufficient to allege "loss of money."

Notably, Defendants do not dispute that personal data has value or that there are markets for such data. Defendants instead note that the Complaint does not allege that Plaintiff *personally* was aware of such markets or attempted to sell her data. But this Circuit does not hold plaintiffs to such standards for UCL standing. *See Brown*, 2021 WL 6064009, at *17 (allegations that there is "active market" for personal data and identification of platforms that will pay for browsing data held sufficient for UCL standing); *cf. Klein v. Facebook, Inc.*, 580 F.Supp.3d 743, 803-04 (N.D. Cal. 2022) (identifying examples of companies willing to pay users for personal information sufficient for antitrust injury).

Defendants' cases are distinguishable. First, *Pruchnicki*, 845 F.App'x 613, an unpublished memorandum disposition, deals not with Article III or UCL standing, but rather with the elements of compensable damages under Nevada law. *See supra* at Sec. IV.E.1, n.4. Second, the holdings in the two 2019 *Facebook* cases are in dispute given more recent authority recognizing the lost property value of personal information. *Brown*, 2021 WL 6064009, at *17; *Calhoun*, 526 F.Supp.3d at 636; *Marriott*, 440 F.Supp.3d at 461.

In any event, the *Facebook* cases are distinguishable because the plaintiffs there

21

pleaded no detail to support their allegation of economic injury. *See In re Facebook*, 402 F.Supp.3d 767, 784 (N.D. Cal. 2019); *Bass v. Facebook, Inc.*, 394 F.Supp.3d 1024, 1040 (N.D. Cal. 2019). In contrast, Plaintiff here has alleged in detail the robust market for personal data, the value of which is "well understood and generally accepted as a form of currency." Compl. ¶44. The Complaint even includes specific details about dollar amounts that the data could garner. Compl. ¶¶46, 50, 53.

## V.   CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss in its entirety. If the Court disagrees, Plaintiff requests leave to amend.

DATED:  September 1, 2023

Ekwan E. Rhow
Marc E. Masters
Christopher J. Lee
Bird, Marella, Boxer, Wolpert, Nessim,
Drooks, Lincenberg & Rhow, P.C.

Jonathan M. Rotter
Kara M. Wolke
Gregory B. Linkh
GLANCY PRONGAY & MURRAY, LLP

Kalpana Srinivasan
Steven Sklaver
Michael Gervais
Gloria Park
SUSMAN GODFREY L.L.P.

By:    */s/ Ekwan E. Rhow*
_____

Attorneys for Plaintiff Bernadine Griffith

PLAINTIFF'S OPPOSITION TO DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiff Bernadine Griffith certifies that this brief contains 6,985 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 1, 2023          By: _____*/s/ Ekwan E. Rhow*_____
                                          Ekwan E. Rhow
                                          Attorney for Plaintiff

PLAINTIFF'S OPPOSITION TO DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S MOTION TO
DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)