VICTOR JIH, State Bar No. 186515
Email: vjih@wsgr.com
SOPHIA M. MANCALL-BITEL, State Bar No. 337002
Email: smancallbitel@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329

ANTHONY J WEIBELL, State Bar No. 238850
Email: aweibell@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (866) 974-7329

*Attorneys for Defendants*
*TikTok Inc. and ByteDance Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| BERNADINE GRIFFITH,<br><br>Plaintiff,<br><br>v.<br><br>TIKTOK, INC., et al.,<br><br>Defendants. | Case No.: 5:23-cv-00964-SB-E<br><br>**DEFENDANTS TIKTOK INC. AND BYTEDANCE INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**<br><br>Judge: Hon. Stanley Blumenfeld, Jr.<br>Date: September 29, 2023<br>Time: 8:30 a.m.<br>Place: Courtroom 6C<br><br>Action Filed: May 26, 2023<br>Trial Date: None |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. THE COMPLAINT DOES NOT ALLEGE ANY FACTS TO STATE AN INTRUSION OR CONSTITUTIONAL PRIVACY CLAIM ........ 2

III. THE COMPLAINT DOES NOT STATE A CIPA CLAIM ........ 5

IV. THE COMPLAINT DOES NOT STATE A CFAA CLAIM ........ 8

V. THE COMPLAINT DOES NOT STATE A LARCENY OR CONVERSION CLAIM ........ 10

VI. PLAINTIFF DOES NOT HAVE UCL STANDING ........ 13

VII. CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ..... 14

*Broidy Capital Mgmt. LLC v. Muzin*,
No. 19-cv-00150-DLF, 2020 WL 1536350 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F. 4th 789 (D.C. Cir. 2021) ..... 11

*Brown v. Google LLC*,
No. 20-cv-03664-YGR, 2023 WL 5029899 (N.D. Cal. Aug. 7, 2023) ..... 3, 4, 5, 14

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ..... 3, 4, 5, 13

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ..... 5

*CTC Real Estate Servs. v. Lepe*,
140 Cal. App. 4th 856 (2006) ..... 11

*Doe I v. Sutter Health*,
No. 34-2019-00258072-CU-BT-GDS, 2020 WL 1331948 (Cal. Super. Ct. Jan. 29, 2020) ..... 12, 13

*Federated Univ. Police Officers' Ass'n v. Regents of the Univ. of Cal.*,
No. SACV 15-00137-JLS, 2015 WL 13273308 (C.D. Cal. July 29, 2015) ..... 7

*G.S. Rasmussen Assocs., Inc. v. Kalitta Flying Serv., Inc.*,
958 F.2d 896 (9th Cir. 1992) ..... 12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022), *appeal filed*, No. 22-17024 (9th Cir. Dec. 30, 2022) ..... 5

*Hazel v. Prudential Fin., Inc.*,
No. 22-cv-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) ..... 14

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ..... 5

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ..... 14

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ..... 2, 3, 4, 5, 13

*In re Hulu Privacy Litig.*,
No. C 11-03764 LB, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) .......... 3

*In re Marriott Int'l, Inc.*,
440 F. Supp. 3d 447 (D. Md. 2020) .......... 11

*In re Meta Pixel Healthcare Litig.*,
No. 22-cv-03580-WHO, 2022 WL 17869218 (N.D. Cal. Dec. 22, 2022) .......... 2, 3

*In re Meta Pixel Healthcare Litig.*,
No. 22-cv-03580-WHO, 2023 WL 5837443 (N.D. Cal. Sept. 7, 2023) .......... 3, 14

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) .......... 14

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 6

*Lopez v. Apple*,
519 F. Supp. 2d 672 (N.D. Cal. 2021) .......... 7

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 14

*MGM Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) .......... 7

*Revitch v. New Moosejaw, LLC*,
No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .......... 6

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .......... 6

*Tavernetti v. Super. Ct.*,
22 Cal. 3d 187 (1978) .......... 6

*Tomek v. Apple Inc.*,
636 F. App'x 712 (9th Cir. 2016) .......... 13

*United States v. Abouammo*,
No. 19-cr-00621-EMC-1, 2022 WL 17584238 (N.D. Cal. Dec. 12, 2022) .......... 12

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 2

*United States v. Kriesel*,
508 F.3d 941 (9th Cir. 2007) .......... 2

*Valenzuela v. Kroger Co.*,
No. CV 22-6382-DMG, 2023 WL 4418887 (C.D. Cal. June 23, 2023) ..... 7

*Vaquero Energy, Inc. v. Herda*,
No. 1:15-cv-0967-JLT, 2015 WL 5173535 (E.D. Cal. Sept. 3, 2015) ..... 9, 10

*Vecchio v. Amazon.com, Inc.*,
No. C11-366 RSL, 2012 WL 1997697 (W.D. Wash. June 1, 2012) ..... 8, 9

**STATUTES**

18 U.S.C. § 1030, *et seq* ..... 8

Cal. Penal Code § 630, *et seq* ..... 6, 7

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

To state a privacy-based claim, it is not enough to say this defendant "collected data," "collected private data," or even "collected a lot of data." This is because, as Defendants' Motion explained, data-sharing per se is not nefarious—it is what makes the Internet work. Whether data collection gives rise to a privacy claim depends on the specifics: whether the data collected was particularly sensitive, for instance, or whether the defendant had already agreed not to collect that data.

With respect to the data, the Complaint (and the Opposition) repeat again and again the conclusory assertion that TikTok received Plaintiff's "private data," but that phrase is so vague as to be nearly meaningless. Pressed for specifics, the Opposition points to Plaintiff's <u>browsing and search history</u> on two retail websites and one streaming platform. But she has not identified anything sensitive or unique about that data that might support a privacy claim. Nor does she address the argument that her browsing and search history does not belong exclusively to her, and thus cannot be the basis for any property right or claim of actual loss.

As for wrongful conduct, Plaintiff alleges no facts suggesting that TikTok has done anything other than provide a piece of code that third parties (websites) can use to learn how their users interact with their websites. Plaintiff cannot claim that TikTok intrudes or violates privacy by providing that tool when nothing is disclosed unless a website owner uses it and decides what data to collect. The CIPA claim similarly fails because TikTok takes no action to intercept any in-transit data and, even if it allegedly provides a recording device, it is not the one using the device. Plaintiff says the CFAA claim is based on the placement of cookies on her computer, but she fails to allege how that damaged her computer or posed a public threat.

While Plaintiff's Complaint is chock-full of conclusory assertions, hasty generalizations, and hyped-up rhetoric, it lacks the specific facts necessary for her to state valid claims.

## II. THE COMPLAINT DOES NOT ALLEGE ANY FACTS TO STATE AN INTRUSION OR CONSTITUTIONAL PRIVACY CLAIM

Plaintiff fails to plead a reasonable expectation of privacy because she never specifies anything sensitive or unique about the data TikTok allegedly collected from her visits to the Etsy, Build-a-Bear and Hulu websites. That failure defeats the intrusion and constitutional claims.

As an initial matter, Plaintiff improperly conflates the terms "private data," *see, e.g.*, Opp. at 5, and "personal data," *id.* at 9. "Private data" refers to data that is sensitive or confidential—such as stored DNA that indicates a person's "propensity for particular disease, their race and gender characteristics, and perhaps even their propensity for certain conduct." *United States v. Kriesel*, 508 F.3d 941, 948 (9th Cir. 2007). "Personal data," on the other hand, can refer to data that is entirely mundane—it includes IP addresses, email addresses, phone numbers, and even URL and browsing histories that may not reveal anything private. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 605-06 (9th Cir. 2020) (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)). They are not synonymous, and the collection of personal data does not mean it was private.

In her Opposition, Plaintiff never explains how any browsing and search history on the Etsy, Build-a-Bear and Hulu websites revealed anything sensitive or confidential about her. She does not dispute that under *In re Meta Pixel*, her communications with those websites do not fall in the category of "confidential communications" that might sustain a privacy claim. *See* Opp. at 12 (quoting *In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2022 WL 17869218, at *14

(N.D. Cal. Dec. 22, 2022)). She does not identify anything about the way the URLs on these websites function that would disclose anything sensitive or confidential. And with respect to Hulu, Plaintiff does not address Defendants' point that Hulu has encrypted its URLs so they do not reveal the title of videos. Mot. at 6-7 (citing *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2014 WL 1724344, at *2 (N.D. Cal. Apr. 28, 2014)). Plaintiff tries to argue that such information "can be used to derive additional sensitive and personally identifiable information." Opp. at 7. But the Complaint never explains how Plaintiff's activity on these websites could reveal "what medical conditions you searched for, whether you shopped for Plan B emergency contraception, whether you searched for the location of an addiction treatment facility, which videos you watched, and whether you have young children." *Id.* Without these specifics, the Complaint fails to allege that her privacy was invaded. *See In re Meta Pixel Healthcare Litig.*, No. 22-cv-03580-WHO, 2023 WL 5837443, at *8 (N.D. Cal. Sept. 7, 2023) (dismissing privacy claims based on the collection of medical data because plaintiffs did not "describe the types or categories of sensitive health information" allegedly collected).

Without specifics, Plaintiff tries to argue generally. She claims that all browsing and search information is private because it is personal. As support, Plaintiff tries to shoehorn her case into the likes of *In re Facebook Tracking*, *Calhoun v. Google*, and *Brown v. Google*, but reliance on those cases only serves to showcase how different this case is and to highlight the deficiencies in her pleadings. Those cases do not hold that all browsing and search information is private; to the contrary, each of those cases turned on the identification of specific facts that create a reasonable expectation of privacy—facts not present here.

The Ninth Circuit in *Facebook Tracking* emphasized that "[t]he nature of the allegedly collected data is [] important."[1] 956 F.3d at 603. The decision relied heavily on the plaintiff's allegation that Facebook set a specific expectation that it would not collect data from users while they were logged out. *Id.* at 602. In other words, the privacy violation arose because Facebook collected browsing and search data that the users and Facebook had agreed would remain private. Facebook combined that sensitive data with the information Facebook already had about its users (which "could include a user's employment history and political and religious affiliations"), to create a "cradle-to-grave profile" for Facebook users. *Id.* at 599.

Similarly, *Calhoun v. Google LLC* concerned the collection of data that the plaintiffs had a reasonable expectation would be kept private. The *Calhoun* case concerned the option that users of the Google Chrome browser had to "sync" or not with their Google accounts. The court held that Chrome users who chose not to "sync" had a reasonable expectation that their data would not be collected by Google. 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021). Collecting data that is not "synced" anyway defeated their reasonable expectation of privacy.

*Brown v. Google LLC* is similar. The *Brown* case concerned Chrome users who browsed the Internet in "private" or "Incognito" mode. Plaintiffs alleged that "users go Incognito to search on sensitive topics and so that browsing data may reveal their sexual orientation, political or religious views, or upcoming big purchases[.]" No. 20-cv-03664-YGR, 2023 WL 5029899, at *20 (N.D. Cal. Aug. 7, 2023). In other words, the *Brown* case concerned information that was likely to be sensitive or confidential, that class members specifically earmarked as "private"

---

[1] It is therefore not sufficient merely to allege that the amount of data collected or method of collection were problematic. *Compare id. with* Opp. at 8.

by entering "Incognito" mode. Collecting data anyway, despite agreeing it would be "Incognito," defeated reasonable expectations of privacy.

This case is wholly different from *Facebook Tracking*, *Calhoun*, and *Brown*. Plaintiff points to no representation by TikTok or anyone else to create a reasonable expectation of privacy. To the contrary, she was advised by Etsy, Build-a-Bear and Hulu that her data would be shared with third-parties. *See* Mot. at 7-8. She consented to such sharing by continuing to use those sites and in fact affirmatively consented every time she logged into Etsy or subscribed to Hulu. *Id.* The fact that TikTok is not named is immaterial. Plaintiff admits that she was advised as to the placement of cookies and third-party data collection. *See* Opp. at 8-10. Plaintiff cannot have a reasonable expectation of privacy when she has advance notice. *See Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 36 (1994). None of Plaintiff's cases change this result, as none require a third-party website to disclose the specific partners with whom it shares data. They merely hold that consent requires disclosure of the "specific practice" at issue. Opp. at 9 (citing *Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 847–88 (N.D. Cal. 2014)). Each website Plaintiff allegedly visited disclosed their specific practice of sharing user data with third parties for advertising or marketing purposes. See Mot. at 7–8.

Without specific allegations that Plaintiff's browsing and search history on these three websites was private—either because it was innately sensitive or because Defendants agreed to treat it as such—Plaintiff's Complaint has alleged nothing more than "routine" data collection that does not, as a matter of law, "amount to an egregious breach of the social norms." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088, 1090 (N.D. Cal. 2022) (dismissing common-law and constitutional privacy claims), *appeal filed*, No. 22-17024 (9th Cir. Dec. 30, 2022).

## III. THE COMPLAINT DOES NOT STATE A CIPA CLAIM

To state a valid CIPA claim, Plaintiff must allege action by TikTok that

constitutes either "intercepting" of communications (Section 631) or "using" a device to record confidential communications (Section 632). But the Opposition effectively concedes that TikTok merely provides a tool for third-party websites to use and later, depending on what those websites decide to collect and share, passively receives what those websites choose to share. TikTok may receive the data, but it is not the one "intercepting" or "using" the recording device.

"Intercepting" requires an affirmative act. Section 631 prohibits a "willful" attempt to learn the contents of the communication at the moment it is transmitted. *See* Mot. at 9-10 (citing *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir. 2002); *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978)). But Plaintiff identifies no "willful" action by TikTok to learn the contents of any communication at the moment of its transmission. TikTok provided its tool long before any such communications and left the decisions concerning its use to the third-party websites. Plaintiff's cases do not hold otherwise. Opp. at 10-11. *Revitch* did not address whether there was an interception; that case was instead about whether there was a "communication" and whether the third-party could be considered an extension of a "party" to that communication. *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019). *Saleh v. Nike, Inc.* concerned a situation where the third-party itself "transmitted" the information it obtained to its servers. 562 F. Supp. 3d 503, 512-13 (C.D. Cal. 2021). There is no allegation that TikTok decides what information is collected or is transmitted; website owners make those decisions when they install and configure the tool.

"Using" a recording device also requires an affirmative act. The amended language of Section 632 makes this clear: the language extending the prohibition to every person who by means of any "electronic amplifying or recording device eavesdrops upon or record[s]" a confidential communication was changed to apply

to the person who "uses" the recording device. *See* Cal. Penal Code § 632(a) (1967 version and current provision) (emphasis added). In her Opposition, Plaintiff responds by arguing that TikTok provided a "recording device," a point Defendants' Motion does not even contest. Opp. at 13; Mot. at 11. Plaintiff sidesteps the dispositive question—who "used" the device to record any confidential communication. But as *Lopez v. Apple* makes clear, creating the alleged recording device is not enough. The statute penalizes the party who decides when and how to use that device to record. 519 F. Supp. 2d 672, 679 (N.D. Cal. 2021).

The importance of this distinction is confirmed in *Valenzuela v. Kroger Co.*, No. CV 22-6382-DMG (AGRx), 2023 WL 4418887, at *5 (C.D. Cal. June 23, 2023). Plaintiff tried to argue that the websites aided and abetted the recording of confidential communications by the third party who created the recording software tool. *Id.* at *3. The court rejected any aiding-and-abetting theory because the plaintiff alleged that the website—not the third-party tool provider—was the one who used the device to record. *Id.* at *1.

The Complaint contains no allegations that would make TikTok responsible for "intercepting" or "using" under CIPA. There is no allegation that TikTok installed or configured the tool on any of these websites. TikTok did not make the decision to use the tool on any website or for what information. TikTok was not involved in those decisions in any way. Nor is there any allegation that TikTok induced or even influenced the third-party websites' decisions to use or configure the code. *Compare MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005) (inducement premises liability on "purposeful, culpable expression and conduct"). Imposing CIPA liability on TikTok anyway is akin to holding the manufacturer of a tape recording machine directly liable for everything someone may record with it—a clearly nonsensical result. *See Federated Univ. Police*

*Officers' Ass'n v. Regents of the Univ. of Cal.*, No. SACV 15-00137-JLS (RNBx), 2015 WL 13273308, at *1 (C.D. Cal. July 29, 2015).

## IV. THE COMPLAINT DOES NOT STATE A CFAA CLAIM

The Complaint also fails to establish the elements of a CFAA claim. As an anti-hacking statute, the CFAA requires unauthorized access to a protected computer that causes either "damage or loss" to the computer or poses a "threat to public health or safety." *See* Mot. at 12-14; 18 U.S.C. §§ 1030(c)(4)(A)(i)(I), 1030(c)(4)(A)(i)(IV), 1030(g). In the Opposition, Plaintiff's theory is that Defendants accessed Plaintiff's computer (allegedly without authorization) by placing cookies on that computer. Opp. at 14. But even if that theory is accepted, Plaintiff never explains how placing cookies either caused damage or loss to her computer or threatened public health or safety. Without that nexus, the CFAA claim fails. *See Vecchio v. Amazon.com, Inc.*, No. C11-366 RSL, 2012 WL 1997697, at *5 (W.D. Wash. June 1, 2012) (no CFAA claim where plaintiffs alleged no facts suggesting the alleged harm "had any relation to" the alleged placement of cookies).

**Theory 1: "Loss."** To violate the CFAA, there must be harm to Plaintiff's computer. Plaintiff alleges everything but. Plaintiff argues that TikTok's alleged collection of her personal data "without providing anything of value" and the resulting diminution in value of her data are enough to show that she suffered loss and damage. Compl. ¶¶ 71, 108. But even if true, these would not be losses or damages to her computer—let alone cross the $5,000 threshold needed for a CFAA claim. *Vecchio*, 2012 WL 1997697, at *4 (plaintiffs must allege facts sufficient to demonstrate that $5,000 loss actually occurred, *not* broad allegations about costs in general).

Plaintiff also argues (without citation to any paragraph in the Complaint) that she had to pay for McAfee security software to protect her online privacy.

Opp. at 15. Like her other "losses," this does not mean her computer was damaged in any way, nor does it exceed the $5,000 threshold. And it is implausible that Plaintiff, who is "very conscious about her online privacy," Compl. ¶ 79, bought McAfee software specifically to guard her data *from TikTok*, rather than in general. Even if credited, this argument still fails because she paid this cost before any alleged violation. *See id.* (alleging that despite her use of McAfee security software, TikTok received her data from Hulu, Etsy and Build-a-Bear); *Vecchio*, 2012 WL 1997697, at *5 (rejecting similar loss premised on pre-purchased software).

**Theory 2: "Threat to public health or safety."** Plaintiff alternatively resorts to fear-mongering about the dangers of the TikTok app and possibility data will be shared with China. *See* Opp. at 15. For example, Plaintiff alludes to alleged tracking by the Chinese Communist Party of federal employees' locations, misuse of private information for blackmail, and corporate espionage using such information. *Id.* But none of these fears are ever tied to any alleged "unauthorized" access to her computer. Plaintiff does not allege any use of such information by the Chinese government; she is not a federal employee or someone entrusted with confidential information the disclosure of which can hurt public health or safety; nor is it clear how Plaintiff's activities on Etsy, Build-a-Bear and Hulu can be used for blackmail or corporate espionage. Without such allegations, Plaintiff's parade of horribles is entirely speculative and create no credible threats to national security or public health and safety.

The *Vaquero Energy, Inc. v. Herda*, No. 1:15-cv-0967-JLT, 2015 WL 5173535, at *8 (E.D. Cal. Sept. 3, 2015), does not support Plaintiff's argument. Plaintiff there alleged that the unauthorized access posed a threat to public health and safety because the defendants controlled plaintiff's oil and gas production facilities and thus could, with unauthorized access to computers, cause a gas

release, fire, or oil spill. *Id.* at *21-22. There are no such claims in this case. The Complaint contains no explanation how TikTok's receipt of data showing she looked at teddy bears on the Build-a-Bear website could lead to a gas leak, fire, oil spill, or any other threat to public health and safety.

## V. THE COMPLAINT DOES NOT STATE A LARCENY OR CONVERSION CLAIM

Plaintiff never disputes that her claims for statutory larceny and conversion require, as a threshold matter, a property right in the browsing history and search data allegedly disclosed to TikTok. *See* Mot. at 14-15. The Complaint alleges that the data identified her (through user agent, IP address, phone number, and email) and her browsing history and search terms:

- "TikTok . . . collected her Private Data from these websites through the TikTok SDK, including browsing history and search queries." Compl. ¶ 75.
- "[W]hen she visited Hulu, TikTok stole her Private Data through the TikTok SDK," including "what videos she searched for, browsed, and watched." *Id.* ¶ 76.
- "[W]hen she visited Etsy, TikTok stole her Private Data through the TikTok SDK," including "what products she searched for, browsed, purchased, and sold." *Id.* ¶ 77.
- "[E]very time she visited Build-a-Bear Workshop, TikTok stole her Private Data through the TikTok SDK," including information concerning "what products she searched for, browsed, purchased, and sold." *Id.* ¶ 78.
- "The communications intercepted by Defendants include 'contents' of electronic communications . . . in the form of detailed URL requests, webpage browsing histories and search queries, and URLs containing the specific search queries." *Id.* ¶ 100.

- Defendants' alleged conduct included "the secret transmission of Plaintiff's and Class and Subclass members' Private Data – including webpage browsing histories and search queries, and URLs containing the specific search queries." *Id.* ¶ 108.

Plaintiff argues that "personal information" <u>can</u> be property and cites numerous cases to that effect. But Defendants have never argued otherwise; it is possible to have a property interest in certain types of personal data. None of Plaintiff's cases, though, stand for the proposition that a property right extends to <u>all</u> "personal information." To the contrary, they make clear that whether a property interest exists depends on the personal information. *See, e.g., Broidy Capital Mgmt. LLC v. Muzin*, No. 19-cv-00150-DLF, 2020 WL 1536350, at *16 (D.D.C. Mar. 31, 2020) (property interest in data including digital copy of personal memoranda), *aff'd*, 12 F. 4th 789 (D.C. Cir. 2021); *CTC Real Estate Servs. v. Lepe*, 140 Cal. App. 4th 856, 859-60 (2006) (property interest in data including social security number under California identity theft statute); *In re Marriott Int'l, Inc.*, 440 F. Supp. 3d 447, 454 (D. Md. 2020) (property interest in data including passport and credit card numbers). But this case is not about personal memoranda, social security numbers, or even passport or credit card numbers. So these cases do not help Plaintiff.[2]

This case concerns Plaintiff's personal browsing history and search information. Plaintiff never directly addresses the argument that this information does not belong exclusively to her; such data arises from her interaction with the websites she visits and arguably belongs equally to the websites, if not more so. Plaintiff's use of the Internet necessitates the "sharing" of such information across

---

[2] Relatedly, Plaintiff tries to shoehorn the California Consumer Privacy Act ("CCPA") into her argument that personal information is property. But Plaintiff fails to explain how the CCPA is at all relevant to a court's analysis of statutory larceny and conversion claims. Opp. at 17. The only support Plaintiff cites is a 1970 case about whether there is a property right in a producer's idea—that did not involve data, statutory larceny, conversion, or even the CCPA. *Id.*

a "worldwide" network of computers; without sharing her browsing information, Plaintiff cannot navigate to any particular website and without sharing her search data, Plaintiff cannot interact with that website. It makes no sense to recognize "property" rights in such shared data, let alone giving exclusive rights to Plaintiff over everyone else.

Plaintiff's attempts to distinguish Defendants' authorities are unavailing. Plaintiff selectively cites *United States v. Abouammo* for the assertion that Twitter's confidential user information is "'property' under California law." Opp. at 17 (citing No. 19-cr-00621-EMC-1, 2022 WL 17584238 (N.D. Cal. Dec. 12, 2022)). But the court held that certain data was property under a specific provision of the California Labor Code that pertains to the ownership of property acquired over the course of employment. *Abouammo*, 2022 WL 17584238, at *11. This case does not involve such data, that Labor Code provision, or any employment relationship. That said, the *Abouammo* court recognized that there is no property right in personal information that is publicly available because it is not capable of exclusive control. *Id.* at *12.

Similarly, Plaintiff tries to minimize the holding of *Doe I v. Sutter Health* that there can be no misappropriation of intangible property (like browsing history) unless the plaintiff can meet the three-part test for property in *G.S. Rasmussen Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906-07 (9th Cir. 1992).[3] *See* Mot. at 15 (citing *Sutter Health*, 2020 WL 1331948, at *14). Plaintiff claims that the *Sutter Health* court found that intangible property can support a conversion claim as long as it is sufficiently certain and exclusive. Opp. at 17-18. True, that is exactly Defendants' point—browsing and search information fails the test of

---

[3] Plaintiff claims that Defendants cite to language summarizing a party's position instead of the court's findings. But this is incorrect, as Defendants do cite to the court's holding (in fact, it is not clear to what Plaintiff is referring). *See* Opp. at 17 (citing *Doe I v. Sutter Health*, No. 34-2019-00258072-CU-BT-GDS, 2020 WL 1331948 (Cal. Super. Ct. Jan. 29, 2020)); Mot. at 15 (citing same).

exclusivity and thus cannot be "property" for larceny or conversion. *Sutter Health*, 2020 WL 1331948, at *14.

## VI. PLAINTIFF DOES NOT HAVE UCL STANDING

The Complaint fails to allege facts suggesting that Plaintiff actually lost any property or money, so she does not have UCL standing.[4] Courts in this Circuit are clear that a plaintiff cannot just articulate some "theoretical" value to her personal information but must allege facts showing that she lost property or money and what the defendants did to cause that loss.

Plaintiff argues that the misappropriation of her personal information constitutes loss of property and monetary value. *See* Opp. at 18. Plaintiff relies on *Calhoun* and *Cappello*, but neither case holds that there can be a property right in browsing history or search information. In any event, it is not sufficient to point to theoretical property or economic value. To properly allege loss, Plaintiff must allege that she actually sought to monetize her browsing history and search data and how its disclosure to TikTok impaired her ability to do so. Simply saying TikTok did not pay Plaintiff is not enough for UCL standing, since there is no "loss" without allegations that Plaintiff sought to sell the information or that TikTok would ever buy it.

Plaintiff relies on her allegations that there is a "robust market" for personal data and that she can no longer bring her private data to this market because of TikTok's actions. Opp. at 21. But any "robust market" for personal data that exists in the abstract does not mean there was a market for Plaintiff's data. Plaintiff does not allege that she was aware of these marketplaces or even

---

[4] As a threshold matter, Plaintiff 's reliance on *Facebook Tracking* to establish the standard for UCL standing is misplaced. *See* Opp. at 20. She conflates the standard for general Article III standing with the specific standing requirements of the UCL. *Facebook Tracking*, 956 F.3d at 600; *see* Opp. at 20. While Article III standing merely requires that a plaintiff allege *any* cognizable injury, standing under the UCL requires that Plaintiff specifically demonstrate a loss of property or money. *See Tomek v. Apple Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016). UCL standing is therefore "more restrictive" than Article III standing. *Id.*

attempted to sell her data in them. *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784, 804 (N.D. Cal. 2019). Nor does she allege how her ability to participate in those marketplaces has been impaired by TikTok's conduct. *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1040 (N.D. Cal. 2019). The Complaint fails to allege that TikTok did anything to cause economic injury like in *Klein*, where Facebook's monopolization of the social media market eliminated the competitive market for users' data. *See* Opp. at 21. Allegations that unspecified individuals <u>can</u> sell their data for specific dollar amounts say nothing about <u>Plaintiff's</u> ability to do so, the value of <u>her</u> data, or what <u>she</u> lost. Opp. at 22; *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 804 (N.D. Cal. 2022). Without specific allegations of a "market for [plaintiffs'] browsing data" and a theory for how the defendant's "collection of the data inhibited plaintiffs' ability to participate in that market," there is no UCL standing. *Brown*, 2023 WL 5029899, at *21; *see also In re Meta Pixel Healthcare Litig.*, 2023 WL 5837443, at *17 (rejecting plaintiffs' reliance on *Brown* because they did not allege that they intended to sell the data at issue).

Nothing distinguishes this case from the legion holding that the collection of personal online data is not enough to confer standing under the UCL. *See Hazel v. Prudential Fin., Inc.*, No. 22-cv-07465-CRB, 2023 WL 3933073, *6 (N.D. Cal. June 9, 2023) (collecting cases); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1144 (E.D. Cal. 2021) (no UCL standing even where a plaintiff "alleges that defendants surreptitiously obtained his personal information"). The UCL claim should therefore be dismissed for a lack of standing.

## VII. CONCLUSION

A complaint long on conclusions, rhetoric and fear-mongering is not well-pleaded. Shorn of the irrelevant and inflammatory, the Complaint is ultimately based on nothing more than the allegation that Etsy, Build-a-Bear and Hulu shared

certain information about Plaintiff's use of their websites to TikTok. There are no allegations that anything was disclosed other than mundane browsing and search information that is not sensitive, confidential, nor Plaintiff's exclusive property. There are no allegations that TikTok did anything other than provide a tool that websites could use to share information—without any involvement (let alone inducement) in what would be shared. Without these allegations, Plaintiff fails to state any valid privacy-based claims. For these reasons, the Complaint should be dismissed in its entirety.

Dated: September 11, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Victor Jih
Victor Jih

*Attorney for Defendants*
TIKTOK INC. and BYTEDANCE INC.

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants TikTok Inc. and ByteDance Inc., certifies that this brief contains 4,613 words, which complies with the word limit of L.R. 11-6.1.

Dated: September 11, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ Victor Jih
Victor Jih

*Attorney for Defendants*
TIKTOK INC. and BYTEDANCE INC.