Ekwan E. Rhow (CA SBN 174604)
erhow@birdmarella.com
Marc E. Masters (CA SBN 208375)
mmasters@birdmarella.com
Christopher J. Lee (CA SBN 322140)
clee@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (pro hac vice)
GLANCY PRONGAY & MURRAY, LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Ave. of the Americas
32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
gpark@susmangodfrey.com

*Attorneys for Plaintiff Bernadine Griffith*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

BERNADINE GRIFFITH, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

TIKTOK, INC., a corporation; BYTEDANCE, INC., a corporation

Defendants.

Case No. 5:23-cv-00964-SB-E

**DISCOVERY MATTER**

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY REGARDING WEBSITES WITH TIKTOK SDK INSTALLED, DAMAGES CALCULATION, AND CUSTODIANS**

Magistrate Judge: Hon. Charles Eick
Date/Time: Oct. 20, 2023 at 9:30 AM
Place: Courtroom 750
255 East Temple St., Los Angeles, CA 90012

Discovery Cutoff Date: 5/10/24
Pretrial Conference Date: 9/13/24
Trial Date: 9/30/24

Developments since the filing of Plaintiff's Motion to Compel ("Motion") (Dkts. 50, 51) further showcase Defendants' discovery tactic of delay. Defendants argue that Plaintiff's Motion is premature because they have produced or "promised to produce" responsive documents. Yet Defendants' promises of what they will produce and when they will produce it change by the week. And Defendants fail to meet their self-imposed deadlines for production. With motion to amend and class certification deadlines fast approaching, Plaintiff can no longer wait to see if Defendants will fulfill their ever-shifting discovery promises. Plaintiff requests that the Court order Defendants to produce the documents sought in her Motion within 7 days of the Court's ruling.

## I. Additional Procedural Background

After Plaintiff served her portion of the joint stipulation, the parties further met and conferred on the issues raised in Plaintiff's Motion, including by telephone on September 22 and in subsequent email correspondence. These communications only confirmed Defendants' tactic of delaying discovery that is undisputedly relevant to Plaintiff's claims and proportional to the needs of the case. On September 29, Defendants produced certain documents, including a deficient spreadsheet that reflects only some "advertisers" that have used the TikTok Pixel in the last 6 months. After promising to produce a similar spreadsheet of "advertisers" that have used the Events API by October 6, *see* Ex. 1, Defendants failed to do so.

## II. Websites that Have or Had the TikTok SDK Installed (RFP 1)

The September 29 spreadsheet unilaterally and improperly narrows the scope of the production to which Defendants agreed. Indeed, as detailed in the Joint Stipulation (Dkt. 50-2 at pp. 1-3, 7-9), Defendants first agreed to produce documents sufficient to identify **<u>all</u>** websites that use or have used the Pixel and/or Events API. Then, on September 22, Defendants said they would produce a list of advertisers who used the Pixel "this year," and wholly excluding the Events API. The September 29 spreadsheet is even narrower than that, consisting of a list of

advertisers who used the Pixel (and not the Events API) only in the past six months.

In addition to the improper temporal limitation, the September 29 spreadsheet is deficient in several other regards. *__First__*, the spreadsheet apparently is not even a *complete* list of "advertisers" who used the Pixel in the past six months, as evident from Defendants' disclaimer that "the list may not be complete" due to purported technical difficulties of exporting data. *See* Ex. 1. These are difficulties that Defendants could have easily investigated and resolved in the over three months since they received Plaintiff's RFPs. *__Second__*, as noted above, it lists "advertisers" that used only the Pixel, not the Events API. (Defendants failed to produce a similar spreadsheet for the Events API by October 6 as they promised.) *__Third__*, it uses abbreviated or incomplete names for thousands of "advertisers" such that the names are indecipherable to Plaintiff.[1] *__Fourth__*, it is unclear whether Defendants' representation that the spreadsheet lists "advertisers" means that it excludes websites that use the Pixel but do not advertise with TikTok.

Defendants continue to drag their feet in responding to RFP 1. For instance, after responding to the RFPs stating that they would identify __**all**__ websites that use or have used the Pixel or Events API two months ago, Defendants are only now investigating whether they have such "legacy data" going back further than the past six months, and the investigation "may continue into the week of October 9." Ex. 1.

For the reasons articulated in the Joint Stipulation (Dkt. 50-2, at pp. 9-11), the full list of websites that have or had the Pixel or Events API installed is foundational for additional discovery in this case. Indeed, it is relevant to Plaintiff's efforts to amend her pleadings, identify additional class representatives, and confirm class members. In addition, it informs the scope of third-party discovery necessary in this case. The Court should order Defendants to promptly produce the full list as they

[1] Notwithstanding Defendants' representation to the Court on August 11 and September 8 that the websites that use the Pixel are publicly available, they designated this spreadsheet Attorneys' Eyes Only, preventing Plaintiff from including it as an exhibit here. Plaintiff has challenged the confidentiality designation pursuant to the Protective Order and Local Rule 37.

agreed to do two months ago.

**III. Defendants' Agreements with and Representations to Websites (RFP 23)**

During the parties' September 22 conference, Defendants represented that they had met their production obligation by producing the TikTok SDK's publicly available Terms of Use for advertisers. When Plaintiff asked whether advertisers negotiate bespoke terms, Defendants simultaneously took the position that (1) "most" advertisers use the public terms and (2) it would be burdensome to produce any bespoke terms. Of course, if Defendants are correct that "most" advertisers use the public terms, then there should be minimal burden to produce the bespoke terms for the outliers who did not use the public terms. In any event, to better understand Defendants' seemingly self-contradictory position, Plaintiff requested an estimate of how many advertisers have bespoke terms with Defendants. On October 6, Defendants represented that they have entered into 2,390 agreements that deviate from the standard online TikTok For Business Commercial Terms of Service. Of those agreements, Defendants produced only 3 of the 2,390.

Throughout this litigation, Defendants have emphasized the non-TikTok websites' roles in configuring the settings of the TikTok SDK and collecting Non-TikTok User Data. To the extent that Defendants maintain this position, they must produce all bespoke terms immediately. If Defendants continue to stand on their burden objections and fail to produce additional bespoke terms beyond the three produced, then they should be precluded from making any argument about variations in data terms across websites.

**IV. Defendants' Use of and Value Derived from Non-TikTok User Data (RFP 18, 44, 49, 50, 54, 56)**

Defendants' about-face with regard to this set of documents is astounding. On September 6, Defendants agreed to produce "a sample report of the type mentioned in" the *Consumer Reports* article that quotes a TikTok spokesperson who admitted that Defendants use Non-TikTok User Data to compile aggregated reports that they

send to advertisers. *See* Park Decl., Ex. 4 (Dkt. 51-4) (S. Mancall-Bitel Ltr. to G. Linkh). Defendants have now rescinded even that agreement: Rather than producing a sample report itself, they are now going to produce a document *describing* a sample report. All the while, Defendants have admitted that they engage in "aggregated, deidentified and non-monetary uses of the data, which are **used for machine learning and to improve certain algorithms** that do not pertain to ad delivery." Ex. 1 (emphasis added).[2]

Contrary to earlier representations that they do not "sell or use non-user data," Defendants have now admitted that they use that data for machine learning and to improve certain algorithms. In light of this admission and for the reasons articulated in the Joint Stipulation (Dkt. 50-2, at pp. 21-23), the Court should order Defendants to promptly produce documents responsive to the six requests, including the reports referenced in the *Consumer Reports* article. The documents are relevant to ascertain the extent to which the Non-TikTok User Data improve Defendants' predictive algorithms and to determine the amount of damages available for Plaintiff's claims.

**V. Persons with Knowledge and Custodians (RFP 14, 15, 17, 46)**

As discussed in the Joint Stipulation (Dkt. 50-2, at pp. 28-30), on September 18, Plaintiff responded to Defendants' representation that they do not keep "official organizational charts" by requesting Defendants to produce other documents responsive to the requests at issue. *See* Mancall-Bitel Decl., Ex. 1. Plaintiff further noted that to the extent that Defendants keep informal or unofficial organizational charts or materials sufficient to show the organizational or chain-of-command information typically found in organizational charts, those documents should be produced. *Id.* To date, Defendants have not produced any responsive documents or

[2] This belated admission confirms Plaintiff's allegations that Defendants use Non-TikTok User Data to improve their algorithms and technology. Dkt. 1, at ¶¶ 41-43. Indeed, Plaintiff alleged: "The explosive growth in the popularity of the TikTok app—and attendant growth in advertising revenue for Defendants—is attributable, in part, to TikTok's ability to predict the interests of its users. **This capability is powered by an algorithm that has benefited from a mountain of data—regardless of whether it comes from TikTok or non-TikTok users—collected by Defendants**." *Id.* at ¶ 43 (emphasis added).

provided an update on "whether there are informal documents that would include the information a formal org chart would contain." *Id.*

Further, during the parties' September 22 conference, Defendants requested that Plaintiff postpone filing the Motion until after she had reviewed Defendants' interrogatory responses due to be served on September 25. Those (unverified) responses are deficient and provide no grounds to postpone the filing or adjudication of the Motion. In response to an interrogatory asking Defendants to identify their current and former personnel responsible for or knowledgeable on four specific topics,[3] Defendants listed just seven names without identifying their titles, whether or not they are current or former personnel, and the topics to which the individuals correspond. At Plaintiff's urging, Defendants amended their response on September 29 to provide this detail and to add an eighth name. But even the amended response (still unverified) cannot substitute for the documents sought in this set of requests.

The identification of eight personnel by name and title does not "show the roles and responsibilities of and supervisory relationship between" Defendants' officers, managers, employees, and consultants with knowledge (RFP 15). It does not identify the identity, role, and location of those within Defendants' corporate structure who may access Non-TikTok User Data collected through the TikTok SDK (RFP 46). And it certainly does not contain committee or board meeting minutes discussing the collection of Non-TikTok User Data through the TikTok SDK (RFP 17). The Court should order Defendants to produce these documents. If Defendants say they do not have documents sufficient to show the organizational or chain-of-command information typically found in organizational charts, the Court should order Defendants to prepare a declaration setting forth the search that they undertook to arrive at this conclusion.

[3] Those topics are (a) the purpose, function, development, and launch of the TikTok SDK; (b) Non-TikTok User Data collected through the TikTok SDK; (c) all of Defendants' uses of and benefits derived from Non-TikTok User Data collected through the TikTok SDK; and (d) how, where, and for what purposes Defendants or their parent organizations and affiliates store Non-TikTok User Data collected through the TikTok SDK.

Dated: October 6, 2023

By: /s/ *Y. Gloria Park*

Ekwan E. Rhow (CA SBN 174604)
Marc E. Masters (CA SBN 208375)
Christopher J. Lee (CA SBN 322140)
**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
erhow@birdmarella.com
mmasters@birdmarella.com
clee@birdmarella.com

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
**GLANCY PRONGAY & MURRAY, LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (pro hac vice)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (310) 336-8340
gpark@susmangodfrey.com

*Attorneys for Plaintiff Bernadine Griffith*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Bernadine Griffith, certifies that this brief contains 1,910 words, which complies with the word limit of L.R. 11-6.1.

Dated: October 6, 2023

By: /s/ *Y. Gloria Park*
Y. Gloria Park