Ekwan E. Rhow (CA SBN 174604)
  erhow@birdmarella.com
Marc E. Masters (CA SBN 208375)
  mmasters@birdmarella.com
Christopher J. Lee (CA SBN 322140)
  clee@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (pro hac vice)
GLANCY PRONGAY & MURRAY,
LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Ave. of the Americas
32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
gpark@susmangodfrey.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

BERNADINE GRIFFITH; PATRICIA SHIH; RHONDA IRVIN; MATTHEW RAUCH; JACOB WATTERS, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

TIKTOK, INC., a corporation; BYTEDANCE, INC., a corporation

Defendants.

Case No. 5:23-cv-00964-SB-E

**DISCOVERY MATTER**

**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL DISCOVERY REGARDING THE DATA COLLECTED ON NON-TIKTOK USERS AND CHANGES MADE TO THE TIKTOK SDK**

Magistrate Judge: Hon. Charles Eick
Date/Time: Dec. 8, 2023 at 9:30 AM
Place: Courtroom 750
255 East Temple St., Los Angeles, CA 90012

Discovery Cutoff Date: 5/10/24
Pretrial Conference Date: 9/13/24
Trial Date: 9/30/24

# TABLE OF CONTENTS

**Page**

I.     PLAINTIFFS' PRELIMINARY STATEMENT ..................................................1

II.    DEFENDANTS' PRELIMINARY STATEMENT ..........................................3

III.   LEGAL STANDARD ............................................................................5

     A.   PLAINTIFF'S STATEMENT ...............................................5

     B.   DEFENDANTS' STATEMENT ...........................................5

IV.   SAMPLE DATA THAT DEFENDANTS COLLECT—AND DELETE—ON NON-TIKTOK USERS (RFP NOS. 2, 7, 8, 10, 11, 13, 20, 21, 25) ..............6

     A.   DOCUMENT REQUESTS AND RESPONSES IN DISPUTE ..............6

     B.   PLAINTIFFS' STATEMENT ...........................................12

         1.   Factual and Procedural Background ...........................12

         2.   The Data that Defendants Collect on Non-TikTok Users Through the TikTok SDK Is Undisputedly Relevant. .................14

         3.   Defendants' Burden Objections Are Meritless. ...........................16

         4.   Relief Requested ...........................................18

     C.   DEFENDANTS' STATEMENT ...........................................18

V.    DOCUMENTS ON CHANGES MADE TO DEFENDANTS' DATA COLLECTION PRACTICES VIA THE TIKTOK SDK (RFP NO. 38).......21

     A.   DOCUMENT REQUEST AND RESPONSE IN DISPUTE.................21

     B.   PLAINTIFFS' STATEMENT ...........................................21

         1.   Factual and Procedural Background ...........................21

         2.   The Requested Documents Are Relevant to Show How the TikTok Pixel Has Become More Invasive Over Time. ..............22

         3.   The Discovery Sought Is Proportional to the Needs of the Case. 25

     C.   DEFENDANTS' STATEMENT ...........................................25

VI.   HISTORICAL PIXEL SETTINGS FOR WEBSITES ENUMERATED IN FIRST AMENDED COMPLAINT (RFP No. 37).........................................27

     A.   DOCUMENT REQUEST AND RESPONSE IN DISPUTE.................27

     B.   PLAINTIFFS' STATEMENT ...........................................27

         1.   Factual and Procedural Background ...........................27

         2.   The documents sought are relevant and proportional to the needs of the case. ...........................................28

     C.   DEFENDANTS' STATEMENT ...........................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Burmayan v. Garfield Beach CVS, LLC*,
No. CV 23-01788-FMO, 2023 WL 6783288
(C.D. Cal. Aug. 28, 2023) ................................................................5, 20, 21, 27

*Epstein v. MCA, Inc.*,
54 F.3d 1422 (9th Cir. 1995) ................................................................................ 5

*Frlekin v. Apple Inc.*,
309 F.R.D. 518 (N.D. Cal. 2015) ....................................................................... 16

*Garces v. Pickett*,
No. 2:17-cv-0319 JAM AC P, 2021 WL 978540
(E.D. Cal. Mar. 16, 2021) ............................................................................. 6, 31

*In re Nickelodeon Consumer Privacy Litig.*,
827 F. 3d 262 (3d Cir. 2016) ............................................................................. 19

*Mass. Mut. Life Ins. Co v. Reingold*,
No. 2:19-cv-5428-GW, 2020 WL 12016704
(C.D. Cal. Jan. 31, 2020) ....................................................................5, 20, 21, 27

*Mier v. CVS Health*,
2021 WL 6102518 (C.D. Cal. Oct. 12, 2021) ................................................... 19

*Milliner v. Mutual Secs., Inc.*,
2017 WL 6419275 (N.D. Cal. Mar. 24, 2017) ................................................... 17

*National Assoc. of Radiation Survivors v. Turnage*,
115 F.R.D. 543 (N.D. Cal. 1987) ....................................................................... 16

*SEC v. Chen*,
2016 WL 3598108 (C.D. Cal. Feb. 4, 2016) ..................................................... 17

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ........................................................................... 16

**Statutes**

Cal. Pen. Code § 631(a) ..........................................................................................17

**Rules**

Fed. R. Civ. P. 26(b)(1) ............................................................................5, 6, 17, 20

Fed. R. Civ. P. 34(b)(2)(A)................................................................................6, 30

Fed. R. Civ. P. 37(a)(3)..........................................................................................5

Local Rule 37-1 ....................................................................................................20

Local Rule 37-2 ......................................................................................................3

**Other Authorities**

U.S. Mobile, *How Much Data is a Gigabyte*, available at
     https://www.usmobile.com/blog/how-much-is-a-gigabyte/...............................20

## I.     PLAINTIFFS' PRELIMINARY STATEMENT

This case involves Defendants TikTok, Inc.'s and ByteDance, Inc.'s deployment of the TikTok Pixel and TikTok Events API (together, "TikTok SDK") on at least **half a million non-TikTok websites** to intercept and collect the personal data of millions of Americans, including those who have never had a TikTok account and had no reason to believe that Defendants would intercept their data. The putative classes and subclasses involve all natural persons in the United States (or California for the subclass) who visited any of these hundreds of thousands of non-TikTok websites and who have no TikTok accounts or registration. Dkt. 63, at ¶ 147.

In a case about Defendants' collection of data on non-TikTok users through the TikTok SDK, it shouldn't be controversial that Defendants must prioritize producing the very data that they have collected, as well as documents explaining the changes that they have made to the TikTok SDK and to their data-collection practices over time. Notwithstanding the undisputable relevance of the documents sought in this motion and the significant compromises that Plaintiffs have made to alleviate Defendants' stated burden objections, Defendants have sometimes refused and sometimes dragged their heels in producing the documents. The failure to produce with regard to the actual data collected on non-TikTok users is especially troubling because Defendants have also stated that, in clear violation of their duty to preserve relevant discovery, they continue to purge the data regularly (with the last stated interval being approximately every 14 days).

All three categories of documents sought in this motion are relevant to Plaintiffs' claims in this case, including with regard to class certification, and have been narrowly tailored to account for Defendants' complaints of burden. _First_, Plaintiffs seek a sample of the data that Defendants have collected on non-TikTok users through the TikTok SDK, as well as documents identifying the fields and subfields of data that Defendants collect on non-TikTok users through the TikTok SDK. In order to address Defendants' concerns about the "immense amount of data"

that they collect on non-TikTok users (their own words constitute an admission on the alarming amount of data that Defendants are collecting through the TikTok SDK), Plaintiffs asked that Defendants produce such data from just *a single day* on which Defendants collect, generate, and process such data. After expressly agreeing that they would do so by September 29, Defendants still have not done so. At the same time, Plaintiffs have learned that despite their obligation not to destroy relevant evidence, after Defendants collect and use non-TikTok user data, Defendants continue to "delete" the relevant data that they collect on non-TikTok users. Defendants' conduct—simultaneously *withholding* the production of the best potential evidence to identify potential class members and what exact information Defendants collect on class members, and *destroying* that data before Plaintiffs have had a chance to review it—raises serious concerns and requires the Court's timely intervention.

*Second*, Plaintiffs seek documents identifying the changes made to Defendants' data-collection practices via the TikTok SDK. As alleged in the First Amended Complaint ("FAC"), Plaintiffs have identified through public investigation that Defendants not only have made changes to the TikTok Pixel over time but also have made it *more invasive* of private data by reducing the non-TikTok websites' control over the baseline amount of data that the Pixel collects even before such websites make their own configurations to the Pixel. Defendants acknowledge the relevance of the documents sought but seek to fulfill their discovery obligations by pointing to three publicly available webpages. For the reasons discussed in this motion, these three webpages are incomplete and deficient, and Defendants must search for responsive internal documents and produce them immediately.

*Third*, Plaintiffs seek documents identifying the historical settings of the Pixel that is or was installed on the websites expressly referenced in the FAC. These documents are also relevant for Plaintiffs to investigate the changes made over time to the TikTok Pixel and the data that Defendants collect on non-TikTok users through

that Pixel. In response to Defendants' complaints about the burden associated with producing this information, Plaintiffs as an initial matter seek only the historical Pixel settings for the 18 non-TikTok websites identified in the FAC, while reserving their rights to seek settings for additional websites after reviewing the initial set. In fact, this compromise is consistent with a suggestion that Defendants themselves made during an October 23 conference between the parties. Defendants have failed to abide by their own suggestion to start the production of this set of documents with the non-TikTok websites identified in the FAC.

In light of Plaintiffs' deadline to move for class certification in approximately three months,[1] Plaintiffs further request that the Court order Defendants to produce the documents within one week of the disposition of this motion.

## II.   DEFENDANTS' PRELIMINARY STATEMENT

Plaintiffs purport to move to compel under 11 document requests but really seek only three categories of documents.  All three of those categories concern documents that they did not request.  Plaintiffs try to distort the plain meaning of their requests, and the history of the meet-and-confer process, to cover these categories, but that attempt should be rejected.

First, Plaintiffs ask the Court to compel the production of a snapshot of non-TikTok user data that TikTok receives.  They identify nine document requests, but the data is not responsive to any of them.  Seven seek documents concerning the process of how TikTok collects data, not the underlying data itself.  The remaining two ask for documents that can be used to identify putative class members and their data.  But the data Plaintiffs seek is not responsive because it cannot be used to identify any specific person.  It cannot even be used to determine the size of the class, because the data belonging to non-users is indistinguishable from data that simply does not include enough information to match to the correct TikTok user.  Furthermore, this data is not stored in an obviously accessible way precisely because

---

[1] Pursuant to Local Rule 37-2, a copy of the Case Management Order in this case is attached as Exhibit 1.

TikTok does not use the data in the manner Plaintiffs allege.  In any event, Defendants have agreed to produce the snapshot that Plaintiffs say they need, pending creation of a query to target the right information and approval to access data pursuant to TikTok's data access practices (which are uniquely restrictive in accordance with the company's ongoing national security discussions).

Second, Plaintiffs want documents regarding changes to the tools at issue. Defendants produced the most relevant documents on that topic, which happen to be publicly available.  The request does not require the production of non-public documents, and Plaintiffs agreed during the meet-and-confer process that this category could be satisfied by "go-get" documents (and TikTok has never agreed to produce "all" such documents).  And just like the first category, Defendants have agreed to produce, and have produced, internal documents in light of Plaintiff's continued demands.  Moreover, the parties are in the process of negotiating a custodial search that covers more than 25 custodians.  Should that search uncover additional responsive documents, Defendants will produce them.

Third, Plaintiffs move to compel on documents showing the historical changes websites made to their Pixel settings.  They point to a single document request, which seeks documents about websites' efforts to "limit" the collection of data by the TikTok Pixel.  The historical Pixel settings for a website demonstrate that website's use of the Pixel, not an "attempt to limit" its functioning.  The request also makes no sense because the websites control both installation and configuration of the Pixel.  Thus, if they wanted to limit the Pixel's reach, they would just uninstall it or reconfigure it.  And in any event, documents about a particular website's efforts to limit the data collection are not documents that TikTok would have—if anything, the websites would have them.  Recognizing that their request does not cover Pixel settings, Plaintiffs have now propounded a request for that exact category of documents.  That request was not served, however, until October 31, and TikTok's response is not due until November 30.  Plaintiffs' attempt to short-circuit TikTok's

1  time to respond by deeming these documents part of a prior, but completely
2  irrelevant, request should be rejected.

3       Under these circumstances, a motion to compel is frivolous.  Plaintiffs ask this
4  court to punish TikTok for its attempts to cooperate with Plaintiffs and go beyond
5  what their requests seek.  That demand should be rejected.  TikTok remains willing
6  to cooperate on these and other requests, but its efforts to identify the relevant
7  information that Plaintiffs demand, including outside the context of proper requests,
8  require adequate time.

9  **III.   LEGAL STANDARD**

10      **A.   PLAINTIFF'S STATEMENT**

11      A motion to compel is ripe when a party has failed to respond adequately to a
12  discovery request. Fed. R. Civ. P. 37(a)(3). "Parties may obtain discovery regarding
13  any nonprivileged matter that is relevant to any party's claim or defense and
14  proportional to the needs of the case, considering the importance of the issues at stake
15  in the action, the amount in controversy, the parties' relative access to relevant
16  information, the parties' resources, the importance of the discovery in resolving the
17  issues, and whether the burden or expense of the proposed discovery outweighs its
18  likely benefit." Fed. R. Civ. P. 26(b)(1). "[W]ide access to relevant facts serves the
19  integrity and fairness of the judicial process by promoting the search for the truth."
20  *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir. 1995) (citation omitted).

21      **B.   DEFENDANTS' STATEMENT**

22      A motion to compel must be denied as moot when the responding party has
23  already produced the documents at issue.  *See, e.g.*, *Burmayan v. Garfield Beach*
24  *CVS, LLC*, No. CV 23-01788-FMO (AGRx), 2023 WL 6783288, at *3 (C.D. Cal.
25  Aug. 28, 2023) (motion to compel moot where defendant "indicate[d] that it ha[d]
26  completed production" on RFPs at issue); *Mass. Mut. Life Ins. Co v. Reingold*, No.
27  2:19-cv-5428-GW (SKx), 2020 WL 12016704, at *1 (C.D. Cal. Jan. 31, 2020)

28

(motion to compel moot "insofar as Defendant has produced non-privileged responsive documents already").

Conversely, the motion must be denied as premature when the time to respond to the request under the Federal Rules has not passed. *See, e.g.*, *Garces v. Pickett*, No. 2:17-cv-0319 JAM AC P, 2021 WL 978540, at *1 (E.D. Cal. Mar. 16, 2021) ("Because the time to respond to the first request for production had been extended and the time for responding to interrogatories had not yet passed, the motion was denied as premature."). The responding party has 30 days to respond to a request for production. Fed. R. Civ. P. 34(b)(2)(A).

As Plaintiffs admit, discovery sought must be "relevant" to a "claim or defense," as well as "proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).

## IV. SAMPLE DATA THAT DEFENDANTS COLLECT—AND DELETE— ON NON-TIKTOK USERS (RFP NOS. 2, 7, 8, 10, 11, 13, 20, 21, 25)

### A. DOCUMENT REQUESTS AND RESPONSES IN DISPUTE

**REQUEST NO. 2:** DOCUMENTS CONCERNING the operation of the TIKTOK SDK, including but not limited to, DOCUMENTS sufficient to explain (a) the HASHING of any information transmitted through the TIKTOK SDK, (b) the process of how any HASHED information transmitted through the TIKTOK SDK can be DE-HASHED by TikTok, (c) each FIELD and category of information transmitted through the TIKTOK SDK, and (d) how the TIKTOK SDK interfaces with any FIRST PARTY COOKIES or THIRD PARTY COOKIES.

**RESPONSE TO REQUEST NO 2**: TikTok objects to the Request to the extent the documents sought contain Confidential Information, Privileged Information, or Private Information. TikTok objects to the Request because the phrases "operation of the TIKTOK SDK" and "interfaces with" are vague. TikTok objects to the Request because the information sought by (c) ("each FIELD and category of information transmitted through the TIKTOK SDK") is unduly burdensome as it is without reference to the customizable fields and categories that website owners utilizing the Pixel or Events API can set up, and thus it is not possible for TikTok to provide each

field and category of the information transmitted. TikTok objects to the Request as overly broad and unduly burdensome because there is no defined temporal scope and thus seeks discovery that is not relevant to any claims or defenses in this action and proportional to the needs of the case.

Subject to and without waiving any of the foregoing General and Specific Objections, TikTok will produce non-privileged documents concerning the operation of the Pixel and Events API.

**REQUEST NO. 7**: ALL DOCUMENTS CONCERNING YOUR collection of DATA from FIRST PARTY COOKIES that originate from THIRD PARTY WEBSITES that use the TIKTOK SDK.

**RESPONSE TO REQUEST NO. 7:** TikTok objects to the Request to the extent the documents sought contain Confidential Information, Privileged Information, or Private Information. TikTok objects to the Request because the phrase "originate from" is unclear; TikTok will construe the phrase to mean "are stored by." TikTok objects to the Request as overly broad and unduly burdensome because there is no defined temporal scope and thus seeks discovery that is not relevant to any claims or defenses in this action and proportional to the needs of the case. TikTok objects to the Request as overly broad and unduly burdensome because it seeks "ALL DOCUMENTS . . ." and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case. TikTok objects to the Request to the extent it seeks information regarding TikTok user data, as this action is limited to non-TikTok users.

Subject to and without waiving any of the foregoing General and Specific Objections, TikTok will produce any non-privileged responsive documents.

**REQUEST NO. 8:** ALL DOCUMENTS CONCERNING YOUR collection of DATA from THIRD PARTY COOKIES that originate from THIRD PARTY WEBSITES that use the TIKTOK SDK.

**RESPONSE TO REQUEST NO. 8:** TikTok objects to the Request to the extent the documents sought contain Confidential Information, Privileged Information, or Private Information. TikTok objects to the Request because the phrase "originate from" is unclear; TikTok will construe the phrase to mean "are stored by." TikTok objects to the Request as overly broad and unduly burdensome because there is no defined temporal scope and thus seeks discovery that is not relevant to any claims or defenses in this action and proportional to the needs of the case. TikTok objects to the Request as overly broad and unduly burdensome because it seeks "ALL DOCUMENTS . . ." and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case. TikTok objects to the Request to the extent it seeks information regarding TikTok user data, as this action is limited to non-TikTok users.

Subject to and without waiving any of the foregoing General and Specific Objections, TikTok will produce any non-privileged responsive documents.

**REQUEST NO. 10:** ALL DOCUMENTS CONCERNING YOUR collection of PLAINTIFFS' DATA collected through the "TikTok for Business" suite of products, services, and software tools, including DOCUMENTS sufficient to identify each FIELD of PLAINTIFFS' DATA collected.

**RESPONSE TO REQUEST NO. 10:** TikTok objects to the Request to the extent the documents sought contain Confidential Information, Privileged Information, or Private Information. TikTok objects to the Request as overly broad and unduly burdensome because it seeks documents concerning TikTok's collection of data through the "TikTok for Business" suite and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case. TikTok objects to the Request as overly broad and unduly burdensome because there is no defined temporal scope and thus seeks discovery that is not relevant to any claims or defenses in this action and proportional to the needs of the case. TikTok objects to the Request as overly broad and unduly burdensome because it seeks "ALL

8

DOCUMENTS . . ." and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case. TikTok objects to the Request to the extent it seeks information regarding TikTok user data, as this action is limited to non-TikTok users.

Subject to and without waiving any of the foregoing General and Specific Objections, TikTok is willing to meet and confer to narrow the Request.

**REQUEST NO. 11:** ALL DOCUMENTS CONCERNING YOUR collection of PLAINTIFFS' DATA through the "TikTok for Developers" suite of software products, including but not limited to: Login Kit, Share Kit, Content Posting API, Display API, Research API, Green Screen Kit, and any similar software, code, or algorithmic programming.

**RESPONSE TO REQUEST NO. 11:** TikTok objects to the Request to the extent the documents sought contain Confidential Information, Privileged Information, or Private Information. TikTok objects to the Request as overly broad and unduly burdensome because it seeks documents concerning TikTok's collection of data through the "TikTok for Developers" suite and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case. TikTok objects to the Request as overly broad and unduly burdensome because there is no defined temporal scope and thus seeks discovery that is not relevant to any claims or defenses in this action and proportional to the needs of the case. TikTok objects to the Request as overly broad and unduly burdensome because it seeks "ALL DOCUMENTS . . . " and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case. TikTok objects to the Request to the extent it seeks information regarding TikTok user data, as this action is limited to non-TikTok users.

Subject to and without waiving any of the foregoing General and Specific Objections, TikTok is willing to meet and confer to narrow the Request.

**REQUEST NO. 13:** DOCUMENTS sufficient to IDENTIFY ALL putative CLASS members, including all electronic or physical address information associated with putative CLASS members.

**RESPONSE TO REQUEST NO. 13:** TikTok objects to the Request to the extent the documents sought contain Confidential Information, Privileged Information, or Private Information. TikTok objects to the Request to the extent it seeks information not within TikTok's possession, custody, or control.

Subject to and without waiving any of the foregoing General and Specific Objections, TikTok will conduct a reasonable search and produce non-privileged responsive documents, if any exist.

**REQUEST NO. 20:** DOCUMENTS sufficient to IDENTIFY ALL of the PLAINTIFFS' DATA that YOU collected from THIRD PARTY WEBSITES that use the TIKTOK SDK, including but not limited to, ANY data logs.

**RESPONSE TO REQUEST NO. 20:** TikTok objects to the Request to the extent the documents sought contain Confidential Information, Privileged Information, or Private Information. TikTok objects to the Request as overly broad and unduly burdensome because there is no defined temporal scope and thus seeks discovery that is not relevant to any claims or defenses in this action and proportional to the needs of the case.

Subject to and without waiving any of the foregoing General and Specific Objections, TikTok will conduct a reasonable search and produce non-privileged responsive documents, if any exist.

**REQUEST NO. 21:** ALL DOCUMENTS CONCERNING ANY collection of PLAINTIFFS' personally identifiable information in connection with their use of THIRD PARTY WEBSITES that use the TIKTOK SDK.

**RESPONSE TO REQUEST NO. 21:** TikTok objects to the Request to the extent the documents sought contain Confidential Information, Privileged Information, or Private Information. TikTok objects to the Request because the phrase "personally

identifiable information" is vague and undefined. TikTok objects to the Request as overly broad and unduly burdensome because it seeks "ALL DOCUMENTS . . ." and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case. TikTok objects to the Request to the extent it seeks information regarding TikTok user data, as this action is limited to non-TikTok users. TikTok objects to the extent the Request is duplicative of Request No. 20. Subject to and without waiving any of the foregoing General and Specific Objections, TikTok will conduct a reasonable search and produce non-privileged responsive documents, if any exist.

**REQUEST NO. 25**: DOCUMENTS sufficient to IDENTIFY the FIELDS and categories of information collected by TIKTOK SDK.

**RESPONSE TO REQUEST NO. 25**: TikTok objects to the Request to the extent the documents sought contain Confidential Information, Privileged Information, or Private Information. TikTok objects to the Request as overly broad and unduly burdensome because there is no defined temporal scope and thus seeks discovery that is not relevant to any claims or defenses in this action and proportional to the needs of the case. TikTok objects to the Request as overly broad and unduly burdensome because it seeks the fields and categories of information collected without limitation and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case. TikTok objects to the Request to the extent it seeks information regarding TikTok user data, as this action is limited to non-TikTok users. TikTok objects to the Request to the extent it seeks information not within TikTok's possession, custody, or control.

Subject to and without waiving any of the foregoing General and Specific Objections, TikTok will produce non-privileged documents sufficient to identify the fields and categories of information that TikTok could receive from a third-party website's use of the Pixel or Events API.

**B.** **PLAINTIFFS' STATEMENT**

**1.** **Factual and Procedural Background**

Plaintiffs allege that Defendants use the TikTok SDK that is or has been installed on at least 500,000 non-TikTok websites to intercept and collect data on unassuming website visitors, including those who have never had a TikTok account. Plaintiffs seek to represent a class of non-TikTok users who have nonetheless had their personal data intercepted by Defendants. This case at its core is about that data on non-TikTok users intercepted through the TikTok SDK. Defendants refuse to produce that data, and documents identifying and describing that data, despite the fact that such data is at the heart of the case.

On June 27, 2023, Plaintiffs sent Defendants a comprehensive set of document requests, including requests 2(c), 7, 8, 10, 11, 13, 20, 21, and 25 seeking (1) documents concerning the data that Defendants are collecting on non-TikTok users through the TikTok SDK (RFP Nos. 7-8 and 10-11, 21), (2) documents sufficient to identify all of the Plaintiffs' data that Defendants collect through the TikTok SDK, including data logs (RFP No. 20) and each field and category of information transmitted through the TikTok SDK (RFP No. 2(c) and 25), and (3) documents sufficient to identify all putative class members (RFP No. 13). In response to seven of these nine requests, Defendants agreed that they would produce non-privileged, responsive documents. To date, they have not produced a single responsive internal, non-public document, including any of the data that they continue to collect on non-TikTok users with the TikTok SDK.

In addition to the RFPs, on August 25, Plaintiffs separately wrote to Defendants to ensure that they are appropriately preserving electronically stored information ("ESI") relevant to this case, including ESI to identify class members, ESI to identify the information Defendants collected from class members, and ESI to identify the ways in which Defendants used the information they collected. Ex. 2. Defendants confirmed, on August 30, that they had ***not*** been doing so. Specifically,

they stated that they regularly delete "data received from third-party websites that does *not* pertain to TikTok users." Ex. 3. Defendants further suggested that for them to discontinue that destruction of data, "the parties will need to meet and confer regarding appropriate cost-shifting," between Plaintiffs, five ordinary individuals, and ByteDance, a multinational corporation most recently valued at $223.5 billion.[2] *Id.*

In order to better understand the scope and implication of Defendants' ongoing destruction of relevant data, on September 6, Plaintiffs requested that Defendants provide a sample of non-TikTok user data that Defendants collected, generated, or processed on September 11. Ex. 4. Defendants promised that they would do so by September 29. Ex. 5. That date has come and long passed with no production from Defendants. On October 19, Defendants noted noncommittally that they "are working to provide a sample of the types of data that are deleted and will produce it as soon as reasonably possible." Ex. 7. Defendants have not done so.

In Defendants' latest communication on this issue, on October 27, Defendants admitted for the first time that there may be private, personally identifiable information in the supposedly unmatchable "garbage" data from non-TikTok users after all.[3] After insisting for months, ***including before the Court***, that the non-TikTok user data is of no consequence and used only to provide advertisers with information on what percentage of the overall collected data matched to TikTok users,[4] Defendants now represented that the production of sample data "requires time" because "given Plaintiff's privacy concerns in this litigation, [they are] taking extra

---

[2]    https://www.wsj.com/business/tiktok-parent-bytedance-turns-operating-profit-sees-revenue-slow-bb270bc8.

[3]  Defendants characterized non-TikTok user data as "garbage data" during the October 20 hearing before this Court. Oct. 20 Hrg Tr. at 36:24-25.

[4]  For instance, during the October 20 hearing before this Court, Defendants represented: "[I]n terms of our use of it, yes, we have aggregated reports that will let an advertiser know how many of the people who, let's say, did something on their website were TikTok users who saw their ad. That's it. There's no – ***you can't even tell anything about non-user data because you don't know who they are***." Oct. 20 Hrg Tr. at 36:14-19 (emphasis added).

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL

steps to ensure we can provide the information **consistent with data sharing controls**." Ex. 8 (emphasis added). As of the date of this filing, Defendants still have not produced any sample data and have failed to indicate that they have suspended the ongoing semi-monthly deletion of the overall data.

### 2. The Data that Defendants Collect on Non-TikTok Users Through the TikTok SDK Is Undisputedly Relevant.

This case is about the data that Defendants are collecting on non-TikTok users. That data itself—or at least for now a sample of that data—should be produced, as it is directly relevant to both class certification and trial. Indeed, that data itself may be the best evidence to identify potential class members and what exact information Defendants are collecting on class members. Defendants' latest communication— that "given Plaintiff's privacy concerns in this litigation, [they are] taking extra steps to ensure we can provide the information consistent with data sharing controls" (Ex. 8)—suggests that the non-TikTok user data may indeed contain personally identifying information and may identify potential class members. Given the central relevance of this data and in an effort to expedite discovery, Plaintiffs requested that Defendants produce just a small sample of that data, *i.e.* the non-TikTok user data that Defendants receive, generate, and process on just a single day. Defendants have failed to do even that, despite their promise to do so.

Through RFP 2(c) and 25, Plaintiffs further requested "each field and category of information transmitted through the TikTok SDK" and "documents sufficient to identify the fields and categories of information collected by TikTok SDK." And through RFP 20, Plaintiffs also requested—and Defendants agreed—that Defendants produce documents sufficient to identify all of the Plaintiffs' data that they collect through the TikTok SDK. In response to these requests, Defendants should produce, at minimum, all of the data fields and subfields received by TikTok, including TikTok's pre-set fields and subfields and HTTP fields and subfields.[5] Further, to the

---

[5] Defendants objected to Request 2(c) on the ground that websites can create customizable fields and categories while installing the Pixel and "thus it is not

14

extent that data fields and subfields have changed over the course of the class period, Defendants should identify what those changes are. These (current and historical) data fields are directly relevant because they allow Plaintiffs to identify and understand the categories of data that Defendants have collected on non-TikTok users through the TikTok SDK.

To date, Defendants have produced only a copy of their publicly available website on this issue,[6] see Ex. 7, but that website is inadequate for several reasons. First, that website indicates that the information contained in it is "deprecated," so it is not clear whether Defendants are pointing Plaintiffs to *current* information on the data collected. Second, even if they were guiding Plaintiffs to current information, this webpage merely lists the standard events that advertisers can add when configuring their Pixel and Events API. It does not list every data field and subfield that Defendants collect when advertisers add certain standard events, or the fields that Defendants collect when advertisers customize their own events. At bottom, despite receiving these discovery requests in June, Defendants have produced **zero** data that they are collecting on non-TikTok users and **zero** data fields to identify and describe the types and categories of data that they are collecting on non-TikTok users.

Defendants' obfuscation is all the more troubling because at the same time that Defendants have dragged their heels on producing this data, they have apparently been purging that data. In an October 20 hearing before this Court, Defendants stated that they are deleting this data every 14 days.[7] Oct 20 Hrg Tr. at 37:5. This means

---

possible for TikTok to provide each field and category of the information transmitted." Even if that is the case, Defendants should be able to identify at least each data field and subfield that is pre-set by TikTok or that constitute standard HTTP fields and subfields.

[6] https://ads.tiktok.com/gateway/docs/index?identify_key=2b9b4278e47b275f36e7c39a4af4ba067d088e031d5f5fe45d381559ac89ba48&language=ENGLISH&doc_id=1727541103358977#item-link-Example.

[7] There are outstanding questions, however, on what exactly Defendants mean by "deleting." For instance, it is not clear whether Defendants make copies of the data that is initially collected and whether such copies or downstream versions of data are also "deleted" when the initial copy is. Plaintiffs have issued additional document requests and interrogatories to Defendants on this issue.

15

that Defendants have already deleted—and continue to delete—data regarding their illegal interception during the pendency of this lawsuit. This failure to preserve directly contradicts Defendants' "duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." *National Assoc. of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557-58 (N.D. Cal. 1987). The ongoing nature of Defendants' deletion increases the urgency of Plaintiffs' request that Defendants produce sample data collected, generated, and processed on one day, so that Plaintiffs can fully assess the impact of Defendants' failure to preserve data undisputedly relevant to the case.

### 3.     Defendants' Burden Objections Are Meritless.

Defendants argue that they must delete the non-TikTok user data to "avoid the enormous cost of storing such an immense amount of data." Ex. 3. Of course, this burden exists only because Defendants have made the decision to continue collecting non-TikTok user data even after Plaintiffs filed this lawsuit. Defendants should not be permitted to both continue collecting and profiting from that collection and simultaneously destroy evidence of that collection and use, particularly where the Court has denied most of Defendants' motion to dismiss. "[D]efendants may not attempt to 'avoid a class suit merely because their own actions have made the class more difficult to identify [or locate].'" *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) (alteration in original). Defendants "should not be allowed to prevent class certification due to a record-keeping problem of its own making." *Frlekin v. Apple Inc.*, 309 F.R.D. 518, 526 (N.D. Cal. 2015).

Defendants' burden objections ring even more hollow because Defendants will not even produce the non-TikTok user data that they collect on a single day. Indeed, in light of Defendants' complaints about the "immense amount of data" that they themselves collect, Plaintiffs requested that Defendants at least provide the data that

they are collecting on one day. Despite the fact that Plaintiffs made this request on September 6, Defendants still have not done so. They blew through their own self-imposed deadline of September 29 to produce the data, *see* Ex. 5, and since then have offered only empty words that they "will provide an update as soon as reasonably possible," *see* Ex. 8.

Plaintiffs' request for this sample data easily satisfies Rule 26's proportionality test. Each relevant factor under the test weighs in Plaintiffs' favor.

The issues at stake are of public importance: This putative class action impacts the privacy rights of millions of individuals who do not have a TikTok account yet continue to have their personal data intercepted and collected by TikTok for TikTok's benefit. The case likely also will inform the actions of other large data companies that unlawfully collect information on unassuming Internet users.

The amount in controversy in this case is significant: While Plaintiffs have not yet specifically quantified damages, the putative class includes millions of Internet users on a nationwide scale. Further, under Plaintiffs' claim under the California Invasion of Privacy Act, which survived Defendants' motion to dismiss, a plaintiff has additional claims for damages for each separate communication that is intercepted, and each additional use of data wrongfully taken (or information derived from such data) is a new harm. *See* Cal. Pen. Code § 631(a). In light of this statutory damages scheme and the breadth of allegations involved, damages may be at least several tens of millions of dollars, if not hundreds of millions or more. The cost of the requested discovery is proportional to the significant amount in controversy. *See Milliner v. Mutual Secs., Inc.*, 2017 WL 6419275, at *3 (N.D. Cal. Mar. 24, 2017) (granting motion to compel where amount in controversy was "tens of millions of dollars"); *SEC v. Chen*, 2016 WL 3598108, at *5 (C.D. Cal. Feb. 4, 2016) (amount in controversy potentially exceeding $32 million was "significant").

Defendants Have Sole Access to the Requested Information: The data that Defendants collect on non-TikTok users is discovery that is exclusively in

1   Defendants' possession. There is no other source through which Plaintiffs can
2   acquire that data.

3   **4.    Relief Requested**

4   Plaintiffs respectfully request that the Court order Defendants to do the
5   following: *First*, produce, without alteration, all non-TikTok user data that they
6   collected, generated, and processed on September 11, 2023 or a date of the Court's
7   choosing. *Second*, identify all data logs, fields, and subfields received by Defendants
8   through non-TikTok websites that have the TikTok SDK installed, including
9   TikTok's pre-set fields and subfields and HTTP fields and subfields. Further, to the
10  extent that data fields and subfields have changed over the course of the class period,
11  Defendants should identify what those changes are. *Third*, suspend the deletion of
12  non-TikTok user data until further notice and at least until Plaintiffs have had a
13  chance to review the data that Defendants are collecting and assess the impact of its
14  deletion.

15  **C.    DEFENDANTS' STATEMENT**

16  Plaintiff seeks a sample of the unmatched, event-level data that TikTok
17  receives.  Based on their demand for this single document (which Defendants are in
18  the process of producing), Plaintiffs move to compel on nine different RFPs.  But
19  the data is not responsive to those RFPs.

20  As an initial matter, Plaintiffs' attempt to cast Defendants in a bad light is
21  intentionally misleading.  They claim that the requests date back to June but fail to
22  mention they were not served until July, or that Defendants' initial response was
23  not even due until August 10.  Plaintiffs did not raise any issues in a meet-and-
24  confer until August 24.  For the last two months, the parties have engaged in
25  numerous discussions in an effort to resolve these issues.  TikTok, as explained
26  below, has worked hard to get Plaintiffs the information they want, even though it
27  was not the proper subject of a discovery request.

28  Second, the requests at issue do not even ask for this data.  Seven of the RFPs

(Request Nos. 2, 7, 8, 10, 11, 21 and 25) seek entirely different categories of documents, all of which pertain to TikTok's process of collecting data, and Plaintiffs make no argument as to why their Motion should be granted as to those seven. Their attempt to shoehorn these requests into their Motion, without any argument as to relevance or factual background on those RFPs, should be rejected. *See Mier v. CVS Health*, 2021 WL 6102518, at *2 (C.D. Cal. Oct. 12, 2021) (denying motion to compel because plaintiff failed to carry his "burden of demonstrating the relevance" of the discovery sought).

The remaining two requests seek documents sufficient to identify all putative class members, and documents sufficient to identify all data collected from putative class members. The data Plaintiffs seek is not responsive because it cannot be used to identify any putative class member (or anyone at all) or the data belonging to those individuals. Defendants explained this to Plaintiffs in September: "When TikTok receives data from an advertiser via the Pixel, it may attempt to match that data to a specific user. . . . Without a match to a specific TikTok user, TikTok simply does not know who that data comes from. Because the email addresses and phone numbers that TikTok receives via the Pixel are hashed before receipt, TikTok cannot search for a specific email or phone number." Park Dec. Ex. 5. The data would be useless even in determining the size of the class: there is no way to know whether a website "event" relates to a non-TikTok user or simply does not have enough information to be matched to the appropriate TikTok user. Declaration of Zeno Du ("Du Dec.") ¶ 5.

Nor have Defendants conceded that there may be "private, personally identifiable information" in the data that is purged, as Plaintiffs suggest. The data controls Defendants referenced pertain to IP addresses and cookie IDs (not email, phone number, or anything else). *See id.* ¶ 3. IP addresses and cookie IDs do not themselves identify any specific person. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F. 3d 262, 283 (3d Cir. 2016) ("an IP address or a digital code in a

cookie file would likely be of little help in trying to identify an actual person"). They are thus unhelpful to Plaintiffs' goal of identifying putative class members. Even if that data cannot be used by itself by to identify any specific person, it may still be considered personal information under governing privacy laws because it is associated with (but cannot, on its own, identify) an individual. Thus, TikTok must maintain significant controls over that data. *See* Du Dec. ¶ 4.

Third, and in any event, TikTok has nonetheless agreed to produce the snapshot Plaintiffs want. *See* Park Dec. Ex. 8. Plaintiffs' motion to compel is thus moot. *See Burmayan*, 2023 WL 6783288 at *3; *Mass. Mut. Life Ins.*, 2020 WL 12016704 at *1. If Plaintiffs identify any issues with the document, TikTok is entitled to an opportunity to confer about the supposed problems. *See* L.R. 37-1 (requiring parties to confer before the filing of any motion).

Fourth, to the extent that Plaintiffs insist that Defendants retain and produce all of the data on a going-forward basis, that demand is burdensome—particularly in light of the fact that the data is not useful to Plaintiffs. On one recent day, TikTok received approximately 3,000 gigabytes of data. *See* Du Dec. ¶ 8. That amount is approximately equivalent to 1.8 million webpages or 1.05 billion text messages.[8] Storing that data requires corresponding server space. *See id.* Plaintiffs argue that "[e]ach relevant factor" under Rule 26's proportionality test weighs in their favor, but they omit several of those factors. Two of the omitted factors are "the importance of discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The underlying event-level data cannot "resolv[e] the issues" in this litigation; it cannot even be used to identify any single purported class member. And because it has no likely benefit, the burden of maintaining the data certainly outweighs any benefit.

---

[8]   *See* U.S. Mobile, *How Much Data is a Gigabyte*, available at https://www.usmobile.com/blog/how-much-is-a-gigabyte/.

This portion of the Motion should be denied as meritless and moot. *See Burmayan*, 2023 WL 6783288 at *3 (C.D. Cal. Aug. 28, 2023); *Mass. Mut. Life Ins. Co.*, 2020 WL 12016704 at *1.

## V.   DOCUMENTS ON CHANGES MADE TO DEFENDANTS' DATA COLLECTION PRACTICES VIA THE TIKTOK SDK (RFP NO. 38)

### A.   DOCUMENT REQUEST AND RESPONSE IN DISPUTE

**REQUEST NO. 38**: ALL DOCUMENTS CONCERNING ANY changes made by YOU to YOUR DATA collection practices as it relates to the TIKTOK SDK.

**RESPONSE TO REQUEST NO. 38**: TikTok objects to the Request to the extent the documents sought contain Confidential Information, Privileged Information, or Private Information. TikTok objects to the Request as overly broad and unduly burdensome because there is no defined temporal scope and thus seeks discovery that is not relevant to any claims or defenses in this action and proportional to the needs of the case. TikTok objects to the Request as overly broad and unduly burdensome because it seeks "ALL DOCUMENTS . . ." and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case.

Subject to and without waiving any of the foregoing General and Specific Objections, TikTok is willing to meet and confer to narrow the Request.

### B.   PLAINTIFFS' STATEMENT

#### 1.   Factual and Procedural Background

This request seeks documents on the ways in which Defendants have changed their data collection practices via the TikTok SDK since its initial release. Such documents include "release notes," which are technical documentation that developers routinely produce with the launch of a software update to detail the changes included in the update. Notwithstanding the clear relevance of these documents, Defendants lodged boilerplate objections to RFP No. 38 and sought to meet and confer. After the parties' conference on August 24, and as memorialized in Defendants' own September 6 correspondence, Defendants agreed to "search for release notes or update descriptions regarding the TikTok Pixel and TikTok Events

API, as well as related internal software that is used to process non-TikTok user data." Ex. 10. That did not happen.

On October 13, Plaintiffs requested an update from Defendants on the status of this production. On October 19, Defendants responded by pointing to three documents (which are just copies of their publicly available webpages) that they produced *before* their September 6 agreement to search for relevant documents. In other words, Defendants *retroactively* sought to designate copies of their publicly available webpages as the sum total of their responsive production to RFP No. 38. Ex. 7. Plaintiffs immediately responded by pointing out the incomplete nature of the three publicly available webpages and asking for the "investigation Defendants have done since September 6 to search for *internal* documents responsive to this request." *Id.* On October 24, Plaintiffs followed up again. Defendants noted that they would produce "responsive documents" about "Pixel and/or Events API updates" on or before November 6. Ex. 13. As of the date that Plaintiffs served their portion of this joint stipulation on Defendants, Defendants had not done so.

In sum, Defendants seek to discharge their discovery obligations by pointing to three publicly available webpages that simply do not provide the information for which Defendants themselves agreed to search.

### 2. The Requested Documents Are Relevant to Show How the TikTok Pixel Has Become More Invasive Over Time.

It is undisputed that the TikTok Pixel and Events API have changed since their first release. Release notes and update descriptions are thus relevant to show what those changes have been and what changes there have been to the data that Defendants have collected on non-TikTok users through the TikTok SDK. At least as to the Pixel, the documents are all the more relevant because Plaintiffs' investigation suggests that Defendants have designed the Pixel to become more invasive over time.

1    For example, the TikTok Pixel is designed by default to track any "PageView

2 event," which measures when any person lands on any webpage of the website that

3 has installed the Pixel.[9] Under the most current version of the Pixel, there is no way

4 for the website to remove or deselect the tracking of these PageView events.

5 However, and as alleged in the FAC, earlier iterations of the Pixel around 2021 also

6 pre-configured the Pixel with the default PageView event but appear to have given

7 websites the option to deselect it:



For instance, in 2021, TikTok published a tutorial on how to set up the TikTok Pixel.

That YouTube video shows a small trash can icon next to PageView, which indicates

that the website may have had the option to click on that icon to remove PageView.[10]

That Defendants have made the collection of PageView events a nonnegotiable

baseline is further significant because of the data fields that are collected when the

Pixel is configured to include PageView. These data fields include personally

identifying ones like user agent, the full-string URL of the webpage that the visitor

is viewing, referrer URL (which is the previously visited webpage), and user

language.

---

[9]    https://ads.tiktok.com/help/article/standard-events-parameters?lang=en    ("By
default, the pixel base code will always include page view events which measure
when a person lands on any of your webpages.").
[10] https://www.youtube.com/watch?v=_4jAJ0sVvGs.

This is just one example—which Plaintiffs have uncovered through public investigation—of how Defendants have not only changed the Pixel over time but also have made it more invasive of private data by decreasing the non-TikTok websites' autonomy to configure the Pixel as they see fit. Plaintiffs have more than met their burden to show the relevance of the documents sought, and the Court should order Defendants to produce all documents responsive to RFP No. 38 immediately.

The three publicly available webpages that Defendants have produced are woefully deficient and hardly discharge their obligations to produce responsive documents. The first is titled "Pixel Release Notes."[11] While this page appears to feature *some* information on the changes that Defendants have made to the Pixel, it is incomplete, as evinced by the fact that it does not disclose the changes that Defendants have made to prevent non-TikTok websites from removing or deselecting the default PageView event as explained above. The second webpage is titled "Changelog" and shows the dates on which Events API 1.0 and Events API 2.0 were introduced and includes just one sentence on one difference between the two versions.[12] Finally, the third webpage is titled "What's New" and features short descriptions of changes made across numerous products in the TikTok for Business suite of products.[13] Even setting aside the extremely short descriptions of updates, this webpage is incomplete and insufficient to fulfill Defendants' obligations as to RFP 38 because it goes back only to August 2022, even though Defendants released the Pixel in 2020. Finally, Defendants agreed to search for release notes and update descriptions not only about the Pixel and Events API but also "related internal software that is used to process non-TikTok user data." The three publicly available webpages feature no information at all on the internal software.

Defendants have continually made updates to the Pixel and Events API, including making it more invasive of private data. Documents identifying and

---

[11] https://ads.tiktok.com/help/article/pixel-release-notes?lang=en.
[12] https://business-api.tiktok.com/portal/docs?id=1771101231937537.
[13] https://business-api.tiktok.com/portal/docs?id=1740029165513730&rid=gm7ye53gj793.

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL

describing these changes—including release notes, update descriptions, product design documents, launch documents, and other such documents that describe in detail the changes and how those changes are implemented—are indisputably relevant. Defendants have already stated that they would search for such documents. Having agreed to do so, Defendants should be required to search their files for and produce relevant documents.

### 3.   The Discovery Sought Is Proportional to the Needs of the Case.

All of the factors discussed above with regard to the proportionality of the discovery request apply here. *See supra* at Sec. IV.B.3. The issues at stake in this case are important, the amount in controversy is significant, and Defendants have exclusive access to documents on the changes that they themselves made to their data collection practices via the TikTok SDK.

### C.   DEFENDANTS' STATEMENT

Plaintiffs asked for documents concerning changes to the tools at issue, and agreed during the meet-and-confer process that this request could be satisfied by go-get documents (rather than a comprehensive keyword search) consisting of release notes and update descriptions.  Park Dec. Ex. 9 at 4.  Defendants have never agreed to produce "all" documents on this topic, nor would such a request be appropriately tailored.  Defendants produced the best documents they could find on this topic, which happen to be publicly available.  That does not make them any less responsive. Plaintiffs assert they are looking for "release notes."  Defendants produced a document entitled Pixel Release Notes, a portion of which is below[14]:

---

[14] *See* Declaration of Sophia M. Mancall-Bitel ("Mancall-Bitel Dec.") Ex.1.

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL

**Pixel Release Notes**

**August 29, 2023**

TikTok is introducing a new front-end user experience in Events Manager to encourage best practices when creating a Pixel and/or setting up web events. The goal of the new flow is to provide an educational and user friendly design to encourage you to setup the key events and parameters needed to achieve success. To learn more about the new flow, see our Get Started with Pixel page.

**July 6, 2023**

**Enhance Data Postback with the TikTok Pixel**

TikTok is improving the functionality of pixels by collecting and using landing page information such as metadata and button clicks. This new information will, in the future, enable TikTok to provide recommendations on how to enhance your pixel event setup and even offer automated solutions. This data may also be used to personalize ad campaigns for people on TikTok and improve TikTok's ad delivery systems. Learn more about Enhance Data Postback.

Changelog

The latest Events API version is: **v2.0**

Available Events API Versions

The table below lists the specific deprecation dates for each version of Events API.
To learn about the changelog for Marketing API versions, refer to Timelines.

| Version | Date introduced | Available until | Supported by Marketing API versions | Versioned changes |
|---|---|---|---|---|
| Events API 2.0 | July 18, 2023 | TBD | v1.3 | Compared with the six Events API 1.0 endpoints (/pixel/track/, /pixel/batch/, /offline/track/, /offline/batch/, /app/track/, and /app/batch/), the Events API 2.0 endpoint /event/track/ provides a unified API schema for reporting events from all sources, including web, app, and offline, helping advertisers simplify and streamline their integration. |
| Events API 1.0 | August 15, 2022 | H2 2024 | v1.3 & v1.2 | / |

Similarly, with respect to Events API (a tool that is not even covered by Plaintiffs' complaint), Defendants produced an Events API Changelog identifying the two versions of Events API that have existed since the tool was introduced (the last of which was only introduced on July 18) and describing the changes made[15]:

Changelog

The latest Events API version is: **v2.0**

Available Events API Versions

The table below lists the specific deprecation dates for each version of Events API.
To learn about the changelog for Marketing API versions, refer to Timelines.

| Version | Date introduced | Available until | Supported by Marketing API versions | Versioned changes |
|---|---|---|---|---|
| Events API 2.0 | July 18, 2023 | TBD | v1.3 | Compared with the six Events API 1.0 endpoints (/pixel/track/, /pixel/batch/, /offline/track/, /offline/batch/, /app/track/, and /app/batch/), the Events API 2.0 endpoint /event/track/ provides a unified API schema for reporting events from all sources, including web, app, and offline, helping advertisers simplify and streamline their integration. |
| Events API 1.0 | August 15, 2022 | H2 2024 | v1.3 & v1.2 | / |

Plaintiffs speculate that these documents are incomplete, but they can of course ask follow-up questions about the documents, including whether any updates are not reflected, during depositions.

Nevertheless, given Plaintiffs' demand that TikTok search for internal documents, TikTok has done so. On October 27, Defendants informed Plaintiffs that they would produce on November 6 internal documents reflecting updates to the software at issue. *See* Ex. 13. Plaintiffs admit this but note that as of the date they

---

[15] *See* Mancall-Bitel Dec. Ex. 2.

served their portion of this Stipulation, Defendants had not produced the documents. Of course not: Plaintiffs served their draft on November 1.

This portion of the Motion should be denied as moot.[16] *Burmayan*, 2023 WL 6783288 at *3 (C.D. Cal. Aug. 28, 2023); *Mass. Mut. Life Ins. Co.*, 2020 WL 12016704 at *1.

## VI. HISTORICAL PIXEL SETTINGS FOR WEBSITES ENUMERATED IN FIRST AMENDED COMPLAINT (RFP NO. 37)

### A. DOCUMENT REQUEST AND RESPONSE IN DISPUTE

**REQUEST NO. 37:** ALL DOCUMENTS CONCERNING ANY efforts by THIRD PARTY WEBSITES to limit YOUR collection of PLAINTIFFS' DATA, including but not limited to, the actual, potential, or anticipated impact on YOU.

**RESPONSE TO REQUEST NO. 37:** TikTok objects to the Request to the extent the documents sought contain Confidential Information, Privileged Information, or Private Information. TikTok objects to the Request because the phrase "ANY efforts" is vague. TikTok objects to the Request as overly broad and unduly burdensome because there is no defined temporal scope and thus seeks discovery that is not relevant to any claims or defenses in this action and proportional to the needs of the case. TikTok objects to the Request as overly broad and unduly burdensome because it seeks "ALL DOCUMENTS . . ." and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case.

Subject to and without waiving any of the foregoing General and Specific Objections, TikTok is willing to meet and confer to narrow and ascertain the meaning of the Request.

### B. PLAINTIFFS' STATEMENT

#### 1. Factual and Procedural Background

Request No. 37 seeks documents on efforts by non-TikTok websites that

---

[16] Defendants do not address Plaintiffs' speculation about changes to the software herein because it is irrelevant. This should not be construed as an admission as to the accuracy of that speculation.

installed the Pixel and/or Events API to limit the amount of non-TikTok user data collected through those trackers. As a starting point for such documents, during the parties' August 24 conference, the parties agreed that Defendants should first investigate the feasibility of compiling which data collection settings these non-TikTok websites agreed to and when. Ex. 9. After Plaintiffs continued to follow up for this information, *see* Ex. 11, Defendants provided an update on September 28 that they had thus far identified "only one way to find historical Pixel settings, but it is highly burdensome, as it requires an individual Pixel-by-Pixel review which would number in the thousands at least." Ex. 12. Defendants then added that they "are inquiring as to whether there is a single-source location for this information." *Id.*

Another month (and numerous follow-ups from Plaintiffs) passed before Defendants provided another update that they "have not been able to identify any single-source location for historical Pixel settings across advertisers." Ex. 7. In light of Defendants' stated burden concerns, during an October 23 conference between the parties, Plaintiffs asked whether Defendants would produce historical Pixel settings for a prioritized set of 50 or 100 non-TikTok websites compiled by Plaintiffs. Defendants countered that they would consider doing so just for the 18 non-TikTok websites expressly identified in the FAC.[17] Ex. 13. On October 27, Plaintiffs followed up for confirmation that Defendants would agree to their own suggestion of producing historical Pixel settings just for the FAC-identified websites. *Id.* To date, Defendants have failed to respond.

### 2.    The documents sought are relevant and proportional to the needs of the case.

The historical Pixel settings are relevant for the same reason that the release notes and update descriptions (sought above in Section V) are relevant: They allow

---

[17] Those 18 websites are Girl Scouts, WebMD, Rite Aid, Recovery Centers of America, Cerebral, The Vitamin Shoppe, Weight Watchers, Planned Parenthood Federation of America, SmartAsset, Happy Money, United Methodist Church, COVID-19 information page of the Maryland Department of Health, Arizona Department of Economic Security, Hulu, Etsy, Build-a-Bear Workshop, Upwork, and Feeding America.

28

Plaintiffs to investigate how the TikTok Pixel has changed over time and what changes there have been to the data that Defendants have intercepted and collected from non-TikTok users through the Pixel. As noted above, Plaintiffs' public investigation suggestions that Defendants likely made the Pixel more invasive of private data over time by taking away the option for non-TikTok websites to remove or deselect the tracking of the PageView event. The historical Pixel settings of specific non-TikTok websites further allow Plaintiffs to investigate these changes.

In response to Defendants' stated burden objections, Plaintiffs have already significantly compromised to initially seek the historical Pixel settings of only those non-TikTok websites referenced in the FAC. That constitutes only 18 websites out of the over 500,000 that have or had the Pixel installed. While the Court has not bifurcated individual and class discovery in this case, Defendants cannot even object to this request as prematurely seeking class discovery because, at least for now, Plaintiffs seek historical Pixel settings for only those websites that are expressly identified in the FAC.

Finally, Defendants are the most appropriate, if not the sole, party from which Plaintiffs can obtain this information. Defendants in the past have told Plaintiffs that Plaintiffs can investigate the non-TikTok websites that have the Pixel installed by visiting every website on the Internet and studying each of its public code. Here, Defendants cannot even make such a flippant suggestion because the public code would not reveal the Pixel settings that the non-TikTok website had *previously* or *historically* adopted. Further, while Defendants may insist that Plaintiffs should seek this information by issuing 18 different third-party subpoenas, it is unclear whether these websites themselves would have this historical data. And even if these websites did have such data, the cost of TikTok, a single party, producing the information is much lower than Plaintiffs having to subpoena 18 different third parties, negotiating with them, and having each of those 18 separate entities investigate their systems and documents to see if they have this information. The Court should order Defendants

1    to immediately produce the historical Pixel settings.

2          **C.    DEFENDANTS' STATEMENT**

3          The lone request Plaintiffs identify does not call for the category of documents

4    they seek: historical Pixel settings for the 18 websites identified in the First Amended

5    Complaint.  Defendants' attempts to cooperate with Plaintiffs to provide potentially

6    relevant information during discovery should not be confused with an admission that

7    the documents Plaintiffs seek are responsive to Request No. 37.  Defendants did not

8    agree, in their R&Os, to produce documents in response to Request No. 37.  In fact,

9    as their response demonstrates, they did not even understand the meaning of Request

10   No. 37.  That is because, as Plaintiffs allege in their complaint, it is the websites

11   themselves who choose to install the Pixel and configure it to collect the data they

12   want.  *See* ECF No. 63 ¶¶ 45 (websites install the Pixel), 52 (websites configure the

13   Pixel to choose the events, or website actions, they want to collect).  Thus, if websites

14   want to "limit" collection of data through the Pixel, they will simply uninstall it or

15   reconfigure it to collect less data.  Defendants explained this on the parties' August

16   24 conference.  If any documents did exist about efforts by individual websites to

17   "limit" the collection of data through the Pixel, it would be the websites—not

18   TikTok—who would have those documents.  Defendants' attempt to work with

19   Plaintiffs to identify what else might be relevant does not absolve Plaintiffs of their

20   obligation to seek documents through the means permitted under Rule 34.

21         Plaintiffs know that Request No. 37 does not cover Pixel settings, because they

22   propounded a new request seeking exactly these documents.  *See* Mancall-Bitel Dec.

23   Ex. 3.  Plaintiffs do not even acknowledge that request in their Motion, despite having

24   served it the day before they served their portion of this Stipulation.  *See* Mancall-

25   Bitel Dec. Ex. 4.  TikTok is working to identify responsive documents for the new

26   request, but its response to this request is not due until November 30, *see* Fed. R. Civ.

27   P. 34(b)(2)(A), and it requires that time to investigate and collect relevant documents.

28

Plaintiffs' Motion on this topic is meritless and premature, so it should be denied. *See Garces*, 2021 WL 978540 at *1.

Dated: November 9, 2023

By: /s/ *Y. Gloria Park*

Ekwan E. Rhow (CA SBN 174604)
Marc E. Masters (CA SBN 208375)
Christopher J. Lee (CA SBN 322140)
**BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
erhow@birdmarella.com
mmasters@birdmarella.com
clee@birdmarella.com

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
**GLANCY PRONGAY & MURRAY,
LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (pro hac vice)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (310) 336-8340
gpark@susmangodfrey.com

*Attorneys for Plaintiffs*

1

By: /s/ Sophia M. Mancall-Bitel

2

3

Victor Jih, State Bar No. 186515
Email: vjih@wsgr.com
Sophia M. Mancall-Bitel, State Bar No.
337002
Email: smancallbitel@wsgr.com
**WILSON SONSINI GOODRICH &
ROSATI**
Professional Corporation
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329

4

5

6

7

8

9

Anthony J Weibell, State Bar 238850
Email: aweibell@wsgr.com
**WILSON SONSINI GOODRICH &
ROSATI**
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile:(866) 974-7329

10

11

12

13

14

*Attorneys for Defendants
TikTok Inc. and ByteDance Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28