Ekwan E. Rhow (CA SBN 174604)
erhow@birdmarella.com
Marc E. Masters (CA SBN 208375)
mmasters@birdmarella.com
Christopher J. Lee (CA SBN 322140)
clee@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (pro hac vice)
GLANCY PRONGAY & MURRAY, LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Ave. of the Americas
32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
gpark@susmangodfrey.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNADINE GRIFFITH; PATRICIA SHIH; RHONDA IRVIN; MATTHEW RAUCH; JACOB WATTERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TIKTOK, INC., a corporation; BYTEDANCE, INC., a corporation<br><br>Defendants. | Case No. 5:23-cv-00964-SB-E<br><br>**DISCOVERY MATTER**<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY REGARDING THE DATA COLLECTED ON NON-TIKTOK USERS AND CHANGES MADE TO THE TIKTOK SDK**<br><br>Magistrate Judge: Hon. Charles Eick<br>Date/Time: Dec. 8, 2023 at 9:30 AM<br>Place: Courtroom 750<br>255 East Temple St., Los Angeles, CA 90012<br><br>Discovery Cutoff Date: 5/10/24<br>Pretrial Conference Date: 9/13/24<br>Trial Date: 9/30/24 |

1  For the reasons explained in Plaintiffs' portions of the joint stipulation (Dkt. 74-1) and for the additional reasons discussed below, Plaintiffs respectfully request that the Court order Defendants to produce documents responsive to Plaintiffs' requests within seven days of the Court's adjudication of this motion.

## I. Sample Data that Defendants Collect on Non-TikTok Users

As Defendants have done since September when Plaintiffs first requested a sampling of the data they collect, generate, and/or process on non-TikTok users, Defendants continue to take inconsistent, ever-shifting positions. As noted in the parties' joint stipulation, Defendants promised to provide a sample of non-TikTok user data that they collect, generate, and/or process on a single day by September 29. They failed to do so. Now they make new excuses for why they haven't produced a single byte of data in the two months since their promised deadline.

Defendants acknowledge that they have "agreed to produce the snapshot Plaintiffs want" (Dkt. 74-1 at 4, 20), yet simultaneously make a host of excuses, including through the Zeno Du Declaration, on why they should not have to. Each excuse is meritless. *First*, Defendants argue that there is no RFP that precisely asks for the single-day sample data requested. But Defendants wholly ignore that this request, as explained in Plaintiffs' portion of the joint stipulation, is the product of negotiation about Defendants' destruction of non-TikTok user data and a significant *compromise* from Plaintiffs in response to Defendants' complaints that it would be infeasible to produce the "immense amount of data" that they collect. Dkt. 74-1, at 1-2, 16. Plaintiffs should not be punished for negotiating with Defendants in good faith and proposing that they should start by producing sample data from one day so that Plaintiffs can better assess the implications of Defendants' data destruction.

*Second*, the Du Declaration notes that "[t]he data TikTok receives cannot be used, **on its own**, to identify any individual" and that "cookie ID, **by itself**, [cannot] identify any person." Dkt. 74-4 at ¶ 3. But Plaintiffs have never alleged that the data collected or the cookie ID **on their own** can identify non-TikTok users. The First

Amended Complaint specifically alleges that Defendants can associate data collected with personally identifying information of non-TikTok users through "digital fingerprinting" techniques. Dkt. 63 at ¶¶ 66-67. Further, this excuse is precisely why Plaintiffs have requested that Defendants produce not just the non-TikTok user data that is *collected* on a single day but also such data that is *generated* or *processed* on a single day. The request covers all data that is generated (*e.g.*, new data created by combining non-TikTok user data collected with other information) and processed (*e.g.*, all copies of the data that is initially collected for downstream uses). *See also* Dkt. 74-1 at 15 n.7 (raising questions about what exactly Defendants are "deleting" and whether that deletion encompasses "all copies of the data that is initially collected and whether such copies or downstream versions of data are also 'deleted' when the initial copy is").

*Third*, the Du Declaration inconsistently states IP addresses are not "used to identify individuals on their own" yet are "considered personal information under certain privacy laws." Dkt. 74-4 at ¶ 4. First, this statement is an admission about the personally identifying nature of the non-TikTok user data collected through the SDK and its relevance to "national security interests."[1] Second, these supposed privacy concerns presumably existed in September when Defendants promised to produce the sample data by September 29. Defendants don't explain why they didn't account for these supposed concerns when they themselves set (and blew though) that deadline. Defendants also provide no information on any new deadline by which they will produce the sample data.

*Fourth*, the Du Declaration notes that TikTok deletes "all data that cannot be matched with an existing TikTok user within 30 days of receiving it" in part to "protect[] non-users' privacy." Once again, this statement contradicts prior positions that Defendants have taken before this Court that non-TikTok user data is not

---

[1] Defendants have taken a contradictory position in their pending motion to dismiss the First Amended Complaint, arguing that the TikTok SDK collects no personally identifying information and that their conduct poses no threat to public health and safety. *See* Dkt. 71.

personally identifying. If non-TikTok user data is not personally identifying, then how does deleting that data protect non-users' privacy? Defendants fail to explain.

*Finally*, the Du Declaration notes that the amount of Pixel data that TikTok received in one day was approximately 3,000 gigabytes. How much of this data constitutes non-TikTok user data? How much of this data do they "delete" as not matchable? Defendants do not say.

The Du Declaration continues the trend of Defendants making inconsistent statements to delay the production of undisputedly relevant data. At bottom, as Defendants themselves admit, they have agreed to produce the non-TikTok user data that they collect, generate, and/or process on one day, and they agreed to do so by September 29. Given Defendants' refusal to meet self-imposed deadlines, Plaintiffs respectfully request that the Court set a deadline and order Defendants to produce the data within seven days of the Court's adjudication of this motion.

## II. Identification of All Data Logs, Fields, and Subfields Received by Defendants Through Non-TikTok Websites with TikTok SDK Installed

Defendants' portion of the joint stipulation does not address Plaintiffs' request that they "identify all data logs, fields, and subfields received by Defendants through non-TikTok websites that have the TikTok SDK installed, including TikTok's pre-set fields and subfields and HTTP fields and subfields." Dkt. 74-1 at 18. As detailed in the joint stipulation, Plaintiffs served RFP 25 requesting this information, and Defendants responded that they "will produce non-privileged documents sufficient to identify the fields and categories of information that TikTok could receive from a third-party website's use of the Pixel or Events API." *Id.* at 11, 14-15.

Plaintiffs further explained how the single document Defendants have produced (a copy of their publicly available website) is inadequate, at least because the document indicates that the information contained in it is "deprecated" and because it lists the standard events that advertisers can add when configuring their Pixel and Events API but "does not list every data field and subfield that Defendants

collect when advertisers add certain standard events, or the fields that Defendants collect when advertisers customize their own events." *Id.* at 15.

Given that Defendants have nothing to say at all in response to this undisputedly relevant and narrowly tailored request, Plaintiffs respectfully request that the Court order Defendants to immediately produce responsive documents.

### III. Changes to Defendants' Data Collection Practices Via the TikTok SDK

On November 6, Defendants produced one document that contains a timeline showing certain updates to the TikTok Pixel. However, this RFP covered changes made not only to the Pixel but also to the Events API and related internal software that is used to process non-TikTok user data. Dkt. 74-1 at 21-22. To date, with regard to Events API, Defendants have produced merely a single publicly available website that shows the dates on which Events API 1.0 and Events API 2.0 were introduced and includes a single sentence on one difference between the versions. *Id.* at 24. With regard to related internal software used to process non-TikTok user data, Defendants have produced zero documents.

Defendants' portion of the joint stipulation also misrepresents the parties' meet and confer history. Plaintiffs never agreed that "this request could be satisfied by go-get documents," Dkt. 74-1 at 25, and the exhibit that Defendants point to for this incorrect statement clarifies that "[o]nce Defendants produce this information, the parties agreed to further meet and confer on this request." Park Ex. 9 at 4. In any event, Defendants haven't even produced the "go-get documents" they themselves admit they agreed to produce. Plaintiffs respectfully request that the Court order Defendants to produce documents identifying and describing changes to the Pixel, Events API, and related data-processing software, including release notes, update descriptions, product design documents, launch documents, and other documents that describe in detail the changes and how those changes are implemented.

### IV. Historical Pixel Settings for Websites in First Amended Complaint

Defendants seek to rewrite history and to penalize Plaintiffs for meeting and

conferring in good faith to narrow discovery disputes and facilitate production. As Defendants acknowledge, RFP 37 seeks documents on efforts by non-TikTok websites that use the Pixel and/or Events API to limit the amount of data collected through those trackers. During the August 24 conference, the parties agreed that Defendants should first investigate the feasibility of compiling which data collection settings the websites agreed to and when. This agreement is documented in Defendants' own correspondence. *See, e.g.*, Park Ex. 12 (Defendants' counsel S. Hsu providing update on investigation on "Historical Pixel Settings (RFP No. 37)"). The rationale behind initially limiting RFP No. 37 to documents on historical pixel settings was that non-TikTok websites may have changed their settings over time to decrease the amount of data collected through the TikTok SDK. Further, it was to accommodate Defendants' protests that there would supposedly be too many communications or emails from non-TikTok websites to Defendants on this topic.

Months later, when Defendants complained that the only way to find historical Pixel settings would be "highly burdensome," Plaintiffs compromised and asked Defendants initially to produce those settings for just the 18 websites identified in the FAC. Dkt. 74-1 at 28. In light of Defendants' failure to respond to even that compromise request, Plaintiffs simultaneously moved to compel and issued a new RFP to minimize the possibility that Defendants renege on the months of negotiations on RFP 37. As feared, Defendants are doing exactly that by feigning ignorance on how the *broader* RFP 37 encompasses the *narrower* set of documents that Plaintiffs have requested. Defendants now take the position that the responsive documents exist and that they are "working to identify" them, but that they will hold back production until November 30. Dkt. 74-1 at 30. The Court should not tolerate such gamesmanship and delay. If Defendants will not honor the parties' RFP 37 negotiations, then Plaintiffs respectfully request that the Court order Defendants to produce all documents responsive to RFP 37, which includes all communications from websites to Defendants about limiting the collection of non-TikTok user data.

| | |
|---|---|
| Dated: November 22, 2023 | By: /s/ *Y. Gloria Park* |

Ekwan E. Rhow (CA SBN 174604)
Marc E. Masters (CA SBN 208375)
Christopher J. Lee (CA SBN 322140)
**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
erhow@birdmarella.com
mmasters@birdmarella.com
clee@birdmarella.com

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
**GLANCY PRONGAY & MURRAY, LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (pro hac vice)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (310) 336-8340
gpark@susmangodfrey.com

*Attorneys for Plaintiff Bernadine Griffith*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Plaintiffs certifies that this brief contains 1,711 words, which complies with the word limit of L.R. 11-6.1.

Dated:  November 22, 2023                By: /s/ Y. Gloria Park
                                             Y. Gloria Park