## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BERNADINE GRIFFITH et al.,<br><br>     Plaintiffs,<br><br>v.<br><br>TIKTOK, INC. et al.,<br><br>     Defendants. | Case No. 5:23-cv-00964-SB-E<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT [DKT. NO. 71] |

     In this putative class action, Plaintiffs allege that Defendants TikTok, Inc. and ByteDance, Inc.'s use of software to collect information from non-TikTok users when they visit third-party websites violates privacy protections under federal and California law.  The Court largely denied Defendants' motion to dismiss the original complaint but granted the motion as to two causes of action and granted leave to amend.  Defendants now move to dismiss all the claims in Plaintiffs' First Amended Complaint (FAC), devoting most of their attention to the claims the Court already found plausibly alleged.  Dkt. No. 71.  The Court finds this matter suitable for decision without oral argument and vacates the December 15, 2023 motion hearing.  Fed. R. Civ. P. 78; L.R. 7-15.  Because Defendants have not shown that the new allegations in the FAC render the previously upheld claims implausible, the Court largely denies the motion.  However, the motion is granted in part as to Plaintiffs' claims for violations of the federal Computer Fraud and Abuse Act (CFAA) and the California Unfair Competition Law (UCL), which Plaintiffs still have not plausibly alleged, and as to their claim for unjust enrichment, which is not an independent cause of action.

I.

In her original complaint, Plaintiff Bernadine Griffith alleged claims against Defendants TikTok, Inc. and ByteDance, Inc. for (1) violation of the California Invasion of Privacy Act (CIPA), (2) violation of the CFAA, (3) statutory larceny in violation of §§ 484 and 496 of the California Penal Code, (4) conversion, (5) violation of the UCL, (6) invasion of privacy in violation of the California Constitution, and (7) intrusion upon seclusion.  Dkt. No. 1.  The Court's 19-page order on Defendants' motion to dismiss the complaint described Griffith's allegations and discussed the merits of her claims in detail.  Dkt. No. 59.  The Court assumes familiarity with that order and declines to repeat its description of the complaint here.  After reviewing the parties' thorough briefing and holding a hearing, the Court concluded that Griffith had adequately stated a plausible claim in each of Counts 1, 3, 4, 6, and 7, but dismissed her claims for violations of the CFAA and UCL in Counts 2 and 5 with leave to amend.  *Id.*

The FAC not only realleges Griffith's dismissed claims but also adds four new Plaintiffs, two new causes of action, additional putative classes and subclasses, and further factual allegations to support Plaintiffs' claims.  Dkt. No. 63.  The Court briefly summarizes the significant additions.

The FAC provides clarification about the TikTok software development kit (SDK), which includes both the Pixel and Events API software, used to collect website visitors' data.  *Id.* ¶ 1 n.1.  Plaintiffs allege that the TikTok Pixel intercepts and collects private data from the websites on which it is installed even when the websites do not run ads with TikTok.  *Id.* ¶ 46.  By default, the Pixel will always collect and transmit to Defendants the full-string URLs of website visitors, and Defendants have eliminated the option for websites to disable this function.  *Id.* ¶¶ 47–48.  The Pixel also automatically transmits other data to Defendants, including timestamps, information about the user's device, the previously visited website, and saved event information about the user's visit to the website.  *Id.* ¶ 49.  Defendants encourage websites to configure the Pixel to collect and send data for other events including adding payment information, completing registration, adding items to carts or wish lists, placing orders, and submitting forms.  *Id.* ¶ 52.

Defendants' Events API software is installed on websites' servers, rather than on the websites themselves, which allows the overriding of visitors' attempts to block cookies.  *Id.* ¶ 58.  Defendants recommend that websites use both Pixel and Events API.  *Id.* ¶ 59.  At least 500,000 websites have installed the TikTok SDK.  *Id.* ¶ 60.  The FAC includes additional allegations describing concerns

expressed by government officials and in media reporting on the possible national security threat posed by TikTok's vast collection of private data and its close connection to the Chinese government. *Id*. ¶¶ 28, 30–37, 62–65.  Plaintiffs allege that TikTok has intercepted and collected visitors' data from potentially sensitive websites including sites related to personal health, sites involving sensitive financial information, religious websites, websites that may disclose the activities of minors, and even some government websites. *Id*. ¶ 69.  Plaintiffs also bolster their allegations about the economic value of users' data and allege that, in recent years, the rise in automated data harvesting has caused a decline in traditional avenues for collecting consumer data such as surveys. *Id*. ¶¶ 82–86.

All four newly added Plaintiffs have never been a registered user of the TikTok app or held any TikTok account because of concerns that TikTok would violate their privacy.  *Id*. ¶¶ 117, 126, 132, 140.  Plaintiff Patricia Shih is a California resident who works remotely as a consultant for the Florida Department of Transportation.  *Id*. ¶¶ 117–18.  For her work, which has provided her with some access to the Department's internal network and transportation management infrastructure, Shih was required to obtain clearance by passing an exam and a background check.  *Id*. ¶ 118.  Shih is conscious about her online privacy, has enabled the "do not track" function on both her browsers, and blocks third-party cookies and other trackers, but the TikTok SDK circumvents these protections by transmuting its third-party cookies into first-party cookies.  *Id*. ¶ 123.  Unbeknownst to Shih at the time, several websites she uses have collected information about her through the TikTok SDK.  In particular, she alleges that TikTok has obtained information about (1) services and job offers for which she searched on Upwork, a website for freelancers of which she is a member, (2) television shows she searched for on Hulu, and (3) products she searched and browsed for on Etsy.  *Id*. ¶¶ 120–22.

Plaintiff Rhonda Irvin is a California resident who is conscious about her online privacy and uses McAfee security software.  *Id*. ¶¶ 126, 129.  She has frequently visited The Vitamin Shoppe's website to search for, browse, and purchase health supplements.  *Id*. ¶ 128.  She alleges that through the TikTok SDK, Defendants obtained information about the health supplements she purchased and searched for, and she alleges on information and belief that the information was personally identifiable.  *Id*.

Plaintiff Jacob Watters is an Illinois resident who blocks third-party cookies when browsing the internet and has enabled the "do not track" function.  *Id*. ¶¶ 140, 143.  He alleges that Defendants obtained his private data, including

information on the services and job offers he searched or browsed for and the videos he viewed on the Upwork website. *Id*. ¶ 142.

The final new Plaintiff, Matthew Rauch, is a Texas resident whose data was collected by the TikTok SDK on the websites of Rite Aid, The Vitamin Shoppe, and the nonprofit organization Feeding America. *Id*. ¶¶ 132–36. After the conclusion of briefing on Defendants' motion to dismiss, Rauch voluntarily dismissed his claims. Dkt. No. 80.

Besides adding the other Plaintiffs, the FAC adds new allegations about Griffith, including that she has searched for medications on Ride Aid's pharmacy, that Defendants through the TikTok SDK obtained her private data including the medications she had searched for, and—on information and belief—that the information was personally identifiable. Dkt. No. 63 ¶ 110.

Three Plaintiffs also allege that they have marketed or attempted to market their private data in various ways during the class period. Griffith participated in paid focus groups and surveys about consumer products like appliances and dog food. *Id*. ¶ 115. Shih participated for compensation in several phone surveys seeking to rate effectiveness of advertisements and learn consumer preferences on products such as wine, pet products, and vacuum cleaners. *Id*. ¶ 124. Watters has signed up for several consumer surveys but has not yet been selected to participate. *Id*. ¶ 144. Plaintiffs allege that the value of their participation in these focus groups and surveys has been diminished because Defendants have made available extensive information about their consumer preferences and activity without compensation. *Id*. ¶¶ 115, 124, 144.

Besides the two classes and two subclasses asserted in the original complaint, the FAC adds 8 new classes: a nationwide class of non-users of TikTok who visited each of the seven specific websites identified in the FAC (Rite Aid, Hulu, Etsy, Build-a-Bear Workshop, Upwork, Vitamin Shoppe, and Feeding America) and a "Nationwide ECPA Class" for non-users of TikTok who visited a website with the TikTok Pixel installed but without "Search" configured as an optional event. *Id*. ¶ 148.[1] Plaintiffs also assert a California subclass for each of the eight new nationwide classes. *Id*.

---

[1] Following Rauch's voluntary dismissal of his claims, there is no longer any named Plaintiff who appears to be part of the proposed Feeding America class.

The FAC reasserts with no material changes the five causes of action that the Court previously held were plausibly alleged:  violation of CIPA, statutory larceny, conversion, invasion of privacy, and intrusion upon seclusion.  *Id.* ¶¶ 159–70, 178–89, 199–219.  It also realleges violations of the CFAA and UCL, *id.* ¶¶ 173–77, 190–98, and adds new claims for violation of the Electronic Communication Privacy Act (ECPA) and for unjust enrichment, *id.* ¶¶ 220–41.  Defendants move to dismiss all nine causes of action for failure to state a claim.  Dkt. No. 71.

## II.

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In resolving a Rule 12(b)(6) motion, a court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  Assuming the veracity of well-pleaded factual allegations, a court must "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.  There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.*

## III.

### A.

Defendants devote most of their motion to arguing for dismissal of the five claims the Court previously found had been adequately pleaded.  In large part, Defendants repeat arguments that the Court has already rejected.  Defendants raise several theories for why the Court should dismiss the claims it previously upheld, none of which is persuasive.  First, they assert that the claims of the newly added Plaintiffs have not yet been adjudicated.  But the allegations in Counts 1, 3, 4, 6, and 7 are materially identical to those in the original complaint; they do little more than change "Plaintiff" to "Plaintiffs."  And the factual allegations specific to the new Plaintiffs are similar to those alleged by Griffith in the original complaint.  Thus, if the allegations plausibly state a claim as to Griffith (as the Court found), they likewise state a claim as to the newly added Plaintiffs.

5

Defendants also urge the Court to reconsider its rulings on the plausibility of Griffith's claims, both because of the new allegations that apply to Griffith and to avoid inconsistent rulings on the assumption that the Court will dismiss the claims of the new Plaintiffs.  Defendants suggest that the newly alleged facts—particularly those describing how the Pixel functions—clarify that Plaintiffs' claims are implausible.  The Court is unpersuaded that the newly alleged facts differ materially from those it found adequate in the original complaint or that they undermine the plausibility of Plaintiffs' allegations.  Although Defendants attempt to avoid saying so, the thrust of their arguments is that the Court was wrong in denying their first motion to dismiss, not that the FAC is materially different from the original complaint.  For example, the arguments they raise to distinguish *In re Facebook, Inc. Internet Tracking Litig.* (*Facebook Tracking*), 956 F.3d 589 (9th Cir. 2020), are the same ones the Court previously rejected.  Dkt. No. 59 at 7–9.  Defendants' repetition of these arguments does not persuade the Court that it should depart from its prior rulings.

To the extent Defendants have raised new arguments for dismissal of the previously upheld claims, they are likewise unpersuasive.  Several of Defendants' arguments rest on mischaracterizations of Plaintiffs' pleadings, by contending, for example, that the FAC does not identify any sensitive information disclosed by Plaintiffs.  *Cf., e.g.*, Dkt. No. 63 ¶ 110 (alleging that Defendants obtained through the TikTok SDK personally identifiable information on what medications Griffith searched for on the Rite Aid website).  Defendants' suggestion that Plaintiffs lack Article III standing is likewise unavailing; Plaintiffs do not allege the mere violation of a statute but rather that Defendants have collected without authorization their private browsing data—at least some of which is alleged to be personally identifiable.

In sum, Defendants' renewed challenges to Counts 1, 3, 4, 6, and 7 largely rehash, with minor refinements, the arguments the Court has already considered at length and rejected.  The Court expresses no opinion as to whether these claims will ultimately prevail after discovery, but its conclusion that Plaintiffs' allegations are sufficient at this early stage remains.[2]  Defendants' motion is denied as to these claims.

---

[2] Defendants fault Plaintiffs for not providing even more detailed allegations about the content of their searches, the specific URLs they visited, and the information that TikTok collected, suggesting in their reply brief that "[t]his is not a tall order.  Plaintiffs know what websites they visited and search terms they entered."  Dkt.

B.

The Court held that Griffith's original complaint failed to state a claim for violation of the CFAA in Count 2.  The Court concluded that the placement of cookies on Griffith's computer could violate the CFAA but that she had not alleged the type of harm required for a private cause of action.  As the Court explained, the CFAA permits a private cause of action by a person who "suffers damage or loss" as a result of a CFAA violation, but only if the conduct involves one of the factors set forth in § 1030(c)(4)(A)(i)(I)–(V).  18 U.S.C. § 1030(g).  In response to Defendants' first motion to dismiss, Griffith invoked two of these factors, contending that Defendants' conduct caused "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value" and "a threat to public health or safety."  *Id.* § 1030(c)(4)(A)(i)(I), (IV).  The Court found her allegations insufficient as to both.  Dkt. No. 59 at 13–14.

Plaintiffs now invoke only the latter factor, contending that Defendants' collection of data through the TikTok SDK poses a threat to public health or safety.  Plaintiffs advance two theories for why they have plausibly alleged a threat to health or safety.  First, they note that the Court dismissed Griffith's CFAA claim in part because she "does not allege that she is a federal employe[e] or contractor," *id.* at 14, whereas the newly added Plaintiff Shih works remotely as a consultant for the Florida Department of Transportation (FDOT), Dkt. No. 63 ¶ 118.  The Court's quoted language addressed Griffith's reliance on President Trump's 2020 statement that the use of TikTok potentially threatened to allow China to "track the locations of Federal employees and contractors, build dossiers of personal information for blackmail, and conduct corporate espionage."  Dkt. No. 59 at 13 (quoting complaint).  The Court did not suggest, much less hold, that Defendants' obtaining of any data from any government contractor would pose a threat to health or safety.  Nor do Plaintiffs cite legal authority holding that obtaining information about a person's internet browsing activity necessarily constitutes a threat to public health or safety within the meaning of the CFAA if the person is

---

No. 79 at 8.  Plaintiffs have identified the websites they visited, and it is not obvious to the Court that individuals should be expected to remember the precise search terms they entered or the URLs of the resulting pages, particularly when some of the browsing activity took place months or even years ago.  Regardless, Defendants have not shown that the specific search terms or URLs are required to state a plausible claim.

7

employed by the government, regardless of the nature of the person's work and of the information collected.  While the FAC alleges that Shih was required to pass a background check and has limited access to the FDOT's network and transportation management infrastructure, it does not suggest that Defendants have obtained access to those resources through the TikTok SDK or otherwise.  Dkt. No. 63 ¶ 118.  To the extent Plaintiffs suggest that Defendants may provide the information they have collected about Shih to the Chinese government for use in blackmailing Shih to obtain access, they have not alleged facts plausibly suggesting that the job offers she searched for on Upwork, the television shows she browsed on Hulu, or the products she viewed on Etsy would subject her to blackmail (even assuming the Chinese government was able to link the data to Shih).  The Court need not—and does not—decide what allegations about collection of data from government workers might be sufficient to state a plausible CFAA claim based on a threat to public health or safety.  The allegations about Shih plainly are not.

Plaintiffs' second theory is broader.  In the FAC, they have added allegations about concerns expressed by senators and other government officials that TikTok's collection of "sensitive information of tens of millions of American users" threatens national security.  *Id*. ¶¶ 28–35.  Plaintiffs allege that "Defendants' mass collection of private data from ordinary Americans poses a unique national security threat due to the fact that Defendants are effectively controlled by the Chinese government" and that the threat "exists on the aggregate level" because "the more the Chinese government knows about the behaviors and opinions of ordinary Americans, the more effectively it can influence the behaviors and opinions of the American public as a whole."  *Id*. ¶ 36.

Plaintiffs cite no legal authority suggesting that the collection of the type of data identified in the FAC from ordinary Americans constitutes "a threat to public health or safety" within the meaning of § 1030(c)(4)(A)(i)(IV).  Nor do Plaintiffs cite any authority to support their suggestion that because China's collection of all Americans' data in the aggregate may pose a threat to national security, every American can assert that the collection of his or her data (no matter the nature of the data) threatens public health or safety under the CFAA.  Indeed, Plaintiffs' opposition devotes two pages to this issue without citing a single case finding a threat to health or safety.  Dkt. No. 75 at 16–18.  In the absence of legal authority supporting the view that the law sweeps that broadly, Plaintiffs have not stated a claim for a CFAA violation.  Count 2 is therefore dismissed.

C.

The Court dismissed Griffith's UCL claim in the original complaint because she had not adequately alleged facts that met the UCL's heightened standing requirements. As the Court explained, the UCL "requires that a plaintiff have 'lost money or property' to have standing to sue," which requires the plaintiff to "demonstrate some form of economic injury." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011). This requirement was enacted "to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant." *Id.* at 321 (cleaned up). The UCL's requirement of economic injury "renders standing under [the UCL] substantially narrower than federal standing under article III, section 2 of the United States Constitution, which may be predicated on a broader range of injuries." *Id.* at 324.

The Ninth Circuit has found that allegations that a defendant's disclosure of information "can be used to obtain personal information about plaintiffs, and that they were harmed both by the dissemination of their personal information and by losing the sales value of that information" were insufficient to establish UCL standing. *In re Facebook Priv. Litig.*, 572 F. App'x 494, 494 (9th Cir. 2014) ("We affirm the district court's dismissal of plaintiffs' UCL claim because plaintiffs failed to allege that they 'lost money or property as a result of the unfair competition.'"). In its order on Defendants' first motion to dismiss, the Court—after reviewing more than half a dozen cases—held that "[i]n the absence of allegations that [Griffith] incurred actual financial losses, for example because she wished to sell her browsing data but was unable to do so or would be paid less for the data, she has not plausibly alleged economic injury for purposes of UCL standing." Dkt. No. 59 at 18–19.

Plaintiffs now argue that the FAC plausibly alleges a UCL claim because it adds allegations that (1) Griffith and Shih marketed their private data in the past by participating in paid focus groups and surveys, (2) Waters has signed up to participate in surveys in the past, and (3) Defendants' data collection makes Plaintiffs' private data less valuable. But the allegations in the FAC do not plausibly suggest that the collection of these Plaintiffs' data prevented them from selling it to someone else or from obtaining the full price they would otherwise be paid for it. To be sure, Plaintiffs allege that "[t]he traditional avenues [of consumer data collection], such as surveys, have experienced a decline" as they have been replaced by automated data harvesting like that done by the TikTok

9

SDK.  Dkt. No. 63 ¶ 84.  But to the extent Plaintiffs may be harmed by the decreased availability of surveys and focus groups that would pay for their participation, that decreased availability is—as the FAC acknowledges—the result of a societal shift in the methods of data collection more broadly.  Plaintiffs do not allege that the TikTok SDK is solely, or even primarily, responsible for this shift, much less that the disclosure of the named Plaintiffs' information caused a material change in the data collection market.  *See id.* (alleging that the shift is attributable to "market conditions" resulting in increased real-time data harvesting "through various online platforms").

Griffith, Shih, and Waters do not plausibly allege that any of the entities conducting surveys in which they wished to participate learned that TikTok had acquired information about their internet browsing activity and either declined to let them participate in a survey or paid them less than they would have otherwise received as a result of Defendants' use of the TikTok SDK.  In the absence of such allegations, their conclusory assertion that "[t]he value of [their] participation in these focus groups and surveys has been diminished due to the fact that Defendants make available extensive information about [their] consumer preferences and activity without compensating [them] in any way," *id.* ¶¶ 115, 124, is speculative and does not plausibly show that Plaintiffs lost money or property.  *See, e.g.*, *Schwartz v. Provident Life & Accident Ins. Co.*, 216 Cal. App. 4th 607, 613 (2013) (finding no UCL standing where claimed injury was purely speculative).

Because Plaintiffs still have not plausibly alleged that Defendants' use of the TikTok SDK to collect information about their browsing history caused them to lose money or property within the meaning of the UCL, their UCL claim in Count 5 is dismissed.

## D.

Defendants' brief argument for dismissal of Plaintiffs' new ECPA claim is entirely derivative; Defendants merely assert that the ECPA claim is analyzed under the same standard as CIPA and fails for the same reasons.  Because the Court concludes that Plaintiffs have stated a plausible claim for violation of CIPA in Count 1 of the FAC, Defendants have not shown that Plaintiffs' ECPA claim in Count 8 should be dismissed.

E.

Finally, Defendants move to dismiss Plaintiffs' claim for unjust enrichment in Count 9, arguing that California does not recognize unjust enrichment as an independent cause of action.  The Court agrees.  The Ninth Circuit explained in _Astiana v. Hain Celestial Grp., Inc._ that "in California, there is not a standalone cause of action for 'unjust enrichment.'"  783 F.3d 753, 762 (9th Cir. 2015) (citing _Durell v. Sharp Healthcare_, 183 Cal. App. 4th 1350, 1370 (2010); _Jogani v. Superior Court_, 165 Cal. App. 4th 901, 911 (2008)).  This conclusion finds ample support in other federal and California decisions.  _See, e.g._, _Baiul-Farina v. Lemire_, 804 F. App'x 533, 537 (9th Cir. 2020) ("'[U]njust enrichment is not a cause of action' under California law.") (quoting _McBride v. Boughton_, 123 Cal. App. 4th 379, 387 (2004)); _Blue Wing Airlines Fin. v. Unical Aviation, Inc. & Platinum Equity_, No. 8:22-CV-02052-JVS, 2023 WL 3149276, at *2 n.2 (C.D. Cal. Mar. 8, 2023) ("[T]he Court follows the more widely accepted principle that there is no separate cause of action for unjust enrichment.").

Plaintiffs rely on _ESG Cap. Partners, LP v. Stratos_, 828 F.3d 1023, 1038 (9th Cir. 2016), which described California case law on the issue as "unsettled" and held that the allegations in that case were sufficient to state a claim as either a quasi-contract claim for restitution or a cause of action for unjust enrichment.  In reaching this conclusion, _ESG_ relied on _Astiana_ for the proposition that "this Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract."  _Id_.  Where, as here, Plaintiffs make no suggestion that their unjust enrichment claim presents a viable quasi-contract theory of recovery, the Court declines to read _EGL_ as displacing _Astiana_'s general rule that there is no independent cause of action for unjust enrichment under California law.  Accordingly, Plaintiffs' claim for unjust enrichment is dismissed.

IV.

In their opposition, Plaintiffs conclusorily request leave to amend if the Court determines that the motion to dismiss should be granted.  Dkt. No. 75 at 22.  "The court should freely grant leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave may be denied, however, for reasons such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  _Foman v. Davis_, 371 U.S. 178, 182 (1962).  "The district court's discretion to deny leave to amend is particularly broad where plaintiff has

previously amended the complaint." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

The Court has found deficient only three of Plaintiffs' claims in the FAC. In light of the Court's conclusion that unjust enrichment is not a viable independent cause of action, amendment to reassert a standalone claim for unjust enrichment would be futile. As for Plaintiffs' CFAA and UCL claims, the Court has now found twice that Plaintiffs have not plausibly violations of those statutes. Plaintiffs have not identified any new facts they could allege in a Second Amended Complaint that would cure the deficiencies they have already attempted unsuccessfully to cure. The Court therefore declines to grant leave to amend on this record. However, if Plaintiffs wish to pursue their CFAA and UCL claims and believe they have a good-faith basis to do so consistent with the Court's rulings on the requirements for those claims, the Court will allow them until December 29, 2023 to file a noticed motion for leave to amend that explains why amendment would not be futile.

V.

Defendants' motion to dismiss Plaintiffs' complaint is GRANTED IN PART, and Plaintiffs' claims in Counts 2, 5, and 9 for violations of the CFAA and the UCL and for unjust enrichment are DISMISSED for failure to state a claim. The motion is otherwise DENIED. Defendants shall answer the FAC within ten days after entry of this order. Plaintiffs may file a noticed motion for leave to amend no later than December 29, 2023. If no such motion is filed by December 29, 2023, the dismissal of Plaintiffs' claims in Counts 2, 6, and 9 will be with prejudice as to the named Plaintiffs.

Date: December 13, 2023

_____
Stanley Blumenfeld, Jr.
United States District Judge