Ekwan E. Rhow (CA SBN 174604)
  erhow@birdmarella.com
Marc E. Masters (CA SBN 208375)
  mmasters@birdmarella.com
Christopher J. Lee (CA SBN 322140)
  clee@birdmarella.com
BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (pro hac vice)
GLANCY PRONGAY & MURRAY,
LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Ave. of the Americas
32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
gpark@susmangodfrey.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNADINE GRIFFITH; PATRICIA SHIH; RHONDA IRVIN; JACOB WATTERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TIKTOK, INC., a corporation; BYTEDANCE, INC., a corporation<br><br>Defendants. | Case No. 5:23-cv-00964-SB-E<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO ENFORCE NOVEMBER 27, 2023 COURT ORDER ON ONE-DAY SAMPLE DATA AND FOR EVIDENTIARY SANCTIONS**<br><br>Magistrate Judge: Hon. Charles Eick<br>Date/Time: Mar. 15, 2024 at 9:30 AM<br>Place: Courtroom 750<br>255 East Temple St., Los Angeles, CA 90012<br><br>Discovery Cutoff Date: 8/23/24<br>Pretrial Conference Date: 11/08/24<br>Trial Date: 11/25/24 |

1

## **TABLE OF CONTENTS**

2

**Page**

3

I.      PLAINTIFFS' PRELIMINARY STATEMENT ................................................. 1

4

II.     DEFENDANTS' PRELIMINARY STATEMENT ............................................. 4

5

III.    PLAINTIFFS' BACKGROUND ....................................................................... 8

6

     A.      Plaintiffs' Motions to Compel ............................................................... 8

7

     B.      Court Order Granting Plaintiffs' Motion to Compel .............................. 9

8

     C.      Defendants' Failure to Comply with Court's Order and Plaintiffs' Efforts to Seek Court-Ordered Data ...................................................................... 9

9

IV.     DEFENDANTS' BACKGROUND .................................................................. 13

10

V.      PLAINTIFFS' ARGUMENT ........................................................................... 14

11

     A.      The Court Order Required Defendants to Produce Generated Data. ..... 15

12

     B.      The Court Order Required Defendants to Produce All Data by December 11, 2023 ....................................................................................................... 17

13

14

     C.      Defendants' Failure to Comply with the Court Order Is Unfairly Prejudicial ...... 17

15

     D.      The Court Should Impose an Evidentiary Sanction with Regard to the 69 Data Fields for Which No Values Were Produced. ...................................... 18

16

17

VI.     DEFENDANTS' ARGUMENT ....................................................................... 19

18

     A.      Defendants Do Not Have "Generated" Data to Produce ...................... 20

19

     B.      Defendants Produced the Data It Had for November 30, 2023 ............ 21

20

     C.      Plaintiffs Have Not Been Prejudiced .................................................... 22

21

     D.      Plaintiffs Are Not Entitled to Sanctions ............................................... 23

22

VII.    PLAINTIFFS' CONCLUSION ....................................................................... 24

23

VIII.   DEFENDANTS' CONCLUSION .................................................................... 24

24

25

26

27

28

JOINT STIPULATION RE MOTION TO ENFORCE COURT ORDER AND FOR EVIDENTIARY SANCTIONS

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**Cases**

4

*Adriana Int'l Corp. v. Thoeren*,
   913 F.2d 1406 (9th Cir. 1990)................................................................. 22

5

6

*Astellas Pharma, Inc. v. Impax Lab'ys, Inc.*,
   No. C 08-3466 JW (RS), 2009 WL 2392166 (N.D. Cal. Aug. 4, 2009)................................ 21

7

8

*Blake v. Godfrey*,
   2023 WL 8168828 (C.D. Cal. Nov. 13, 2023) (Eick, J.) ........................................ 20

9

*In re Farris-Ellison*,
   2022 WL 4539517 (Bankr. C.D. Cal. Sept. 28, 2022)........................................... 21

10

11

*Henderson v. JPMorgan Chase Bank*,
   2017 WL 11680967 (C.D. Cal. May 1, 2017) ................................................. 14

12

13

*Hullinger v. Anand*,
   2016 WL 7444620 (C.D. Cal. Aug. 19, 2016), *review denied, case remanded,*
   2016 WL 7444623 (C.D. Cal. Oct. 12, 2016).............................. 15, 17, 18, 23

14

15

*United States ex rel. Humane Soc'y of the United States v. Westland/Hallmark Meat Co.*,
   2012 WL 12886501 (C.D. Cal. Sept. 26, 2012)................................................ 21

16

17

*Johnson v. Cate*,
   No. 1:10-CV-02348-LJO, 2014 WL 6607260 (E.D. Cal. Nov. 19, 2014)........................... 19

18

19

*MGA Ent., Inc. v. Nat'l Prod. Ltd.*,
   2011 WL 4550287 (C.D. Cal. Oct. 3, 2011) ............................................. 19, 20

20

*Monster Energy Co. v. Vital Pharms.*,
   2021 U.S. Dist. LEXIS 205554 (C.D. Cal. Oct. 12, 2021) ..................................... 19

21

22

*Owens v. Degazio*,
   2020 U.S. Dist. LEXIS 4635 (E.D. Cal. Jan. 10, 2020)....................................... 21

23

24

*Philippe Charriol Int'l Ltd. v. A'Lor Int'l Ltd.*,
   2016 U.S. Dist. LEXIS 13734 (S.D. Cal. Feb. 4, 2016) ...................................... 22

25

*Piatt v. Goldsmith*,
   940 F.2d 669 (9th Cir. 1991)................................................................ 21

26

27

*Rosenblum v. Blackstone*,
   No. CV 18-966-JVS(E), 2020 WL 8515207 (C.D. Cal. Feb. 28, 2020)................................ 18

28

*Sure Safe Indus. Inc. v. C & R Pier Mfg.*,
   152 F.R.D. 625 (S.D. Cal. 1993)........................................................................................ 19

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*,
   2007 WL 2758571 (C.D. Cal. Sept. 18, 2007)......................................................... 18

**Rules**

Fed. R. Civ. P. 30(b)(6)............................................................................................... 13, 22

Fed. R. Civ. P. 37(b)(2)(A) ......................................................................................... 3, 17

## I.      PLAINTIFFS' PRELIMINARY STATEMENT

This case involves Defendants TikTok, Inc.'s and ByteDance, Inc.'s deployment of the TikTok Pixel and TikTok Events API (together, "TikTok SDK") on hundreds of thousands of non-TikTok third-party websites to intercept and collect the personal data of millions of Americans, including those who have never had a TikTok account and had no reason to believe that Defendants would intercept their data. The putative classes and subclasses involve all natural persons in the United States (or California for the subclass) who visited any of these hundreds of thousands of non-TikTok websites and who have no TikTok accounts or registration. Dkt. 63, at ¶ 147.

On November 27, 2023, this Court ordered Defendants to produce, within two weeks of that order, "[a] sample of non-TikTok user data that Defendants collect, generate, and process on a single day." Dkt. 74. Today, more than two months after that Court Order, Defendants still have not complied. They have produced only a sliver of the data that they collected from non-TikTok users on a day of its choosing: November 30, 2023. By Defendants' own acknowledgement, their production fails to include data from Android and desktop devices, fails to include data from custom events that Defendants allow websites using the TikTok SDK to configure, and fails to include actual values in 69 of the 121 data fields that Defendants identified as having been collected from non-TikTok users through the TikTok SDK. These 69 data fields, which contain "null" or "0" values—as opposed to actual, meaningful values—include fields called "email" and "phone number," *i.e.*, personally identifying information, even if hashed. In the parties' extensive meet-and-confer process leading up to this motion, Defendants also introduced a belated interpretation of the Court Order to argue that it did not require Defendants to produce "generated" data at all. The Court should not tolerate Defendants' misinterpretation of the Court Order, which is contrary to the plain language of the Order as well as the parties' briefing resulting in the Order.

Defendants make certain new excuses for their noncompliance that they never raised during the meet and confer process for the first time in this joint stipulation. All of the new excuses strain credulity. ***First***, Defendants do not dispute that they failed to produce data from Android and desktop devices but speculate that this absence may be "some quirk idiosyncratic to that day." *See infra* at p.5. Of course, Defendants are the ones that chose November 30, 2023 as the day from which to produce (incomplete) sample data and should answer why they chose that day from which to produce (incomplete) data. But even if less-than-usual data was collected on that date, are Defendants really suggesting to the Court that not a single non-TikTok user visited one of the hundreds of thousands of websites that use the TikTok SDK from an Android phone or from their desktop computer?

***Second***, Defendants do not dispute that they failed to produce any values for 69 of the 121 data fields for which they collect data and try to shift blame to advertisers, noting that "[i]f an advertiser chooses not to collect data, then those fields would naturally be 'null' or 'zero.'" *See infra* at p.6. If Defendants are really seeking to hide behind this excuse, they should explain whether the same data fields collected from TikTok users on that day are also "null" or "zero" and, if not, (1) how advertisers could be collecting certain data from TikTok users while not collecting those same categories of data from non-TikTok users and (2) why Defendants even collect non-TikTok user data along with user data in the first place given their representations to the Court that non-user data is "garbage." *See* Oct. 20, 2023 Hr'g Tr. (attached as Park Ex. 8) at 36:25 (Defendants' counsel referring to non-TikTok user data as "garbage"). Any suggestion that advertisers can collect data from TikTok users without collecting those same fields of data from non-TikTok users would directly contradict Defendants' earlier representations to the Court. *See* Sept. 8, 2023 Hr'g Tr. (attached as Park Ex. 9) at 31:2-10 (Defendants' counsel representing to Judge Blumenfeld that it is "impossible" for Defendants not to collect non-TikTok user data and that there is no way to know whether data is from

a TikTok user or not without first collecting it).

**Third**, Defendants state for the first time that they will "re-design and re-run another query, produce both matched and unmatched data, and to devolve and produce it in its 'raw' form as well," *see infra* at 14, but provide no date by when they will actually do so, notwithstanding Plaintiffs' noticed 30(b)(6) deposition date of March 7, 2024 and class certification motion due on May 2, 2024. Defendants represent that they will produce additional information "imminently," *see infra* at 7, but Defendants have been saying so since last year, including in a December 28, 2023 Court filing. *See* Dkt. 84, at 2.  This is the same gamesmanship that Defendants engaged in when they insisted that they would "imminently" produce a list of websites that use the TikTok SDK but did not do so until ordered by the Court. *See* Dkt. 64.

At bottom, Defendants repeat that they produced all non-TikTok user data, but with a critical qualification—"***identified through Defendants' query***." *See, e.g.*, *infra* at p.20. The Court should order Defendants to produce that query so that Plaintiffs can assess how the query that Defendants designed to apply to their own data could have failed to capture such large swaths of data that the Court ordered Defendants to produce last year.

Plaintiffs have been significantly prejudiced by Defendants' failure to comply with the Court Order. Plaintiffs respectfully request that this Court find that Defendants have failed to comply with the November 27, 2023 Court Order and order Defendants to comply within one week of its ruling on this motion. With regard to the 69 fields of data for which Defendants have failed to produce actual values, Plaintiffs further request that the Court impose an evidentiary sanction, pursuant to Rule 37(b)(2)(A)(i) of the Federal Rules of Civil Procedure, and deem as established (for purposes of this action) that Defendants collect from non-TikTok users information corresponding to those fields.

## II.   DEFENDANTS' PRELIMINARY STATEMENT

TikTok complied with the Court's order to produce "[a] sample of non-TikTok user data that Defendants collect, generate, and process on a single day" by December 11, 2023.  Nov. 27, 2023 Order.  TikTok chose a recent date—November 30, 2023—and produced over three million rows of data with 121 data fields.  Because that volume of data could not be contained in a single usable spreadsheet, TikTok produced three spreadsheets totaling 312MB in size.

To comply with the Order, TikTok was required to develop a new query that would extract any unmatched data that may exist in TikTok's database for a particular date.  Wei Decl. at ¶ 2.  This new query was run against the data exactly as it was found in TikTok's systems, without modification.  *See id.* at ¶ 3.  Defendants understood the Court's order to require the production of the data in that form.  TikTok did not separately gather "collected," "generated" or "processed" data, because it understood its task to gather all types of user data it had.  The only filtering done was to segregate unmatched from matched data, given the Court's order to produce the "non-TikTok user data."  No other manipulation, exclusions or redactions were applied.  *See id.*  It is not surprising that this data may not be readily usable, is incomplete, or contains irregularities.  TikTok produced the data it had.  It made no effort to alter or "clean up" the data it produced.  Because TikTok does not seek to capture or use non-TikTok user data in its business, it invests no resources into the completeness, consistency, or integrity of data it simply discards.

Plaintiffs, however, claim every potential anomaly is a refusal to comply and should be deemed contempt.  Not so.  Defendants went to great lengths to fully and timely comply with the Court's order.  Plaintiffs ultimately identify four purported deficiencies that are the basis of the present motion.  None have merit:

(1)   Generated Data.  Plaintiffs' attempt to create a dispute over the production of "generated" data is a false issue.  As explained above, Defendants did not separately search for and produce data depending on its classification as

"collected," "generated" or "processed."  Defendants had no reason to debate what those terms mean or the categorization of any data.  Defendants produced <u>all</u> non-TikTok user data they had for November 30, 2023.  There was no refusal to produce.  There was no "generated" data in the spreadsheets because TikTok does not generate data for non-TikTok users.  Defendants have told Plaintiffs at least three times that there is no such data to produce.  During the meet and confer discussions, it became apparent Plaintiffs were not seeking "generated" data, but were trying to broadly reach all evidence that had anything to do with data.  That goes far beyond the Court's order at issue here and is already the subject of separate document requests concerning TikTok's "use" of the data (*e.g.*, samples of the reports advertisers can run have been produced pursuant to these requests).

(2)   <u>Missing Devices</u>.  Plaintiffs claim that there was no data for certain devices such as Android phones and desktop computers.  Defendants produced the data they had; there was no exclusion or redaction before production.  Defendants confirmed that to Plaintiffs during their January 17, 2024 meet and confer.  Defendants cannot explain why this data appears this way, because this is not data that TikTok uses for its business.  Defendants are still investigating whether the absence of certain device data is a function of differences between the devices, harvesting the data mid-stream while TikTok's routine data processes were still being applied, or some quirk idiosyncratic to that day.  Regardless, Defendants produced all the data they had from that day in the form it was kept.  That data may in some ways not be readily usable, but that is because it is data that Defendants do not use.  Defendants can only produce what they have, in the way it was kept.

(3)   <u>Null or Zero Values</u>.  The November 30 production includes fields that have "null" or "zero" values.  Again, this data was extracted from TikTok's systems without modification.  There was no attempt to redact or delete unmatched data for purposes of this production.  Nor is it surprising that some fields contain "null" or "zero" values.  TikTok does not normally use unmatched data for its business, and

there is no effort to obtain or maintain complete data—especially since the advertisers ultimately control what data to analyze depending on how they implement the Pixel into the pages of their websites.  If an advertiser chooses not to collect data, then those fields would naturally be "null" or "zero."  To the extent Plaintiffs have questions about "whether the same data fields . . . are also 'null' or 'zero'" for TikTok users, Defendants are producing the raw data to Plaintiffs and they can assess for themselves.

(4)   Custom Events.  Defendants did not exclude data from custom events.  As explained in TikTok's public documentation, advertisers can use the standard events that TikTok has pre-configured or custom events that advertisers create.  Depending on what an advertiser is interested in, they are free to use events they see fit.  They can use standard events in custom ways, as long as the event and its associated parameters work for that purpose.  Custom events can be separately programmed by advertisers if the standard ones cannot be repurposed.  The data produced undoubtedly includes custom events, but, unless special programming was required, they would appear as standard events in the Pixel data flow.

None of these four are deficiencies (nor are Defendants' explanations "new").  What Plaintiffs want was not ordered by the Court:  they want TikTok to produce data it does not have; they want the data in a form it is not usually kept in; they want to undo any routine processing (such as de-duping and de-spamming) so the data can also be produced in its "raw" form; they want detailed explanations about data TikTok does not regularly use; and they try to sweep in unrelated requests the Court did not order simply because they concern "data."  They have demanded this threatening contempt at every step.

Threats aside, Defendants voluntarily agreed to produce all matched and unmatched data from November 30, 2023—even though the Order is clearly more limited in scope, to "re-run" the snapshot, and to produce that day's data in its "raw" format before application of TikTok's usual data processes.  Defendants confirmed

that agreement in writing on January 26, 2024 (*see* Park Decl. Ex. 7) and have told Plaintiffs that additional information would be produced imminently.

It is natural for there to be questions about the data, and Defendants have not resisted providing answers. Defendants have tried to provide answers as quickly as possible and are in the process of designating a corporate witness to testify about the data. That Defendants may not have instant responses for every question is unsurprising (and not contempt). Non-user data is not data that TikTok typically uses, and answers will likely vary for different data. Plaintiffs cherry pick one potential explanation that Defendants are still exploring, draw every possible adverse inference, and based on suspicion demand that the Court order sanctions. Plaintiffs have not even allowed the record to develop in the ordinary course. Plaintiffs will soon receive a re-run data snapshot, volumes of raw data, and are free to ask about Defendants' query at deposition. That said, the fact also remains that **Defendants produced the data they had for one day as the Court ordered**. Plaintiffs have suffered no prejudice from this compliance and cooperation.

At the very outset of this case, Judge Blumenfeld warned both parties about discovery. Defendants represented to the Court that "we fully intend to … go beyond our duty to comply with everything that we need to" to rehabilitate any concern the Court may have about TikTok's compliance. Sept. 8, 2023 Hrg. Tr. at 17:17-21. Defendants have done just that—Defendants produced all of the non-TikTok user data it had for a single day (November 30, 2023) and have since voluntarily agreed to do much more than the Court's order required. But Judge Blumenfeld's words of warning applied equally to Plaintiffs. He said that his "comments shouldn't be abused by plaintiff's counsel" and they should not "seize upon what the Court has stated in order to gain leverage." *Id.* Yet, by claiming everything is contempt and seeking sanctions despite Defendants' cooperation, Plaintiffs have done just that. The present motion concerns the production of the one-day sample. Because Defendants complied, it should be denied in its entirety.

### III.    PLAINTIFFS' BACKGROUND

#### A.    Plaintiffs' Motions to Compel

On November 9, 2023, Plaintiffs filed their second motion to compel, requesting that the Court order Defendants to produce, among other things, "[a] sample of non-TikTok user data that Defendants collect, generate, and process on a single day." Dkt. 74. This one-day sample data was responsive to RFP Nos. 2(c), 7, 8, 10, 11, 13, 20, 21, and 25 that Plaintiffs served on June 27, 2023, as well as to ongoing negotiations between the parties on the implications of Defendants' failure to preserve "data received from third-party websites that does ***not*** pertain to TikTok users." Dkt. 74-1, at 12-13 (emphasis added). In particular, RFP No. 2(c) requested "documents concerning the operation of the TikTok SDK, including . . . each field and category of information transmitted through the TikTok SDK"; RFP No. 10 requested "all documents concerning your collection of Plaintiffs' data collected through the 'TikTok for Business' suite of products, services, and software tools, including documents sufficient to identify each field of plaintiffs' data collected"; and RFP No. 25 requested "documents sufficient to identify the fields and categories of information collected by TikTok." *Id.* at 6, 8, 11.

The parties' briefing articulated in no uncertain terms what exactly was encompassed within "a sample of non-TikTok user data that Defendants collect, generate, and process on a single day." In Plaintiffs' November 22, 2023 supplemental memorandum in support of the motion to compel, for instance, Plaintiffs explained:

> Plaintiffs have requested that Defendants produce not just the non-TikTok user data that is *collected* on a single day but also such data that is *generated* or *processed* on a single day. **The request covers all data that is generated (*e.g.*, new data created by combining non-TikTok user data collected with other information) and processed (*e.g.*, all copies of the data that is initially collected for downstream uses).** *See also* Dkt. 74-1 at 15 n.7 (raising questions about what exactly Defendants are "deleting" and whether that deletion encompasses "all copies of the data that is initially collected and whether such copies or

downstream versions of data are also 'deleted' when the initial copy is").

Dkt. 77 at 2 (emphasis in bold added).

### B.     Court Order Granting Plaintiffs' Motion to Compel

On November 27, 2023, without hearing oral argument and just five days after the parties' filing of supplemental memoranda, this Court granted Plaintiffs' motion to compel. The November 27 order ("Court Order") required:

> Within fourteen (14) days of the date of this Order, to the extent Defendants have not already done so, Defendants shall produce to Plaintiff: (1) a sample of non-TikTok user data that Defendants collect, generate, and process on a single day; (2) documents sufficient to describe fully all changes Defendants have made to the TikTok Pixel, the TikTok Events API and related internal software that is used to process non-TikTok user data; and (3) historical Pixel settings for the websites identified in the First Amended Complaint. These documents are nonprivileged, relevant and proportional to the needs of the case.

Dkt. 78.  In other words, the court expressly ordered Defendants to produce, by December 11, 2023, "a sample of non-TikTok user data that Defendants collect, generate, and process on a single day." *Id.*

### C.     Defendants' Failure to Comply with Court's Order and Plaintiffs' Efforts to Seek Court-Ordered Data

On December 11, 2023, Defendants produced three spreadsheets of a subset of data that it collected on one day of its choosing: November 30, 2023. Based on Plaintiffs' review and analysis, this production contained data collected only from Apple devices running iOS and a few desktop devices. It contained no data from Android devices or many desktop devices.

The spreadsheets also contained labels for 121 high-level data fields that Defendants collect using the TikTok SDK. For 69 of those 121 data fields, however, Defendants produced no actual values for the fields, which contained only "null," "0" or "blank" values and no substantive information. The fields that contained these

empty values include IP address, email, phone number, and various IDs—fields that, even if hashed, constitute personally identifying information that is at the center of this class action seeking to hold Defendants accountable for collecting private data on unassuming non-TikTok users.

On December 15, 2023, only four days after Defendants produced the spreadsheets, Plaintiffs requested clarification and supplemental data from Defendants. Specifically, Plaintiffs pointed out the following deficiencies in Defendants' production:

- The production contained only ***collected*** data and no ***generated*** or ***processed*** data, notwithstanding the Court Order's requirement that Defendants also produce the latter;

- The production contained data only from Apple iOS devices and from a few desktop devices, and not from Android devices or a complete set of desktop devices;

- The production contained data only from standard events offered by TikTok, and not from custom events that TikTok allows websites to configure themselves;

- Well over half of the 121 data fields contain "null," "0," or "blank" values.

Ex. 2. As to the last issue, Plaintiffs sought information whether Defendants had redacted this data during the normal course of business or for this litigation and, in light of the heavy redactions, requested a description of the 121 fields so that Plaintiffs can understand what data fields TikTok collects through the TikTok SDK.[1] *Id*. Despite numerous follow-up requests from Plaintiffs, Defendants continued to drag their feet without providing any substantive update on the deficiencies of their production. While providing no update or no supplemental production, Defendants represented to Judge Blumenfeld on December 28, 2023, in connection with Plaintiffs' unopposed request to modify the case management order, that they were

---

[1] The identification and description of data fields collected through the TikTok SDK is also the subject of RFP Nos. 2(c), 10, and 25.

1   "actively investigating" the issues flagged by Plaintiffs. *See* Dkt. 84, at 2.

2       After giving Defendants a month to provide any substantive response,

3   Plaintiffs notified Defendants on January 11, 2024 that they would move to enforce

4   the Court's order requiring Defendants' to produce all data collected, processed, and

5   generated data from one day. Ex. 3. In response, Defendants ***for the first time*** offered

6   their own belated interpretation of the Court Order, asserting that the Order only

7   "requir[es] one snapshot of the data table containing event-level Pixel and Events

8   API data that has been collected and processed." Ex. 4. Defendants further admitted

9   ***for the first time*** that they did not produce the "raw, pre-processed data" and did not

10  produce any "generated data." *Id.* Likewise, notwithstanding the Court's clear order

11  that the one-day sample data be produced by December 11, 2023, Defendant wrote

12  a month later, on January 12, 2024, that "the process of identifying and querying 24

13  hours' worth of unmatched Pixel and Events API data is complex" and that they are

14  ***still*** working through how to do so—in blatant violation of the Court-imposed

15  deadline.

16      On January 17, 2024, the parties met and conferred on the deficiencies of

17  Defendants' initial production. On the call, Defendants acknowledged that their

18  initial production failed to include (1) data from devices other than Apple devices

19  running iOS, (2) data from custom events (as opposed to standard events), and

20  (3) actual meaningful values in a majority of the data fields. Defendants represented

21  that they were working to produce another version of the spreadsheets but would not

22  commit to any deadline by which they would do so. Ex. 5. In the meantime,

23  Defendants also refused to provide descriptions of the 121 data fields on the

24  (incorrect) grounds that they were "self-explanatory" and that Plaintiffs had not

25  served independent RFPs requesting that information. *Id.* Defendants also stated that

26  their eventual production of curative data—whenever that may be—would obviate

27  the need for such descriptions. *Id.* Finally, Defendants maintained their position that

28  the Court Order did not require them to produce any ***generated*** data. *Id.*

Following the meet and confer, Plaintiffs asked Defendants on January 18, 2024, whether they would provide descriptions of just a third of the data fields contained in the initial production. This subset of data fields included ones like "orit", "rit", "received_dc", "idc", "clue_id"—which are hardly "self-explanatory." *Id.* Further, in response to Defendants' (irrelevant) position that there is no convenient way to provide the one-day sample of generated data the Court ordered to be produced by December 11, 2023, Plaintiffs proposed concrete types of documents by which Defendants could comply with the Court Order. *Id.* As to the subset of data fields, Defendants would not commit to providing descriptions even as to this subset for the "next couple weeks." Ex 7. As to the generated data, Defendants maintain that "the Court's order plainly does not encompass Plaintiffs' new interpretation of 'generated' data." *Id.*

### D.    Impact of Defendants' Failure to Comply

As briefed in part in Plaintiffs' November 9, 2023 motion to compel and November 22, 2023 supplemental memorandum, the production of the one-day sample data is not only important in its own right, but also informs at least two other outstanding discovery disputes between the parties. ***First***, Plaintiffs originally sought this one-day sample data in part because of Defendants' ongoing deletion of non-TikTok user collected through the TikTok SDK in order to "fully assess the impact of Defendants' failure to preserve data undisputedly relevant to the case." With Defendants' incomplete production, including with numerous fields denoting personally identifying information nulled or zeroed out, Defendants have hindered Plaintiffs' ability to assess the impact to this case of Defendants' ongoing data deletion.

***Second***, the parties are currently in the process of meeting and conferring on another discovery dispute, namely Defendants' refusal to answer interrogatories and RFPs about the Pangle and Global App Bundle, two of Defendants' products that allow advertisers to display ads to non-TikTok users. *Accord* Dkt. 63 (First

Amended Compl.) at ¶ 63 (describing Defendants' marketing of these products as "the ad network of TikTok for Business," as "enabl[ing] advertisers to effectively reach broad audiences by running ads in placements on 3rd party apps" and as "giv[ing] advertisers access to additional audiences beyond TikTok"). Notwithstanding Defendants' representations that they do not "use unmatched Pixel or Events API data for any purposes relating to Pangle or Global App Bundle," Ex. 6, at least six of the nulled-out data fields in Defendants' initial data production references Pangle or "GAB." Plaintiffs specifically flagged this issue for Defendants and highlighted that Defendants' delay in producing a complete set of one-day sample data informs other outstanding discovery disputes. Ex. 4. Defendants continue to drag their feet, simultaneously representing that curing their deficient data production is a "high priority" and yet it will take several more weeks to produce the complete set of data that the Court ordered produced by December 11, 2023.

## IV.   DEFENDANTS' BACKGROUND

Defendants complied with the Court's order by the December 11 deadline.  They produced twenty-four hours of unmatched user data from November 30, 2023 that had to be divided into three separate spreadsheets given the quantity of data.  Wei Decl. at ¶ 3.  This "24-hour data table snapshot" contained over three million lines of event-level Pixel and Events API data that "has been collected and processed, and from which aggregated analyses may be generated from time to time."  Park Decl. Ex. 4; Yin Decl. at ¶ 2.  To produce unmatched data and adhere as closely as possible to what the Court directed, Defendants had to create a brand new query to search across TikTok's database.  Wei Decl. at ¶ 2.  The query that Defendants developed reflected Defendants' best efforts to isolate non-user data to comply with the Court's order.  *Id.*

Nevertheless, Plaintiffs have raised a host of questions about the data produced.  Defendants have explained that the data produced is the data that

exists.  *See* Park Decl. Ex. 7.  There has been no effort to omit, suppress, or conceal the data in the daily snapshot.  There is no basis for Plaintiffs to claim contempt.  Any "missing" data is data TikTok does not have.  To the contrary, Defendants have been working hard to investigate and answer Plaintiff's questions.

To eliminate any concerns Plaintiffs have, Defendants have agreed to re-design and re-run another query for the 24-hour sample, produce both matched and unmatched data, and to devolve and produce it in its "raw" form as well.  Plaintiffs may still have questions, but they have already scheduled a corporate deposition to cover those subjects in the near future.

Plaintiffs have not been prejudiced or "hindered" in any way.  Defendants produced over 300MB of non-TikTok user data by the Court's deadline.  Yin Decl. at ¶ 2.  Defendants have answered Plaintiffs' questions on a rolling basis and continue to investigate as a priority.  *See* Park Decl. Ex. 7.  Plaintiffs have already noticed a deposition under Fed. R. Civ. Proc. Rule 30(b)(6) about this data.  There is ample time for Plaintiffs to explore all relevant lines of inquiry, as the fact discovery cut-off is not for another six months, on August 9, 2024.

## V.   PLAINTIFFS' ARGUMENT

"Courts have an 'inherent power' to enforce compliance with their own orders." *Henderson v. JPMorgan Chase Bank*, 2017 WL 11680967, at *3 (C.D. Cal. May 1, 2017) (citation omitted). This Court already ordered Defendants to produce, by December 11, "a sample of non-TikTok user data that Defendants collect, generate, and process on a single day" and ruled that this data is "nonprivileged, relevant, and proportional to the needs of the case." Dkt. 78. By their own admission, *see* Ex. 7, Defendants are in violation of that order, undisputedly having produced only a defective subset of data that they collected on November 30, 2023. All the more brazen is Defendants' noncommittal attitude toward complying with the Court Order by offering a belated, retroactive, and unreasonable interpretation of the order that excludes generated data and by stating that they are working to produce more

data in a "few weeks"—which, even if true, would be more than two months after the date by which the Court ordered them to produce the data. The Court should not tolerate such conduct from Defendants and should enforce its November 27, 2023 Order by ordering Defendants to produce complete collected, processed, and generated data from November 30, 2023 within one week of the Court's decision on this motion. For the 69 data fields for which Defendants have failed to provide actual values, the Court should further issue an evidentiary sanction in the form of an affirmative evidentiary finding that Defendants collect information corresponding to those fields from non-TikTok users through the TikTok SDK

**A.    The Court Order Required Defendants to Produce Generated Data.**

The plain language of the Court Order, as well as the parties' briefing resulting in that Court Order, makes abundantly clear that it ordered Defendants to produce "generated" data. It is hard to imagine what else the Court could have meant when it ordered Defendants to produce "non-TikTok user data that Defendants collect, **_generate_**, and process on a single day." Dkt. 78 (emphasis added). Plaintiffs' briefing on the motion to compel, which the Court decided on the papers without oral argument, further clarified what exactly "generated data" meant: "new data created by combining non-TikTok user data collected with other information." Dkt. 77 at 2. It also clarified what exactly "processed data" meant: "all copies of the data that is initially collected for downstream uses." *Id.*

The Court should not tolerate Defendants' efforts to avoid complying with this portion of the Court Order altogether by offering a belated, retroactive, and unreasonable spin on the Order that bears no resemblance to the Order's plain language. *See Hullinger v. Anand,* 2016 WL 7444620, at \*15 (C.D. Cal. Aug. 19, 2016), *review denied, case remanded,* 2016 WL 7444623 (C.D. Cal. Oct. 12, 2016) (chastising and sanctioning Defendants for taking "incorrect and unreasonable interpretations of the Court's orders"). Over a month after Defendants' deadline to

produce the data and after repeated outreach from Plaintiffs about the deficiencies of Defendants' initial production, Defendants for the first time asserted that the Order required only "one snapshot of the data table containing event-level Pixel and Events API data that has been collected and processed, and from which aggregated analyses may be generated from time to time." Ex. 4. Defendants have pointed to nothing in the Court Order or the parties' briefing that supports this retroactive interpretation. Indeed, nowhere does the Court Order say that Defendants are to produce "one snapshot" of data. Nor does the Court Order say to produce only collected and processed data from which aggregated analyses may be generated. By contrast, it says in no uncertain terms to produce data that Defendants collect, generate, and process on a single day. Defendants should not be able to rewrite and defy the Court Order to suit their needs.

To the extent that Defendants feign ignorance about the format in which they can produce generated data, Plaintiffs have already provided concrete suggestions during the lengthy meet-and-confer process. For instance, Plaintiffs suggested that Defendants produce:

- All the processing pipelines after the non-user data is collected, including (1) the pipeline names, names of machine learning algorithms, and names of aggregation tools, (2) technical documentation that shows how nonuser data is used by these pipelines (for example, training machine learning algorithms, how data is aggregated) and what the results are, and (3) a sample of the output data or results from each pipeline; and

- Product requirement documents, technical design documents (including machine learning models and training strategies), and product and/or feature launch documents that reflect how Defendants use the non-user data.

Ex. 5. Plaintiffs request that the Court require Defendants to comply with the November 27, 2023 order and produce those documents within one week of the order on this motion.

**B.      The Court Order Required Defendants to Produce All Data by December 11, 2023.**

In addition to Defendants' failure to produce any generated data, Defendants have produced only a sliver of collected data on November 30, 2023. Indeed, it is undisputed that Defendants have failed to produce data from Android devices and from a complete set of desktop devices, failed to produce data from custom events configured by websites, and failed to provide actual values for a majority of the 121 data fields that Defendants apparently collect when Defendants collect data on non-TikTok users through the TikTok SDK. Many of the fields for which Defendants have failed to produce data appear to be fields containing personally identifying information such as IP address, email, and phone number. Ex. 2.

Defendants have represented to this Court that it does not collect personally identifying information from non-TikTok users. *See, e.g.*, Dkt. 72-1 at 19 (Defendants' portion of joint stipulation regarding Plaintiffs' motion to compel suggesting that Defendants do not collect "email, phone number, or anything else" with regard to non-TikTok users). The empty-value data fields suggest that there may be more to the story. Plaintiffs are entitled to test Defendants' assertions and representations by examining the full set of data that Defendants collected, generated, and processed on non-TikTok users on November 30, 2023—data that the Court already ordered Defendants to produce and that should have been produced two months ago.

**C.      Defendants' Failure to Comply with the Court Order Is Unfairly Prejudicial.**

Defendants' brazen disregard of the Court Order has left Plaintiffs unable to assess the impact of Defendants' ongoing "deletion" of non-TikTok user data collected through the TikTok SDK; to learn about the data that is collected on non-TikTok users through the TikTok SDK, which is at the center of this lawsuit; and to move forward on other outstanding discovery disputes.

**D.     The Court Should Impose an Evidentiary Sanction with Regard to the 69 Data Fields for Which No Values Were Produced.**

"If a party . . . fails to obey an order to provide or permit discovery . . . , the court where the action is pending may issue further just orders," including "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; [and] (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A). "Only two conditions are required to put into consideration the array of sanctions specified in Rule 37(b): (1) a prior order and (2) a violation of the order. ***A failure by a party to comply with a court order is sanctionable under this rule, regardless of the reasons***." *Hullinger*, 2016 WL 7444620, at *7 (emphasis added). "The Court has wide discretion to select an appropriate sanction, but the sanction should be targeted to address the misconduct or prejudice resulting from the misconduct." *Id.* at *8.

Given Defendants' failure to comply with the Court Order and its ongoing efforts to evade the Order by offering belated, retroactive, and unreasonable interpretations of that Order, the Court should impose an evidentiary sanction on Defendants. In particular, for the 69 fields of data for which Defendants have failed to produce actual values, the Court should issue an affirmative evidentiary finding that Defendants collect information corresponding to those fields from non-TikTok users through the TikTok SDK. This sanction is specifically targeted to address Defendants' misconduct of failing to produce the information that would enable Plaintiffs to understand the type and extent of data that they collect on non-TikTok users. Further, the data fields that Defendants identified—albeit without any meaningful values populating them—strongly suggest that Defendants do collect these data fields, which include personally identifying information.

"For the discovery system to function properly, the costs of resisting

discovery must be sufficiently great so that the benefits to be gained from sharp or evasive discovery practices are outweighed by the sanctions imposed when those practices are discovered." *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, 2007 WL 2758571, at *16 (C.D. Cal. Sept. 18, 2007). "It is not enough that an offender belatedly comply with its discovery obligations; '[i]f the only sanction for failing to comply with the discovery rules is having to comply with the discovery rules if you are caught, the diligent are punished and the less than diligent, rewarded.'" *Id.* (citation omitted). An evidentiary sanction is appropriate here to avoid rewarding Defendants for their delay and defiance of the Court Order and to mitigate the prejudice to Plaintiffs for Defendants' discovery misconduct.

## VI.   DEFENDANTS' ARGUMENT

Defendants do not dispute the Court's inherent power to enforce its orders. The imposition of sanctions, however, requires a showing that a party "fail[ed] to obey an order to provide or permit discovery." *Rosenblum v. Blackstone*, No. CV 18-966-JVS(E), 2020 WL 8515207, at *1 (C.D. Cal. Feb. 28, 2020) (quoting Fed. R. Civ. P. 37(b)(2)(A)). With respect to evidentiary sanctions in particular, courts have refused to issue them without a showing of willful disobedience and where there is harm to the moving party from a discovery deficiency that cannot be ameliorated. *See MGA Ent., Inc. v.* Harris, 2023 U.S. Dist. LEXIS 52931, at *20-21 (C.D. Cal. Jan. 5, 2023); *Johnson v. Cate*, No. 1:10-CV-02348-LJO, 2014 WL 6607260, at *5 (E.D. Cal. Nov. 19, 2014). Plaintiffs come nowhere close to satisfying that standard.

As the Court also recognized during the parties' first appearance, the power to regulate discovery applies equally to propounding parties. The Court has authority to sanction movants who pursue frivolous motions. *See Sure Safe Indus. Inc. v. C & R Pier Mfg.*, 152 F.R.D. 625, 626 (S.D. Cal. 1993) (sanctions where motion to compel was "filed in 'bad faith,' not adequately grounded in fact and law, imposed for a proper purpose, lacked substantial justification and multiplied the

proceedings unreasonably and vexatiously.").  Sanctions are warranted where, for instance, the moving party has brought a motion to compel despite the producing party's good faith efforts to comply with the Court's discovery order.  *See Monster Energy Co. v. Vital Pharms.*, 2021 U.S. Dist. LEXIS 205554, at *13-17 (C.D. Cal. Oct. 12, 2021) (awarding nonmovant attorneys' fees where motion was not "substantially justified" and movant engaged in "pattern" of wrongly "seeking court intervention").  Plaintiffs have engaged in precisely that misconduct here.

## A.   Defendants Do Not Have "Generated" Data to Produce

Defendants' so-called "belated, retroactive, and unreasonable spin on the Order" does not exist.  *Supra* at 15.  Defendants do not dispute that the Court Order references "data that Defendants collect, generate, and process on a single day."  Defendants did not produce only "one snapshot" of data for November 30, 2023 among others that were available, or say that is what the Court Order requires.  *Supra* at 16.  Defendants produced <u>all non-user data</u> to Plaintiffs in spreadsheet format as identified through Defendants' query.  *See supra* at 4.  There are no additional non-user "snapshots" for November 30 that exist in Defendants' systems, but which Defendants withheld.

Defendants have no "generated" data to produce.  Plaintiffs defined "generated" data as "new data created by combining non-TikTok user data collected with other information."  Park Decl. Ex. 7.  Defendants do not do that and cannot be compelled to produce something that does not exist.  *See MGA Ent., Inc. v. Nat'l Prod. Ltd.*, 2011 WL 4550287, at *2 (C.D. Cal. Oct. 3, 2011) ("A court cannot order a party to produce documents that do not exist."); *see also Blake v. Godfrey*, 2023 WL 8168828, at *1 (C.D. Cal. Nov. 13, 2023) (Eick, J.) (denying motion to compel "based on Defendant's representations that, despite a reasonable search and diligent inquiry, no responsive documents have been identified").

Ironically, it is Plaintiffs who are attempting to contort what the Court Order means.  *See* Park Decl. Ex. 5.  In their January 18, 2024 email to Defendants,

Plaintiffs claimed that "generated data" encompasses "use[s] for machine learning and algorithm improvement." Park Decl. Ex. 7. Those terms are not mentioned by the Court, and Plaintiffs admitted they are instead "encompassed in other discovery requests that Plaintiffs have served." Park Decl. Ex. 7. Defendants rightly disputed Plaintiffs' "new interpretation of 'generated' data, which Plaintiffs now propose covers the names of all the processes, technical, documents, sample outputs of every single 'use,' PRDs, release docs, etc." Park Decl. Ex. 7.

What Plaintiffs claimed they needed during the meet and confer process was not "generated" data, but evidence of how the data is used. That Order, however, did not order Defendants to produce all data concerning <u>use</u> of the data. *See supra* at 16 ("Plaintiffs suggested that Defendants produce" "documentation that shows how nonuser data is used" and "how Defendants use the non-user data"); *see also* Park Decl. Ex. 5. That data has been produced under requests not before the Court.

## B.   Defendants Produced the Data It Had for November 30, 2023

Defendants did not supply "only a sliver of collected data on November 30, 2023", select a date with "less-than-usual" data, provide "incomplete[] sample data," or "fail[]" to produce anything. On the completion date, Defendants produced to Plaintiffs all data they had as it existed in Defendants' system, once queried and isolated for non-user data by Defendants' script. *See supra* at 4. It is perfectly appropriate (indeed, required) to produce documents to Plaintiffs as Defendants keep them. *See United States ex rel. Humane Soc'y of the United States v. Westland/Hallmark Meat Co.*, 2012 WL 12886501, at *5 (C.D. Cal. Sept. 26, 2012) (denying motion to compel where production reflected "how the documents were kept in the usual course of business"); *see also Owens v. Degazio*, 2020 U.S. Dist. LEXIS 4635, at *7-8 (E.D. Cal. Jan. 10, 2020) (denying motion to compel where plaintiff "ask[ed] defendants to create items that do not exist").

Plaintiffs further claim that "[t]he empty-value data fields suggest" that Defendants collect personally identifiable information from non-TikTok

users. *Supra* at 17. If anything, it is the opposite: it should be unsurprising that the Court-ordered snapshot is not comprehensible because TikTok does not ordinarily make use of unmatched data. Even if the issues Plaintiffs raised are unexplained problems or unpredicted anomalies in the data, that is not contempt of the Order. Imperfections, despite Defendants' best efforts, do not provide grounds for sanctions. *See Piatt v. Goldsmith*, 940 F.2d 669 (9th Cir. 1991) (affirming denial of sanctions where "the court found the motion [to compel] premature because 'defendants are still in the process of complying with the Court's discovery orders'" and "had acted in good faith."); *In re Farris-Ellison*, 2022 WL 4539517, at \*4 (Bankr. C.D. Cal. Sept. 28, 2022) (denying sanctions where "Defendant substantially complied with the court's orders in responding to Plaintiffs' discovery requests," even where "there may have been tardiness in responding"). Defendants' willingness to go beyond the scope of the order demonstrates good faith and respect, not contempt. *See Astellas Pharma, Inc. v. Impax Lab'ys, Inc.*, No. C 08-3466 JW (RS), 2009 WL 2392166, at \*4 (N.D. Cal. Aug. 4, 2009) (no sanctions where party "cooperated throughout the discovery process" and where there was no "showing of bad faith or prejudice"); *see also Philippe Charriol Int'l Ltd. v. A'Lor Int'l Ltd.*, 2016 U.S. Dist. LEXIS 13734, at \*3-4 (S.D. Cal. Feb. 4, 2016) (no sanctions where nonmovant "expended substantial efforts and resources to comply, in good faith").

### C.    Plaintiffs Have Not Been Prejudiced

There is no prejudice to Plaintiffs. Prejudice requires a showing that "the disobeying party's actions impair the ability of the moving party 'to go to trial' or 'threaten to interfere with the rightful decision of the case." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990). Here, Defendants complied with the Court Order on the deadline the Court specified.

Plaintiffs have had over three million lines of non-user data for months; nothing has impeded their ability to "assess" or "learn." In fact, Plaintiffs clearly understood enough to issue a deposition notice pursuant to Fed. R. Civ. P. 30(b)(6)

requesting corporate testimony regarding "Defendants' production of certain data that Defendants collected on November 30, 2023" on five different subparts. If Plaintiffs have additional questions, they are free to inquire of Defendants' witnesses at deposition as appropriate. That Plaintiffs may obtain further information during the deposition stage does not mean Defendants' production is deficient; that is simply the litigation process.

There are six months left in the fact discovery period, providing Plaintiffs ample time to obtain anything to which they are entitled. Insisting on an order that commands Defendants to comply "within one week of the order on this motion" is unwarranted, misleading, and insulting. Defendants have already been complying and producing documents. Defendants have already voluntarily agreed and will have produced many of the requested items—even though they go beyond the Court's prior order and without the need for another one. And if Defendants identify any additional documents or Plaintiffs make additional requests after this arbitrary "one week," Defendants will continue to comply and produce documents.

### D.    Plaintiffs Are Not Entitled to Sanctions

Sanctions are not appropriate at all. Even under Plaintiffs' truncated recitation of the standard, the second of two prongs is not satisfied: a "violation of the [prior] order." *Hullinger v. Anand*, 2016 WL 7444620, at *7 (C.D. Cal. Aug. 19, 2016) (cited *supra* at 18). Without wrongdoing, Plaintiffs certainly fall far short of showing they are entitled to any sanctions. Courts in the Ninth Circuit look to five factors in selecting an appropriate sanction: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions," with the third and fourth factors being "particularly important in considering whether to impose . . . evidence . . . sanctions." *Id.* Plaintiffs make no showing of prejudice (*see supra* at 18-19) and do not address the other four factors.

The evidentiary sanction is particularly baseless.  The record does not support any inference that any "missing" data was collected and redacted by TikTok; the more reasonable inference to be drawn from "missing" data is that TikTok does not collect or maintain it.  The fact that TikTok produced this data in a spreadsheet that contains 121 data fields does not mean that the TikTok Pixel collects 121 pieces of data every time it is loaded; what data may or may not be collected depends on how a website configures and implements the Pixel.

If any sanctions are warranted, it is sanctions against Plaintiffs, who have forced Defendants to incur attorneys' fees litigating this Motion despite their compliance and cooperation.

## VII.   PLAINTIFFS' CONCLUSION

For the foregoing reasons, the Court should  rule that Defendants have failed to comply with its November 27, 2023 order and order Defendants to comply no later than a week after its ruling on this motion. The Court should also deem as established, for purposes of this action, that Defendants collect from non-TikTok users the information corresponding to the above-described 69 data fields that Defendants identified yet redacted from their December 11, 2023 production.

## VIII.  DEFENDANTS' CONCLUSION

This motion ultimately concerns just one thing—the production of a sample day's worth of non-TikTok user data.  Defendants produced that on December 11, 2023.  That should be the end of the matter and the motion denied.  Plaintiffs' questions about the data, requests for different data or in different forms, and lines of inquiry following up on the data produced are not before the Court.  Plaintiffs have ample time to pursue that discovery.  That Plaintiffs want more does not mean Defendants were required to produce it or that there has been discovery abuse.

Defendants sincerely hope the Court takes note of their willingness to provide information and produce documents beyond what the Court ordered.  As promised, Defendants have taken their discovery obligations seriously and have chosen

cooperation over litigation.  To date, Defendants' efforts have not been recognized or reciprocated.  Plaintiffs made clear they were going to file this motion seeking contempt and sanctions, even though Defendants were in the process of addressing and agreed to produce additional data in short order.  This has proved extremely frustrating, as the meet and confer process has been used not for the voluntary resolution of discovery issues, but as an opportunity to paint Defendants in a bad light regardless of what they agree to do.  This is exactly the type of leverage and abuse Judge Blumenfeld warned about.  Plaintiffs have no basis to request sanctions here; if anything, they should be sanctioned.

Dated:  February 14, 2024

By: /s/ Y. Gloria Park

Ekwan E. Rhow (CA SBN 174604)
Marc E. Masters (CA SBN 208375)
Christopher J. Lee (CA SBN 322140)
**BIRD, MARELLA, BOXER,
WOLPERT, NESSIM, DROOKS,
LINCENBERG & RHOW, P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
erhow@birdmarella.com
mmasters@birdmarella.com
clee@birdmarella.com

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
**GLANCY PRONGAY & MURRAY,
LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com

1

ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

2

Y. Gloria Park (pro hac vice)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (310) 336-8340
gpark@susmangodfrey.com

3

4

5

6

7

*Attorneys for Plaintiff Bernadine Griffith*

8

9

Dated: February 14, 2024          By: */s/ Victor Jih*

10

Victor Jih, SBN 186515
Kelly H. Yin, SBN 328380
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1900 Avenue of the Stars, 28th Floor
Century City, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329
vjih@wsgr.com; kyin@wsgr.com

11

12

13

14

15

Luis Li, SBN 156081
WILSON SONSINI GOODRICH &
ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
luis.li@wsgr.com

16

17

18

19

Dylan Grace Savage, SBN 310452
Thomas Wakefield, SBN 330121
WILSON SONSINI GOODRICH &
ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900
dsavage@wsgr.com; twakefield@wsgr.com

20

21

22

23

24

*Attorneys for Defendants*

25

*TikTok Inc. and ByteDance Inc.*

26

27

28

JOINT STIPULATION RE MOTION TO ENFORCE COURT ORDER AND FOR EVIDENTIARY SANCTIONS