Ekwan E. Rhow (CA SBN 174604)
erhow@birdmarella.com
Marc E. Masters (CA SBN 208375)
mmasters@birdmarella.com
Christopher J. Lee (CA SBN 322140)
clee@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS &
NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (pro hac vice)
GLANCY PRONGAY & MURRAY, LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Ave. of the Americas
32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
gpark@susmangodfrey.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BERNADINE GRIFFITH; PATRICIA SHIH; RHONDA IRVIN; JACOB WATTERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TIKTOK, INC., a corporation; BYTEDANCE, INC., a corporation<br><br>Defendants. | Case No. 5:23-cv-00964-SB-E<br><br>**DISCOVERY MATTER**<br><br>**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE NOVEMBER 27, 2023 COURT ORDER ON ONE-DAY SAMPLE DATA AND FOR EVIDENTIARY SANCTIONS**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Magistrate Judge: Hon. Charles Eick<br>Date/Time: Mar. 15, 2024 at 9:30 AM<br>Place: Courtroom 750 255 East Temple St., Los Angeles, CA 90012<br><br>Discovery Cutoff Date: 8/23/24<br>Pretrial Conference Date: 11/08/24<br>Trial Date: 11/25/24 |

In light of Defendants' representation that they continue to "delete" non-TikTok user data, Plaintiffs sought (and the Court ordered) a comprehensive sample of all the non-TikTok user data that is collected, processed, and generated on one day so that Plaintiffs can understand what exactly is collected, how exactly it is processed, and what exactly Defendants do with it. Defendants now admit that what they produced on December 11, 2023 was wholly deficient, yet tie themselves up in knots trying to explain how they are not in violation of the Court Order. (They are.)

Defendants' attempt to spin their conduct as "good faith and respect" while suggesting that Plaintiffs should be sanctioned is audacious and meritless. In an effort to resolve this dispute without the Court's intervention, Plaintiffs waited to bring this Motion until over two months after the Court's deadline for production. After first identifying the deficiencies in Defendants' data just four days after its production, Plaintiffs followed up numerous times, all of which went ignored until Plaintiffs requested a conference to file this Motion. When Defendants feigned ignorance about the existence of generated data, Plaintiffs provided Defendants with concrete examples of formats in which generated data may be stored (notwithstanding that Defendants would know best the format in which their own data is stored). Defendants resisted all of Plaintiffs' efforts to compromise.

Earlier this week, *after* Plaintiffs filed the Motion, TikTok for the first time provided bare-bones descriptions of some data fields identified in the December 11 sample data. These descriptions reinforce that Defendants' production is missing huge swaths of data. Defendants say that more information will be produced "imminently," Dkt. 96-1 at 7, but, in practice, they continue withholding discovery and forcing Plaintiffs to engage in costly motion practice to obtain indisputably relevant discovery. The Court should put an end to this misconduct.

**I.    Defendants Tacitly Admit that They Have Violated the Court Order.**

Defendants do not dispute that the December 11 production failed to include any (1) generated data, (2) data from Android and desktop devices, (3) actual data

values in 69 of the 121 fields of data that Defendants appear to collect from non-TikTok users, and (4) data from custom events that the TikTok SDK allows websites to configure. Defendants seek to write off these gaps as "some" missing data, brazenly stating that "[n]one of these four are deficiencies" because they "produced the data [they] had" without "invest[ing] . . . resources into the completeness, consistency, or integrity of [non-user] data it simply discards." *Id.* at 4, 6.

First, this excuse is internally inconsistent with statements Defendants make elsewhere, including that non-TikTok user data undergoes "routine processing (such as de-duping and de-spamming)." *Id.* at 6. Defendants' excuse could possibly make sense if the gaps in their data were just a missing value for a data field here or there. But the deficiencies here are systemic: There is no generated data, no raw data, no data in the majority of fields, and no data for whole categories of devices and events. (Defendants also didn't produce 3 million rows of data; they produced 280,699.) The systemic deficiencies suggest not merely that Defendants did not invest in quality control of non-user data, but that there were large swaths of data that Defendants failed to produce. It doesn't matter if Defendants did not ***intentionally*** do so, which they repeatedly claim. *See id.* at 5. Intentionally or not, Defendants have not produced what the Court ordered them to produce by December 11.

**II.   The Court Should Order Defendants to Produce Generated Data.**

Defendants' statements about "generated data" in the joint stipulation are false. First, Defendants say that they have "no 'generated' data to produce" because they do not create new data "by combining non-TikTok user data collected with other information." *Id.* at 20. But Defendants have previously admitted that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Ex. 10 (ROGS 6, 8, 11).

1  ██████████████████████████████████ *constitute "generated data."* Defendants
2  must produce this generated data immediately. To the extent that Defendants say
3  that they didn't combine or aggregate data *on* November 30, 2023 (the date that
4  Defendants unilaterally chose), they must produce all downstream data generated by
5  combining or aggregating the non-TikTok user data *collected on* November 30.

6  Second, Defendants rely on a declaration from Yunfeng Wei, who describes
7  himself as a "Tech Lead Manager and work with the TikTok Pixel as part of my
8  regular job responsibilities." Wei's declaration does not help Defendants. For
9  example, Defendants previously informed Plaintiffs that Wei is employed not by
10 TikTok or by ByteDance but by "Miyou Internet Technology (Shanghai) Co., Ltd."
11 Ex. 11 (S. Hsu 1/3/2024 Email). From its name, it is apparent that Miyou is a
12 company in Shanghai, China. Data of US non-TikTok users collected on November
13 30, 2023 could be accessed and queried from China, in contradiction to
14 representations that Defendants have made in this litigation and to Congress.[1]

15 Wei's Declaration also does not make clear from which of "TikTok's
16 database" he extracted information. *See* Wei Decl. at ¶¶ 2-3 (stating that he extracted
17 data from "the database" and "TikTok's database" without further description).
18 Defendants' interrogatory responses suggest that ████████████████████
19 ████████████████████████████████████████
20 ████████████████████████████████████████
21 ████████████████████████████████████████
22 ████████████████████████████████████████
23 ████████████████████████████████████████
24 ████████████████████████████████████████



---

[1] Ex. 14 (Sept. 6, 2023 Letter), at 3 ("As of June 2022, all U.S. user traffic is routed to servers in Texas, and as of January 2023, all new U.S. data is stored exclusively within that environment."); Ex. 15 (TikTok Inc. Letter to Senators Blumenthal and Blackburn (June 16, 2023)), at 1 ("As of June 2022, 100% of all U.S. user traffic is routed to the Oracle Cloud and USDS Infrastructure in the United States, and as of January 2023, all new protected data is stored exclusively within the environment and only USDS personnel can access it unless there is a limited exception.").

1  Ex. 10 at 55 (ROG 6). Defendants' documents reveal ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Ex. 12, at -3215 (▮▮▮▮▮▮▮▮); Ex. 13, at -142, -146-147

3  (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

4       The Court never told Defendants that they need produce data only from one
5  database. They must produce ***all*** collected, processed, and generated data from a
6  single day—no matter the database on which the categories of data are stored. In
7  light of Defendants' tactics, in addition to the production, the Court should order
8  them to "provide a verification from a principal (not counsel) under oath and subject
9  to penalty of perjury" specifying the databases from which they searched for and
10 produced one-day sample data and the queries used for the search. *See Patagonia,*
11 *Inc. v. Anheuser-Busch, LLC*, 2020 WL 12948093, at *1 (C.D. Cal. Nov. 24, 2020).

12 **III.   Evidentiary Sanctions Are Appropriate.**

13       Defendants' portion of the joint stipulation misapprehends *Hullinger v.*
14 *Anand*, 2016 WL 7444620 (C.D. Cal. Aug. 19, 2016). The five factors they cite from
15 *Hullinger* are factors considered in ***selecting*** an appropriate sanction, ***not*** in deciding
16 ***whether*** to impose a sanction. *Id.* at *8. Defendants misleadingly quote *Hullinger*,
17 using ellipses, to say that the "third and fourth factors being 'particularly important
18 in considering whether to impose . . . evidence . . . sanctions.'" Dkt. 96-1 at 23. What
19 *Hullinger* actually says is that "Factors 3 and 5 become particularly important in
20 considering ***whether to impose issue, evidence, or case terminating sanctions***."
21 2016 WL 7444620 at *8 (emphasis added).  Defendants' brief also leaves out that,
22 on Factor 3, "prejudice from unreasonable delay is presumed." *Id.* (citation omitted).

23       Further, while there appears to be a sufficient basis to find a willful violation
24 here, "[m]any courts have imposed sanctions without referring to willfulness."
25 *David v. Hooker, Ltd.*, 560 F.2d 412, 420 (9th Cir. 1977) (Rule 37's "flexibility as
26 to sanctions eliminates any need to retain the requirement that the failure to appear
27 or respond be 'willful'"); *Hullinger*, 2016 WL 7444620, at *8 ("an imposition of
28 sanctions under Rule 37(b)(2) does not require willfulness, fault, or bad faith").

An accurate reading of *Hullinger* confirms that sanctions are warranted here. In *Hullinger*, the court sanctioned defendants for violating orders to produce certain ESI and "contact information" for certain individuals when defendants produced the ESI without certain metadata and failed to provide mailing addresses for the individuals at issue. *Id.* at *9-14. The court rejected defendants' arguments that the court had not required production of metadata and that "contact information" did not encompass addresses, chastising defendants for their "incorrect and unreasonable interpretations of the Court's orders." *Id.* at *15. Here, even more egregiously than in *Hullinger*, Defendants produced the one-day sample data with critical portions missing. It is inapposite whether Defendants deleted or altered the data before producing it. *See id.* at *12 (defendants violated court order by "fail[ing] to populate a number of fields that, in the absence of some explanation, one would expect to be populated" and "ma[king] no attempt to explain why such information was missing from the load files" even though defendants did not delete or strip metadata). And just as the *Hullinger* defendants tried to interpret "contact information" to exclude addresses, Defendants try to interpret "generated data" to exclude combined and aggregated data that they previously admitted they ███████████████████████████████████████. The Court should reject these efforts and should "not stand by while a litigant continues to flout a court order." *Id.* at *15. The Court should order Defendants to produce the complete data and issue sanctions.[2]

---

[2] The application of the five factors urged by Defendants compels the same result. ***First***, the public has a strong interest in the expeditious resolution of litigation, especially litigation that seeks to hold Defendants accountable for the collection of data from millions of unwitting Americans that have consciously made the decision not to register for TikTok accounts. ***Second***, the Court has an interest in managing its docket and not wasting its resources to adjudicate the same discovery dispute multiple times in light of Defendants' failure to comply the first time around. ***Third***, Defendants' constant delay and empty promises about supposedly forthcoming discovery, and failure to produce discovery even when ordered to do so by the Court, is extremely prejudicial to Plaintiffs. *See also Apple*, 2012 WL 2862613, at *6 ("prejudice from unreasonable delay is presumed"). ***Fourth*** and ***fifth***, even with the imposition of sanctions requested by Plaintiffs, this case will be decided on the merits. Plaintiffs seek a narrow evidentiary sanction specifically tailored to the missing data values in the data fields identified by Defendants. Even if the Court finds that Defendants collect information corresponding to these fields from non-TikTok users, the parties will continue to litigate Plaintiffs' claims on the merits.

| | | |
|---|---|---|
|1| |By: /s/ *Y. Gloria Park*|
|2|Dated: March 1, 2024| |
|3| |Ekwan E. Rhow (CA SBN 174604)<br>Marc E. Masters (CA SBN 208375)<br>Christopher J. Lee (CA SBN 322140)<br>**BIRD, MARELLA, RHOW,**<br>**LINCENBERG, DROOKS & NESSIM,**<br>**LLP**<br>1875 Century Park East, 23rd Floor<br>Los Angeles, California 90067-2561<br>Telephone: (310) 201-2100<br>erhow@birdmarella.com<br>mmasters@birdmarella.com<br>clee@birdmarella.com|

Dated: March 1, 2024

By: /s/ *Y. Gloria Park*

Ekwan E. Rhow (CA SBN 174604)
Marc E. Masters (CA SBN 208375)
Christopher J. Lee (CA SBN 322140)
**BIRD, MARELLA, RHOW, LINCENBERG, DROOKS & NESSIM, LLP**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
erhow@birdmarella.com
mmasters@birdmarella.com
clee@birdmarella.com

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
**GLANCY PRONGAY & MURRAY, LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (pro hac vice)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (310) 336-8340
gpark@susmangodfrey.com

*Attorneys for Plaintiff Bernadine Griffith*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On March 1, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 1, 2024, at New York, NY.

/s/ *Y. Gloria Park*
Y. Gloria Park