VICTOR JIH, State Bar No. 186515
KELLY H. YIN, SBN 328380
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329
vjih@wsgr.com; kyin@wsgr.com

LUIS LI, SBN 156081
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
luis.li@wsgr.com

DYLAN G. SAVAGE, SBN 310452
THOMAS WAKEFIELD, SBN 330121
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900
dsavage@wsgr.com; twakefield@wsgr.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

BERNADINE GRIFFITH, et al.,

*Plaintiffs*,

v.

TIKTOK INC., et al.,

*Defendants*.

Case No.: 5:23-cv-00964-SB-E

**DISCOVERY MATTER**

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE NOVEMBER 27, 2023 COURT ORDER ON ONE-DAY SAMPLE DATA AND FOR EVIDENTIARY SANCTIONS**

Magistrate Judge: Hon. Charles Eick
Date/Time: Mar. 15, 2024 at 9:30 AM
Place: Courtroom 750
255 East Temple St., Los Angeles, CA 90012

Discovery Cutoff Date: 8/09/24
Pretrial Conference Date: 11/08/24
Trial Date: 11/25/24

## I. INTRODUCTION

To comply with the Court's order that TikTok produce "[a] sample of non-TikTok user data that Defendants collect, generate, and process on a single day," Nov. 27, 2023 Order, Defendants produced 24 hours of unmatched data containing over three million rows and 121 data fields. This data was produced as is after application of Defendants' query—TikTok produced the data it had, in the form it was found, without modification or redaction. Because the Court's order and this case focus on data that cannot be matched to any TikTok user, it is not surprising the data may not be readily usable, is incomplete, or can raise questions that TikTok cannot answer because it does not normally use unmatched data for its business. The Court did not require Defendants to alter the data, produce it in a different form, or fully make sense of it in order to comply.

Since that production, Defendants have worked to address Plaintiffs' concerns and answer their questions at significant time and expense. Plaintiffs filed this motion anyway, insisting that their concerns and questions are evidence of Defendants' failure to comply and contempt. Not so—discovery often begets more discovery. Defendants understand that their compliance did not mean Plaintiffs will not have follow-on requests. Defendants have cooperated, even when not required by the Court's Nov. 27, 2023 Order and without formal discovery requests from Plaintiffs.

This Supplemental Memorandum provides an update on Defendants' efforts since the filing of the Joint Stipulation. To fully address concerns about the data, Defendants have produced additional samples that go beyond the Court's order and are making available even more data (from tens of terabytes) upon request. As for Plaintiffs' many questions about the data, Defendants have answered all to the best of their ability, have provided descriptions for three dozen data fields identified by Plaintiffs, and are preparing a corporate witness for a deposition on these subjects

in the coming months. These efforts demonstrate Defendants' good faith cooperation, not any contempt of court. Sanctions are not warranted.

## II. TO ADDRESS PLAINTIFFS' CONCERNS ABOUT DATA INTEGRITY, DEFENDANTS ARE MAKING AVAILABLE ADDITIONAL DATA FOR PLAINTIFFS TO INSPECT FOR THEMSELVES.

Plaintiffs' concerns about manipulation and redaction are misplaced. They have raised concerns about missing data, including (1) "generated" data, (2) missing devices, (3) null or zero values, and (4) custom events. There are several reasons why such data may be missing. For example, null or zero values would be expected when the advertiser chooses not to collect certain information, where TikTok does not have the information, it is a deprecated field TikTok no longer uses, or it is information TikTok no longer had. Null or zero values would be expected where the field is for TikTok's internal use, but no such use was made.[1]

Defendants could not ascertain why the query to isolate unmatched data resulted in the apparent exclusion of certain devices or events. Rather than design a new query to isolate unmatched data (which could result in new unintended anomalies), Defendants decided to produce a sample of unmatched <u>and matched</u> data (i.e., beyond what the Court ordered) to end concerns about incomplete data. Defendants made that supplemental production on March 1.

In the interest of expediting delivery to Plaintiffs, the supplemental production contained a 50,000 row sample of matched and unmatched data (totaling over 200 MB). The sample was taken from a more recent date (February 20, 2024), represents part of an hour of activity, and captures a period of the day with high activity (10 a.m.). Defendants produced this sample because without the limitations found in the Court's order, the amount of data for an entire day is overwhelming. A 24-hour snapshot of the data would consist of billions of rows

[1] Plaintiffs' arguments concerning "generated" data are a red herring, and Defendants refer to pp. 20-21 of the Joint Stipulation in response.

and trillions of data points. It would be over **50 terabytes** of data and take months to produce based on computer processing time alone. This 50,000 row sample should be sufficient for Plaintiffs to analyze. Defendants have confirmed that no devices or events have been excluded. It also includes null, zero, and missing values, confirming that is the data TikTok has.

Nevertheless, Defendants also agree to make available to Plaintiffs' expert(s), upon request, additional hours from a single day for inspection at WSGR. Preparing even one additional hour of data will take 8-10 business days and attention from multiple TikTok employees given engineering challenges and the need to comply with strict data procedures. Defendants are willing to do so anyway, despite the burden and no clear relevance of any additional data to Plaintiffs' case. Defendants request only that Plaintiffs analyze the data produced first so they can determine if further sampling is needed and limit further requests in light of the substantial amount of time and effort that will be required.

In addition, Defendants have also produced the "raw" data requested by Plaintiffs. As discussed in prior submissions, this "raw" data is the result of "undoing" Defendants' normal data ingestion processes. The sample "raw" data was also taken from February 20, 2024, and contained tens of thousands of rows and totaled 432 megabytes. As above, this sample should be sufficient for Plaintiffs to analyze and should obviate any concerns about data integrity. The same practical challenges exist with respect to producing a full-day sample. That said, Defendants also agree to make available to Plaintiffs' expert(s), upon request, additional hours of "raw" data from a single day for inspection at WSGR. Again, Defendants request that Plaintiff analyze the March 1, 2024 sample first to see if additional sampling is necessary.

Plaintiffs do not need more data. With the December 11 sample (312MB/unmatched), the March 1 sample (200MB+/matched and unmatched), the

March 1 "raw data" sample (432MB), and Defendants' offer to make available terabytes more data upon request, **<u>Plaintiffs have ample data to analyze</u>**. Until they offer a compelling reason, their requests for still more data should be denied.

## III. DEFENDANTS HAVE ANSWERED PLAINTIFFS' MANY QUESTIONS ABOUT THE DATA AND ARE PREPARING A CORPORATE WITNESS TO TESTIFY AT DEPOSITION ABOUT THAT DATA IN THE NEXT FEW MONTHS.

Plaintiffs have also peppered Defendants with questions about the data produced on December 11, 2023. At significant burden and expense, Defendants provided Plaintiffs with a substantial amount of information without the need for formal discovery—and without any need for intervention from this Court. For example, Defendants have provided descriptions and explanations for approximately three dozen data fields in the sample. There should be no outstanding questions—Defendants provided an answer to the questions posed to date and Plaintiffs have not for now followed up with any additional questions.

Any additional question should be pursued through normal discovery means. Plaintiffs have noticed their intention to take a corporate deposition on these subjects. Defendants are targeting deposition dates starting in March 2024 and are in the process of discussing witness availability. Further questions can be most efficiently addressed at that deposition.

## IV. CONCLUSION

Defendants have gone to great lengths to address Plaintiffs' discovery needs—far beyond the scope of the Court's Order. This should demonstrate Defendants' good faith and strongly refute Plaintiffs' attempt to characterize these efforts as contempt. Defendants will continue to cooperate with Plaintiffs in discovery, but the present motion should be denied in its entirety.

Dated: March 1, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: *___/s/ Victor Jih__________*
Victor Jih

*Attorneys for Defendants*
TIKTOK INC. and BYTEDANCE INC.