VICTOR JIH, SBN 186515
vjih@wsgr.com
KELLY H. YIN, SBN 328380
kyin@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1900 Avenue of the Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile:  (866) 974-7329

LUIS LI, SBN 156081
luis.li@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900

DYLAN GRACE SAVAGE, SBN 310452
dsavage@wsgr.com
THOMAS WAKEFIELD, SBN 330121
twakefield@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000

*Attorneys for Defendants*
*TikTok Inc. and ByteDance Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNADINE GRIFFITH, et. al, <br><br> Plaintiffs, <br><br> v. <br><br> TIKTOK INC., et al., <br><br> Defendants. | Case No. 5:23-cv-00964-SB-E <br><br> **DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFS' SECOND MOTION TO ENFORCE COURT ORDER AND FOR EVIDENTIARY SANCTIONS** <br><br> Magistrate Judge: Hon. Charles Eick <br> Action Filed: May 26, 2023 <br> Trial Date: November 25, 2024 <br><br> **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

## I. INTRODUCTION

Plaintiffs' second motion to enforce and for sanctions should be denied because Defendants have complied with the Court's March 18 Order. Plaintiffs cannot dispute that Defendants have provided copies of three 200,000-row tables containing 3.7GB of data along with 53 charts and graphs and made the rest available for inspection. And as in their first motion, the data simply does not support Plaintiffs' claims. Yet, as before, Plaintiffs claim that this fact demonstrates that there must be evidence that does support their claims. There is not. Defendants can only produce what they have, and Plaintiffs' insistence that there must be more does not make it so. Plaintiffs' arguments for sanctions are ultimately based on an unsupported legal theory, assumptions, and speculation.

## II. DEFENDANTS COMPLIED WITH THE MARCH 18 ORDER

On April 15, 2024, Defendants produced the data the Court ordered.

| Court Ordered | Defendants Produced |
|---|---|
| ". . . all **raw data** of domestic non-TikTok users . . ." | • Provided a copy of 200,000 rows from the "███████████████" table (2.2GB).<br>• Made the remaining over 3 billion[1] rows available for inspection. |
| ". . . **use by processing** [and] generation . . ." | • Provided a copy of 200,000 rows from the "███████████████" table (1.2GB).<br>• Made remaining available for inspection. |
| ". . . **use by** . . . **aggregation**, combination or reporting . . ." | • Provided a copy of 200,000 rows from the "███████████████" table (0.33GB).<br>• Made remaining available for inspection. |

---

[1] The reference to "3 trillion" in the Joint Stipulation and the Savage Declaration conflated data points with data rows. While a 24-hour dataset can consist of over <u>1 trillion</u> data points, the raw data at issue here contains over <u>3 billion</u> rows.

| Court Ordered | Defendants Produced |
|---|---|
| "... **all uses** of the data ... which uses occurred ... at any time [over two weeks] ..." | • Provided copies of 53 charts and tables reflecting use of unmatched data during the following two weeks. |

*See* Dkt. 117 at 1-2 (March 18 Order) (emphasis added); Dkt. 148-7 ¶¶ 4-5. The three 200,000-row tables include over 350 combined fields and 3.7GB of data. The raw data table is so large that opening it crashes ordinary laptops and access requires help from e-discovery vendors. Defendants made the remaining billions of rows of data available for inspection at TikTok's Transparency Center. Defendants remain willing to make the data available for inspection once Plaintiffs specify what they want and pick a date. *See* Dkt. 148-6 ¶¶ 3-4.

Plaintiffs' issues reduce to 3 complaints that misapprehend law and facts.

<u>Complaints about Inspection</u>. Plaintiffs claim Defendants did not "produce" the data by making it available for inspection. They are mistaken. Rule 34 "permits the producing party to produce copies . . . <u>or</u> permit an inspection of responsive materials." *Parkside/El Centro Homeowners Ass'n v. Travelers Cas. Ins. Co. of Am.*, 2022 WL 108609, at *2 (S.D. Cal. Jan. 11, 2022); *see also InteraXon Inc. v. NeuroTek, LLC*, 2017 WL 24721, at *5 (N.D. Cal. Jan. 3, 2017) (parties are "not required to produce copies . . . in lieu of . . . an inspection").

An inspection makes sense here. Inspection reduces burden, especially when, as here, there is voluminous data. *Parkside/El Centro Homeowners Ass'n*, 2022 WL 108609 at *2. It also allows for control over sensitive data. *Rambus Inc. v. Hynix Semiconductor Inc.*, 2007 WL 9653194, at *4 (N.D. Cal. Sept. 25, 2007) (permitting "inspections of sensitive materials at a secure location").

<u>Complaints About Data Integrity</u>. Plaintiffs' arguments about how raw data is stored, null and 0 values, and the difficulties they face identifying related data do not support their request for sanctions either. Defendants need and can only

produce the data they have. *See* Dkt. 148-4 at 39:5-10. Plaintiffs thus cannot complain about null and 0 values when those are the values that appear in the tables as stored by TikTok in the normal course of business. Dkt. 148-9 ¶ 6. Plaintiffs may prefer that raw data be saved with HTTP headers, but what matters is how TikTok saved that data. Dkt. 148-8 ¶¶ 3-5. And Defendants are only required to produce the data as it is kept. *See Hahn v. Massage Envy Franchising, LLC*, 2014 WL 12899290, at *8 (S.D. Cal. July 24, 2014) (party produced "raw data" in SQL format, "Rule [34] provides that the data can be produced as 'maintained in the usual course of business'"). None of this shows non-compliance.

        <u>Complaints About "Use" of Data</u>. Defendants produced documents reflecting all uses of non-TikTok user data. The "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" table reflects the processing. The "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" table reflects any aggregating, combining, and reporting of the data. And Defendants produced 53 charts and graphs they found that used unmatched data, including for overall match rates, match rates by device or geography, analysis of deduplication efforts, and the frequency of events. These are plainly examples of uses to improve matching and TikTok's overall systems. Defendants produced these even though they use de-identified data that cannot be associated with a non-TikTok user. There was no gamesmanship or non-compliance—any so-called "missing" uses (*e.g.*, conducting an IP range valuation) did not appear in the data gathered after a reasonable search during the relevant two weeks. *See Lever Your Bus., Inc. v. Sacred Hoops & Hardwood, Inc.*, 2021 WL 243308, at *8 (C.D. Cal. Jan. 25, 2021) (where party did not "store data of its website visitors," court did not compel production of data "that does not exist").

**III.   THE COURT SHOULD DENY PLAINTIFFS' REQUEST FOR EVIDENTIARY SANCTIONS**

        This is the second time Plaintiffs have requested adverse inference sanctions. The first time, the Court explained during hearing that:

> [Y]our requested sanction seems quite counterintuitive to say we want it established that they collect data and based on their representation to us that they didn't collect data on this particular day. I see no logical basis for the evidentiary sanction that you request.

Dkt. 148-4 at 21:13-18.  Plaintiffs now bring the same request without explaining why this time is different.  If anything, it is even more clear now that an adverse inference is inappropriate.  Three separate productions of data confirm that the facts do not support Plaintiffs' theories.

Plaintiffs have not made the showing to support an adverse inference—an "extreme sanction" usually reserved for spoliation or other intentional misconduct.  *MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2013 WL 6869933, at *2 (N.D. Cal. Dec. 31, 2013).  Even with misconduct—which does not exist here—any adverse inference must be grounded in fact, not speculation.  *See Lakes v. Bath & Body Works, LLC*, 2019 WL 2124523, at *4 (E.D. Cal. May 14, 2019).  Especially where, as here, "the premise" of a discovery motion "is false," and the moving party "cannot cite a single case in which . . . an adverse jury instruction was imposed under similar circumstances," sanctions should be denied.  *MediaTek*, 2013 WL 6869933, at *4-5.  And any adverse inference must be grounded in real prejudice and not be pursued for "a strategic advantage."  *Id.* at *5 n.1.

## IV.  CONCLUSION

In his recent order adjusting the schedule, Judge Blumenfeld instructed the parties to "redouble their efforts to cooperate reasonably."  Dkt. 142 at 2.  Here, though, Plaintiffs chose to move for sanctions rather than follow the meet-and-confer process.  *See generally Ashley v. Moore*, 2023 U.S. Dist. LEXIS 72169, at *3-4 (C.D. Cal. Apr. 24, 2023) ("Rules and procedures are designed to deter the parties from playing 'fast and loose.'").  Defendants have attempted to answer Plaintiffs' reasonable questions, to cooperate, and to resolve misunderstandings and disagreements, both here and regarding other recent discovery requests.  There is no basis for sanctions.  This Court should deny the motion.

| | |
|---|---|
| Dated: May 2, 2024 | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation<br><br>By: */s/ Victor Jih*<br>Victor Jih<br><br>*Attorneys for Defendants*<br>*TikTok Inc. and ByteDance Inc.* |