Ekwan E. Rhow (CA SBN 174604)
  erhow@birdmarella.com
Marc E. Masters (CA SBN 208375)
  mmasters@birdmarella.com
Christopher J. Lee (CA SBN 322140)
  clee@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS &
NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
GLANCY PRONGAY & MURRAY, LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
gpark@susmangodfrey.com

John W. McCauley (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jmccauley@susmangodfrey.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNADINE GRIFFITH, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TIKTOK, INC, a corporation; BYTEDANCE, INC., a corporation,<br><br>Defendants. | Case No. 5:23-cv-00964-SB-E<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THEIR SECOND MOTION TO ENFORCE COURT ORDER AND FOR EVIDENTIARY SANCTIONS**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>Magistrate Judge: Hon. Charles Eick<br><br>Action Filed: May 26, 2023<br>Trial Date: January 21, 2025 |

Defendants' portion of the Joint Stipulation rewrites the Court's March 18, 2024 Order ("Second Order") to suit their needs and demonstrates that they knowingly violated the Court's two orders. Defendants complain that they should not have to produce the data at issue (despite the orders compelling production) because there is no "reason to believe that any data actually supports [Plaintiffs'] claims." Dkt. 150-1 ("JS") at 31; *id.* at 4:10-11. This position is remarkable in three crucial ways. First, it ignores that the Court has already twice ruled that the data at issue is relevant and proportional to the needs of the case. Second, it demonstrates Defendants' efforts to simultaneously obstruct discovery and benefit from their obstruction. Plaintiffs cannot know everything the evidence will show without first obtaining it.[1] That is why Plaintiffs have sought—and the Court has twice ordered—production of the sample data. Third, far from "not supporting Plaintiffs' claims," even the woefully inadequate subset of data produced shows that Defendants collect vast amounts of ████████████████████████████████████████████ ████████████████████████████████████████, from non-TikTok users.

<u>Failure to Produce 24-Hour Sample of Data</u>:[2] Defendants do not dispute that they produced only a 200,000 row sample, JS at 16, but cite Rule 34 to argue that their offer to make the remaining data available for inspection complies with the Second Order, *id.* at 3-4, 26-28. But the Court ordered them to "produce" the data, not merely to make it available for inspection. Further, if Defendants all along were planning for inspection, rather than production, they had the burden to notify the Court to seek modification of the Second Order. Defendants also could have responded to Plaintiffs' repeated invitations to meet and confer. *See* Dkt. 148-5.

---

[1] *See* JS at 22:17-25 (Plaintiffs first sought sample data to assess implications of Defendants' ongoing data destruction, which Plaintiffs remain unable to do).

[2] Defendants also claim that they encountered an "unanticipated challenge" while comp█████████████████████████████d say that they did not discover the "███████████████████████████████████" table until after that Order. This ███████████████████████████████████████████████████. *March 1*, Defendants had already produced a █████████████████████████. *See* Supp. Park Decl. ¶¶ 4-5; Exs. 10-11. Defen████████████████████████████ about their discovery efforts, or lack thereof.

1

1  Defendants didn't choose any of these reasonable options and instead unilaterally
2  rewrote the two orders.

3  Defendants also suggest that they were justified in flouting the Second Order
4  by citing the volume of a 24-hour raw data set. *See* JS 3, 27-28. For the reasons
5  explained in the Joint Stipulation, *see* JS at 19-20, Defendants' burden objections are
6  meritless. In addition, Defendants fail to explain whether the "3 trillion rows" and
7  "50 terabytes of data," JS at 3, 27, is data collected only from domestic non-TikTok
8  users—or whether they are once again counting data from TikTok users and from
9  abroad to inflate their burden objections. *See* Dkt. 148-4 at 51:8-52:5 (Defendants
10 knowingly included non-US data in February 20, 2024 data production); JS at 29-30
11 (Defendants admitting that their supposed "raw" data "includes both US and non-US
12 data"). Plaintiffs' analysis of the latest production shows Defendants again included
13 ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■. Supp. Park Decl. ¶ 6.

14 Finally, Defendants complain that they should get away with producing only
15 200,000 rows, in violation of the Second Order, because "Plaintiffs have yet to
16 explain why 200,000 rows is not sufficient to evaluate their theory." JS at 4; *id.* at
17 28. First, the Court ordered Defendants to produce a 24-hour sample. Second,
18 Plaintiffs are not required to articulate precisely how particular evidence will be used
19 before seeking discovery. To the contrary, Plaintiffs are entitled to seek discovery
20 regarding any "matter that is relevant to [their] claim or defense and proportional to
21 the needs of the case," and "[i]nformation…need not be admissible in evidence to be
22 discoverable." Fed. R. Civ. P. 26(b)(1). This Court has already ruled that the one-day
23 sample data is "relevant and proportional to the needs of the case." Dkt. 78. Third, as
24 explained in the Joint Stipulation, *see* JS at 20:18-21:4, the volume of data is not the
25 only violation, and Defendants have made zero assurances that they will fix the other
26 fundamental defects of their latest production.

27 <u>Failure to Produce Raw Data</u>: Defendants cannot explain away the telltale
28 signs that the data they purport is "raw data" is not raw data at all. First, Defendants

1  say that Plaintiffs "misunderstand" how raw data is stored, but the misunderstanding
2  lies with Defendants. Plaintiffs did not argue that Defendants should preserve HTTP
3  header information in the form it was collected. *See* JS 28:25-28. Rather, Plaintiffs
4  observed that information collected from the HTTP header should be reflected ***in***
5  ***some form*** in the "raw data." Plaintiffs even gave a concrete example of such HTTP
6  header information—third-party cookie information—that should be reflected ***in***
7  ***some form*** in the raw data, yet is not. While Defendants' expert, Ron Schnell,
8  quibbles with the definition of "raw data" without offering his own definition, *see*
9  Schnell Decl. ¶ 5, even he admits that HTTP headers "can include information about
10 the URL, cookies, or other relevant information" and that data from within the HTTP
11 header are "ingested into TikTok's servers' applications (such as TikTok's Pixel and
12 Events API)," *id.* at ¶¶ 3, 4. Neither Defendants nor Mr. Schnell has an explanation
13 as to why the HTTP header data that Mr. Schnell admits is ingested into TikTok's
14 servers' applications is not reflected in the purported "raw data" ***in any form***.

15   Defendants also do not address Plaintiffs' observation that the supposed "raw
16 data" refers to items such as "█████████████████████████████████████
17 ████████████████████████████████████████████████████████████." JS
18 at 13:5-6. Their silence speaks volumes. As Defendants implicitly acknowledge, they
19 cannot plausibly argue that the "raw data" received in the first instance contain
20 ██████████████████████████████████████████████████.

21   Failure to Produce Processed Data that Maps to "Raw" Data: Defendants do
22 not dispute that less than 0.05% (98 of 200,000) of the "raw" data has a corresponding
23 entry in the processed data. JS at 29:25-30:3. They brush off this violation as "to be
24 expected" because the "raw" data includes US and non-US data. That in itself is an
25 admission that they violated the Second Order, which, in response to Defendants'
26 earlier production containing non-US data, specified that this time TikTok should
27 produce only "***domestic*** non-TikTok user data." Dkt. 117. It is also not "natural for
28 the correspondence to be unclear": Defendants receive data from the Pixel and Events

3

1  API and then ingest and process that same data. For 98 entries, Defendants have
2  produced two forms of the data—"raw" and processed. Notably, Defendants do not
3  claim that they did not process the other 199,902 data entries in their "raw" sample.

4  <u>Failure to Produce Actual Values and Second Wei Declaration</u>: Defendants do
5  not dispute that two dozen data fields in the processed data once again contain blank,
6  0, or "null" fields and then engage in post-hoc speculation about how that could be.
7  JS at 30:5-13. None of their speculation carries water. If an advertiser chose not to
8  send data for a field or if no data was received from one field for a particular user,
9  then **some** rows of data (*i.e.* certain rows corresponding with certain advertisers or
10 users) could contain blank, 0 or "null" values. But here, 24 data fields ***across the***
11 ***entire production of processed data*** systematically contain blank, 0, or "null" values.

12  Defendants also cite a second declaration from Yunfeng Wei, *see* Dkt. 150-8,
13 who submitted a first declaration in connection with Plaintiffs' First Motion to
14 Enforce, *see* Dkt. 96-4. Plaintiffs noted that Mr. Wei's first declaration shows that he
15 accesses and queries U.S. data from China—in direct contradiction to representations
16 that Defendants made in this litigation and to Congress. Dkt. 99 at 3:6-14. In his
17 second declaration, Mr. Wei makes an about-face, stating again under penalty of
18 perjury that while he "designed" the queries to pull U.S. data collected by TikTok,
19 he did not himself "run" those queries because he is "based in China, and I do not
20 have access to U.S. data." Dkt. 150-8. If Mr. Wei did not himself run the query or
21 review the results of the query, how does he know that his query was accurate and
22 comprehensive? What "separate employee" ran the query and reviewed the results?
23 Why didn't that "separate employee," who has personal knowledge of the query and
24 resulting data, submit a declaration? Why hasn't anyone from TikTok or ByteDance
25 submitted a declaration attesting that Defendants complied with the two orders?

26  <u>Failure to Produce Documents Reflecting All Uses of Raw Data</u>: Defendants
27 do not dispute that they produced documents reflecting only one use of data and chalk
28 up their violation to the fact that "there were no [other] uses in the two weeks the

Court specified." JS at 30:25-27. Plaintiffs feared Defendants would use trickery to violate the Second Order and wrote in their March 20, 2024 email to Defendants:

> [W]e understand that the Court ordered Defendants to produce documents reflecting all uses of data at any time between March 14 and 28 based on Defendants' counsel's representation to the Court that unmatched data is auto-deleted 14 days after collection. We thus understand that the Court's specification of the 14-day window was meant to capture the full time period in which Defendants may use unmatched data after its collection. . . . For the avoidance of doubt, some of Defendants' documents reflect that the retention period for unmatched data is longer than 14 days (contrary to counsel's representation to the Court). To the extent that is the case, we trust that Defendants will not evade the text and spirit of the Order by delaying their use of the March 14 data until after March 28 so that they can withhold evidence of that usage from Plaintiffs. Please confirm.

Dkt. 148-5. Defendants ignored the email. By Defendants' measure, they can limit their use of non-TikTok user data during the period covered by the Second Order and then never disclose any documents reflecting other uses. This is yet another maneuver to hide relevant evidence and evade the Court's orders, which meant to give Plaintiffs a data sample that accurately represents how Defendants collect and use data from domestic non-TikTok users at all relevant times, not just the specific weeks Defendants picked for production, during which they could suspend normal use.

Incredibly, Defendants complain that Plaintiffs should adopt "a more collaborative approach that follows a proper meet-and-confer process." JS at 32. But the record is clear that Defendants are the ones who refuse to meet and confer and who produce discovery only when ordered to do so or with a motion pending. After Defendants failed to comply with the Court's first order to produce sample data, Plaintiffs waited over two months to file the First Motion to Enforce to work out the dispute among the parties. Dkt. 96-1 at Sec. III.C. Defendants refused to engage. Plaintiffs emailed Defendants two days after the Second Order to reach a shared understanding of the scope of that Order. Dkt 148-5. Defendants refused to engage. Plaintiffs, on April 24, 2024, asked Defendants to meet and confer on a stipulation to address Defendants' ongoing deletion of non-TikTok user data. Ex. 9. Defendants refused to engage. Sanctions are warranted to put an end to the misconduct.

| | | |
|---|---|---|
| 1 | Dated: May 2, 2024 | By: /s/ *Y. Gloria Park* |

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
**GLANCY PRONGAY & MURRAY, LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Ekwan E. Rhow (CA SBN 174604)
Marc E. Masters (CA SBN 208375)
Christopher J. Lee (CA SBN 322140)
**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
erhow@birdmarella.com
mmasters@birdmarella.com
clee@birdmarella.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (pro hac vice)
**SUSMAN GODFREY L.L.P.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (212) 336-8330
Facsimile: (310) 336-8340
gpark@susmangodfrey.com

John W. McCauley (pro hac vice)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jmccauley@susmangodfrey.com

*Attorneys for Plaintiffs*

6

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On April 30, 2024, I served true and correct copies of the foregoing document, by causing to be posted the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 2, 2024, at New York, NY.

/s/ *Y. Gloria Park*
Y. Gloria Park