1   VICTOR JIH, SBN 186515
    vjih@wsgr.com
2   KELLY H. YIN, SBN 328380
    kyin@wsgr.com
3   WILSON SONSINI GOODRICH &
    ROSATI, P.C.
4   1900 Avenue of The Stars,
    28th Floor
5   Los Angeles, CA 90067
    Telephone: (424) 446-6900
6   Facsimile: (866) 974-7329

7   LUIS LI, SBN 156081
    luis.li@wsgr.com
8   WILSON SONSINI GOODRICH &
    ROSATI, P.C.
9   633 West Fifth Street,
    Suite 1550
10  Los Angeles, CA 90071
    Telephone: (323) 210-2900
11

SHERYL S. BASSIN, NY SBN
4662797
sbassin@wsgr.com
(admitted *pro hac vice*)
DYLAN G. SAVAGE, CA SBN
310452
dsavage@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI, P.C.
1301 Avenue of the Americas.
40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329

THOMAS WAKEFIELD, SBN 330121
twakefield@wsgr.com
WILSON SONSINI GOODRICH &
ROSATI, P.C.
One Market Plaza, Spear Tower,
Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900

12

13

14   *Attorneys for Defendants*
     *TikTok Inc. and ByteDance Inc.*

15

16              UNITED STATES DISTRICT COURT

17            CENTRAL DISTRICT OF CALIFORNIA

18   BERNADINE GRIFFITH, et al.,          Case No. 5:23-cv-0964-SB-E
     Individually and on behalf of all
19   others similarly situated,           **DEFENDANTS' OPPOSITION TO**
                                          **PLAINTIFFS' MOTION FOR CLASS**
20              *Plaintiffs*,             **CERTIFICATION**

21          v.                            **REDACTED VERSION OF**
                                          **DOCUMENT PROPOSED TO BE**
22   TIKTOK INC., a corporation;          **FILED UNDER SEAL**
     BYTEDANCE, INC. a corporation,
23
                                          Judge: Hon. Stanley Blumenfeld, Jr.
24              *Defendants*.             Date: August 16, 2024
                                          Time: 8:30 a.m.
25                                        Place: Courtroom 6C

26                                        Action Filed: May 26, 2023
                                          Trial Date: January 20, 2025
27

28

1

# TABLE OF CONTENTS

2

**Page**

3    I.     INTRODUCTION ........................................................................... 1

4    II.    FACTUAL AND PROCEDURAL BACKGROUND .................................. 2

5           A.    TTI's Advertising Tools.......................................................... 2

6
           B.    TTI Attempts to Match Data to TikTok Users and Deletes
7                 Unmatched Data............................................................... 4

8           C.    Advertisers Control What Data They Share ........................... 4

9
           D.    Advertisers Are Responsible for Making the Necessary
10                Disclosures, Securing Consent, and Using the Tools
11                Appropriately .................................................................. 5

12          E.    Consumers Can Control What Information Websites Share ............... 6

13          F.    This Litigation................................................................... 7

14   III.   LEGAL STANDARD ....................................................................... 7

15   IV.    ARGUMENT .............................................................................. 7

16
           A.    Plaintiffs' Proposed Classes Are Fatally Overbroad ........................ 7

17
           B.    Plaintiffs Have Not Satisfied the Requirements of Rule 23(a)........... 10
18
19                1.    Plaintiffs Fail to Establish Commonality ................................ 10

20                2.    The Named Plaintiffs Are Not Typical or Adequate............... 13

21          C.    Plaintiffs Have Not Satisfied the Requirements for Certifying a
22                Class Under Rule 23(b)(3) ........................................................ 15

23                1.    Individual Issues Predominate.................................................. 15

24                      a)    Class Membership Is Individualized............................. 15
25
26                      b)    As Alleged, Plaintiffs' Privacy Torts Require
                              Individual Adjudication............................................ 16
27
                        c)    Wiretapping Claims Require Individual
28                            Adjudication ........................................................ 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

          d)      Property Torts Require an Individualized Showing of Property Rights ........................................................... 19

          e)      Consent Is Individualized ................................................. 19

          f)      Damages Determinations Are Individualized ................ 20

     2.      A Class Action Is Not a Superior Means of Adjudication ....... 21

  D.      Plaintiffs Cannot Certify an Injunctive Class Under Rule 23(b)(2) ....................................................................................... 22

  E.      Plaintiffs Have Not Met the Requirements for Certifying an Issues Class Under Rule 23(c)(4) ................................................ 23

V.     CONCLUSION ........................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ........................................................................ 7

*Anthony v. Pharmavite*,
2019 WL 109446 (N.D. Cal. Jan. 4, 2019) ................................... 22

*Berni v. Barilla S.P.A.*,
964 F.3d 141 (2d Cir. 2020) ..................................................... 22, 23

*Betts v. Reliable Collection Agency, Ltd.*,
659 F.2d 1000 (9th Cir. 1981) ..................................................... 22

*Bowerman v. Field Asset Servs., Inc.*,
60 F.4th 459 (9th Cir. 2023) ........................................................ 20

*Brewer v. Gen. Nutrition Corp.*,
2014 WL 5877695 (N.D. Cal. Nov. 12, 2014) ............................. 16

*Brooks v. Thomson Reuters Corp.*,
2023 WL 5667884 (N.D. Cal. Aug. 9, 2023) ............................... 20

*Brown v. Google LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) ............................ 20

*Bustillos v. W. Covina Corp. Fitness*,
2022 WL 423396 (C.D. Cal. Jan. 3, 2022) .................................. 14

*Calhoun v. Google Inc.*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ...................................... 8, 19

*Campbell v. Facebook, Inc.*,
315 F.R.D. 250 (N.D. Cal. 2016) ................................................. 21

*Colgate v. Juul Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ......................................... 19

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ................................................................... 7, 20

*CTC Real Estate Servs. v. Lepe*,
    140 Cal. App. 4th 856 (2006)...........................................................................8

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018).........................................................................23

*Deering v. CenturyTel, Inc.*,
    2011 WL 1842859 (D. Mont. May 16, 2011) ...............................................17

*Diacakis v. Comcast Corp.*,
    2013 WL 1878921 (N.D. Cal. May 3, 2013) .................................................10

*DZ Reserve v. Meta Platforms, Inc.*,
    96 F.4th 1223 (9th Cir. 2024).......................................................................15

*Dzielak v. Whirlpool Corp.*,
    2017 WL 6513347 (D.N.J. Dec. 20, 2017) ..................................................22

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ...........................................................8

*Franklin v. Midwest Recovery Sys., LLC*,
    2021 WL 1035121 (C.D. Cal. Feb. 5, 2021)................................................20

*Gbarabe v. Chevron Corp.*,
    2017 WL 956628 (N.D. Cal. Mar. 13, 2017)..................................................8

*Gen. Tel. Co. of SW v. Falcon*,
    457 U.S. 147 (1982) ..............................................................................7, 13

*Gershzon v. Meta Platforms, Inc.*,
    2023 WL 5420234 (N.D. Cal. Aug. 22, 2023)..............................................18

*Guzman-Lopez v. Am. Bottling Co.*,
    2020 WL 913088 (C.D. Cal. Jan. 6, 2020) ..................................................14

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......................................8, 16, 17, 18

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992)........................................................................14

*Hart v. TWC Prod. & Tech. LLC*,
    2023 WL 3568078 (N.D. Cal. Mar. 30, 2023)..............................................17

*In re Apple iPhone Antitrust Litig.*,
    2022 WL 1284104 (N.D. Cal. Mar. 29, 2022) ............................................. 21

*In re Coca-Cola Prods. Mktg. & Sales Practices Litig.*,
    2021 WL 3878654 (9th Cir. Aug. 31, 2021) ........................................ 15, 23

*In re Facebook, Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ......................................................................... 8

*In re Google Inc. Gmail Litig.*,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ................................ 14, 17, 20

*In re Google, Inc. Privacy Policy Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ........................................................... 8

*In re Google Referrer Header Privacy Litig.*,
    2014 WL 1266091 (N.D. Cal. Mar. 26, 2014) ............................................ 12

*In re Google RTB Consumer Privacy Litig.*,
    2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) .............................................. 20

*In re Hulu Privacy Litig.*,
    2014 WL 2758598 (N.D. Cal. June 17, 2014) ..................................... 12, 15

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................... 19

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................ 8, 12, 18

*In re Toll Rds. Litig.*,
    2018 WL 4945531 (C.D. Cal. Oct. 3, 2018) .............................................. 17

*In re Zynga Privacy Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ...................................................................... 8

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ..................................................................................... 22

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ....................................................................... 18

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................. 8, 19

Defs.' Opp'n to Pls.' Mot. for Class
Certification
    -v-    Case No. 5:23-cv-0964-SB-E

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012)................................................................ 10

*McDonald v. Aps*,
    385 F. Supp. 3d 1022 (N.D. Cal. 2019) .......................................... 17

*McHugh v. Metro. Life Ins. Co.*,
    2023 WL 3318691 (C.D. Cal. Mar. 31, 2023) .............................. 14

*Moeller v. Taco Bell Corp.*,
    2012 WL 3070863 (N.D. Cal. July 26, 2012)................................ 21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*,
    31 F.4th 651 (9th Cir. 2022)........................................................... 9, 10

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010)........................................................ 22

*Sherman v. Yahoo! Inc.*,
    2015 WL 5604400 (S.D. Cal. Sept. 23, 2015) ............................. 14

*Standard Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013) .......................................................................... 21

*Torres v. Nissan N. Am. Inc.*,
    2015 WL 5170539 (C.D. Cal. Sept. 1, 2015).............................. 21

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018)........................................................... 20

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .......................................................................... 15

*United States v. Forrester*,
    512 F.3d 500 (9th Cir. 2008)............................................................. 8

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996)........................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .................................................................... 10, 22

*Walker v. Life Ins. Co. of the Sw.*,
  953 F.3d 624 (9th Cir. 2020) ..................................................... 15

*Wiley v. Am. Fin. Network, Inc.*,
  2023 WL 4681538 (C.D. Cal. July 3, 2023) ................................ 13

*Withers v. eHarmony, Inc.*,
  2010 WL 11520198 (C.D. Cal. June 2, 2010) ............................. 14

*Xavier v. Philip Morris USA, Inc.*,
  787 F. Supp. 2d 1075 (N.D. Cal. 2011) ...................................... 16

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .................................................... 21

## STATUTES

Cal. Civ. Code § 3515 ................................................................... 19

## RULES

Fed. R. Civ. P. 23 ............................................................... 2, 7, 22

Fed. R. Civ. P. 23(a) ........................................................... 7, 10

Fed. R. Civ. P. 23(b) ..................................................................... 7

Fed. R. Civ. P. 23(b)(2) ............................................................... 22

Fed. R. Civ. P. 23(b)(3) ............................................................... 15

Fed. R. Civ. P. 23(c)(4) ............................................................... 23

1

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| ¶ or SAC | Second Amended Class Action Complaint, Dkt. 137 |
| Defendants | TikTok Inc. and ByteDance Inc. |
| EAPI | Events Application Programming Interface ("API") |
| Ex. __ | Exhibit(s) attached to the Declaration of Sheryl Shapiro Bassin in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification or the Declaration of Sheryl Shapiro Bassin in Support of Defendants' Application For Leave to File Under Seal, both filed contemporaneously herewith |
| Kindler ¶ __ | Expert Report of Lauren Kindler, filed contemporaneously herewith |
| Li Decl. ¶ __ | Declaration of Lizzie Li in Support of Defendants' Opposition to Plaintiffs' Motion for Class Certification, filed contemporaneously herewith |
| Mangum ¶ __ | Declaration of Russell W. Mangum III in Support of Plaintiffs' Motion for Class Certification, Dkt. 179-3 |
| Mot. | Plaintiffs' Memorandum of Points and Authorities in Support of Their Motion for Class Certification, Dkt. 179-1 |
| Named Plaintiffs | Bernadine Griffith, Jacob Leady (Watters), and Patricia Shih |
| Pl. Ex. __ | Exhibit(s) attached to the Declaration of Y. Gloria Park in Support of Plaintiffs' Motion for Class Certification, Dkt. 177-8, or the Sealed Declaration of Gregory Linkh in Support of Plaintiffs' Application Under Local Rule 79-5 for Leave to File Under Seal, Dkt. 179 |
| Schnell ¶ __ | Expert Report of Ron Schnell, filed contemporaneously herewith |
| Shafiq ¶ __ | Declaration of Zubair Shafiq in Support of Plaintiffs' Motion for Class Certification, Dkt. 179-2 |
| Stivers ¶ __ | Expert Report of Dr. Andrew Stivers, filed contemporaneously herewith |
| TikTok | The TikTok platform |
| TTI | TikTok Inc. |

## I.    **INTRODUCTION**

This case concerns the TikTok Pixel and EAPI, two industry-standard tools TikTok, Inc. ("TTI") provides advertisers to measure and focus their advertising campaigns and promotions on TikTok. Advertisers can configure these tools to help gauge their users' interactions, and TTI tries to match those interactions to TikTok users and the advertisements they have seen on TikTok. Because TTI seeks to help advertisers optimize their advertising to TikTok users on its platform, information received about non-TikTok users is essentially useless. Once TTI determines there is no match, it deletes that information.

Plaintiffs call this " ███████████ " (Mot. at 2) and propose a sprawling class of upwards of 100 million non-TikTok users who have visited one of the hundreds of thousands of websites that use the tools. The operative complaint promises evidence of TTI creating "detailed profiles" (¶54) and "digital dossiers" (¶¶101, 184) of non-TikTok users. Yet all Plaintiffs can muster to support their current motion ████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████ . This lack of evidence highlights the reasons the Court should refuse to certify any class. Some of the most obvious include:

*Class Definitions*. The classes are fatally overbroad, sweeping in anyone who ever visited a website using these tools who is not a TikTok user. But the mere collection of browsing data is not enough to state a privacy claim, an interception claim, or a property claim. And Plaintiffs identify ████████████ ███████████████████████████████████ .

*Commonality*. Plaintiffs' claims require a disclosure of identifying and sensitive information. This cannot be determined with common proof, but requires consideration of a particular website, its use of the tools, and a user's interactions.

1  Plaintiffs' review of ███████████████████████████████████
2  ███████████████████████████████████████████████████,
3  showing the individual nature of this inquiry.

4      *Predominance*. The Court will become mired in individualized issues as it
5  sorts out who is a member of the class, the reasonableness and offensiveness of any
6  alleged privacy violation, the specific timing mechanisms that are claimed to give
7  rise to an interception, the economic bases for any property claims, and consent.

8      Simply using a standard tool to collect online user activity is not *per se*
9  unlawful. Like any tool, the Pixel and EAPI can be used in appropriate and
10 inappropriate ways by advertisers. Stitching together a class that covers every way
11 an advertiser may have used the Pixel and EAPI, all of their websites with their
12 different practices, policies, and disclosures, and every non-TikTok user to visit
13 those websites—without any reason to believe that they were harmed—cannot
14 meet the strict requirements of Rule 23. Plaintiffs' motion should be denied.

15 **II.   FACTUAL AND PROCEDURAL BACKGROUND**

16     TTI offers the video-based TikTok platform in the United States.[1] The
17 platform has over one billion monthly active users globally, with about 170 million
18 in the United States. Li Decl. ¶3. Like other similar companies, TTI sells
19 advertising on its platform. Because information about its users helps make that
20 advertising more effective, TTI offers industry-standard tools to advertisers to
21 collect information about their customers and share that information with TTI.

22     **A.   TTI's Advertising Tools**

23     TTI provides advertisers with two tools: the TikTok Pixel and EAPI. Ex. 1 at
24 8. The data collected by these tools is displayed in dashboards that offer

_____

26     [1] ByteDance Inc. is a separate U.S. entity. Plaintiffs improperly collapse
27 allegations and arguments against these distinct entities into generic allegations
   and arguments against "Defendants." Because Plaintiffs' Motion conflates TTI and
28 ByteDance, the same problems for class certification exist for both.

1    information about advertisers' campaigns and promotions. *Id.* at 3-8. With this

2    data, TTI helps advertisers tailor advertisements on TikTok. *Id.*

3        The TikTok Pixel is a piece of JavaScript code that advertisers can place on

4    their websites. *Id.* at 9; Schnell ¶39. The Pixel allows advertisers to share website

5    events—actions like adding an item to a shopping cart—with TTI. Ex. 1 at 9;

6    Schnell ¶40. Advertisers can also share "PageView" information, including the

7    URL, IP address, and cookies. Ex. 9 269:19-270:8; Schnell ¶41. A website owner

8    decides what pages on which to install the Pixel, what events will trigger the Pixel,

9    and what information to share with TTI. Schnell ¶¶41-42. This type of tool is not

10    unique to TTI and has been offered for years. *Id.* ¶¶28-33.

11        EAPI is a server-to-server connection that allows an advertiser to share

12    marketing data with TTI from across the advertiser's website, application (app),

13    and brick-and-mortar stores. Ex. 1 at 10; Ex. 2 at 2. EAPI does not rely on the

14    user's browser to send information to TTI—instead, the advertiser sends its own

15    event information. Ex. 2 at 2; Schnell ¶¶57-60. This tool thus gives the advertiser

16    greater control over when and what data it shares. Ex. 2 at 3.



1

### B.    TTI Attempts to Match Data to TikTok Users and Deletes Unmatched Data

2

3     Because TTI offers advertising only on its platform, it is interested only in

4     data from TikTok users; however, because TTI cannot determine who is a TikTok

5     user before collection, all data must be sent to TTI. *See* Ex. 10 85:5-16. TTI then

6     tries to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 11 57:10-21.

7     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* 56:7-20.

9     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11    ▮▮▮▮▮▮▮▮. *Id.* 180:7-11; Ex. 10 39:14-16.

12    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Pl. Ex. 25 at 59.

13    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 10 179:15-18.

14    ### C.    Advertisers Control What Data They Share

15    Use of the Pixel is optional. Depending on their goals, advertisers can

16    choose to install the Pixel on a single webpage (e.g., the home page), multiple

17    pages (e.g., particular product or article pages), or on every page. Ex. 3 at 2-3.

18    They also control when and what information they share. *See id.* at 3; Ex. 1 at 11;

19    Ex. 4 at 14. RiteAid.com, for example, installed the Pixel on most of the pages of

20    its website, but the pages in the Pharmacy section have no Pixel. Schnell ¶43.

21    Using EAPI is also optional. *See* Ex. 1 at 11; Ex. 3 at 3. And unlike the

22    Pixel, EAPI has no default settings—thus, if not properly configured to enable data

23    sharing, EAPI will not share any data. Ex. 10 139:4-6.

24    Advertisers can (and do) alter the settings for these tools. As TTI tells

25    advertisers: "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

26    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. 1 at 12. Advertisers may change the

27

28

data they share depending on their campaigns. Ex. 3 at 4-7. They may even use different settings on multiple Pixels that are deployed simultaneously. Ex. 5.

The Vitamin Shoppe's Pixel, for example, does not share email or phone information. Ex. 6 at 1. As mentioned, RiteAid chooses to use the Pixel only on certain pages of its website. *Supra*, p. 4. Some websites utilize additional Pixel features like "advanced matching" to collect emails and phone numbers. Ex. 10 38:17-22; Ex. 11 105:20-106:4. Identifying information collected in these categories is protected by one-way SHA-256 hashing. Ex. 11 106:11-107:1; Ex. 12 45:1-8; Li Decl. ¶5. Hashing means converting information into code that humans cannot decipher but computers can analyze. Ex. 11 106:11-107:1; Li Decl. ¶6.



**D.** **Advertisers Are Responsible for Making the Necessary Disclosures, Securing Consent, and Using the Tools Appropriately**

Advertisers that use TTI's tools must agree to TTI's Business Products (Data) Terms. Ex. 7. The terms require advertisers using the Pixel or EAPI to provide "clear and comprehensive information to users in a sufficiently prominent notice regarding the access to, and collection, sharing, and usage of Business Products Data," and to comply with all applicable laws. *Id.* at 8.

Advertisers make different disclosures. Stivers ¶¶36-39. Hulu's parent

company states that it shares "limited personal information . . . with third parties" (Pl. Ex. 12 at 7) using different "beacons and marketing pixels" (Pl. Ex. 13 at 3). Others specifically disclose TTI. Every Man Jack, which sells grooming products for men, states: "we use the TikTok Pixel," and explains how it works.[2] Bump Box, which sells pregnancy products, names the specific TTI cookies it uses.[3]

Advertisers must also use the tools lawfully, consistent with their disclosures, and in a manner that does not disclose their users' sensitive information. Advertisers are instructed to avoid the disclosure of "health or financial information, or other categories of sensitive information." Ex. 7 at 4. ██ ███████████████████████████████████████████████████ ███████████████████████████████████████. Li Decl. ¶11.

### E.   Consumers Can Control What Information Websites Share

Consumers can manage what information is disclosed online. Consumers can use browser tools, privacy settings, or software to control what is shared online. Stivers ¶¶40-44; Schnell ¶80(d). TTI also offers TikTok Pixel Helper, a Chrome extension that shows what information (if any) is being shared on a page.[4]

Consumers ultimately choose which websites to frequent and which pages to visit. Stivers ¶¶12-21. These websites may have different privacy practices and make different disclosures. *Id.* ¶¶36-39. Some consumers do not read any disclosures; others may independently research. *Id.* Depending on the website, consumers may be comfortable sharing information, may browse without registering, may or even provide fake information. Stivers ¶¶22-35; Schnell ¶¶79,

---

[2] Every Man Jack, "Privacy Policy," https://www.everymanjack.com/pages/privacy-policy.

[3] Bump Box, "Privacy Policy," https://bumpboxes.com/privacy-policy.

[4] "Troubleshoot with Pixel Helper," https://ads.tiktok.com/help/article/tiktok-pixel-helper-2.0?lang=en.

1  107-110; Ex. 13 219:6-22 (███████████████); Ex. 14 141:25-142:5 (███

2  ███████); Ex. 15 183:13-191:13 (███████████████████).

3  **F.    This Litigation**

4      Bernadine Griffith commenced this action on May 26, 2023. Plaintiffs allege

5  six causes of action: (1) intrusion; (2) invasion of privacy; (3) conversion; (4)

6  larceny; and violations of (5) the California Invasion of Privacy Act ("CIPA") and

7  (6) the Electronic Communications Privacy Act ("ECPA"). Dkt. 137 ("SAC").

8      Plaintiffs seek to represent various classes of non-TikTok users who have

9  visited any website where the Pixel was installed or any website that was used with

10  EAPI. Dkt. 177.

11  **III.  LEGAL STANDARD**

12     A plaintiff seeking to certify a class has the burden of showing the Rule 23(a)

13  requirements of numerosity, commonality, typicality, and adequacy, as well as the

14  requirements for one kind of class under Rule 23(b). Fed. R. Civ. P. 23. These are

15  "stringent requirements" that "in practice exclude most claims." *Am. Express Co. v.*

16  *Italian Colors Rest.*, 570 U.S. 228, 234 (2013); *see also Comcast Corp. v. Behrend*,

17  569 U.S. 27, 33 (2013). There are no presumptions in favor of certification: "actual,

18  not presumed, conformance" with Rule 23 is "indispensable." *Gen. Tel. Co. of SW*

19  *v. Falcon*, 457 U.S. 147, 160 (1982).

20  **IV.   ARGUMENT**

21     **A.    Plaintiffs' Proposed Classes Are Fatally Overbroad**

22     The proposed classes are wildly and unworkably broad. Plaintiffs seek to

23  certify various classes of non-TikTok users who visited any (or a particular)

24  website with the Pixel installed or with EAPI. Dkt 177. At their largest, Plaintiffs

25  purport to include up to 50-100 million people who may have visited any one of

26  hundreds of thousands of websites. To achieve this scope, Plaintiffs define their

27

28

1    classes in a way that is "arbitrary and untethered to" any harm. *Gbarabe v.*
2    *Chevron Corp.*, 2017 WL 956628, at \*30 (N.D. Cal. Mar. 13, 2017).

3         Plaintiffs' proposed classes center around the data they allege is always
4    disclosed: timestamp, IP address, user agent, cookies, URL, event information, and
5    content information. Shafiq ¶¶59-66; *but see* Schnell ¶¶85-89 (explaining that ██
6    ████████████████████████████████████████████████████████████████
7    ██████). Plaintiffs focus on the <u>fact</u> of this collection and these common <u>types</u>
8    of data, as opposed to the specific content of any data collected.

9         There is a problem with Plaintiffs' certification strategy—the mere
10   collection of browsing data is both commonplace and perfectly legal. As the Ninth
11   Circuit has held, one's IP address or the URL of the pages one visits are not
12   private. *See United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (IP
13   address); *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014)
14   (URL). This information is also not the "content" of any communication. *In re*
15   *Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 795 (N.D. Cal. 2022). Nor can
16   Plaintiffs claim a property interest because this data no more belongs to them than
17   it does to the websites they visit. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010,
18   1030 (N.D. Cal. 2012). As one court put it, the "disclosure of common, basic
19   digital information to third parties" is not actionable. *In re Google, Inc. Privacy*
20   *Policy Litig.*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014).

21        To be actionable, Plaintiffs must establish facts beyond mere browsing data
22   collection. The data must be identifying and sensitive. *See In re Facebook, Inc.*
23   *Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). To be a "content," a
24   full string URL must contain particular information like search terms. *Hammerling*
25   *v. Google LLC*, 615 F. Supp. 3d 1069, 1092-93 (N.D. Cal. 2022). Plaintiffs must
26   have some recognized basis to exclude others from that information. *See, e.g.*,
27   *Calhoun v. Google Inc.*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) (relying on
28

1    Google's Do-Not-Sync representations); *CTC Real Estate Servs. v. Lepe*, 140 Cal.

2    App. 4th 856, 860 (2006) (statutory identity theft protections); *Fraley v. Facebook,*

3    *Inc.*, 830 F. Supp. 2d 785, 798-99 (N.D. Cal. 2011) (rights of publicity). <u>These</u>

4    <u>factual issues are individualized</u>—which is why Plaintiffs ignore them.

5       Because Plaintiffs ignore these factual issues, the proposed classes sweep in

6    many people with no claim or injury. A court "must consider whether the possible

7    presence of uninjured class members means that the class definition is fatally

8    overbroad." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31

9    F.4th 651, 669 n.14 (9th Cir. 2022). When "a class is defined so broadly as to

10    include a great number of members who for some reason could not have been

11    harmed by the defendant's allegedly unlawful conduct, the class is defined too

12    broadly to permit certification." *Id.*



24    Shafiq ¶¶63(v), 63(vi). ████████████████████████

27    ██████████. Ex. 16 253:18-256:22, 265:7-25.

1    The struggle to find one potentially actionable example █████████ is

2  exactly what the Ninth Circuit warns against. *Olean*, 31 F.4th at 664; *see also*

3  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) (class

4  overbroad when not limited to those misled by ads, instead including everyone

5  who purchased a certain car); *Diacakis v. Comcast Corp.*, 2013 WL 1878921, at *4

6  (N.D. Cal. May 3, 2013) (class overbroad when not limited to customers deceived

7  by Comcast, instead including everyone who purchased certain products). Dr.

8  Shafiq's difficulties would grow exponentially with more data. Notably, ██████

9  ████████████████████████████████████████████.

10      **B.     Plaintiffs Have Not Satisfied the Requirements of Rule 23(a)**

11           **1.     Plaintiffs Fail to Establish Commonality**

12    To be common, a question must be susceptible to classwide proof. *See Wal-*

13  *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). It is true a single common

14  question can satisfy Rule 23(a). It is equally true, though, that raising "common

15  'questions'—even in droves" is not enough; Plaintiffs must show that the questions

16  have "the capacity of a classwide proceeding to generate common answers apt to

17  drive resolution of the litigation." *Id.* The common question(s) must be "central to

18  the validity of each one of the claims." *Id.*

19    To establish commonality, Plaintiffs refer the Court to their predominance

20  arguments. Mot. at 5. Plaintiffs believe the following are common:

21      ●    Whether the collection of sensitive data from class members violated a

22           reasonable expectation of privacy;

23      ●    Whether the collection of sensitive data was highly offensive;

24      ●    Whether the collection of data was an intentional interception of the

25           contents of Plaintiffs' communications;

26      ●    Whether class members' data constitutes property;

27      ●    Whether the defendants' collection of data was a trespass;

28

1      ●      Whether defendants' collection of data was explicitly disclosed.

2   *Id.* This list is revealing. There are two issues embedded in each of Plaintiffs'

3   "common" questions: (1) whether information was disclosed to TTI and (2) the

4   nature of the information. Those are the truly central questions.

5          These embedded questions cannot be answered on a classwide basis. Their

6   answers turn on the circumstances each time these tools are used. As Dr. Shafiq

7   observed, ████████████████████████████████████████████

8   ██████████████████████. Ex. 16 136:15-20, 145:2-12. Whether information

9   is disclosed to TTI, let alone whether it is private or protectible, depends on the

10  website and its design, the installation and configuration of the tools, and users'

11  settings and interactions with websites. Schnell ¶¶68-110.

12         *Website Details*. Different websites raise different privacy considerations.

13  █████████████████████████. Ex. 16 268:22-269:1. ██████████

14  ████████████████████████████████████████████. *Id.*

15  85:20-24. █████████████████████████████████████████

16  ████████████████████████████████████████████████

17  ████████████████. *Id.* 91:4-20, 136:15-20; Schnell ¶¶83-93.

18         *Advertiser Use and Configuration of the Pixel and EAPI*. Because EAPI is a

19  direct connection, advertisers have complete control over the information shared.

20  *Supra*, p. 3. For the Pixel, advertisers decide whether to install it on every page of

21  its website or on certain pages. Schnell ¶42. Advertisers also control the events that

22  trigger the Pixel and the information that it shares. *Id.* ¶¶40-41. Like any tool, these

23  tools must be properly installed and configured. Ex. 10 39:14-16, 139:4-6.

24         *Class Member Interactions*. Users choose which websites to visit, how much

25  to engage, and the information they provide. Stivers ¶¶22-35, 45-61. Users also

26  have many privacy protection options, such as cookie blockers or other privacy

27  controls, that can prevent the disclosure of identifying or sensitive information. *Id.*

28

¶¶40-44; Schnell ¶80(d). Users can even provide false or fake information. As Mr. Schnell found, ████████████████████████████████████████ ████████████████████.” Schnell ¶79.

None of these individual factors can be ignored. The specific circumstances matter because they represent the difference between a claim or no claim. As Judge Orrick noted in *Meta Pixel Healthcare*, even information that a person visited www.cancer.net "pages containing information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' [and] a wife's blog post about her husband's cancer diagnosis" is <u>not</u> actionable because it is "general health information" that is "available to every computer . . . or automated crawler that sends GET requests." *Meta Pixel Healthcare*, 647 F. Supp. 3d at 792-93. But information "that a user is about to log in to a healthcare provider's website," however, could be actionable because that reveals patient status. *Id.* at 793.

These individualized inquiries make class treatment untenable. It may be possible to certify a class when there is a single practice by a single actor uniformly applied to every class member. *See In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091 at *1-3 (N.D. Cal. Mar. 26, 2014). But here, ████████████████████████████████████████████████████ ███████████████████████████. It too may be possible to certify a class when there is a common theory of disclosure. *See In re Hulu Privacy Litig.*, 2014 WL 2758598, at *17 (N.D. Cal. June 17, 2014). But here there is no common practice. Plaintiffs focus on the fact that Pixel and EAPI <u>can</u> transmit information, but ignore that what is transmitted and the mechanism of transmission differ.

Dr. Shafiq's ███████████████████████████████████ ███████████████, exacerbates the lack of commonality. ████████ ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████. At bottom, Plaintiffs' theory depends ████████████████

██████████████████████████████████████████████████

██████████████████████████████.

Plaintiffs cannot sidestep these individual inquiries by framing the issues in a way that starts from the assumption of a disclosure. If the case proceeds, Plaintiffs must prove—not presume—these disclosures. Because Plaintiffs' proposed "common" questions incorporate these issues, they prove not to be common at all, and resolving them will require individualized analysis.

### 2.   The Named Plaintiffs Are Not Typical or Adequate

There are two problems with Plaintiffs' ability to represent class members. *First*, Plaintiffs cannot represent visitors to websites they themselves never visited. *Falcon*, 457 U.S. at 156 ("a class representative must be part of the class"). Here, the nationwide classes extend to all non-TikTok users who "visited a website using the TikTok Pixel." Dkt. 177 at 1. Hundreds of thousands of websites use the Pixel. Of those, Mr. Watters has visited one, Ms. Shih three, and Ms. Griffith five. *See* Dkt. 177 at 4-5.

Different websites with different content, practices, and user interactions raise different privacy concerns. Stivers ¶¶36-61. A person ordering McDonalds from Doordash is not the same as a patient making a medical appointment. A consumer purchasing tanning oil is not the same as a patient refilling diabetes medication, even if they visited the same website, which may be why RiteAid does not use the Pixel on its Pharmacy pages. Schnell ¶43. Nor do Plaintiffs offer evidence that their idiosyncratic and subjective views of privacy reflect those of the typical non-TikTok user. Stivers ¶¶12-35. Where differently situated Plaintiffs and class members have divergent interests, typicality is not satisfied. *See Wiley v.*

1   *Am. Fin. Network, Inc.*, 2023 WL 4681538, at \*2-3 (C.D. Cal. July 3, 2023).

2       Moreover, different websites have different policies. There is no typicality
3 when Plaintiffs and class members viewed different disclosures based on the
4 websites, their jurisdiction, the time they viewed them, and other factors. Courts
5 routinely deny certification when members receive different disclosures or privacy
6 policies. *E.g.*, *Withers v. eHarmony, Inc.*, 2010 WL 11520198, at \*3 (C.D. Cal.
7 June 2, 2010) (terms of service); *see also Guzman-Lopez v. Am. Bottling Co.*, 2020
8 WL 913088, at \*4 (C.D. Cal. Jan. 6, 2020) (privacy policies).

9       **Second**, "there is a danger that absent class members will suffer if their
10 representative is preoccupied with defenses unique to it." *Hanon v. Dataproducts*
11 *Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Plaintiffs have not shown a disclosure.
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Shafiq ¶63(v). Thus,
13 it is not even clear how the named Plaintiffs have standing.[5]

14       More significantly, ▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮. Ex. 13 345:7-25 ▮▮▮▮▮▮
17 ▮▮▮▮▮); Ex. 14 176:18-20 (▮▮▮▮▮▮▮▮▮▮); Ex. 15
18 293:10-13 (▮▮▮▮▮▮).

19       These facts make Plaintiffs problematic class representatives. Their
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 undermine their claims of injury. These facts establish consent, or at least
22 indifference, to the practices complained of. *See In re Google Inc. Gmail Litig.*,
23 2014 WL 1102660, at \*17 (N.D. Cal. Mar. 18, 2014) (implied consent); *Sherman*
24 *v. Yahoo! Inc.*, 2015 WL 5604400, at \*8-9 (S.D. Cal. Sept. 23, 2015) (differences
25 in consent defeated typicality and adequacy); *Bustillos v. W. Covina Corp. Fitness*,
26 2022 WL 423396, at \*3-4 (C.D. Cal. Jan. 3, 2022) (Blumenfeld, J.) (no typicality

27 ─────────────────

28 [5] Ms. Shih cannot represent the cookie-blocker classes. Schnell ¶¶81-82.

1   when named plaintiff atypical on consent); *McHugh v. Metro. Life Ins. Co.*, 2023

2   WL 3318691, at *3-4 (C.D. Cal. Mar. 31, 2023) (Blumenfeld, J.) (no typicality

3   when named plaintiffs received different disclosures). It also prohibits Plaintiffs'

4   ability to seek injunctive relief. *See In re Coca-Cola Prods. Mktg. & Sales*

5   *Practices Litig.*, 2021 WL 3878654, at *2-3 (9th Cir. Aug. 31, 2021).

6   **C.    Plaintiffs Have Not Satisfied the Requirements for Certifying a Class Under Rule 23(b)(3)**

7

8          **1.    Individual Issues Predominate**

9          Predominance is "more demanding" than commonality. *DZ Reserve v. Meta*

10  *Platforms, Inc.*, 96 F.4th 1223, 1233 (9th Cir. 2024). It "asks whether the common,

11  aggregation-enabling, issues in the case are more prevalent or important than the

12  non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v.*

13  *Bouaphakeo*, 577 U.S. 442, 453 (2016).

14          **a)    Class Membership Is Individualized**

15         As a threshold matter, the Court must determine who is in the class. While

16  the Ninth Circuit has not adopted an ascertainability test, it has recognized a court

17  may consider membership issues as part of predominance. *See Walker v. Life Ins.*

18  *Co. of the Sw.*, 953 F.3d 624, 632 (9th Cir. 2020).

19         Plaintiffs' classes follow the same equation of <u>non-TikTok user</u> + <u>visiting a</u>

20  <u>website</u> + <u>which uses Pixel or EAPI</u> (+ for some, <u>cookie blockers</u>). These

21  determinations cannot be made by reviewing Defendants' records, which are

22  hashed. *Supra*, p. 5. Dr. Shafiq ███████████████████████████████

23  ██████████████████████████. Shafiq ¶63(v).

24         Class membership would therefore be determined by class members self-

25  reporting whether they visited certain websites, what they did on those websites,

26  and whether they used cookie blockers or other privacy software. Self-reporting is

27  unreliable and has doomed other classes. *See Hulu Privacy Litig.*, 2014 WL

28

2758598, at *16 (self-reporting use of cookie blockers not reliable); *see also Xavier v. Philip Morris USA, Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011) (self-reporting smoking habits not reliable); *Brewer v. Gen. Nutrition Corp.*, 2014 WL 5877695, at *14-15 (N.D. Cal. Nov. 12, 2014) (self-reporting individualized).

The task here is even more daunting because class membership requires the coincidence of multiple factors. A class member must establish that they visited a website, <u>when</u> it used the Pixel, and <u>when</u> they used cookie blockers. To complicate matters, members must not only know about the websites, they must know what pages they visited, when, and if that page was using the Pixel.

Dr. Shafiq offers two solutions. The first takes self-reported emails, compares them against TTI's records, excludes matches, and then everyone else is in the class. Shafiq ¶95. But this does not <u>determine</u> class membership; it <u>assumes</u> it. It also sweeps in those who register with a phone number or a different email.

His second suggestion is to use TTI's data to look for identifying information for non-TikTok users. *Id.* ¶96. This is a non-starter because TTI does not keep unmatched data; it is also not feasible when Dr. Shafiq could find such information only sporadically. Any proposal to force TTI to keep indefinitely massive amounts of unmatched data for Plaintiffs' litigation purposes is directly at odds with claims that such data should not be collected or used.[6]

### b)    As Alleged, Plaintiffs' Privacy Torts Require Individual Adjudication

The privacy claims require (1) a reasonable expectation of privacy and (2) a highly offensive intrusion. *See Hammerling*, 615 F. Supp. 3d at 1088.

Courts regularly deny certification when these issues are in dispute. One



1  court denied certification regarding location data collection because "factors
2  personal to an individual" will affect both elements. *Hart v. TWC Prod. & Tech.*
3  *LLC*, 2023 WL 3568078, at *9 (N.D. Cal. Mar. 30, 2023). Another denied
4  certification for information collection via toll roads because claims "would turn
5  on a slew of potential factors" individual to each member. *In re Toll Rds. Litig.*,
6  2018 WL 4945531, at *7 (C.D. Cal. Oct. 3, 2018); *see also McDonald v. Aps*, 385
7  F. Supp. 3d 1022, 1035 (N.D. Cal. 2019) (offensiveness is "context-specific").

8      The same obstacles to commonality exist here. Plaintiffs try to force
9  commonality by claiming non-TikTok users would not expect their data to be
10  collected by TTI. Mot. at 7. This is not based on any representation by TTI—it is a
11  belief Plaintiffs assume everyone holds. *Id.* There is no evidence of this shared
12  understanding. Stivers ¶¶12-21. Even then, that understanding must be reasonable,
13  which would depend on a person's knowledge about data collection, experience
14  with particular websites, disclosures, the information collected, and their online
15  behavior. *See Gmail Litig.*, 2014 WL 1102660, at *21 (privacy disclosures);
16  *Deering v. CenturyTel, Inc.*, 2011 WL 1842859, at *2 (D. Mont. May 16, 2011)
17  (independent knowledge); *Hammerling*, 615 F. Supp. 3d at 1090 (quantity and
18  nature of the information collected).

19      As to offensiveness, Plaintiffs try to turn TTI's internal discussions about
20  privacy against them. Mot. at 11-12. ████████████████ does not
21  establish that any receipt of information is unreasonable, upsets reasonable
22  expectations, or violates social norms. No matter how Plaintiffs characterize those
23  discussions, the law requires evaluation of the information collected, its sensitivity,
24  the manner of collection and, perhaps most importantly, representations made to
25  consumers. *Hammerling*, 615 F. Supp. 3d at 1088.

26
27
28

1          **c)      Wiretapping Claims Require Individual Adjudication**

2          To state a claim under ECPA or CIPA, Plaintiffs must show that Defendants

3   intercept the "contents" of communications. *Hammerling*, 615 F. Supp. 3d at 1092-

4   93. The interception must occur in transit and be "contemporaneous with

5   transmission." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876 (9th Cir.

6   2002). This requires individual adjudication for two reasons.

7          ***First,*** a "URL that includes 'basic identification and address information' is

8   not 'content.'" *Meta Pixel Healthcare*, 647 F. Supp. 3d at 795; *Hammerling*, 615 F.

9   Supp. 3d at 1093. When a URL reveals actions, such as "search engine queries,"

10  they can be "contents," but not always. *Gershzon v. Meta Platforms, Inc.*, 2023

11  WL 5420234, at *12 (N.D. Cal. Aug. 22, 2023). Each URL must be analyzed.

12         ***Second,*** interception depends on how the Pixel is implemented. Timing

13  matters. There is no wiretapping unless contents are intercepted while "in transit"

14  to the intended recipients. *Konop*, 302 F.3d at 876. Implementation affects timing.

15  Plaintiffs argue for a common interception based on the default Pageview event.

16  Mot. at 13-16. But a wiretapping claim based on Pageview makes no sense. As

17  Plaintiffs' expert admitted, ██████████████████. Ex. 16 191:19-192:16.

18  Thus, ████████████████████████████████████████

19  ████████████████████████████████████████████

20  ███████████████████████████). *Id.*; Schnell ¶¶111-23.







1    Dr. Shafiq admitted that ████████████████████████

2    ████████████████████████████████████████

3    ████████████████████████. Ex. 16 192:18-193:21;

4    Schnell ¶¶111-23. Plaintiffs must therefore establish some other configuration to

5    claim contemporaneous disclosure of a user's communication. Resolution will

6    require a close look at each configuration.

7              d)    **Property Torts Require an Individualized Showing of Property Rights**

8

9         For conversion or larceny, Plaintiffs must have a property right. *Calhoun*,

10   526 F. Supp. 3d at 635. This requires a plaintiff to show that the data is "capable of

11   exclusive possession or control" and "a legitimate claim to exclusivity." *In re*

12   *iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1074-75 (N.D. Cal. 2012).

13        No court has found a property right to browsing information generally. *See*

14   *Low*, 900 F. Supp. 2d at 1030. Property has been limited to specific types of data

15   and situations where plaintiffs are entitled to control its dissemination. *Calhoun*

16   recognized a potential property right in "*personal* information," not browsing

17   information generally. 526 F. Supp. 3d at 635 (emphasis added). Conversion and

18   larceny are also intentional torts. Specific intent will require more than ██

19   ████████████████████████████████████████

20   ████████████████████████████████.

21             e)    **Consent Is Individualized**

22        Someone "who consents to an act is not wronged by it." Cal. Civ. Code

23   § 3515. Express consent will require evaluating each website's disclosures, which

24   vary. *Supra*, pp. 5-6. It will also require litigating the enforceability of every

25   website's terms and the efficacy of its use of clickwrap, browsewrap, cookie

26   banners, or other methods. *See generally Colgate v. Juul Labs, Inc.*, 402 F. Supp.

27   3d 728, 762-64 (N.D. Cal. 2019). Implied consent too is "intensely factual" and

28   "requires consideration of the circumstances" regarding what consumers knew.

1     *Gmail Litig.*, 2014 WL 1102660, at \*14-16; *In re Google RTB Consumer Privacy*

2     *Litig.*, 2024 WL 2242690, at \*12 (N.D. Cal. Apr. 4, 2024).

3        Litigating consent will cause individual issues to predominate. *See True*

4     *Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018).

5     In *Brown v. Google LLC*, the court denied certification on data collection from

6     Google Chrome's Incognito Mode because consent required analysis of Google's

7     disclosures and the information each class member reviewed. 2022 WL 17961497,

8     at \*17-19 (N.D. Cal. Dec. 12, 2022). The same occurred in *Google RTB*, where

9     consent depended on the disclosures and information class members had seen.

10    2024 WL 2242690, at \*12-14. This case is far more difficult because it concerns

11    the disclosures of hundreds of thousands of websites. The use of common tools

12    makes it worse because what one learns from one website carries over to another.

13       Plaintiffs illustrate how consent will vary. Mr. Watters ████████████

14    ████████████████████████████████ Ex. 13 91:13-20, 93:22-94:4. Ms. Griffith █

15    ████████████████████████████████. Ex. 14 132:8-11. Ms.

16    Shih ██████████████████████████████████

17    ████████████████. Ex. 15 264:6-276:9. Indeed, Plaintiffs relied on public

18    information on the Pixel to draft their complaint. Ex. 8; *see also* Kindler ¶¶35-37.

19           **f)**      **Damages Determinations Are Individualized**

20        Plaintiffs must show that "damages are capable of measurement on a

21    classwide basis." *Comcast Corp.*, 569 U.S. at 34; *see also Bowerman v. Field Asset*

22    *Servs., Inc.*, 60 F.4th 459, 469-70 (9th Cir. 2023); *Franklin v. Midwest Recovery*

23    *Sys., LLC*, 2021 WL 1035121 (C.D. Cal. Feb. 5, 2021) (Blumenfeld, J.).

24        Plaintiffs bank on disgorgement, but disgorgement requires the measurement

25    of "the net [profit] . . . attributable to the underlying wrong." *Brooks v. Thomson*

26    *Reuters Corp.*, 2023 WL 5667884, at \*3 (N.D. Cal. Aug. 9, 2023). Thus,

27    disgorgement must distinguish between lawful and allegedly unlawful uses of the

28

1   Pixel and EAPI. Kindler ¶¶14, 40-46. The "Court would have [to] ascertain each

2   consumer's particular use and experience" with TTI's data collection and the

3   extent of alleged harm. *Torres v. Nissan N. Am. Inc.*, 2015 WL 5170539, at *6

4   (C.D. Cal. Sept. 1, 2015). That precludes certification.

5         Restitutionary damages fare no better. Opining that browsing data has some

6   economic value falls short of establishing a common way to measure it for the

7   class. Any valuation requires comparing how much and what data was collected

8   from each class member to market analogues. Kindler ¶¶25-38, 47-60.

9         Plaintiffs thus provide no "method[] common across the class" to determine

10  actual damages. *In re Apple iPhone Antitrust Litig.*, 2022 WL 1284104, at *16

11  (N.D. Cal. Mar. 29, 2022); *see, e.g.*, *Moeller v. Taco Bell Corp.*, 2012 WL

12  3070863, at *5 (N.D. Cal. July 26, 2012) (no certification when damages depended

13  on the "stores visited, how many times he/she visited . . . , when the visits

14  occurred, what [] he/she encountered, and what his/her disability was.").

15        The availability of statutory damages under CIPA and ECPA does not

16  obviate these problems. Statutory damages are discretionary—that discretion

17  cannot be exercised collectively. *Campbell v. Facebook, Inc.*, 315 F.R.D. 250, 267-

18  69 (N.D. Cal. 2016). Any suggestion to forgo actual for statutory damages creates

19  a conflict between the named Plaintiffs and class members. *See Standard Fire Ins.*

20  *Co. v. Knowles*, 568 U.S. 588, 593 (2013).

21            **2.      A Class Action Is Not a Superior Means of Adjudication**

22        "If each class member has to litigate numerous and substantial separate

23  issues . . . a class action is not 'superior.'" *Zinser v. Accufix Research Inst., Inc.*,

24  253 F.3d 1180, 1192 (9th Cir. 2001). As Dr. Shafiq experienced, ███████████

25  ████████████████████████████████████████████████████████████

26  ████████████████████████████████████. This would be a

27  massive undertaking that needlessly multiplies litigation with little public benefit.

28

1      The subclasses are also unmanageable. "[E]ach subclass must independently

2   meet the requirements of Rule 23[.]" *Betts v. Reliable Collection Agency, Ltd.*, 659

3   F.2d 1000, 1005 (9th Cir. 1981). Even in a single-website world, the page-based

4   and campaign-based nature of the Pixel means a website may have multiple pixels

5   with changing settings running simultaneously. *Supra*, pp. 4-5. Any disclosure

6   requires understanding the specific pages with the Pixel, the period it was used,

7   and whether the data disclosure included personal, sensitive, or substantive

8   information. It also does not remove consent issues. The need for many subclasses

9   can defeat superiority. *See Sacred Heart Health Sys., Inc. v. Humana Military*

10  *Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010); *Dzielak v.*

11  *Whirlpool Corp.*, 2017 WL 6513347, at *20 (D.N.J. Dec. 20, 2017).

12          **D.      Plaintiffs Cannot Certify an Injunctive Class Under Rule 23(b)(2)**

13          Certification under Rule 23(b)(2) is available only when the alleged conduct

14  can be "declared unlawful" in all circumstances for the "class as a whole."

15  *Jennings v. Rodriguez*, 583 U.S. 281, 313 (2018); *Wal-Mart*, 564 U.S. at 360-61.

16  The key is "the indivisible nature of the injunctive or declaratory remedy"—the

17  fact that the conduct at issue is such "that it can be enjoined or declared unlawful

18  only as to all . . . or as to none of them." *Wal-Mart*, 564 U.S. at 360. "Put another

19  way, a class may *not* be certified under Rule 23(b)(2) if *any* class member's injury

20  is not remediable by the injunctive or declaratory relief sought." *Berni v. Barilla*

21  *S.P.A.*, 964 F.3d 141, 146 (2d Cir. 2020) (emphasis in original).

22          Injunctive relief is divisible because it would affect the class differently.

23  Stopping the use of the tools to prohibit ██████████████████████████

24  ████ is an improper use of injunctive relief. If some are benefited, and some are

25  not, by injunctive relief, the injunction is necessarily divisible. *See Berni*, 964 F.3d

26  at 148; *Anthony v. Pharmavite*, 2019 WL 109446, at *6 (N.D. Cal. Jan. 4, 2019).

27

28

Plaintiffs also lack standing to seek prospective relief. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (separate standing required for injunction). The "threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Id.* For a "threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way." *Id.*

Plaintiffs can no longer claim lack of knowledge of the Pixel or EAPI. Next time they visit a website, "they will be doing so with exactly the level of information that they claim they were owed." *Berni*, 964 F.3d at 148. While the Ninth Circuit has said that injunctive relief may be available to such plaintiffs, *Davidson*, 889 F.3d at 967, those circumstances are narrowly construed, and there must be a specific showing, which Plaintiffs cannot meet. *See Coca-Cola*, 2021 WL 3878654, at *2-3.

### E. Plaintiffs Have Not Met the Requirements for Certifying an Issues Class Under Rule 23(c)(4)

Rule 23(c)(4) certification is possible when "adjudication of the certified issues would significantly advance the resolution of the underlying case." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1229 (9th Cir. 1996). The three issue classes cannot be certified because they still require individualized determinations that a disclosure occurred and that the data was identifying, sensitive, or protected. Nothing is gained with these issue classes.

## V.   CONCLUSION

TTI has simply provided two industry-standard advertising tools. As with any tool, they can be used in lawful and unlawful ways. Claims about how these tools are used cannot be adjudicated en masse. This is especially so when instances of disclosure, let alone actionable ones, are few and far between.

Plaintiffs' motion overreaches. They broadly define classes of everyone who may have had browsing data collected, even though that alone is not unlawful.

1    They seek damages based on the possibility something private may have been

2    disclosed, even though they cannot show anything of the sort actually happened to

3    them. And they seek to shut down Pixel and EAPI even though they are standard

4    tools that many platforms offer and most advertisers use without issue. Their

5    motion should be denied.

6

7

8    Dated:  July 12, 2024                    WILSON SONSINI GOODRICH & ROSATI

9                                             Professional Corporation

10                                            By:_/s/ Victor Jih_____

11                                            Victor Jih

12                                            *Attorney for Defendants*
                                             TikTok Inc. and ByteDance Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants TikTok Inc. and ByteDance Inc., certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

Dated:  July 12, 2024             WILSON SONSINI GOODRICH & ROSATI

Professional Corporation

By:*/s/ Victor Jih*
Victor Jih

*Attorney for Defendants*
TikTok Inc. and ByteDance Inc.