VICTOR JIH, SBN 186515
vjih@wsgr.com
KELLY H. YIN, SBN 328380
kyin@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1900 Avenue of The Stars,
28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329

LUIS LI, SBN 156081
luis.li@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
953 East Third Street
Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900

SHERYL S. BASSIN, NY SBN 4662797
sbassin@wsgr.com
(admitted *pro hac vice*)
DYLAN G. SAVAGE, CA SBN 310452
dsavage@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas.
40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329

THOMAS WAKEFIELD, SBN 330121
twakefield@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Spear Tower,
Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900

*Attorneys for Defendants*
*TikTok Inc. and ByteDance Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BERNADINE GRIFFITH, et al., Individually and on behalf of all others similarly situated,

*Plaintiffs,*

v.

TIKTOK INC., a corporation; BYTEDANCE, INC. a corporation,

*Defendants.*

Case No. 5:23-cv-0964-SB-E

**OPPOSITION TO CLASS CERTIFICATION RECONSIDERATION**

Judge: Hon. Stanley Blumenfeld, Jr.
Date: 10/25/2024
Time: 8:30 a.m.
Place: Courtroom 6C

**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**

Action Filed: May 26, 2023
Trial Date: January 20, 2025

## TABLE OF CONTENTS


Page

INTRODUCTION ........ 1

LEGAL STANDARD ........ 2

ARGUMENT ........ 3

I. THE "NEW" DATA DOES NOT ESTABLISH THAT PLAINTIFFS HAVE VALID CLAIMS OR THEIR SIMILARITY WITH ABSENT CLASS MEMBERS ........ 3

II. PLAINTIFFS' ANALYSIS OF THE "NEW" DATA DOES NOT AVOID THE NEED FOR INDIVIDUALIZED ADJUDICATION, BUT CONFIRMS THE SIGNIFICANT ERROR THAT RESULTS FROM THE PROPOSED CLASSWIDE APPROACH ........ 7

A. Plaintiffs' Analysis of Identifiers in the Latest Sample Is Wrong And Shows the Need for Individualized Adjudication ........ 8

B. Plaintiffs' Analysis of Sensitive Information in the Latest Sample is Flawed and Confirms the Need for Individualized Inquiry ........ 10

C. Plaintiffs' Efforts to Find Any Interception of the Contents of Their Communications Confirms the Need for Individualized Inquiry ........ 12

D. Plaintiffs' Analysis Demonstrates the Individualized Inquiries Needed to Decide if Plaintiffs Have a Property Interest in the Data Collected ........ 14

III. PLAINTIFFS CONTINUE TO IMPROPERLY SEEK THE CERTIFICATION OF ALTERNATE CLASSES WITHOUT SEPARATELY AND INDEPENDENTLY MEETING THE REQUIREMENTS OF RULE 23 FOR EACH PROPOSED VARIATION ........ 15

A. Plaintiffs Fail to Establish the Viability of a 23(b)(2) Injunctive Class ........ 15

B. Plaintiffs Fail to Establish The Viability of Alternative 23(b)(3) Subclasses ........ 16

CONCLUSION ........ 17

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

*389 Orange St. Partners v. Arnold*,
179 F.3d 656 (9th Cir. 1999) ........ 11

*B.R. v. Cnty. of Orange*,
2018 WL 5905606 (C.D. Cal. Jan. 19, 2018) ........ 2

*Berni v. Barilla S.P.A.*,
964 F.3d 141 (2d Cir. 2020) ........ 15

*Betts v. Reliable Collection Agency, Ltd.*,
659 F.2d 1000 (9th Cir. 1981) ........ 16

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........ 1, 2, 9

*Carpenter v. United States*,
585 U.S. 296 (2018) ........ 15

*Daniel F. v. Blue Shield of Cal.*,
2015 WL 3866212 (N.D. Cal. June 22, 2015) ........ 2

*Davidson v. Kimberly-Clark Corp.*,
889 F.3d 956 (9th Cir. 2018) ........ 15

*Disalle v. Lensi*,
2024 WL 3915208 (C.D. Cal. July 29, 2024) ........ 2

*Feliz for L.P.F. v. Cnty. of Orange*,
672 F. App'x 695 (9th Cir. 2016) ........ 2

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022),
*aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) ........ 13

*In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*,
2021 WL 3878654 (9th Cir. Aug. 31, 2021) ........ 15

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 13

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ........ 15

*Lambert v. Nutraceutical Corp.*,
2015 WL 12655392 (C.D. Cal. June 24, 2015) ........ 7

*Mao-Mso Recovery II, LLC v. Mercury Gen.*,
2021 WL 6102913 (C.D. Cal. Nov. 29, 2021),
*aff'd*, 2023 WL 1793469 (9th Cir. Feb. 7, 2023) ........................................ 11

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ................................................... 14

*Smith v. Maryland*,
442 U.S. 735 (1979) ............................................................................... 15

*Torrent v. Yakult U.S.A., Inc.*,
2016 WL 6039188 (C.D. Cal. Mar. 7, 2016) .......................................... 2, 3

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........................................................................... 10, 15

*Williamson v. Citrix Online LLC*,
2012 WL 12884842 (C.D. Cal. Nov. 8, 2012) .............................................. 3

**STATUTES**

Cal. Code Civ. Proc. § 1790 ........................................................................ 9

**RULES**

Civil Local Rule 7-18 ............................................................................ 2, 3

Fed. R. Civ. P. 23 ........................................................................... 14, 15, 16

## INTRODUCTION

Plaintiffs' motion urges the Court to reconsider its denial of class certification but offers nothing new for it to consider. Plaintiffs make the same arguments; they merely provide additional examples like the ones argued in their original motion. But more of the same does not satisfy the requirements for reconsideration. Plaintiffs provide no reason to disturb the prior ruling. In fact, their moving papers confirm a class cannot be certified.

The motion calls the Court's attention to two "new" items. First, Plaintiffs offer their analysis of a new data sample. Plaintiffs introduce this analysis with a lengthy and inaccurate account of the parties' discovery challenges. This attempt to relitigate settled disputes does nothing. This data was made available to Plaintiffs before the hearing on class certification. Plaintiffs and their expert Dr. Shafiq have analyzed it. The analysis reveals no new insights. There are simply more instances of the same examples previously argued to the Court. The Court addressed them and its ruling applies equally to the new instances. Much of Plaintiffs' latest analysis is also wrong. They claim to have found [redacted]—claims that are demonstrably false. They also try to classify websites according to sensitivity by using an algorithm and its results, but without ever disclosing its degree of error or acknowledging that they knew about the algorithm when they moved for class certification. As explained below, Plaintiffs' analysis of the latest data sample ultimately confirms how their classwide approach produces significant error. The only way to avoid wrong result after wrong result is to assess each individual disclosure separately.

Second, the motion also directs the Court to the Ninth Circuit's recent publication of its decision in *Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024). That case concerned the propriety of granting summary judgment on the issue of consent and says nothing about class certification. Plaintiffs focus on its

discussion of this Circuit's privacy precedents, but those are the same precedents already argued and discussed in the prior proceeding. Nothing in *Calhoun* changes the Court's holding that "the existence of reasonable expectations of privacy and the requisite offensiveness will depend on the nature of the information collected from each class member." Order, Dkt. 242 at 11. If anything, *Calhoun* identifies an additional problem with class certification. In reversing summary judgment, the Ninth Circuit held that resolving consent requires an analysis of each website's data collection disclosures, the sophistication of a reasonable user of the website, and what they would have understood about the collection. That requires more individual adjudication.

Plaintiffs have not satisfied the requirements for reconsideration. Their request to certify their proposed class should again be denied and their motion denied in its entirety.

## LEGAL STANDARD

"Motions for reconsideration are disfavored and rarely granted." *Disalle v. Lensi*, 2024 WL 3915208, at *1 (C.D. Cal. July 29, 2024). A rigorous standard is applied to protect "the interests of finality and conservation of judicial resources." *B.R. v. Cnty. of Orange*, 2018 WL 5905606, at *1 (C.D. Cal. Jan. 19, 2018); *see also Feliz for L.P.F. v. Cnty. of Orange*, 672 F. App'x 695 (9th Cir. 2016). "Courts are generally reluctan[t] to allow parties to have a 'second bite at the apple'" and routinely deny reconsideration in order to "incentiviz[e] parties to put their best foot forward at the outset to avoid costly delays." *Torrent v. Yakult U.S.A., Inc.*, 2016 WL 6039188, at *2 (C.D. Cal. Mar. 7, 2016) (internal quotations omitted).

While the Court has the authority "at any time prior to judgment" to reconsider its prior certification rulings, *Daniel F. v. Blue Shield of Cal.*, 2015 WL 3866212, at *3 (N.D. Cal. June 22, 205), the losing party may not move for reconsideration without satisfying Local Civil Rule 7-18. *See Torrent*, 2016 WL 6039188, at *1

(denying reconsideration for failure to meet Local Rule 7-18); *Williamson v. Citrix Online LLC*, 2012 WL 12884842, at *1 (C.D. Cal, Nov. 8, 2012) (a court's ability to revisit "throughout the entirety of proceedings" does not mean Local Rule 7-18 does not apply). A party may only move for reconsideration if there is new fact or law that makes "a material difference" and that "could not have been known" previously. Local Rule 7-18. The rules are clear: "[n]o motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion." *Id.*

## ARGUMENT

### I. THE "NEW" DATA DOES NOT ESTABLISH THAT PLAINTIFFS HAVE VALID CLAIMS OR THEIR SIMILARITY WITH ABSENT CLASS MEMBERS.

In denying class certification, the Court observed that without "evidence of any data collected from them, it is not even clear that [Plaintiffs] have suffered any cognizable injury." Dkt. 242 at 15. The Court also called out the inaccuracies in Plaintiffs' statements about the prevalence of PII in the data and TikTok's ability to use that data to identify "every single non-TikTok user." *Id.* at 3. The Court found that Plaintiffs "overstated" the facts and that their statements about the data collected and the prevalence of PII were "misleading." *Id. at* 3, 5.

The motion for reconsideration continues to overstate and mislead. The "new" data analyzed by Plaintiffs does not call into question anything in the Court's prior ruling. If anything, the data supports the Court's concerns. It remains unclear whether Plaintiffs can claim injury:

<u>Watters</u>. [redacted] That is false. As Defendants' expert Ronald Schnell explains, [redacted] Ex. 1

¶ 42.[1] For example, some [redacted]. *Id.* ¶ 45. Notably, Plaintiffs offer no [redacted]. [redacted]. Dkt. 254-2, ¶ 60. Defendants could not have known that since Plaintiffs used information TikTok did not have [redacted] *Id.* [redacted] invades no privacy interest. Nor would TikTok care, since Watters does not use TikTok or see ads on the platform.

Griffith. [redacted] Dkt. 254-2 ¶ 59. TikTok would not have been able to do this analysis itself without knowing [redacted] TikTok did not have this information since Griffith is a non-TikTok user. TikTok would also have no reason to identify [redacted] since the Pixel and Events API are used to measure the actions of TikTok users who see particular advertising campaigns on the TikTok platform.

It turns out, though, that [redacted], Plaintiffs' analysis produces incorrect results. At Griffith's deposition, [redacted] Ex. 1 ¶ 47-48. [redacted]

[1] Exhibits refer to exhibits attached to the Declaration of Caitlin McKelvie, filed concurrently herewith.

[redacted][2] It should not be surprising that other people would also [redacted], without considering the actual circumstances, ends up incorrectly [redacted] Ex. 1 ¶ 48.

Even if these events [redacted] still would not invade any legally protected privacy interest. They do not involve [redacted] Dkt. 254-2, ¶¶ 59, 63.

Shih. [redacted] At best, that is cumulative evidence of the seven categories of data collected by the Pixel. [redacted]

Plaintiffs' botched analysis confirms that the Court's decision to deny class certification was correct. First, it confirms that IP address, User Agent, and similar data is not identifying. Second, actual matching of this data to non-TikTok Users is generally not possible "absent the collection of personally identifying information

---

[2] [redacted]

(PII)." Dkt. 242 at 4. [redacted][3] Third, it confirms the high risk of the wrong answer inherent to Plaintiffs' approach. Fourth, it confirms the Court's view that accurate adjudication requires individualized examination of each disclosure, its contents and its circumstances. Plaintiffs' data analysis reveals just how illusory a classwide solution is. Plaintiffs do not apply any uniform methodology but analyze data in an ad hoc, inconsistent, and results-oriented way. When it suits them, they identify events by using [redacted], but when it does not, they identify events based on something else [redacted], while outright ignoring the [redacted] that contradicts their conclusion and points to someone else. This cherry-picking illustrates why a close look at each instance is necessary.

Because their analysis of the new sample leads nowhere, Plaintiffs' motion devolves into a rehash of their seven-categories-of-data argument. The sample does contain additional examples of the collection of these seven categories. But that means nothing. As the Court held, the claims still require examination of the specific information collected. Focusing on categories and not specifics "obscure[s] the differences in the data collected across different websites." Dkt. 242 at 15. It "says little about what matters—the sensitivity and substance of the browsing information collected." *Id.* at 16.

---

[3] Plaintiffs' motion identifies several online services that one can pay to obtain the missing PII needed for identification. Success depends on what information is missing for purposes of identification, whether that information is included in these incomplete databases, and its accuracy. Defendants did not use these services, did not try to identify non-TikTok users, and Plaintiffs offer no evidence otherwise. Plaintiffs do not explain why they are making this argument now and never claim these databases were unknown or unavailable to them earlier. This argument also disregards the Court's point that the focus must be on whether "TikTok is able to identify through the information it collects." Dkt. 242 at 3.

This "new" data also does nothing to establish typicality. That the three named Plaintiffs differ from each other already makes typicality unlikely. Plaintiffs, however, argue that the new data demonstrates that other members of the proposed class visited some of the same websites as Plaintiffs did. Dkt. 254-1 at 9. Indeed. It is not surprising that, "[w]ith hundreds of thousands of websites" and "a class that essentially encompasses all internet users," Dkt. 242 at 15, there will be instances where different people visit the same website. That does not make Plaintiffs typical of anyone. The Court held that typicality does not exist simply because Plaintiffs and purported class members both "visited websites using the Pixel and Events API." *Id.* at 14. That remains true, even if Plaintiffs prove that some of those are the exact same websites. The specific information Defendants received still depends on how each advertiser configures the tools, the nature of a webpage, and a user's interaction with the website. *Id.* at 8.

## II. PLAINTIFFS' ANALYSIS OF THE "NEW" DATA DOES NOT AVOID THE NEED FOR INDIVIDUALIZED ADJUDICATION, BUT CONFIRMS THE SIGNIFICANT ERROR THAT RESULTS FROM THE PROPOSED CLASSWIDE APPROACH.

It remains Plaintiffs' burden to overcome variation in the proposed class. The Court identified many individual issues that make it unlikely common issues predominate. The reconsideration motion presents no new approach to adjudicate claims on a classwide basis. Instead, it focuses on the prevalence of certain categories of data uniformly collected about online activity. Even if similar types of evidence can be found across the class, that does not mean adjudicating class member claims can be done on a classwide basis. *Lambert v. Nutraceutical Corp.*, 2015 WL 12655392, at *2 (C.D. Cal. June 24, 2015) (reconsideration may not be used to "relitigate old matters" or "rehash[] what ha[s] been before the court").

Plaintiffs repeat their argument that the default PageView event "uniformly and automatically collects" seven categories of information—"Timestamp, IP Address, User Agent, Cookies, URLs, Event Information, and Content

Information." Dkt. 254-1 at 11; *see also* Dkt. 179-1 at 8. The reconsideration motion features Dr. Shafiq's analysis of the latest sample data to confirm this is still the case. His analysis is riddled with errors, omits key information, and reaches conclusions that are demonstrably wrong. It ultimately does not matter if all seven categories "are collected nearly 100% of the time." *Id.* The information collected must still be evaluated to determine if it identifies someone, reveals something sensitive, or discloses the contents of communications.

### A. Plaintiffs' Analysis of Identifiers in the Latest Sample Is Wrong And Shows the Need for Individualized Adjudication.

The motion makes observations about the latest data sample that it claims support class certification. But Dr. Shafiq's analysis is flawed and Plaintiffs' conclusions are wrong.

<u>IP Address/User Agent Is Not Identifying</u>. Plaintiffs believe there are ways to determine the key issues in this case on a classwide basis. As explained above, Dr. Shafiq's efforts to do so resulted in the wrong answer and that evidence [redacted]. It thus undermines Plaintiffs' central argument that the issues in this case can be decided classwide. For example, Dr. Shafiq's error occurred when he [redacted] Dkt. 254-2, ¶ 63. He uses them to [redacted] *Id.* [redacted] Ex. 1 ¶ 40. [redacted] Ex. 1 ¶ 41. [redacted] Ex. 1 ¶¶ 42-43.

The Court has already pointed out the fundamental problem with Plaintiffs' approach—being able to distinguish between persons is not the same as determining

who that person is. Dkt. 242 at 5 ("Merely learning that the same person visited other sites is not the same as discovering a user's identity."). While IP address, user agent, and cookies may "tend[] to show" the same person visited different sites, "it does not disclose *who* the person is." *Id.* at 4. Neither the recent *Calhoun* decision nor the definition of "personal information" found in Civil Code Section 1790 hold otherwise. Both require information that is "reasonably capable of being associated with" a specific person, which depends on the information collected, the website, a user's interactions—circumstances that cannot be ignored.

<u>Dr. Shafiq's analysis misidentifies [redacted].</u> He claims he found [redacted]. Dkt. 254-2, ¶¶ 70, 72. He fails to disclose that the [redacted]. Ex. 1 ¶¶ 108-10. In other words, Dr. Shafiq misclassifies [redacted] *Id.* There are many instances where Dr. Shafiq is including [redacted]. *Id.* ¶¶ 79-80, 111. His analysis of [redacted] is no better. The most [redacted] *Id.* ¶ 76. [redacted] *Id.* ¶¶ 77-80. Plaintiffs' classwide assumptions produce a comedy of errors.

The only reasonable conclusion to draw from Dr. Shafiq's analysis is the most obvious one—the Pixel does not always collect [redacted]

[redacted] The Court's prior ruling applies equally to this "new" showing–which is a point, albeit unpersuasive and flawed, that Plaintiffs could have made in their original motion. Plaintiffs have never established with evidence an "average" user profile that applies classwide, nor does it make sense to apply [redacted] to every event when advertisers can specifically configure the Pixel [redacted].[4] [redacted] In other words, this finding about [redacted] falls far short of establishing that claims can be proven for the class using common proof. The better conclusion is far simpler: there may or may not be a claim because it depends on how the Pixel is used.

**B. Plaintiffs' Analysis of Sensitive Information in the Latest Sample is Flawed and Confirms the Need for Individualized Inquiry.**

In their original motion for class certification, Plaintiffs identified sporadic examples of what they claimed was "sensitive" information. They do the same analysis with the latest sample data with the same results. They can find only sporadic examples and make subjective determinations about sensitivity. They could

---

[4] "Whether a representative sample may be used to establish classwide liability will depend on the purpose for which the sample is being introduced." *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 460 (2016). "'[P]roving classwide liability' through statistical sampling is appropriate if 'each class member could have relied on that sample to establish liability' in an individual action." *DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1251 (9th Cir. 2024) (quoting *Tyson Foods*, 577 U.S. at 455). But it is not proper where individual differences alter liability among class members. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 356-57 (2011) (rejecting nationwide study for proving classwide liability against Wal-Mart because regions, stores, and individual managers each altered any policy implementation); *DZ Rsrv.*, 96 F.4th at 1251-52 (rejecting statistical sampling of alleged misconduct because advertiser differences each altered misconduct's implementation); *Sanchez v. Sams W. Inc.*, 2024 WL 4131957, at *8-10 (C.D. Cal. Sept. 10, 2024) (same where localized practices altered general policy's implementation). "Thus, again, while Plaintiffs' statistical evidence may prove or disprove *some* claims, they have not shown it can resolve all claims within the far-reaching class." *DZ Rsrv.*, 96 F.4th at 1252.

not find any instances where [redacted] was disclosed. This not only confirms the need for individual determinations for each URL collected, but further that it is hard for Plaintiffs to even find candidates for their privacy violations.

As an alternative, Plaintiffs repeat their proposal, first made during the first hearing, to use the Interactive Advertising Bureau's (IAB) classification system to classify the websites that use the Pixel or Events API. The Court was skeptical but declined to rule on the proposal since it was not briefed and untimely. Dkt. 242 at 10 n.7. Plaintiffs cannot cure their waiver or their delay through reconsideration. *See, e.g.*, *Mao-Mso Recovery II, LLC v. Mercury Gen.*, 2021 WL 6102913, at *3 (C.D. Cal. Nov. 29, 2021) (denying reconsideration of class certification, finding arguments that could have "been known" or "raised earlier" were waived), *aff'd*, 2023 WL 1793469 (9th Cir. Feb. 7, 2023); *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (finding district court does not abuse discretion in "declining to address an issue raised for the first time in a motion for reconsideration"). These arguments have been waived.

Even if this late briefing is permitted, this Court has already expressed skepticism, indicating that the proposed use of the IAB tool "does not appear to solve the problem." Dkt. 242 at 10 n.7. This is not a reliable way of classifying the sensitivity of the data at issue. Plaintiffs' motion never mentions that the IAB classifications carry degrees of confidence scores. Ex. 1 ¶ 53. [redacted] *Id.* ¶¶ 53-54. This drastically affects the results. [redacted] *Id.* ¶ 59. [redacted] Ex. 1 ¶¶ 56-59.

The problem goes beyond Dr. Shafiq's incomplete use of the IAB

classification results. This entire approach focuses on the wrong thing—this analysis seeks to classify the sensitivity of websites and webpages when the claims need to determine the sensitivity of what was disclosed. The two are very different. Analyzing at the website level is too blunt to be meaningful. As the Court explained in its prior ruling, the RiteAid website could be considered sensitive because it sells reproductive health products; that does not mean, though, that information about a visitor purchasing a pencil on the website is sensitive. Dkt. 242 at 10. It also does not make sense to use a website classification if it is based on material that is never disclosed by the Pixel. For example, Plaintiffs' example of the [redacted]. Dkt. 254-2, ¶ 63. Valid claims must focus on the disclosures themselves and what they reveal.

Not surprisingly, Plaintiffs' analysis yields some meme-worthy errors. For example, [redacted] Ex. 1 ¶ 63. [redacted] *Id.* ¶ 64. These examples confirm the need for close examination of every URL; indeed, even the high confidence results can be dramatically wrong.

### C. Plaintiffs' Efforts to Find Any Interception of the Contents of Their Communications Confirms the Need for Individualized Inquiry

Plaintiffs' motion offers more examples of what Plaintiffs believe are "contents" of communications, but provides no new law or fact that warrants

reconsideration. The Court's ruling that deciding the wiretapping claims will require evaluation of each claimed interception remains true. Dkt. 242 at 12. Plaintiffs offer no new insights or solutions.

As a preliminary matter, Plaintiffs continue to use the term "contents" loosely without regard to its technical, legal meaning. The law requires "contents" to be the actual substance of Plaintiffs' messages or conversations; routine information about online interactions or browsing history do not count. *See, e.g.*, *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1107 (9th Cir. 2014) (webpage addresses are record information, and are not "contents"); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (same for URLs under CIPA); Dkt. 242 at 13 (the address or location of a webpage is not "contents"). This latest motion deliberately conflates the contents of a webpage with the contents of a plaintiff's communications. But sharing information about the contents of a webpage (*i.e.*, what that page is about or what information it seeks), the actions taken on a webpage (*i.e.*, such as triggering an "Add to Cart" or "Click" event), or even an identifier used to tag a communication (*i.e.*, use of message_id) does not mean the "contents" of Plaintiffs' communications were intercepted.

Plaintiffs end up in the same place they were at the original certification hearing—hunting for "search terms" in URLs. Whether those URLs give rise to a viable wiretapping claim requires a careful look at each URL, which precludes class certification. [redacted] Dkt. 254-2, Ex. 1 ¶ 93. Plaintiffs seem to believe that this large number somehow justifies class treatment. No. It merely quantifies the large number of individual inquiries that must occur before one can make that finding. A review quickly shows that many of Dr. Shafiq's hits are inaccurate. It appears Dr. Shafiq modified his original queries so they now include [redacted]

[redacted] Ex. 1 ¶¶ 67-69. This modification sweeps in URL parameters [redacted] Ex. 1 ¶ 70. The inclusion of these false positives greatly inflates the numbers.

### D. Plaintiffs' Analysis Demonstrates the Individualized Inquiries Needed to Decide if Plaintiffs Have a Property Interest in the Data Collected.

For their property claims, Plaintiffs reoffer the same opinion from Dr. Mangum that there is financial value in online data. Dkt. 254-1 at 18; Ex. 2 ¶¶ 5.c, 7.f. As the Court held, there may be a market "for the comprehensive browsing history of an active internet user," but Plaintiffs have not shown a market for a user's data who "briefly visits a few websites using the Pixel and shares no sensitive information." Dkt. 242 at 11.

The reconsideration motion does not address this problem. Dr. Mangum uses the same market measures. Ex. 2 ¶ 5.c SavvyConnect requires a minimum of 7 days of comprehensive data per month. Dkt. 254-1 at 18. Screenwise, a Google affiliate, was properly used in another case because it involved literally the same collection of data by Google and reflected "the price Google was willing to pay" for that collection. *Rodriguez v. Google LLC*, 2024 WL 38302, at *12 (N.D. Cal. Jan. 3, 2024). But that is not the case here, where it is being used to establish the financial value for entirely dissimilar data collection efforts. Even if there may exist some market measures that can be used to establish financial value or a property interest, their proper use still requires individualized comparisons of the scope of a collection, its consistency and thoroughness, and the frequency of a user's online activity. The motion concedes this.

## III. PLAINTIFFS CONTINUE TO IMPROPERLY SEEK THE CERTIFICATION OF ALTERNATE CLASSES WITHOUT SEPARATELY AND INDEPENDENTLY MEETING THE REQUIREMENTS OF RULE 23 FOR EACH PROPOSED VARIATION

### A. Plaintiffs Fail to Establish the Viability of a 23(b)(2) Injunctive Class.

The motion urges reconsideration of the 23(b)(2) class based on the import of *Smith v. Maryland*, 442 U.S. 735 (1979) and *Carpenter v. United States*, 585 U.S. 296 (2018), Fourth Amendment cases concerning the need for a warrant. This is not new law and Plaintiffs do not explain how re-arguing these points complies with the rules for reconsideration. They consider the circumstances where sensitive and personal information "could" be revealed, but they do not address the standards for obtaining injunctive relief which require an actual and imminent threat.

Plaintiffs never address the specific requirements for a 23(b)(2) class. To certify an injunctive class, the alleged conduct must be capable of being "declared unlawful" in all circumstances for the "class as a whole." *Jennings v. Rodriguez*, 583 U.S. 281, 313 (2018); *Wal-Mart*, 564 U.S. at 360-61. Dr. Shafiq's difficulty finding privacy violations shows that any properly tailored injunction is necessarily context and plaintiff specific. Indeed, the Supreme Court's *Carpenter* decision reinforces the circumstantial nature of such inquiries and the need for tailored consideration.

Plaintiffs also lack standing to seek injunctive relief because they have no need for the injunction. For a "threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted). But next time they visit a website, Plaintiffs "will be doing so with exactly the level of information that they claim they were owed." *Berni v. Barilla S.P.A.*, 964 F.3d 141, 148 (2d Cir. 2020). Plaintiffs cannot meet the narrow circumstances or make the specific showing required for injunctive relief. *See In re Coca-Cola Prods. Mktg. & Sales Practices Litig. (No. II)*, 2021 WL 3878654, at *2-3 (9th Cir. Aug. 31, 2021). At the very least,

the Plaintiffs are not similarly situated to absent class members who may legitimately claim ignorance of the Pixel and Events API.

### B. Plaintiffs Fail to Establish The Viability of Alternative 23(b)(3) Subclasses.

The Court chastised Plaintiffs for proposing alternate classes without making the requisite independent showing for each of them. Dkt. 242 at 7 (noting the failure to "address the alternative approaches … or explain how they would be analyzed differently"); *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) (holding to be certified, each class "must independently meet the requirements of rule 23"). These failures precluded certification of these alternative classes. Plaintiffs repeat this error with this motion.

The entire discussion of the alternatives consists of 1.5 pages, much of which simply lists the alternative while the balance asserts conclusion after conclusion that Rule 23 is met. Plaintiffs re-propose the same alternatives the Court precluded. Plaintiffs point to nothing new or unanticipated that would justify giving Plaintiffs another chance to brief points they have waived. Plaintiffs also propose five new alternatives. Plaintiffs again make these proposals without the required showing. Certification of these alternatives should also be precluded.

On the merits, these proposals suffer from the same problems that the Court has said prevent certification of a class. Each variant represents an attempt by Plaintiffs to address one of the barriers to class treatment. The problem, though, is that even if a particular variant successfully overcomes that particular problem, the others remain. Plaintiffs have not proposed a variant that can overcome all of the problems the Court identified in its certification ruling. Plaintiffs do not identify which of their many options is the one, nor do they ever explain how the Rule 23 requirements are met. Indeed, without any showing, there is no assurance that Plaintiffs' alternatives not only fail, but in their attempt, end up introducing even

more individualized issues that prevent predominance and any gain in judicial efficiency.

## CONCLUSION

The parties and the Court have already expended "enormous resources" dealing with Plaintiffs' attempt to certify a class. Dkt. 242 at 7. Plaintiffs nonetheless try again. But the motion for reconsideration offers nothing new. It merely reargues points that the Court has already decided and introduces others that were waived. The motion urges reconsideration, but never comes to grips with why a class action is not appropriate—these claims require individualized consideration of each piece of data collected. Plaintiffs' continued focus on seven categories instead of the specifics is inexcusable, since the Court has already criticized it for misleading and obscuring the vital differences between the members of the class and the websites they visit. Plaintiffs' parade of horribles about what routine data collection might reveal cannot stand in for the lack of evidence that anyone's private information or contents of their communications was actually received or at risk. Plaintiffs have offered no good reason for disturbing the Court's certification ruling. The motion should be denied.

Dated: October 4, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Victor Jih*
Victor Jih

*Attorney for Defendants*
TikTok Inc. and ByteDance Inc.