Ekwan E. Rhow (CA SBN 174604)
  erhow@birdmarella.com
Marc E. Masters (CA SBN 208375)
  mmasters@birdmarella.com
Christopher Jumin Lee (SBN 322140)
  clee@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS &
NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
GLANCY PRONGAY & MURRAY,
LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
gpark@susmangodfrey.com

John W. McCauley (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
imccauley@susmangodfrey.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| BERNADINE GRIFFITH, et al,<br><br>                Plaintiffs,<br><br>        vs.<br><br>TIKTOK, INC, a corporation;<br>BYTEDANCE, INC., a corporation,<br><br>                Defendants. | CASE NO. 5:23-cv-00964-SB-E<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL REGARDING PRIVILEGE ISSUES**<br><br>Magistrate Judge: Hon. Charles Eick<br>Date:      November 1, 2024<br>Time:      9:30 AM<br>Place:     Ctrm. 750<br><br>Action Filed:   May 26, 2023<br>Trial Date:      January 21, 2025 |

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENTS ....................................................... 1

        A.      PLAINTIFFS' PRELIMINARY STATEMENT .................................. 1

        B.      DEFENDANTS' PRELIMINARY STATEMENT .............................. 4

II.     RELEVANT BACKGROUND............................................................ 6

        A.      PLAINTIFFS' BACKGROUND .................................................... 6

        B.      DEFENDANTS' BACKGROUND ................................................ 8

III.    LEGAL STANDARD ..................................................................... 11

        A.      PLAINTIFFS' STANDARD ...................................................... 11

        B.      DEFENDANTS' STANDARD ................................................... 13

IV.     ARGUMENT ............................................................................... 14

        A.      PLAINTIFFS' ARGUMENT ..................................................... 14

                1.      Defendants Waived Any Applicable Privilege by Failing to
                        Produce Logs in a Timely Manner. ............................................ 14

                2.      Defendants Failed to Provide Logs for Certain Redactions and
                        Thus Waived Privilege. .......................................................... 16

                3.      Defendants' Descriptions of Privilege Are Patently Insufficient
                        and Do Not Enable Plaintiffs to Assess the Claims. .................. 17

                4.      Improper or Unjustified Redactions Do Not Bear Any Facial
                        Indicia of Privileged Materials. ............................................... 19

                        a.      Documents that Do Not Involve an Attorney ................. 19

                        b.      Documents that Involve an Attorney but Relate to
                                Business, Not Legal Matters ..................................... 21

                5.      Defendants' Clawback Attempt Is Improper ............................. 28

        B.      DEFENDANTS' ARGUMENT .................................................. 28

V.      CONCLUSION ............................................................................. 36

        A.      PLAINTIFFS' CONCLUSION .................................................. 36

        B.      DEFENDANTS' CONCLUSION ................................................ 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abilify (Aripiprazole) Prod. Liab. Litig.*,
    2017 WL 6757558 (N.D. Fla. Dec. 29, 2017) .................................. 14, 20, 33, 34

*Am. Fed'n of Musicians v. 212 Prods. LLC*,
    2022 WL 2102868 (C.D. Cal. Sep. 27, 2021) ..................................... 13

*Anaya v. CBS Broad., Inc.*,
    251 F.R.D. 645 (D.N.M. 2007) .................................................. 14, 29

*Applied Med. Resources Corp. v. Ethicon, Inc.*,
    2005 WL 6567355 (C.D. Cal. May 23, 2005) ..................................... 13

*Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*,
    2008 WL 5214330 (N.D. Cal. Dec. 12, 2008) .............................. 12, 20

*Brunswick Corp. v. Doff*,
    638 F.2d 108 (9th Cir. 1981) ................................................. 12

*Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*,
    271 F.R.D. 643 (D. Nev. 2010) .................................................. 29

*Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court*,
    408 F.3d 1142 (9th Cir. 2005) .............................................. 14, 29, 31

*Calendar Research LLC v. Stubhub, Inc.*,
    2019 WL 1581406 (C.D. Cal. Mar. 14, 2019) .............................. 14, 29

*Centerline Hous. P'ship I, L.P.-Series 2 v. Palm Communities*,
    2021 WL 4895746 (C.D. Cal. Sept. 2, 2021) .......................... 12, 21, 34

*Clavo v. Zarrabian*,
    2003 WL 24272641 (C.D. Cal. Sep. 24, 2003) ................................. 22

*Fidelity Nat. Title Ins. Co. v. Captiva Lake Investments, LLC*,
    2012 WL 3562207 (E.D. Mo. Aug. 17, 2012) ...................... 15, 17, 29, 31

*Genentech, Inc. v. Trustees of Univ. Pennsylvania*,
    2011 WL 5079531 (N.D. Cal. Oct. 24, 2011) ............................. 27, 35

*Gibson v. Reed*,
    2019 WL 2372480 (W.D. Wash. June 5, 2019) .................................................. 14

*In re Google RTB Consumer Priv. Litig.*,
    2022 WL 17072016 (N.D. Cal. Nov. 17, 2022) .......................................... 20, 33

*In re Human Tissue Prod. Liab. Litig.*,
    2009 WL 1097671 (D.N.J. Apr. 23, 2009) .................................................. 28, 35

*Humphreys v. Regents of the Univ. of California*,
    2006 WL 1409336 (N.D. Cal. May 23, 2006) .................................................. 14

*Johnson v. Ford Motor Co.*,
    309 F.R.D. 226 (S.D. W.Va. 2015) .................................................................... 12

*LD v. United Behav. Health*,
    2022 WL 4878726 (N.D. Cal. Oct. 3, 2022) ...................................................... 14

*Leonen v. Johns-Manville*,
    135 F.R.D. 94 (D.N.J. 1990) .............................................................................. 22

*Maki v. United States*,
    2008 WL 1756330 (W.D. Va. Apr. 16, 2008) .................................................. 12

*Mayorga v. Ronaldo*,
    2023 WL 8047781 (9th Cir. Nov. 21, 2023) .................................................... 13

*Munguia-Brown v. Equity Residential*,
    337 F.R.D. 509 (N.D. Cal. 2021) ...................................................................... 14

*In re Napster, Inc., Copyright Litig.*,
    2005 WL 6569723, . (N.D. Cal. Apr. 12, 2005), *rev'd on other
    grounds,* 479 F.3d 1078 (9th Cir. 2007) .......................................................... 22

*Phillips v. C.R. Bard, Inc.*,
    290 F.R.D. 615 (D. Nev. 2013) ........................................................................ 22

*Robinson v. Texas Auto. Dealers Ass'n*,
    214 F.R.D. 432 (E.D. Tex. 2003), *rev'd on other grounds*,
    2003 WL 21911333 (5th Cir.) ........................................................ 15, 17, 29, 31

*S.E.C. v. Yorkville Advisors, LLC*,
    300 F.R.D. 152 (S.D.N.Y. 2014) ................................................................ 19, 32

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL RE PRIVILEGE ISSUES

*In re Telescopes Antitrust Litig.*,
    2022 WL 17331257 (N.D. Cal. Nov. 29, 2022)..........................................20, 33

*United States v. Chen*,
    99 F.3d 1495 (9th Cir. 1996) ................................................................. 13

*United States v. Chevron Corp.*,
    1996 WL 264769 (N.D. Cal. Mar. 13, 1996) .........................................13, 22, 23

*United States v. Chevron Texaco Corp.*,
    241 F. Supp. 2d 1065 (N.D. Cal. 2002)..............................................22

*United States v. Martin*,
    278 F.3d 988 (9th Cir. 2002) .............................................................11, 12

*United States v. Union Pac. R. Co.*,
    2007 WL 1500551 (E.D. Cal. May 23, 2007) ........................................13, 14

*Urban Box Office Network, Inc. v. Interfase Managers, L.P.*,
    2006 WL 1004472 (S.D.N.Y. Apr. 18, 2006)........................................22

*Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc.*,
    63 F. Supp. 3d 558 (E.D.N.C. 2014) ....................................................28, 35

*In re Viaxx Prod. Liab. Litig.*,
    501 F. Supp. 2d 789 (E.D. La. 2007) ....................................................28, 35

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
    250 F.R.D. 251 (D. Md. 2008) .............................................................. 12

*Visa U.S.A., Inc. v. First Data Corp.*,
    2004 WL 1878209 (N.D. Cal. Aug. 23, 2004)........................................22, 25

*Wisk Aero LLC v. Archer Aviation Inc.*,
    2022 WL 524065 (N.D. Cal. Feb. 22, 2022)........................................ 13

**Rules**

Fed. R. Civ. P. 26..........................................................................................*passim*

Fed. R. Civ. P. 34.............................................................................................. 15

# I.    PRELIMINARY STATEMENTS

## A.    PLAINTIFFS' PRELIMINARY STATEMENT

Plaintiffs bring this motion to address Defendants' improper withholding and redaction of documents based on vague, sweeping claims of privilege and inadequate privilege and redaction logs. The summary judgment deadline is November 1, 2024, and this motion is brought against a background of massively delayed discovery by Defendants. Back in April 2024, to forestall a motion to compel production of their custodial documents, Defendants reached an agreement with Plaintiffs. That agreement was laid out in Plaintiffs' motion to modify the case schedule (Dkt. 134 at 10-12, 13-14), and Plaintiffs relied on Defendants' agreement in taking depositions, developing expert testimony, moving for class certification, and preparing for summary judgment and trial.

Among other things, Defendants agreed (1) "to produce [their] custodians' documents in the ordinary course and ***not wait for a last-minute document dump***," (2) "to make all reasonable efforts to ***produce documents in approximately equal increments*** every three weeks," (3) "to ensure that documents Plaintiffs wish to prioritize are ***not withheld until the end***," (4) to adhere to a "***substantial completion date for production of documents at least one month prior to the fact discovery cutoff***," and (5) "to make all reasonable efforts to produce all such documents [for a custodian being deposed] at least one week prior to such custodian's deposition." Dkt. 134 at 13-14 (emphasis added).

Defendants did not abide by any part of this agreement. Defendants' document production has been heavily backloaded, with more than 85% of their documents produced in the last month and a half, ***after*** the class certification hearing—the very definition of a "last-minute document dump." And Defendants continue to produce documents, with the most recent production coming on September 30, 2024, three days before Plaintiffs provided their portion of this Joint Stipulation. Linkh Decl. ¶¶ 13-16. This chart illustrates the timing of Defendants' document production:



As late as Defendants have been in producing documents, they have been even tardier in providing privilege and redaction logs. As of the date Plaintiffs provided their portion of this Joint Stipulation to Defendants, Defendants' last privilege log entry, served June 17, 2024, was for TIKTOK-BG-000153024, *see* Ex. 2 at 26. Since then, Defendants have produced ***2.9 million pages*** without logging a single document withheld from that giant production. Similarly, Defendants' latest redaction log entry was for TIKTOK-BG-000220390, i.e., ***2,859,755 pages ago*** (out of a total production of 3,080,145 pages). Ex. 3 at 26; Linkh Decl. ¶ 16. Even if Defendants produce logs after Plaintiffs' portion of this Joint Stipulation is provided, they will be untimely and impractically late for Plaintiffs to analyze and challenge. This is exactly why the parties agreed that Defendants would not wait to dump documents on Plaintiffs at the last minute; Defendants' brazen violation of that agreement has left Plaintiffs with insufficient opportunity to review not only the documents but also the corresponding privilege and redaction logs that will follow the eleventh-hour dumps.

The purpose of providing logs is to enable the receiving party to assess and, where appropriate, challenge the producing party's withholding of documents. Defendants' conduct is a transparent attempt to run out the clock before the October 11 discovery cutoff and prevent Plaintiffs from challenging their privilege assertions

and redactions. Plaintiffs' challenges and requested remedies fall into five categories:

First, Defendants have failed to produce logs corresponding with the vast majority of their productions. While Defendants recently informed Plaintiffs that they would attempt to provide logs the week of October 7, such logs would arrive too late and provide inadequate time for Plaintiffs to review them and raise appropriate challenges. Plaintiffs thus request an order that Defendants, by waiting until the very last week of fact discovery to serve logs, have waived any protections for documents withheld or redacted without a log entry as of October 3, 2024.

Second, Defendants have not provided redaction logs for certain redacted documents. Plaintiffs request an order that Defendants waived any protections for these redactions and that the documents be produced in unredacted form.

Third, the limited set of timely logged documents contains hundreds of suspect entries with inadequate descriptions of privilege that leave Plaintiffs unable to evaluate the propriety of Defendants' withholding. In fact, Defendants' logs do not even have a "recipient" column to indicate the recipient of purportedly privileged communications. *See* Exs. 2, 3. Further, many entries identify no lawyer at all—not as an author or in the privilege description (and necessarily not as a recipient because there are no recipient columns at all). For such entries that identify no lawyer and lack adequate descriptions, Plaintiffs request that the privilege be deemed waived and the underlying documents be produced.

Fourth, Defendants have made redactions, with insufficient justification, on documents that bear no facial indicia that the redacted material contains attorney-client communications. Plaintiffs respectfully ask the Court to conduct an *in camera* review of 16 exemplar documents and order Defendants to produce any documents it finds to have been improperly withheld. *See* Ex. 9 (chart of 16 documents); *see also* Exs. 12-13, 15-16, 19-26, 29-32.

Finally, Defendants have sought to claw back a document that is patently not privileged. Plaintiffs request a declaration that the clawback attempt is improper.

## B.    DEFENDANTS' PRELIMINARY STATEMENT

Replaying a scene this Court has seen many times before, Plaintiffs' motion seeks inappropriate relief and overstates the dispute.  Since December 2023, Defendants have produced over 280,000 documents and served 13 privilege and redaction logs. Despite this diligence, Plaintiffs request a finding of privilege waiver plus *in camera* review of sixteen documents, relying on unsupported theories, inapposite case law, and reviving already-rejected grievances.  But stripped of hyperbole, Plaintiffs' motion is largely moot.  All five of the issues on which Plaintiffs have moved are, or soon will be, resolved, with minor exceptions in areas where Plaintiffs' position is so extreme that compromise is impossible.

**Issue #1, Purported Failure to Produce Privilege Logs: Moot**.  Plaintiffs charge that Defendants "failed to produce logs corresponding with the vast majority of their productions" (Br. at 3) (category one), but on October 10, 2024, Defendants provided a privilege log for every withheld document identified from these productions.  Defendants expect to produce the corresponding redaction log imminently.  Plaintiffs admit they were aware these logs were forthcoming but sought court intervention anyway.  Br. at 10 (Defendants told Plaintiffs on September 30 they expected to provide logs "the week of October 7").  Plaintiffs claim the logs are being provided "too late" and with "inadequate time," but there is nothing "late" about them.  According to Plaintiffs, Defendants produced "2.9 million pages" of nonprivileged documents in the last few months.  Br. at 2.  Defendants reviewed and logged documents for privilege from this population as expeditiously as possible but given the volume—the result of Plaintiffs' demand for dozens of complex search strings run across more than thirty custodians—it has simply taken time.  The logs were (or will be) served shortly after the documents were reviewed for privilege.  Regardless, even lateness would not automatically result in waiver.

**Issue #2 and #3, Redactions & Recipient Information Purportedly Missing from Logs: Moot**. Plaintiffs' forthcoming redaction log will  also contain entries

addressing Plaintiffs' second, and most of their third, categories. Plaintiffs identified certain redactions they claimed were "never logged" (category two); the documents are either ones inadvertently omitted from prior logs due to technical or vendor error, or redacted Lark chats Defendants already logged but which Plaintiffs requested be reproduced in a different format. Supplemental entries for all such redactions will appear on the upcoming log.

Plaintiffs also fault Defendants' privilege log for not containing a "Recipients" column (category three), but supplemental "recipient" information was provided in Defendants' October 10 log. Defendants offered to produce it months ago, an offer to which Plaintiffs did not respond. Defendants further agree, voluntarily, to supply as soon as possible attorney identification for entries not otherwise referencing a lawyer following this supplementation where possible after a reasonable search, including "Legal" where applicable. Plaintiffs' other arguments, that certain narratives are too vague, that documents logged on work product grounds must name a specific litigation or trial, and/or that references to "Legal" are deficient, likewise fail. Defendants even provided Plaintiffs with authority on the latter point at the end of August, which Plaintiffs ignored. Plaintiffs' own cited cases also indicate that the remedy, if any, is supplementing the log, not waiver. Defendants have done that or, in the case of additional attorney names, expect to do so imminently.

**Issue #4, Plaintiffs' Request for *In Camera* Review of 16 Documents: Moot or Meritless.** Plaintiffs claim Defendants over-redacted sixteen documents out of hundreds of thousands produced (category four). Defendants were in the process (as they informed Plaintiffs) of further assessing the privilege claims when Plaintiffs served this stipulation prematurely. Defendants agree to produce three of the sixteen documents with fewer or no redactions and expect to do so by October 14. Plaintiffs raise no valid argument with respect to the remaining thirteen, for which they are not entitled to *in camera* review.

**Issue #5, Clawback Request: Moot.** Defendants have agreed to withdraw their clawback request for portions of Wong Exhibit 10 (category five). Except as regards Plaintiffs' legal contentions concerning privilege for "technical" documents and/or between in-house counsel and employees of a company (see *infra* at pp. 23, 29), Defendants do not further address Plaintiffs' fifth category.

This motion, one of five Plaintiffs filed after the denial of class certification, is their latest effort to throw spaghetti at the wall with hopes that something will stick. Plaintiffs purport to lack information they need to "assess and, where appropriate, challenge the producing party's" assertion of privilege (Br. at 2), but by their own admission have no interest in obtaining it. Instead, Plaintiffs demand a sweeping holding of waiver—an outsized penalty that does not correlate to the purported shortcomings. Plaintiffs' attempt to shoehorn in unfounded assertions regarding "delayed discovery," "last-minute," and "eleventh-hour" document dumps (Br. at 1-2), are lifted from Plaintiffs' motion to modify the Case Management Order, which the Court denied, and do not bear on this privilege dispute. Plaintiffs' motion should be denied in its entirety.

## II.    RELEVANT BACKGROUND

### A.    PLAINTIFFS' BACKGROUND

Defendants produced their first privilege log on January 12, 2024, and their most recent privilege log (as of the service of Plaintiffs' portion of this joint stipulation on October 3, 2024), on June 17, 2024. *See* Ex. 2. That log covered documents through Bates number TIKTOK-BG-000153024. *Id*.

Defendants produced their first redaction log on January 12, 2024, and their most recent redaction log, (as of the service of Plaintiffs' portion of this joint stipulation on October 3, 2024), on August 23, 2024. *See* Ex. 3. That log covered documents through bates number TIKTOK-BG-000220390. *Id*.

Plaintiff raised concerns about Defendants' privilege and redaction logs repeatedly. On February 22, 2024, Plaintiffs wrote Defendants to challenge (1) their

production of redacted documents that are not reflected on redaction logs, (2) their
improper redaction of documents that have no indicia of privilege, and (3) their logs'
improper references to "Legal" with no identification of actual attorneys. Exs. 4, 5. In
March, Defendants purported to have rectified these defects by (1) re-evaluating their
assertions of privilege and either withdrawing in full or in part certain redactions, *see*
Ex. 6 (D. Savage Mar. 14, 2024 email), and supplementing their redaction logs with
all documents with redactions, *see* Ex. 7 (D. Savage Mar. 25, 2024 email).

As Defendants' document production continued, Plaintiffs learned that
Defendants had continued to engage in the same tactics to which Plaintiffs had
objected back in February. In fact, the Court can see some of these defects in the
sixteen documents for which Plaintiffs seek *in camera* review. *See, e.g.*, Ex. 9 at
PRIV-6, PRIV-7, PRIV-10, PRIV-11, PRIV-12. On August 2, 2024, Plaintiffs again
wrote to Defendants, noting that Defendants had promised, but failed, to correct
deficiencies in their privilege and redaction logs. Ex. 8 (C. Lee Aug. 28 Email). Those
deficiencies included withholding and redacting documents without identifying them
on a log, redacting comments made by non-attorneys that do not appear to correspond
with attorneys, vaguely stating that communications were with "Legal" without
identifying the names or positions of actual attorneys, failing to identify recipients of
documents, and failing to describe the nature of documents or communications in a
manner that would enable Plaintiffs to assess the claim. *Id*.

Defendants responded on August 28, doubling down on the purported
permissibility for "parties to redact or withhold communications between non-
attorneys" and "to identify the source of the privilege as 'Legal,'" with no attorney
names. Ex. 8 (C. Hurley Aug. 28 Email). As to insufficient document descriptions
and the lack of recipients identified in logs, Defendants stated their willingness to
provide supplemental logs curing these defects. *See id.* Having not heard back from
Defendants in a month and with the impending close of fact discovery, on September
26, Plaintiffs reached out to Defendants again. *See id.* (J. Rotter Sept. 26 Email).

The parties further met and conferred concerning the specific relief requested herein by Plaintiffs on September 30, 2024. Linkh Decl. ¶ 12. During that conference, Defendants stated that they may provide supplemental logs some time the week of October 7. Plaintiffs explained on the call that this would come too late, as discovery closes on October 11 and any discovery motions must be filed to be heard no later than November 1. Given these deadlines, after waiting as long as possible for Defendants' supplemental material and not having received them, Plaintiffs served their portion of this joint stipulation on Defendants on October 3 to be able to file this motion on the last possible date, October 11 (for a November 1 hearing).

## B. DEFENDANTS' BACKGROUND

Defendants have reviewed and logged documents for privilege as expeditiously as possible. Since December 2023, Defendants have produced over 280,000 documents and served 13 privilege and redaction logs.

In February and August, Plaintiffs raised purported concerns with Defendants' redactions and privilege logs. In each instance, Defendants addressed those inquiries thoroughly.

**February correspondence**. Plaintiffs' February letter alleged three issues across approximately 45 total documents: (1) inquiries or challenges to certain redactions, (2) so-called failure to log redactions, and (3) log entries "containing references to 'Legal' with no identification of actual attorneys." Defendants agreed to produce all documents as to which Plaintiffs had questions with either no or fewer redactions, to provide an entry for the one remaining unlogged document (which had been inadvertently omitted), and to "supplement[] names for 'Legal' to the extent identifiable," for the two identified documents which retained redactions. Defendants reiterated to Plaintiffs that their efforts to provide names for "Legal" were a courtesy only, and supplied authority (including on August 28) supporting that references to "Legal" are sufficient to sustain a claim of privilege. Following Defendants'

provision of supplemental log entries in March, Defendants continued to supply privilege and redaction logs without any challenge from Plaintiffs.

**August correspondence**. Then, on August 2 (over four months later), Plaintiffs wrote regarding supposed "defects in Defendants' privilege and redaction logs." Plaintiffs did not identify any documents or lines of Defendants' logs they claimed were deficient, but instead described five categories they claimed to be issues: (1) redacting communications between non-lawyers, (2) log entries referring to communications with "Legal"; (3) redacted documents Plaintiffs claimed were unlogged; (4) "fail[ing] to identify the recipients" of documents withheld for privilege; and (5) "fail[ing] to describe the nature of" privileged documents adequately. Defendants again responded comprehensively to each of Plaintiff's queries. First, Defendants provided case law supporting their redaction and withholding of communications between non-attorneys, and the propriety of log entries identifying the source of the privilege as "Legal." With respect to "unlogged" documents, no examples of which were provided, Defendants worked with their vendor to triple-check the population of redacted documents and were unable to identify any that had not been logged. Defendants commented that to the extent Plaintiffs were referring to privileged documents post-dating June 1, 2023 (the date the litigation was filed), the parties had agreed no log was necessary. Defendants offered to look into any specific documents Plaintiffs had in mind if they would identify them, offered to clarify with Plaintiffs what additional information if any would be helpful regarding document types, and indicated their willingness to provide a list of "recipients" for documents withheld for privilege. Defendants heard nothing for almost a month.

Plaintiffs finally responded on September 26, with sudden urgency after weeks of silence. Referencing a "need to resolve all outstanding issues regarding privilege and redaction logs" before "the impending close of fact discovery"—a time crunch Plaintiffs created by ignoring Defendants for nearly a month—Plaintiffs stated they

would seek a blanket privilege waiver over all documents Defendants anticipated including on forthcoming "privilege or redaction logs covering recent productions," regardless of when served.  Tacitly admitting a motion **before** logs were due was by definition premature, Plaintiffs said they would "typically suggest" "a procedure to resolve those issues after the discovery / motion cutoff," but would "likely need to move" now, to be cautious, "given the Court's order denying the continuance[.]"  Plaintiffs also provided a list of 73 documents they claimed were not logged or for which the privilege claim was inadequately justified and demanded a meet and confer within two business days.

The parties met and conferred on September 30.  Ex. 34, Hurley Decl. ¶ 2. Defendants stated their intention to provide a privilege log for recently reviewed documents the week of October 7, which they expected to moot most or all of Plaintiffs' supposed concerns.  *Id.* ¶ 4.  Defendants also provided explanations for the documents Plaintiffs identified as unlogged or inadequately substantiated.  *Id.* ¶ 4.  With respect to the former, Defendants explained the identified documents were Lark messages reproduced as threads at Plaintiffs' request which  had already been produced, redacted, and logged in another format (i.e., as individual Lark chats); post-dated the June 1, 2023 cutoff the parties had agreed upon for logging documents (as also stated a month prior in counsel's August 28 email); or lacked sufficient metadata to make a determination as to timing.  *Id.* ¶ 3.  Defendants nevertheless offered to provide supplemental log entries as a courtesy and, with respect to the "unjustified redactions," Defendants agreed to review the documents identified by Plaintiffs and consider potentially providing more information for Plaintiffs to assess the privilege claim.  *Id.* ¶ 5.  Defendants stated they would serve the supplemental logs as soon as possible, noting that team members would be observing religious holidays preceding the weekend of October 4-6.  *Id.* ¶ 4.  In response, Plaintiffs conceded that their planned stipulation was merely a vehicle to preserve potential privilege challenges they may later want to assert.  *Id.* ¶ 6. Plaintiffs also did not raise the document clawed

back at Becca Wong's deposition at this meet and confer (which Defendants had reproduced with redactions) and suddenly raised it for the first time in this joint stipulation—***months*** later. *Id*. ¶ 7.

Defendants did what they promised. As of this filing, Defendants (1) provided Plaintiffs with a privilege log covering all privileged documents Defendants identified and withheld from recent productions, (2) are finalizing a redaction log to be served imminently covering the same population, including entries for documents identified by Plaintiffs that were inadvertently left off of prior logs and redacted Lark chats included on prior logs, but which Defendants had subsequently re-produced as threaded conversations; (3) provided a recipients field for withheld emails and Lark chat threads, exceeding the parties' agreement (and are willing to do so for redacted documents, *see infra* pp. 32-33); (4) agree to withdraw their assertion of privilege over certain comments by an in-house attorney in a document used at Ms. Wong's deposition, and (5) produced or agree to produce with no or fewer redactions 3 of the 16 documents Plaintiffs claim were over-redacted after further review. Defendants also agree to provide attorney information for entries not otherwise referencing a lawyer (or lawyers) after recipient information was added.

## III. LEGAL STANDARD

### A. PLAINTIFFS' STANDARD

In the Ninth Circuit, an eight-part test governs the determination of whether the attorney-client privilege applies to a particular document. *See United States v. Martin,* 278 F.3d 988, 999 (9th Cir. 2002). The privilege applies "(1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived." *Id.* The party asserting the privilege bears the burden of showing it applies. *Id.* Accordingly, the privilege will not apply where the asserting party cannot demonstrate these eight

elements. *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, 2008 WL 5214330, at *2 (N.D. Cal. Dec. 12, 2008); *Martin*, 278 F.3d at 999. "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Martin*, 278 F.3d at 999 (citation omitted).

"To qualify for the work product protection," Defendants "must demonstrate the documents were prepared in anticipation of litigation or for trial." *Centerline Hous. P'ship I, L.P.-Series 2 v. Palm Communities*, 2021 WL 4895746, at *9 (C.D. Cal. Sept. 2, 2021).

When a party withholds information from discovery on the basis of attorney-client privilege or work-product protection, "the party must (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a matter that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

Blanket assertions of privilege are insufficient. *Brunswick Corp. v. Doff*, 638 F.2d 108, 110 (9th Cir. 1981); *Maki v. United States*, 2008 WL 1756330, at *4 (W.D. Va. Apr. 16, 2008) ("bald assertion that certain documents were 'prepared at the request' of counsel . . . does not meet its burden of establishing that these documents are privileged from discovery under the attorney-client privilege"). "Rather, the party's privilege log 'must set forth specific facts which, taken as true, establish the elements of the privilege for each document for which privilege is claimed.'" *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 232-33 (S.D. W.Va. 2015); *see also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264 (D. Md. 2008) (privilege logs typically require "information regarding the nature of the privilege/protection claimed, the name of the person making/receiving the communication, the date and place of the communication, and the document's general subject matter.").

And the mere fact that "an attorney" is "one of several recipients" is not sufficient to distinguish the documents withheld from "ordinary business

communications, to which privilege does not apply." *Applied Med. Resources Corp. v. Ethicon, Inc.*, 2005 WL 6567355, at *2 (C.D. Cal. May 23, 2005);  *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("That a person is a lawyer does not, ipso facto, make all communications with that person privileged."); *Wisk Aero LLC v. Archer Aviation Inc.*, 2022 WL 524065, at *4 n.3 (N.D. Cal. Feb. 22, 2022) ("As in-house   counsel,   Bibbes's   communications   may   include   'dual-purpose communications,' involving 'both legal and non-legal analyses.'") (quoting *In re Grand Jury*, 23 F.4th 1088, 1092 (9th Cir. 2021)); *United States v. Chevron Corp.*, 1996 WL 264769, at *4 (N.D. Cal. Mar. 13, 1996) ("a corporation must make a ***clear showing*** that in-house counsel's advice was given in a professional legal capacity" (emphasis in original)).

## B.    DEFENDANTS' STANDARD

Under Federal Rule of Civil Procedure 26(b)(5), there is "no *per se* waiver rule when a privilege log is not produced." *Mayorga v. Ronaldo*, 2023 WL 8047781, at *3 (9th Cir. Nov. 21, 2023) (citing *Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1147-49 (9th Cir. 2005)).  Nor is there *per se* waiver when documents have been inadvertently omitted from prior logs, or where the logs contain insufficient information to assess the privilege claim.  *See United States v. Union Pac. R. Co.*, 2007 WL 1500551, at *3 (E.D. Cal. May 23, 2007).

Courts in the Ninth Circuit rather analyze whether privilege has been waived on a case-by-case basis "in the context of a holistic reasonableness analysis." *Am. Fed'n of Musicians v. 212 Prods. LLC*, 2022 WL 2102868 (C.D. Cal. Sep. 27, 2021) (citing *Burlington*, 408 F.3d at 1149).  The case-by-case determination considers several factors, including:  "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged . . .; the timeliness of the objection and accompanying information about the withheld documents . . .; the magnitude of the document production; and other particular circumstances of the litigation that make

---

13

responding to discovery unusually easy . . . or unusually hard." *Calendar Research LLC v. Stubhub, Inc.*, 2019 WL 1581406, at *4 (C.D. Cal. Mar. 14, 2019).

The attorney-client privilege encompasses and protects confidential communications requesting, providing, or reflecting legal advice, *see Gibson v. Reed*, 2019 WL 2372480, at *1 (W.D. Wash. June 5, 2019), while the work product doctrine protects from disclosure communications or materials prepared in anticipation of litigation. *See Munguia-Brown v. Equity Residential*, 337 F.R.D. 509, 516 (N.D. Cal. 2021). An attorney need not be an author or recipient of a communication for it to be privileged; the privilege protects, for example, communications between two non-lawyers discussing or concerning legal advice provided by counsel. *See In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 2017 WL 6757558, at *6 (N.D. Fla. Dec. 29, 2017) (collecting cases). Log entries must include information sufficient to sustain a claim of privilege. See *LD v. United Behav. Health*, 2022 WL 4878726, at *2 (N.D. Cal. Oct. 3, 2022). Even where a privilege log is deficient or untimely served, the remedy is generally an order to supplement the affected entries—not waiver. *See United States v. Union Pac. R. Co.*, 2007 WL 1500551, at *3 (E.D. Cal. May 23, 2007); *Humphreys v. Regents of the Univ. of California*, 2006 WL 1409336, at *1 (N.D. Cal. May 23, 2006) (no waiver where there is "sufficient information to constitute a good faith effort at compliance").

## IV.  ARGUMENT

### A.  PLAINTIFFS' ARGUMENT

#### 1.  Defendants Waived Any Applicable Privilege by Failing to Produce Logs in a Timely Manner.

"The law is well settled that failure to produce a privilege log or production of an inadequate privilege log may be deemed waiver of the privilege." *Anaya v. CBS Broad., Inc*., 251 F.R.D. 645, 651 (D.N.M. 2007); *see also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. Of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (affirming district court's finding of waiver where privilege log filed five months after

the Rule 34 time limit of 30 days). It is necessary to find waiver where a privilege log is updated only in response to a motion to compel "to prevent gamesmanship." *Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 456 (E.D. Tex. 2003), *rev'd on other grounds*, 2003 WL 21911333 (5th Cir.)). "If a party is allowed to withhold documents without giving opposing parties notice that the documents exist but are being withheld, the opposing party will obviously be unable to contest the validity of a privilege or protection asserted for those documents." *Id*. "Amending the privilege log to fully disclose the scope of withheld documents after a motion to compel documents in the privilege log has already been filed is too late to serve that purpose. If the existence of all the documents that would be most enticing to the opposing party is not known, no motion to compel may ever be filed." *Id*.

Defendants have failed to produce logs corresponding to documents withheld for the majority—approximately 93% of pages—of their production. "A party waives the attorney-client privilege and work-product protection when it fails to give notice in its privilege log that a document is being withheld based on a privilege or protection as required." *Fidelity Nat. Title Ins. Co. v. Captiva Lake Investments, LLC*, 2012 WL 3562207, at *3 (E.D. Mo. Aug. 17, 2012) (holding privilege waived where party failed to include reports in it is initial privilege log, and the assertion of the privilege was only made at a deposition). Here, Plaintiffs have already taken the depositions of fact witnesses and/or 30(b)(6) corporate representatives Becca Wong, Branky Shao, Daniel Kirschgessner, Lizzie Li, Simran Sahni, Sheraz Amin, and Yun-Feng Wei. All but Amin's deposition were taken before Defendants' produced logs covering 93% of pages of their production. In other words, Plaintiffs were forced to take nearly all of their fact depositions, and all 30(b)(6) depositions, before Defendants produced the vast majority of the documents in this case—in blatant violation of their promise to the Court to produce documents in approximately equal amounts every three weeks and not dump documents near the end of the discovery period. *See* Dkt. 134 at 13-14.

To add insult to injury, this eleventh-hour document dump also means that

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL RE PRIVILEGE ISSUES

Plaintiffs, the week before the close of fact discovery, still have not seen any corresponding privilege or redaction logs of documents that were withheld or redacted in the massive production. To the extent that Defendants' gamesmanship and violation of the parties' production schedule has prevented Plaintiffs from an opportunity to review logs and challenge any improperly withheld or redacted documents, the Court should find that Defendants have waived any applicable privilege due to their unreasonable delays.

### 2. Defendants Failed to Provide Logs for Certain Redactions and Thus Waived Privilege.

Defendants also failed to provide redaction logs for at least the following documents with redactions that Plaintiffs were able to identify so far:

> TIKTOK-BG-000146628
> TIKTOK-BG-000147494
> TIKTOK-BG-000147604
> TIKTOK-BG-000149159
> TIKTOK-BG-000149962
> TIKTOK-BG-000150824
> TIKTOK-BG-000157659
> TIKTOK-BG-000168183
> TIKTOK-BG-000168423
> TIKTOK-BG-000151144

Linkh Decl. ¶ 19. To be clear, there were numerous other documents with redactions that Defendants never logged that Plaintiffs nonetheless have, in good faith, left off from the above list because those documents reflected involvement of legal counsel. As Plaintiffs have explained on numerous occasions to Defendants, given the format in which Defendants have produced documents, Plaintiffs do not have a systematic way of identifying all documents produced with redactions to cross-reference them against Defendants' redaction logs.[1] Rather, Plaintiffs must go through Defendants'

---

[1] The fact that Defendants have been producing redaction logs piecemeal and in PDF, rather than producing a running list in Excel, also increases the burden on Plaintiffs.

documents one by one, see which ones have redactions, and then check them against the redaction logs to verify that documents with redactions are reflected on one of the logs. By contrast, Defendants or their discovery vendor must surely have a list of documents that they have redacted. Notwithstanding this information asymmetry, Defendants have always placed the burden on Plaintiffs to identify documents with redactions that are not reflected in the redaction logs.

During the parties' September 30, 2024 meet and confer, Defendants stated that they had logged individual portions of chat threads when those individual portions were produced separately, but had not logged the documents reflecting the threaded chat messages. This excuse makes no sense for at least two reasons. First, some of the documents with redactions that have never been logged are not chats but rather are technical documents. Second, even as to chats, Defendants well know that the fragmented, individual chat messages (which they claim to have logged) were unreviewable, which is why Defendants agreed to re-produce them as threads in the first place. Plaintiffs have no way to correlate the purported redaction log entries for each fragmented, individual chat message with the threaded chat documents with redactions for which Defendants have admittedly served no logs.

The Court should hold that Defendants have waived the privilege as to these documents. *See Robinson*, 214 F.R.D. at 456; *Fidelity*, 2012 WL 3562207, at *3 ("Fidelity failed to include the Major Claims Reports in its initial privilege log, an omission for which it offers no explanation. . . . Fidelity has waived any claim of privilege with respect to the Major Claims Reports."). In the alternative, Plaintiffs are prepared to submit a subset of these documents for the Court's *in camera* review.

### 3. Defendants' Descriptions of Privilege Are Patently Insufficient and Do Not Enable Plaintiffs to Assess the Claims.

Equally troubling as the documents withheld or redacted without being logged are the inadequate descriptions of privilege in the logs that were produced by Defendants. The privilege and redaction logs are deficient in at least three ways:

1  (1) the generic descriptions of privilege do not "enable other parties to assess the

2  claim," as required by Rule 26(b)(5)(A), (2) the entries contain no information

3  regarding the recipients of these purportedly privileged documents, and (3) many

4  entries do not reference a lawyer at all but reference only "Legal" or only "legal

5  advice" without any further description.

6      The following are examples of entirely generic, nonspecific descriptions of

7  privilege littered throughout Defendants' logs:



24  "Pixel," "data storage," and "cookies" are what this entire case is about; descriptions

25  of privilege that merely state that some document reflects legal advice about the

26  "Pixel," without more, is wholly inadequate to enable Plaintiffs to determine whether

27  documents are indeed properly withheld. What is even more problematic is that none

28  of the entries identify a lawyer by name. (Defendants stated that they denoted lawyers

1    on their logs by bolding their names. No names are in bold above.)

2        The issue of inadequate privilege descriptions is compounded by the fact that

3    Defendants failed to include a "Recipient" column in their logs. As a concrete

4    example, TIKTOK-BG-000118404 was withheld entirely for privilege and was

5    described as an "email chain requesting legal advice regarding data processing" in

6    Defendants' April 15, 2024 Supplemental Privilege Log.  *See* Ex. 2, page 3, line 1.

7    The specific entry listed Deep Shah, Jimmy Marrow, and Manan Jhamb as the authors

8    of the document, but none of them are attorneys. Because no information is provided

9    regarding the recipient of this document, Plaintiffs are unable to determine who these

10   nonlawyer individuals were purportedly seeking legal advice from and whether the

11   document is in fact privileged. Plaintiffs are also unable to assess whether any logged

12   documents were shared with a third party, which would waive any privilege.

13       Although Defendants have indicated that they would supplement their logs to

14   provide such information, Defendants have not done so as of the date that Plaintiffs

15   served their portion of this Joint Stipulation. Accordingly, Defendants have waived

16   their right to assert any privilege over these withheld documents. *See S.E.C. v.*

17   *Yorkville Advisors, LLC*, 300 F.R.D. 152, 162-168 (S.D.N.Y. 2014) (holding that

18   SEC's initial privilege logs in civil enforcement action failed to provide adequate

19   description of subject matter, authors, and recipients of withheld documents, thus

20   resulting in waiver of any applicable privilege, and refusing to consider untimely

21   revised privilege logs). To the extent that there are entries that that do not identify any

22   lawyer in the custodian, author, or description fields and that also suffer from generic,

23   insufficient descriptions of purported privilege, Plaintiffs request that the Court order

24   these documents to be produced. In the alternative, Plaintiffs request that the Court

25   order Defendants to provide them for *in camera* review.

26       **4.    Improper or Unjustified Redactions Do Not Bear Any Facial**
27           **Indicia of Privileged Materials.**

28       **a.    Documents that Do Not Involve an Attorney**

The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *Baxter*, 2008 WL 5214330, at *2 (citation omitted). The privilege is limited to "only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Id.* Accordingly, at minimum, a privilege log must identify "the attorney and client involved." *In re Telescopes Antitrust Litig.*, 2022 WL 17331257, at *2 (N.D. Cal. Nov. 29, 2022) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)) "Suffice it to say that for each privilege claim, the privilege log should disclose the attorney and client involved in the communication." *Id.* at *4; *see also In re Google RTB Consumer Priv. Litig.*, 2022 WL 17072016, at *5 & n.3 (N.D. Cal. Nov. 17, 2022) (ordering Google to provide supplemental information as to 18 disputed privilege log entries, including "the attorney(s) involved" and specifying that the "disclosures should identify an individual or individuals, not 'Google,' if known").[2]

Numerous entries in Defendants' privilege logs do not meet the basic requirement of identifying the attorneys involved in the purported claim of privilege. For example, the chart of sample entries discussed above, *see supra* Section IV.A.3, contains no reference to attorneys anywhere. As additional examples, PRIV-7, PRIV-9, PRIV-10, PRIV-11, PRIV-12, PRIV-13, PRIV-14, PRIV-15, and PRIV-16 (attached as Exs. 21, 23-30), for which Plaintiffs request *in camera* review, also do not mention any attorneys in the entries.

Likewise, to qualify for work product protection, Defendants "must demonstrate the documents were prepared in anticipation of litigation or for trial." *Centerline*, 2021 WL 4895746, at *9. Certain entries in Defendants' privilege logs

---

[2] In the rare case in which a court accepted privilege log entries without a specific attorney identified, the log entry otherwise made it "evident that the information being compiled or discussed by corporate employees was information requested by or generated by an attorney." *In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 2017 WL 6757558, at *6 (N.D. Fla. Dec. 29, 2017). That is not the case here.

claim "work product" privilege without identifying any litigation or trial for which the documents were supposedly prepared:



Defendants have even redacted documents that reflect conversations between ███████████████████████████████. PRIV-15 (Ex. 31) and Ex. 33 are two such documents. Defendants didn't even bother logging Ex. 33 at all notwithstanding the redactions in the document. As to PRIV-15, Defendants claim that the redacted portions reflect "legal advice from Legal regarding data access." Ex. 3 at 23-24. But the redacted portions were written by an ███████ author, which Plaintiffs suspect is the ███████ Defendants cannot reasonably claim that any privileged communications occurred between a bot and non-attorneys. The fact that Defendants have nonetheless done so reflect Defendants' legally unjustifiable understanding of privilege and their improper withholding of documents on that basis.

### b.    Documents that Involve an Attorney but Relate to Business, Not Legal Matters

It is black-letter law that "[c]ommunications which relate to business rather than legal matters do not fall within the protection of the privilege." *Leonen v. Johns-Manville,* 135 F.R.D. 94, 98 (D.N.J. 1990). In order to show that a communication

relates to legal advice, the proponent of the privilege must demonstrate that the "primary purpose" of the communication was securing legal advice. *United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002); *see also Visa U.S.A., Inc. v. First Data Corp.*, 2004 WL 1878209, at *4 (N.D. Cal. Aug. 23, 2004) (rejecting a "because of" standard and applying a "primary purpose" standard). A defendant must "distinguish between legal advice, which is privileged, and advice concerning matters of business strategy that happens to be provided by a lawyer, which is not." *In re Napster, Inc., Copyright Litig.*, 2005 WL 6569723, at *5 n.1. (N.D. Cal. Apr. 12, 2005), *rev'd on other grounds,* 479 F.3d 1078, 1090 (9th Cir. 2007). Importantly, "[w]here there are several possible interpretations of a document based upon the surrounding circumstances, the party asserting the privilege must produce evidence sufficient to satisfy a court that legal, not business, advice is being sought." *Urban Box Office Network, Inc. v. Interfase Managers, L.P.*, 2006 WL 1004472, at *6 (S.D.N.Y. Apr. 18, 2006).

Privilege does not attach to communications merely because an attorney was involved—that attorney must be acting in counsel's professional capacity as a lawyer for the corporation and providing legal advice for the privilege to apply. *See Chevron*, 1996 WL 264769, at *4 (noting a company must "make a clear showing that in-house counsel's advice was given in a professional legal capacity"); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 630 (D. Nev. 2013) ("the court agrees that merely copying or 'cc-ing' legal counsel, in and of itself, is not enough to trigger the attorney-client privilege"); *Clavo v. Zarrabian*, 2003 WL 24272641, at *2 (C.D. Cal. Sep. 24, 2003) ("The mere transmittal of documents to a lawyer is insufficient to bring documents under the umbrella of the attorney-client privilege.").

Defendants have redacted or withheld numerous documents that were apparently created primarily for business purposes and not to communicate or seek confidential legal advice. For instance, PRIV-06 (Ex. 20) is a document titled ███ ████████████████████ which plainly is a ████████ document not created for the primarily purpose of seeking legal advice. Yet, Defendants redacted a snippet of the document and claimed that the redacted portion is "legal advice regarding cookies" from in-house counsel Jurgen Van Staden:



*See* Ex. 3, also reproduced at Ex. 9. There is no indication from the face of the document that the redacted portion is legal advice. Even the comment in the document in the vicinity of the redaction makes clear that whatever was redacted was a ████████ ██████—i.e. a decision by ████████████████████ And even if the redacted portion is indeed a comment from Mr. Van Staden, it is clear that this document was created primarily for business purposes, and therefore, not protected by the attorney-client privilege. TikTok has failed to "make a clear showing that in-house counsel's advice was given in a professional legal capacity." *Chevron*, 1996 WL 264769, at *4.

TIKTOK-BG-000168981 (Chinese version attached as Exhibit 27; English translation as Exhibit 28) is another example of Defendants' improper redaction. The document, titled ███████████████████████████ is, on its face, a ██████ document created primary for a business, not legal, purpose. Yet Defendants redacted comments on page 44 of the document (or page 47 in the translated version of the document) made by ████████████████████, none of whom were identified as lawyers on Defendants' logs.

████████████████████████████████████████

Further, Defendants failed to log the document in their redaction logs altogether, leaving Plaintiffs' with no way to evaluate whether the redactions are indeed privileged.

Perhaps the two strongest pieces of evidence that Defendants have improperly withheld or redacted non-privileged documents come from (1) the same document of which Defendants have produced different versions with *different redactions* and (2) a clawback request that Defendants sought to make during a deposition.

1    *First*, after Plaintiffs challenged the propriety of Defendants' redactions in

2    February, they "reevaluated some of [their] privilege determinations" and re-

3    produced certain documents with no or fewer redactions. *See* Ex. 6 (D. Savage Mar.

4    14 Email). The redactions that Defendants originally made and then withdrew reveal

5    that Defendants' representations about their withheld documents are false. Compare,

6    for example, a document that Defendants originally produced with redactions, under

7    the guise of "legal advice regarding Events API," with an unredacted version of the

8    same:



**TIKTOK-BG-000009259 (with redaction) (Ex. 17)**

**TIKTOK-BG-000009259 (without redaction) (Ex. 18)**

Consider another example, which Defendants originally redacted as "legal advice

regarding cookies":



**TIKTOK-BG-000009045 (with redaction) (Ex. 14)**

**TIKTOK-BG-000009045 (without redaction) (Ex. 15)**

There was nothing privileged about the portions of these documents that Defendants originally redacted. Further, these are documents on the core issue of this case: how Defendants use cookies to collect data from unwitting non-TikTok users, how long Defendants can store such data, and the consent required by law to use such cookies. That Defendants are attempting to shield bad relevant facts from disclosure is severely prejudicial to Plaintiffs.

*Second*, yet another example of Defendants' improper privilege assertion is the privilege dispute that came up during Becca Wong's deposition, when Defendants attempted to claw back portions of a document—namely, a Q&A to aid TikTok employees in answering questions about the Pixel from advertisers. TikTok sought to claw this document back because it contained two comment exchanges between in-house counsel Mr. Van Staden and non-lawyer Ms. Wong:

1
2
3
4
5
6



7    **TIKTOK-BG-000002638, Comment C44**

8
9
10
11
12
13
14

15    **TIKTOK-BG-000002638, Comment C65**

16    Ex. 10 (clawback letter); Ex. 11 (slipsheet of TIKTOK-BG-000002638).[3]

17    The comments are plainly not privileged.

18
19
20

21    These are technical communications not involving any legal advice

22    and are not privileged. *See e.g.*, *Genentech, Inc. v. Trustees of Univ. Pennsylvania*,

23    2011 WL 5079531, at *2 (N.D. Cal. Oct. 24, 2011) (communications from in-house

24

25

_____

26    [3] Defendants produced this document as an Excel spreadsheet that cannot readily be
saved in a PDF format that also preserves the comment exchanges at issue. Plaintiffs
27    are happy to submit the spreadsheet to the Court by email or another mechanism at
the Court's preference and convenience.
28

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL RE PRIVILEGE ISSUES

counsel regarding intellectual property were not privileged because their purpose was to "secure information for the purpose of presenting a business case to the Board of Directors"); *Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc.*, 63 F. Supp. 3d 558, 569 (E.D.N.C. 2014) (privilege claim invalid where document does not "suggest that legal advice is being sought, as opposed to providing the document for other corporate or intellectual property management purposes"); *In re Human Tissue Prod. Liab. Litig.*, 2009 WL 1097671, at *4 (D.N.J. Apr. 23, 2009) (communications regarding "business and strategic advice" are not privileged); *In re Viaxx Prod. Liab. Litig.*, 501 F. Supp. 2d 789, 797 (E.D. La. 2007) ("[M]odern corporate counsel have become involved in all facets of the enterprises for which they work. As a consequence, in-house legal counsel participates in and renders decisions about business, technical, scientific, public relations, and advertising issues, as well as purely legal issues."). Not only is Defendants' attempt to claw back this document improper, but the fact that Defendants apparently believe this document to be privileged provides further evidence of their false assertions of privilege more generally.

### 5.  Defendants' Clawback Attempt Is Improper.

For the reasons articulated above, *see supra* Section IV.A.4.b, Defendants' attempt to claw back the spreadsheet is improper. The Court should reject the attempt and declare that the document is not privileged.

### B.  DEFENDANTS' ARGUMENT

Defendants produced on October 10 a privilege covering all documents reviewed and withheld for privilege since the last logs were served in August.  Defendants expect to provide a redaction log covering the same population imminently.  The logs were (or will be) provided as soon as Defendants finished reviewing the associated documents for privilege.[4]  As such, Defendants did not

---

[4] Plaintiffs quote ***their own*** previous filing as a factual source for their inaccurate

"fail[] to produce logs corresponding to documents withheld for the majority . . . of their production" (Br. at 15), and there can be no waiver. *Calendar Research LLC*, 2019 WL 1581406, at*4. Indeed, Plaintiffs do not even discuss the standard for waiver in the Ninth Circuit, and the (mostly out-of-circuit) authority they do cite is hardly compelling. No case Plaintiffs reference finds waiver with respect to documents included on a privilege log in the ordinary course, and in fact, some counsel the opposite result. S*ee Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1147-49 (9th Cir. 2005) (finding of waiver not clearly erroneous where log filed five months late; the same documents were previously produced in a prior lawsuit, undermining any claim of burden; and "even the untimely assertion . . . was insufficient"); *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 653 (D.N.M. 2007) (no waiver even where proponent "might have done a better job supporting their assertion of privilege . . . in their privilege logs" and, despite serving "multiple privilege logs" that were "inadequat[e]," the logs were "produced in good faith"); *Fidelity Nat'l Title Ins. Co. v. Captiva Lake Invs., LLC*, 2012 WL 3562207, at *3 (E.D. Mo. Aug. 17, 2012) (proponent excluded entire category of in-house lawyer's "major claims reports" from privilege log until after his deposition, offering "no explanation" for the omission); *Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 455 (E.D. Tex. 2003) (applying standard disapproved of by Ninth Circuit in *Burlington* and documents were "not listed" in the original privilege log at all); *cf. Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643, 649 (D. Nev. 2010) (only concluding waiver appropriate where party had never produced a log "[s]even months after the close of discovery"). Nor does any of Plaintiffs' authority

---

recitation of the parties' discussions regarding document production and discovery. Br. at 1, 15 (citing Dkt. 134). Assertions presented as objective facts which in actuality come from Plaintiffs' one-sided retelling in another filing should be disregarded as unsupported.

find waiver because privilege or redaction logs were served "the week before the close of fact discovery." Br. at 16.

Plaintiffs take issue with privilege logs being updated "only in response to a motion to compel" (Br. at 15), but that is not what happened. The instant logs were served in the ordinary course, as Defendants told Plaintiffs they would be on September 30. Ex. 34, Hurley Decl. ¶ 4.

Plaintiffs note that the October logs were served after certain depositions of fact witnesses and/or 30(b)(6) corporate witnesses. Br. at 15-16. That too, standing alone, is not a basis for waiver. Plaintiffs' arguments regarding the timing of Defendants' production, an effort to revive issues the Court considered in denying their motion to extend the Case Management Order, are a red herring. The population relevant to this motion is ***privileged*** documents, which comprises thousands of log entries, not the millions of pages Plaintiffs invoke. To the extent Plaintiffs have any questions with respect to the discrete set of privileged documents appearing on the October logs for witnesses who were previously deposed (and they should not), Defendants will of course consider them in good faith.

## 2. Defendants Have Not Waived Privilege with Respect to "Unlogged" Redacted Documents

Defendants' forthcoming redaction log will include entries for all redacted documents Plaintiffs identified as purportedly "unlogged." As explained above, these entries correspond to (1) documents which were inadvertently omitted due to vendor or technical error, and (2) redacted Lark chats which were previously redacted and logged as individual messages, but which Defendants re-produced as consolidated chat threads at Plaintiffs' insistence, requiring re-redaction.[5] The supplementation

---

[5] Plaintiffs' arguments with respect to the technical documents are misleading. As Defendants explained at the September 30 meet and confer, these documents lacked metadata as to the date of creation. Ex. 34, Hurley Decl. ¶ 3. This error has been remedied.

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL RE PRIVILEGE ISSUES

addresses Plaintiffs' complaint that they cannot "correlate the purported redaction log entries for . . . individual chat message[s] with the threaded chat documents" Defendants re-produced. Br. at 17. Defendants worked in good faith with their vendor to identify and log all redactions during the course of reviewing documents for privilege and applying redactions. Plaintiffs do not cite any authority supporting that waiver arises from inadvertence, or where the documents were logged in another format.

The two cases Plaintiffs do cite are inapposite or support Defendants' position. Plaintiffs rely heavily on *Robinson* for the proposition that privilege waiver is required for documents not included on an initial log (or included in supplemental entries following a motion to compel). Br. at 15. *Robinson*, however, turns on an application of Fed. R. Civ. P. 26(b)(5) that the Ninth Circuit rejected in *Burlington* (which Plaintiffs themselves cite elsewhere in their brief). *Compare Robinson*, 214 F.R.D. at 456 (finding Fed. R. Civ. P. 26(b)(5) calls for waiver "when the party fails to give notice in its privilege log that a document is being withheld"), *with Burlington*, 408 F.3d at 1147-48 (finding Fed. R. Civ. P. 26(b)(5) does not "explicitly articulate a waiver rule" and rejecting a "*per se* waiver rule" for privilege logs served after applicable time limit). *Fidelity*, Plaintiffs' other case, involved an entire category of documents omitted from a privilege log without explanation; the Court did not discuss inadvertence, nor were the documents previously logged elsewhere. 2012 WL 3562207, at *3-4.

### 3. Defendants Have Not Waived Privilege Through "Insufficient" Log Descriptions

Plaintiffs complain that Defendants' privilege descriptions are so inadequate as to require a finding of waiver, pointing in particular to Defendants' supposed failure to include a "Recipient" column in their privilege logs. Br. at 3, 19. Plaintiffs acknowledge that Defendants "indicated that they would supplement their logs to

provide such information," an offer Plaintiffs failed to respond to for weeks, and Defendants did so shortly after the parties' September 30 meet and confer on in the log served on October 10. To the extent attorney information has not been added through the "Recipient" column, Defendants agree to further supplement those entries as soon as practicable. Plaintiffs also ignore that the "Authors" and "Contributors" field on prior logs was populated by the other participants in a Lark chat thread or email chain, *i.e.*, "recipient" information by another name. *See*, *e.g.*, Ex. 2 at 2-3. There is no waiver under such circumstances; Plaintiffs' sole case says nothing of the sort. *See S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 162-68 (S.D.N.Y. 2014) (logs purported to describe ninety-eight privileged documents in four log entries and supplemental information produced months after specific objections).

Plaintiffs take issue with references to "Legal," *i.e.*, in-house counsel from the legal department, in log entries, but pursuant to the authority Defendants supplied months ago, that is not improper. *See* Ex. 8 (citing *In re Abilify*, 2017 WL 6757558, at \*6; *Ball v. USAA Life Ins. Co.*, 2016 WL 11513321, at \*4 (D.S.C. May 16, 2016) (same); *Tulip Computers Intern. B.V. v. Dell Computer Corp.*, 2002 WL 31556498, at \*1 (D. Del. 2002) (same)). Plaintiffs further contest that privilege descriptions stating a document "reflects legal advice about the 'Pixel'" are inadequate because the "Pixel," "data storage," and "cookies" are what the "case is about." Br. at 19. Unsurprisingly, Plaintiffs supply no authority for the notion that a log description is deficient merely because it concerns the subject of the litigation.

### 4.     *In Camera* Review is Not Justified.

Plaintiffs' request for *in camera* review of the 16 documents identified is unwarranted. To start, in the same spirit of good faith cooperation discussed *infra* at , Defendants are willing to produce versions of TIKTOK-BG-000009921 and TIKTOK-BG-000214719 with fewer redactions and TIKTOK-BG-000215077 without redactions. See Ex. 9 PRIV-5, PRIV-13 and PRIV-14. For the same reasons including the limited nature, substance, and context of the comments, Defendants no

longer seek to claw back the document introduced at the deposition of Becca Wong. For the avoidance of doubt, however, Defendants do not concede that Mr. Van Staden or members of his legal team act in a business capacity, or that documents of this type are "technical" to the extent that term could be understood to preclude the possibility of drafts of technical material being shaped by legal advice.

Plaintiffs' arguments do not warrant *in camera* review of the remaining thirteen documents. Plaintiffs claim *in camera* review is required wherever a specific attorney is not identified by name, but their cases do not say that. *See In re Telescopes Antitrust Litig.*, 2022 WL 17331257, at *4 (N.D. Cal. Nov. 29, 2022) (rejecting *in camera* review and noting that "indication of the attorney-client relationship need not be set out in each privilege log entry"); *In re Google RTB Consumer Priv. Litig.*, 2022 WL 17072016, at *5 (N.D. Cal. Nov. 17, 2022) ("The disclosures should identify an individual or individuals, not 'Google,'" but only "***if known***.") (emphasis added). Given the nature of large companies like TikTok and the natural way non-lawyers speak, employees frequently refer to in-house counsel not by name but by calling them "Legal," *e.g.*, "Legal has instructed us to do X, Y, and Z" or "Legal has asked for X information before providing a response on Y." Courts permit parties to identify attorneys on privilege logs as "Legal" or the "Legal Department" accordingly. *In re Abilify*, 2017 WL 6757558, at *6 (cited by Plaintiffs, Br. at 20 n.2).

*In re Abilify*, on which Plaintiffs rely, supports Defendants. As there, the log entries for many of the documents identified by Plaintiffs for *in camera* review make it "evident that the information being compiled or discussed by corporate employees was information requested by or generated by an attorney." 2017 WL 6757558, at *6. Defendants' logs reflect, for example, that the communications were made "in furtherance of" seeking or providing legal advice, such as gathering or compiling information as part of a request for legal advice or at the request of an attorney. *See* Ex. 9 at PRIV-08 (TIKTOK-BG-000158578); PRIV-09 (TIKTOK-BG-000163966); PRIV-10        (TIKTOK-BG-000164369);        PRIV-13        (TIKTOK-BG-

000214719).  Plaintiffs also ignore that privilege is not waived (and *in camera* review unnecessary) if legal advice is subsequently reflected in communications between other employees—even if the specific attorney is not directly identified or involved.  *See In re Abilify,* 2017 WL 6757558, at *6; Ex. 9 at PRIV-08 (TIKTOK-BG-000158578); PRIV-09 (TIKTOK-BG-000163966); PRIV-10 (TIKTOK-BG-000164369); PRIV-11 (TIKTOK-BG-000164669); PRIV-12 (TIKTOK-BG-000165152); PRIV-15 (TIKTOK-BG-000215413); PRIV-16 (TIKTOK-BG-000215543).  Log entries stating that a communication "reflects" advice of counsel from Legal are thus proper too.

None of Plaintiffs' other complaints justify *in camera* review.  Plaintiffs argue that Defendants fail to justify the assertion of work-product protection for certain documents, but they do not seek *in camera* review for any of the documents they identify.  Br. at 21.  In any event, Plaintiffs offer no support for their position that a log must list litigation by name.  *Id*.; *see Centerline Hous. P'ship I, L.P.-Series 2 v. Palm Communities*, 2021 WL 4895746, at *9 (C.D. Cal. Sept. 2, 2021) (cited by Plaintiffs but concerning documents withheld "solely on the basis of the work product doctrine" and suggesting information as to timing, such as the date of the document, may be sufficient).  Plaintiffs also point to two documents they contend reflect automated "bot" messages but fail to acknowledge that such an automated message could originate from the legal department or reflect legal advice, as was the case here.  Br. at 21 (citing Exs. 31 (PRIV-15) ("Reflecting legal advice from **Legal** regarding data access"), 33).

Finally, Plaintiffs seek in camera review of "technical" documents, assuming without basis that such documents by definition must not contain legal advice or that any attorneys commenting on them must be acting in a business capacity.  *See* Br. at 23; Ex. 9 at PRIV-01 (TIKTOK-BG-000003068), PRIV-02 (TIKTOK-BG-000008030), PRIV-03 (TIKTOK-BG-000009045); PRIV-4 (TIKTOK-BG-000009146); PRIV-6 (TIKTOK-BG-000010053); PRIV-7 (TIKTOK-BG-

1    000010067).  The log entries for these documents, however, identify the attorneys in
2    question and/or indicate that the redacted text reflects legal advice (which Plaintiffs
3    do not dispute).  *See* Ex. 9.  None of the cases cited by Plaintiffs suggest that properly
4    logged, privileged communications lose protection because they take place in
5    documents that are not traditionally "legal," or that the nature of the document alone
6    calls into question the validity of a privilege assertion.  They rather involve
7    communications that were not privileged to begin with.  *See Genentech, Inc. v.*
8    *Trustees of Univ. Pennsylvania,* 2011 WL 5079531, at *2 (N.D. Cal. Oct. 24, 2011)
9    (communications at issue did not reflect legal advice or questions from an attorney to
10   provide legal advice); *Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc.*,
11   63 F. Supp. 3d 558, 569 (E.D.N.C. 2014) (same); *In re Human Tissue Prod. Liab.*
12   *Litig.*, 2009 WL 1097671, at *4 (D.N.J. Apr. 23, 2009) (same); *In re Viaxx Prod. Liab.*
13   *Litig.*, 501 F. Supp. 2d 789, 797 (E.D. La. 2007) (same).

14        Instead of addressing the merits of Defendants' privilege assertions for these
15   documents, Plaintiffs point to Defendants' prior agreement to produce certain ***other***
16   technical documents with fewer redactions after further assessment and review of
17   privilege.  *See* Ex. 6.  For Plaintiffs to leverage Defendants' efforts to resolve
18   discovery disputes as evidence of wrongdoing is both disappointing and
19   unpersuasive.  The original redactions reflect Defendants' principled and diligent
20   approach to preserve assertions of attorney-client privilege in the early stages of the
21   custodial review; it is hardly uncommon to refine or revisit privilege calls as the case
22   progresses or issues arise.  Defendants' subsequent agreement to adjust those
23   determinations in response to Plaintiffs' concerns demonstrates good faith, not
24   bad.  *See* Ex. 6.  Indeed, despite Plaintiffs' claims of over-designation, Defendants
25   assert privilege over a small fraction of the hundreds of thousands of documents they
26   produced, and despite this sizable volume, Plaintiffs identified only sixteen for *in*
27   *camera* review.  Nothing in the examples Plaintiffs identified calls into question the
28   specified privilege assertions or suggests bad faith.  *See* Br. at 25-27 (citing TIKTOK-

BG-000009259, TIKTOK-BG-000009045, TIKTOK-BG-000002638).

## V.    CONCLUSION

### A.    PLAINTIFFS' CONCLUSION

In light of the above defects, Plaintiffs respectfully request that the Court order as follows:

1.    As to documents that were withheld or redacted but not logged by October 3, 2024 (the date Plaintiffs provided their portion of this Joint Stipulation to Defendants), Plaintiffs request an order that Defendants have waived any protections for such documents and must produce them without redactions.

2.    As to documents that were logged but (1) with no lawyer identified anywhere in the entry and (2) with inadequate descriptions that leave Plaintiffs unable to assess the claim of privilege, Plaintiffs request an order that Defendants have waived any protections for such documents and must produce them without redactions.

3.    As to documents with redactions but with insufficient justification or that bear no facial indicia of privilege, Plaintiffs request that the Court conduct an *in camera* review of 16 such documents to evaluate the claim of privilege. To the extent that the Court deems that any of the documents reviewed have been improperly withheld, Plaintiffs request that the Court order Defendants to produce not just those documents but all substantially similar documents with improper redactions.

4.    As to the document that Defendants have sought to claw back, Plaintiffs request an order that the clawback attempt is improper and a declaration that the document is not privileged.

### B.    DEFENDANTS' CONCLUSION

For the foregoing reasons, Plaintiffs are not entitled to the relief sought.  Their motion should be denied in its entirety.

DATED:  October 3, 2024            By: _/s/ Jonathan M. Rotter_

Ekwan E. Rhow (CA SBN 174604)
Marc E. Masters (CA SBN 208375)
Christopher J. Lee (CA SBN 322140)
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS & NESSIM,
LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
erhow@birdmarella.com
mmasters@birdmarella.com
clee@birdmarella.com

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (pro hac vice)
GLANCY PRONGAY & MURRAY, LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

37

Y. Gloria Park (pro hac vice)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (310) 336-8340
gpark@susmangodfrey.com

John W. McCauley (pro hac vice)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jmccauley@susmangodfrey.com

Attorneys for Plaintiffs

1    DATED: October 11, 2024          By:  */s/ Dylan G. Savage*

2                                            Dylan G. Savage

3                                            Victor Jih, SBN 186515
4                                            Kelly H. Yin, SBN 3283
                                             WILSON SONSINI GOODRICH &
5                                            ROSATI, P.C.
                                             1900 Avenue of the Stars, 28th Floor
6                                            Century City, CA 90067
7                                            Telephone: (424) 446-6900
                                             Facsimile: (866) 974-7329
8                                            vjih@wsgr.com;
9                                            kyin@wsgr.com

10                                           Luis Li, SBN 156081
11                                           WILSON SONSINI GOODRICH &
                                             ROSATI, P.C.
12                                           633 West Fifth Street, Suite 1550
13                                           Los Angeles, CA 90071
                                             Telephone: (323) 210-2900
14                                           luis.li@wsgr.com
15
16                                           Dylan Grace Savage, SBN 310452
                                             Thomas Wakefield, SBN 330121
17                                           WILSON SONSINI GOODRICH &
                                             ROSATI, P.C.
18                                           One Market Plaza, Spear Tower, Suite 3300
19                                           San Francisco, CA 94105
                                             Telephone: (424) 446-6900
20                                           dsavage@wsgr.com;
21                                           twakefield@wsgr.com

22                                           Attorneys for Defendants
23                                           TikTok Inc. and ByteDance Inc.

24

25

26

27

28

JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL RE PRIVILEGE ISSUES