| | |
|---|---|
| Ekwan E. Rhow (CA SBN 174604)<br>erhow@birdmarella.com<br>Marc E. Masters (CA SBN 208375)<br>mmasters@birdmarella.com<br>Christopher J. Lee (CA SBN 322140)<br>clee@birdmarella.com<br>BIRD, MARELLA, RHOW,<br>LINCENBERG, DROOKS &<br>NESSIM, LLP<br>1875 Century Park East, 23rd Floor<br>Los Angeles, California 90067-2561<br>Telephone: (310) 201-2100<br>Facsimile: (310) 201-2110 | Kalpana Srinivasan (CA SBN 237460)<br>Steven Sklaver (CA SBN 237612)<br>Michael Gervais (CA SBN 330731)<br>SUSMAN GODFREY L.L.P.<br>1900 Avenue of the Stars<br>14th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 789-3100<br>ksrinivasan@susmangodfrey.com<br>ssklaver@susmangodfrey.com<br>mgervais@susmangodfrey.com |
| Jonathan M. Rotter (CA SBN 234137)<br>Kara M. Wolke (CA SBN 241521)<br>Gregory B. Linkh (*pro hac vice*)<br>GLANCY PRONGAY & MURRAY, LLP<br>1925 Century Park East, Suite 2100<br>Los Angeles, California 90067-2561<br>Telephone: (310) 201-9150<br>jrotter@glancylaw.com<br>kwolke@glancylaw.com<br>glinkh@glancylaw.com | Y. Gloria Park (*pro hac vice*)<br>SUSMAN GODFREY L.L.P.<br>One Manhattan West, 50th Floor<br>New York, NY 10001<br>Telephone: (212) 336-8330<br>gpark@susmangodfrey.com<br><br>John W. McCauley (*pro hac vice*)<br>SUSMAN GODFREY L.L.P.<br>1000 Louisiana Street, Suite 5100<br>Houston, TX 77002<br>Telephone: (713) 651-9366<br>jmccauley@susmangodfrey.com |

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNADINE GRIFFITH, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TIKTOK, INC, a corporation; BYTEDANCE, INC., a corporation,<br><br>Defendants. | CASE NO. 5:23-cv-00964-SB-E<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION ON PLAINTIFFS' RULE 37(b) MOTION TO ENFORCE COURT ORDER COMPELLING PRODUCTION OF SOURCE CODE**<br><br>Magistrate Judge: Hon. Charles Eick<br>Date:   November 1, 2024<br>Time:  9:30 a.m.<br><br>Action filed:    May 26, 2023<br>Trial Date:      Jan. 21, 2025 |

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................... 1
    A    PLAINTIFFS' STATEMENT ................................................... 1
    B.    DEFENDANTS' STATEMENT .............................................. 2
II.  DISCOVERY REQUESTS AND COURT ORDER AT ISSUE ................... 3
III.  RELEVANT BACKGROUND .................................................................. 5
    A.    PLAINTIFFS' BACKGROUND ............................................ 5
        1.    The Court Ordered Defendants to Produce Source Code regarding their Processing, Storage, and Use of Non-TikTok Users' Data ............ 5
        2.    Defendants' Dilatory Response to the Court's Order ....................... 5
        3.    Defendants' Failure to Produce Responsive Source Code ............... 7
        4.    The Parties' Meet-and-Confer ............................................................. 8
    B.    DEFENDANTS' BACKGROUND ......................................... 9
IV.  LEGAL STANDARD ............................................................................... 10
    A.    PLAINTIFFS' STANDARD ................................................. 10
    B.    DEFENDANTS' STANDARD .............................................. 10
V.  ARGUMENT ............................................................................................ 10
    A.    PLAINTIFFS' ARGUMENT ................................................ 10
    B.    DEFENDANTS' ARGUMENT ............................................. 12
VI.  CONCLUSION ......................................................................................... 14
    A.    PLAINTIFFS' CONCLUSION ............................................. 14
    B.    DEFENDANTS' CONCLUSION .......................................... 14

# TABLE OF AUTHORITIES

Page(s)
**Cases**

*Ayala v. U.S. Xpress Enters.*,
   2019 U.S. Dist. LEXIS 204421 (C.D. Cal. Oct. 15, 2019) ............................... 10

*Hoffman v. Jones*,
   2018 WL 2088068 (E.D. Cal. May 4, 2018) ...................................................... 13

*Lakes v. Bath & Body Works, LLC*,
   2019 U.S. Dist. LEXIS 82353 (E.D. Cal. May 14, 2019) ................................. 10

*McBride v. Moore*,
   2024 U.S. Dist. LEXIS 48751 (C.D. Cal. Feb. 23, 2024) ............................ 10, 12

*Moore v. Napolitano*,
   723 F.Supp.2d 167 (D.D.C. 2010) ..................................................................... 10

*Sanchez v. Rodriguez*,
   298 F.R.D. 460 (C.D. Cal. 2014) ....................................................................... 10

*Smith v. Rodriguez*,
   2015 WL 5813641 (E.D. Cal. Sept. 30, 2015) ................................................... 13

*U.S. v. Sumitomo Marine & Fire Ins. Co.*,
   617 F.2d 1365 (9th Cir. 1980) ..................................................................... 10, 12

**Rules**

Fed. R. Civ. P. 26(b)(1) .............................................................................................. 4

Fed. R. Civ. P. 34 ............................................................................................. *passim*

Fed. R. Civ. P. 37 ............................................................................................. *passim*

**Other Authorities**

https://www.cand.uscourts.gov/forms/model-protective-orders/ ............................. 2

## I. PRELIMINARY STATEMENT

### A. PLAINTIFFS' STATEMENT

Defendants collect vast amounts of data, including identifying and personal information, from unsuspecting visitors to non-TikTok websites. They harvest this data covertly and indiscriminately, regardless of whether the website visitor is a TikTok user or, like Plaintiffs, has no account with TikTok ("non-TikTok users"). In this lawsuit, Plaintiffs claim that Defendants' practices infringe on non-users' privacy and violate their legal rights.

Nearly a year ago, Plaintiffs served document requests for the source code that would show exactly what Defendants do with the non-TikTok users' data, including where they keep it, how long they retain it, in what form, and how they analyze and use the data. When Defendants refused to provide this information, Plaintiffs moved to compel, and this Court granted the motion. It required Defendants to produce *"all current and historical source code"* responsive to Plaintiffs' requests. *See* April 8, 2024 Order, ECF No. 130 (emphasis added).

Yet, in the almost six months since the Court entered its order, Defendants have engaged in dilatory tactics. They refused to *produce* the source code, as the Court had ordered, and insisted instead on making it available for *inspection* on-site in Los Angeles. Defendants refused to tell Plaintiffs exactly what source code they were making available. Defendants then imposed multiple restrictions and delays on the inspections. When Plaintiffs' source-code experts were finally able to inspect the code made available, they discovered that much of the relevant source code was missing.

Despite meet-and-confers with Defendants about this missing source code, they still have not produced it, in violation of the Court's prior Order. The Court should put a stop to Defendants' delays and misconduct by ordering them, under Rule 37, to produce the missing source-code materials immediately. Specifically, the Court should require Defendants to promptly produce ████████████████████
████████████████████

1

JOINT STIPULATION RE: PLAINTIFFS' RULE 37(b) MOTION

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and (3) any other source code responsive to Plaintiffs' requests for production 75 and 83.

### B. DEFENDANTS' STATEMENT

There is no reason for Plaintiffs to file this motion. Defendants have complied with this Court's April 8, 2024 source code order. Plaintiffs make three complaints, but they fail to show how any of them violate the order.

First, they resurrect their production-versus-inspection argument that this Court has already addressed. The law is clear that a party can satisfy its obligation to produce discovery by either making it available for inspection or delivering physical copies to the requesting party. *See* Fed. R. Civ. P. 34(a)(1)(A) (production includes allowing a party to "inspect [or] copy … any designated documents or electronically stored information."). This is exactly what this Court held in its May 6, 2024 order, when it authorized Defendants' production of the sample of data by making it available to Plaintiffs for inspection. *See* Dkt. No. 161. Lest there be any doubt, the model protective order for the United States District Court for the Northern District of California states that "[a]ny source code produced in discovery shall be made available for inspection … at an office of the Producing Party's counsel."[1] Plaintiffs' reargument of this issue is not only meritless, but completely pointless. They do not seek any actual relief, since they have already inspected the code. They do not even include this issue in the legal argument section of this joint stipulation. In other words, this simply wastes the Court's and Defendants' time.

Plaintiffs' second concern applies to two code repositories that were not required to be produced, but that Defendants have already agreed to produce via inspection. The Court ordered Defendants to produce source code in response to

---

[1] https://www.cand.uscourts.gov/forms/model-protective-orders/ (Model Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets)

Plaintiffs' Request Nos. 75 (code that "processes," "stores" or "uses" non-TikTok user data) and 83 (code that performs six enumerated functions). The two repositories that Plaintiffs claim are missing do not contain code that processes, stores, or uses non-TikTok user data nor do they concern the six enumerated functions. There was no willful violation of the Court's order, and Plaintiffs make no showing there was despite seeking sanctions. Even though Plaintiffs waited five months to raise this issue of missing repositories, Defendants have nonetheless agreed to produce them to avoid unnecessary disputes, which makes it all the more unfathomable why this motion was filed.

Plaintiffs' third and final ask is for design documents and wikis. On its face, it is clear these documents are not source code and thus not compelled by the Court's April 8, 2024 Order. Plaintiffs cannot stretch an order about source code to items they want but never requested. They certainly have no basis for sanctions.

This motion lacks any merit. It should be denied in its entirety.

## II. DISCOVERY REQUESTS AND COURT ORDER AT ISSUE

**Plaintiffs' Request for Production No. 75:** Your source code, including all changes and/or variations to such source code from January 1, 2020, for any software used to process, store, and/or use Data on Your SDK Servers and Your SDK Databases, including but not limited to Your Identity Graph(s) and SDK Data Connector(s). *See* McCauley Decl., Ex. 1.

**Defendants' Response:** TikTok objects to the Request to the extent the documents sought contain Confidential Information or Privileged Information. TikTok objects to the Request because the phrase "changes and/or variations" is vague. TikTok objects to the Request as overly broad and unduly burdensome because it seeks "all changes and/or variations . . ." and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case. TikTok will not produce documents in response to this Request. *See* McCauley Decl., Ex. 2.

**Plaintiffs' Request for Production No. 83:** All computer code used by or with

the TikTok SDK (1) to receive or interact with first- or third-party cookies or with Data stored on a user's or non-user's computer, (2) to copy any information from third-party cookies to first-party cookies or vice versa, (3) to bypass restrictions caused by disabling third-party cookies, (4) to anonymize personally identifying information, (5) to cause session ID and cookies to work together, and (6) to determine whether events are attributable to a user or nonuser located within the United States or in a particular place or region in the United States. This request includes computer code that runs in a web browser, on a Website's or client's server, or on Defendants' server. *See* McCauley Decl., Ex. 4.

**Defendants' Response:** TikTok objects to the Request to the extent the documents sought contain Confidential Information. TikTok objects to the Request to the extent it seeks information not in TikTok's possession, custody, or control. TikTok objects to the Request as vague and ambiguous, including in its references to "receive," "interact," "copy," "bypass restrictions," and "cause . . . to work together." TikTok objects to the Request as overly broad and unduly burdensome because it seeks "All computer code. . ." and thus seeks discovery that is not relevant to any claims or defenses in the case or proportional to the needs of the case. TikTok objects to the Request to the extent it is duplicative of other Requests. TikTok objects to the Request to the extent it seeks "computer code" beyond what Defendants have already produced and/or agreed to produce. *See* McCauley Decl., Ex. 5.

**The Court's April 8 Order:** On April 8, 2024, the Court ordered in relevant part (at ECF No. 130): "Unless the parties otherwise agree, on or before April 29, 2024, Defendants shall produce to Plaintiffs all current and historical source code within Defendants' possession, custody or control responsive to Requests for Production Nos. 75 and 83, and shall supplement all productions of source code to date with historical source code within Defendants' possession, custody or control from January 1, 2020, to the present. *See* Fed. R. Civ. P. 26(b)(1)."

## III. RELEVANT BACKGROUND

### A. PLAINTIFFS' BACKGROUND

#### 1. The Court Ordered Defendants to Produce Source Code regarding their Processing, Storage, and Use of Non-TikTok Users' Data

This case is about Defendants' covert interception and harvesting of private data from non-TikTok users like Plaintiffs when they visit non-TikTok websites.[2] Defendants collect this data using at least two software tools—the TikTok Pixel and the TikTok Events API. Nearly a year ago, Plaintiffs asked Defendants to produce their current and historical source code for this software showing how Defendants ***store, process, and use*** non-TikTok users' data. *See* McCauley Decl., Ex. 2 (RFP 75). Two months later, Plaintiffs served a follow-up demand for the computer code used by Defendants to perform six specific data-collection, processing, and use functions. *See* McCauley Decl., Ex. 4 (RFP 83).

Defendants initially refused to produce the requested source code. *See* McCauley Decl., Ex. 3 (Resp. to RFP 75), Ex. 5 (Resp. to RFP 83). This forced Plaintiffs to file a motion to compel production on March 29, 2024. *See* Jt. Stip., ECF No. 120. In response to the motion, Defendants relented and "agreed to provide Plaintiffs' expert with direct access to the relevant source code." *Id.* at 18. They claimed the "sole remaining matter to resolve is timing." *Id.* at 20.

The Court resolved that issue in its Order of April 8, 2024. *See* ECF No. 130. It directed Defendants to produce "all current and historical source code" responsive to Plaintiffs' requests by the end of April. *Id.*

#### 2. Defendants' Dilatory Response to the Court's Order

Defendants emailed Plaintiffs on April 17 to say that, rather than producing the source code to Plaintiffs, Defendants planned to "comply with the Court's April 8th

---

[2] Plaintiffs incorporate the background discussion in their original motion to compel the production of source code (ECF No. 122).

5

Order" by "making arrangements for Plaintiffs' expert to inspect the relevant source code at a secure location in Los Angeles, CA." McCauley Decl., Ex. 6 at 20. Defendants also sought to negotiate the terms of the inspection, including the provision of a single source code computer and limitations on Plaintiffs' ability to copy or print the source code. *Id.* at 20-21.

On May 14—two weeks after the Court-ordered deadline for producing the source code—Defendants wrote that "Plaintiffs' experts can review the current and historical source code identified starting next week." *Id.* at 12. Before commencing review, Plaintiffs sought clarification of the "current and historical source code that [Defendants]'identified' for review." *Id.* at 11. Plaintiffs wanted to ensure that all the relevant code was available. But Defendants refused to confirm, claiming they were "not required to index the source code that will be made available for inspection." *Id.* at 9. Although Plaintiffs continued objecting to "Defendants' refusal to identify or describe in any detail what code has been made available for inspection," Plaintiffs agreed to proceed anyway. *Id.* at 7. They notified Defendants that their experts would begin review on June 5. *Id.* Plaintiffs' source code reviewers made travel arrangements accordingly.

But the day before on-site review was to begin and hours before Plaintiffs' source code review experts were to board their flights to travel to Los Angeles for the inspection, Defendants unilaterally pushed it back another week. They informed Plaintiffs by email that "Defendants anticipate that the review can take place as early as June 12." *Id.* at 6. Plaintiffs again objected, and reminded Defendants that "these issues could have been avoided altogether if Defendants had produced the source code as the Court ordered instead of insisting on an on-site inspection." *Id.* at 4.

Plaintiffs' source code experts were finally able to begin their on-site inspection on June 12-14. *See* Declaration of David Martens ("Martens Decl.") ¶ 5. Afterward, Plaintiffs gave notice that their experts "plan[ned] on further reviewing code in the coming weeks." McCauley Decl., Ex. 7 at 5. Defendants initially questioned Plaintiffs'

"basis to inspect the code again," *id.* at 2, but later agreed to more inspections. Plaintiffs' experts traveled to Los Angeles for further on-site review on August 14, 16, and 19-21. Martens Decl. ¶ 5.

### 3.     Defendants' Failure to Produce Responsive Source Code

By inspecting the code that Defendants made available, Plaintiffs' experts attempted to understand how TikTok collects, processes, stores, analyzes, and uses data collected by the TikTok Pixel and Events API, including unmatched data. *Id.* ¶ 7. They did this by starting with the first in a series of data-processing pipeline stages, as revealed in the source code. *Id.* ¶ 8. Because of the conditions imposed by Defendants (including a single source code computer and restrictions on printing), the review was slow-going. The review team was able to trace the early stages of TikTok's data collection and data-processing pipeline. *Id.* ¶ 10. But then they reached a point in the pipeline where the available source code no longer described what Defendants were doing with the data, matched or unmatched. *Id.* The next steps in the data-processing pipeline were not revealed in the produced source code. Plaintiffs' reviewers could proceed no further. *Id.*

Plaintiffs' experts were able, however, to spot references in the available code to additional, relevant code that was not produced. *Id.* ¶ 11. Specifically, they identified at least three categories of missing source-code material:





1
2
3
4
5
6
7
8
9 This missing code is responsive to Plaintiffs'
10 document requests. Defendants should have produced it in compliance with the
11 Court's April 8 Order.

### 4. The Parties' Meet-and-Confer

Under Defendants' procedures, Plaintiffs' experts had to submit to Defendants specific requests to print portions of source code. Defendants would then review the print request and produce the documents with Bates numbers and confidentiality designations. Defendants produced the material designated by Plaintiffs' experts (the documents containing evidence of the missing source code) on September 5, 2024. *See* McCauley Decl. ¶ 11; Martens Decl. ¶¶ 11, 13. On September 16, Plaintiffs sent a demand to Defendants to produce the missing code, citing the recently produced documents. *See* McCauley Decl., Ex. 8. On September 20, counsel met and conferred by video. *See* McCauley Decl. ¶ 12. Plaintiffs emailed Defendants the next business day seeking their final position. *Id.*, Ex. 9 at 2. But instead of taking a position, Defendants merely promised to "further follow up with respect to the source code" by some unspecified date. *Id.* at 1.

Because the Court ordered Defendants to produce their responsive source code half a year ago, and with the discovery cutoff date approaching, Plaintiffs had no choice but to bring this motion seeking Court intervention on this issue once again.

### B. DEFENDANTS' BACKGROUND

Much of Plaintiffs' background section contains a misleading and one-sided account intended to smear Defendants. Because it has nothing to do with the specific issues before the Court, Defendants will not waste the Court's time with a detailed chronological account of the truth other than to say Defendants disagree. The salient facts, however, concerning Defendants' production of source code and compliance with the Court's April 8, 2024 Order are straightforward.

Defendants have worked diligently to make source code available to Plaintiffs. They first offered Plaintiffs the opportunity to inspect source code on April 3, 2024, five days <u>before</u> the Court issued its April 8, 2024 order. McCauley Decl., Ex. 6 at 23-24. At Plaintiffs' request, Defendants provided several software tools for the inspection, including Notepad++, Understand, PowerGrep5, LibreOffice, Acrobat reader, Cygwin, and Git Bash. *Id.*, Ex. 6 at 12. After a combined 120 hours of inspection by four different experts over five months, Plaintiffs identified to Defendants on September 16, 2024 only two repositories that they believed were missing. *Id.*, Ex. 8. Defendants agreed to investigate and have since agreed to make those repositories available too.

These two repositories were not originally produced because they were not encompassed by Plaintiffs' Requests for Production Nos. 75 and 83. They do not contain the code that "processes," "stores" or "uses" non-TikTok User Data. *See* McCauley Decl. Ex. 2 at 9 (Pltfs' RFP No. 75). Nor do they involve the 6 enumerated functions relating to cookies (3 of the 6), anonymizing, session ID, or attribution. *See* McCauley Decl. Ex. 4 at 10 (Pltfs' RFP No. 83). Even so, Defendants are in the process of making them available for inspection, which should be available for Plaintiffs before the noticed hearing date for this motion.

Defendants, however, do not agree to produce the design documents or wikis. They were raised for the first time on September 16, 2024. *Id.*, Ex. 8. They

were not called for in the Court's April 8, 2024 Order which concerned the production of source code nor in Plaintiffs' Requests for Production Nos. 75 and 83.

## IV. LEGAL STANDARD

### A. PLAINTIFFS' STANDARD

Rule 37(a)(3)(B)(iv) authorizes district courts to order a party to produce documents requested under Rule 34. If a party fails to obey such an order, Rule 37(b)(2)(A) authorizes the district court to "issue further just orders." *See Sanchez v. Rodriguez,* 298 F.R.D. 460, 463 (C.D. Cal. 2014) (recognizing court's authority under Rule 37(b)). The court has discretion to impose "a wide range of sanctions for a party's failure to comply with court discovery orders." *U.S. v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980). A sanction may be appropriate, for example, to prevent or cure prejudice to the opposing party. *See, e.g., Moore v. Napolitano,* 723 F.Supp.2d 167, 179 (D.D.C. 2010).

### B. DEFENDANTS' STANDARD

To obtain sanctions, a movant must prove a willful violation of a court order and misconduct that warrants punishment. *See Ayala v. U.S. Xpress Enters.*, 2019 U.S. Dist. LEXIS 204421, at *7-8 (C.D. Cal. Oct. 15, 2019); *Lakes v. Bath & Body Works, LLC*, 2019 U.S. Dist. LEXIS 82353, at *9 (E.D. Cal. May 14, 2019). And, the specific sanctions sought must be warranted in light of the "prejudice" to the moving party. *Ayala*, 2019 U.S. Dist. LEXIS 204421, at *10-11. The movant must prove, by a preponderance of the evidence, that sanctions are appropriate. *McBride v. Moore*, 2024 U.S. Dist. LEXIS 48751, at *4 (C.D. Cal. Feb. 23, 2024).

## V. ARGUMENT

### A. PLAINTIFFS' ARGUMENT

The Court ordered Defendants to produce "*all* current and historical source code … responsive to Requests for Production Nos. 75 and 83." ECF No. 130. Half a year later, they still have not done that.

It is indisputable that Defendants collect, process, store, and (in some way) use

1   the data they collect from non-TikTok users. In their interrogatory responses,



3   *See* McCauley Decl., Ex. 10 at 55 (Resp. to Interrog.
4   No. 6).

17        The Court has already ruled that Plaintiffs are entitled to the source code that
18   implements this entire data pipeline and analysis, and that shows precisely what
19   Defendants do with the data. *See* ECF No. 130. Plaintiffs' Request No. 75 sought
20   Defendants' source code for any software (including the TikTok Pixel and Events
21   API) "used to ***process, store, and/or use***" non-TikTok user's data. McCauley Decl.,
22   Ex. 2. And Request 83 sought code regarding six specific functions. *Id.*, Ex. 4. Yet,
23   the source code made available to date relates only to the early stages of Defendants'
24   collection and processing of event data. *See* Martens Decl. ¶ 10. And Defendants have
25   dragged their heels to run out the clock on the discovery period before producing the
26   full set of source code in compliance with this Court's order. Plaintiffs are entitled to
27   the ***full picture*** of how Defendants process, store, and use non-TikTok users' data
28   after they collect it.

Although Rule 37(b) authorizes sanctions against a party that violates a discovery order, *Sumitomo*, 617 F.2d at 1369, Plaintiffs are requesting only modest relief here: The Court should order Defendants to produce the missing source-code materials as a "further just order" under Rule 37(b)(2)(A), or alternatively as an order compelling production under Rule 37(a)(3)(B)(iv). Given the approaching close of discovery and trial date, Defendants should be required to **produce** the source code to Plaintiffs, rather than once again merely make it available for inspection, and they should do so within seven days of the Court's order.

### B. DEFENDANTS' ARGUMENT

Defendants have not violated the Court's April 8, 2024 Order.

<u>Two Code Repositories</u>. The Court Order carefully delineated the source code Defendants were required to produce. It based those limits on the wording of Plaintiffs' Request Nos. 75 and 83. The first request asked for source code "for any software used to process, store, and/or use" non-TikTok user data. Pltfs' RFP No. 75.[3] The second request sought the source code for six specific functions. Pltfs' RFP No. 83. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

As the moving party, Plaintiffs have the burden of proof to establish the requisite facts by a preponderance of the evidence. Plaintiffs fail to do so. They provide no evidence to establish a violation—*i.e.*, that these two repositories fall within the limits of Request Nos. 75 and 83. Nor do they make any showing of willfulness, misconduct, or prejudice. Without any evidence, Plaintiffs' request for sanctions is baseless. *See McBride*, 2024 U.S. Dist. LEXIS 48751, at *4.

The only misconduct before the Court is the abuse of the discovery motion

---

[3] Plaintiffs' RFPs expressly defined the term "Data" as "digitally stored and transmitted information on non-TikTok users." *See* McCauley Decl., Ex. 2 at 4.

process. There was no need to bother the Court with this issue after months of delay and Plaintiffs have not suggested a reason otherwise, especially given that Defendants have already agreed to make the repositories identified by Plaintiffs available for inspection.

<u>Design Documents.</u> Plaintiffs are not entitled to documents they never sought or were not ordered by the Court to be produced. *See Hoffman v. Jones*, 2018 WL 2088068, at *2 (E.D. Cal. May 4, 2018) (denying motion to compel when Plaintiff "seeks to compel material outside the scope of the court's order."); *Smith v. Rodriguez*, 2015 WL 5813641, at *17 (E.D. Cal. Sept. 30, 2015) (denying motion to compel that seeks to expand the scope of the original request).

The April 8 Order did not concern "design wikis" or "other design documents." That Order—and Requests 75 and 83 it incorporates—concerns source code. *See* April 8, 2024 Order, ECF No. 130 (ordering production of "current and historical source code"); RFP No. 75 (requesting "source code"); RFP No. 83 (requesting "computer code").

Design documents are not source code. Plaintiffs' expert David Martens describes design wikis as "similar to Wikipedia.org but discussing aspects of software design internal to a development team" and the other requested design documents as "possible Microsoft Word files." Martens Decl. at 11(c). Notably absent from Plaintiffs' description is any statement that design wikis or documents are "code." As Plaintiffs themselves admit, these documents are meant to facilitate software development; they do not contain code itself. Martens Decl. at 11(c).

The closest Plaintiffs can get is to describe this as "source-code material." But that concedes it's not "source code" itself. But even if we indulge that description, the April 8, 2024 Order did not order the production of "source-code material." *See* April 8, 2024 Order, ECF No. 130 (ordering production of "current and historical *source code*") (emphasis added). Plaintiffs cannot rewrite or stretch the Court's orders beyond recognition, which clearly do not encompass these types of

1  documents. In fact, Plaintiffs make scant argument on the subject.

2  VI.  CONCLUSION

3      A.  PLAINTIFFS' CONCLUSION

4      The Court should enforce its previous Order of April 8, 2024, and require
5  Defendants to promptly produce, within seven days, ▉▉▉▉▉▉▉▉▉▉▉▉
6  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
7  ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉, and (3) any other
8  source code responsive to Plaintiffs' requests for production 75 and 83.

9      B.  DEFENDANTS' CONCLUSION

10     There was no need at all for Plaintiffs to file this motion.

11     With respect to the <u>two source code repositories</u>: Defendants have already
12 agreed to produce the two code repositories Plaintiffs identified, even though they
13 were not called for. Plaintiffs' sanctions request has no merit whatsoever, since they
14 make no evidentiary showing that these two code repositories in fact fall within the
15 limits of the source code requests. Nor do they bother to make a showing of willful
16 violation, misconduct, or prejudice.

17     As for the <u>design documents and wikis</u>: Plaintiffs cannot stretch the Court's
18 order beyond recognition to call for documents they never asked for. It is clear that
19 these documents are not "source code." Plaintiffs' attempt to stretch the April 8
20 Order to any degree beyond the "code" itself should not be permitted.

21     The motion should be denied in its entirety.

| | | |
|---|---|---|
| 1 | DATED: October 3, 2024 | By: */s/ John W. McCauley* |

Ekwan E. Rhow (CA SBN 174604)
Marc E. Masters (CA SBN 208375)
Christopher J. Lee (CA SBN 322140) BIRD, MARELLA, RHOW, LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
erhow@birdmarella.com
mmasters@birdmarella.com
clee@birdmarella.com

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
GLANCY PRONGAY & MURRAY, LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

15
JOINT STIPULATION RE: PLAINTIFFS' RULE 37(b) MOTION

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (310) 336-8340
gpark@susmangodfrey.com

John W. McCauley (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jmccauley@susmangodfrey.com

*Attorneys for Plaintiffs*

| | | |
|---|---|---|
| DATED: October 10, 2024 | By: | */s/ Victor Jih* |

Victor Jih, SBN 186515
Kelly H. Yin, SBN 3283
WILSON SONSINI GOODRICH & ROSATI, P.C.
1900 Avenue of the Stars, 28th Floor
Century City, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329
vjih@wsgr.com;
kyin@wsgr.com

Luis Li, SBN 156081
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
luis.li@wsgr.com

Dylan Grace Savage, SBN 310452
Thomas Wakefield, SBN 330121
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900
dsavage@wsgr.com;
twakefield@wsgr.com

*Attorneys for Defendants
TikTok Inc. and ByteDance Inc.*