Ekwan E. Rhow (CA SBN 174604)
erhow@birdmarella.com
Marc E. Masters (CA SBN 208375)
mmasters@birdmarella.com
Christopher J. Lee (CA SBN 322140)
clee@birdmarella.com
BIRD, MARELLA, RHOW, LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (pro hac vice)
GLANCY PRONGAY & MURRAY, LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

*Attorneys for Plaintiffs*

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West
50th Floor
New York, NY 10001
Telephone: (212) 336-8330
gpark@susmangodfrey.com

John W. McCauley (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jmccauley@susmangodfrey.com

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BERNADINE GRIFFITH; et al., individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

TIKTOK, INC., a corporation; BYTEDANCE, INC., a corporation

Defendants.

Case No. 5:23-cv-00964-SB-E

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE ORDER DENYING MOTION FOR CLASS CERTIFICATION, OR FOR LEAVE TO FILE A RENEWED MOTION FOR CLASS CERTIFICATION**

**PUBLIC REDACTED VERSION**

JUDGE: Hon. Stanley Blumenfeld, Jr.
DATE: October 25, 2024
COURTROOM:
U.S. Courthouse
350 West 1st Street
Los Angeles, CA 90012
Courtroom 6C

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Dr. Shafiq Addresses Defendants' Criticisms and Makes Appropriate Adjustments, But They Do Not Impact His Ultimate Opinions. ..... 2

B. Defendants Unfairly Attack Dr. Shafiq After They Delayed the Predicate Data Production and Erroneously Seek Merits Determinations at Class Certification. ..... 2

C. Plaintiffs Satisfy the Typicality Requirement. ..... 3

D. Wiretap Claims: Plaintiffs Have Shown that "Contents" Can Be Determined Classwide. ..... 4

E. Privacy Claims: Plaintiffs Have Presented Systematic Ways to Adjudicate Privacy Claims on a Classwide Basis. ..... 6

F. Property Claims: Classwide Treatment Is Appropriate. ..... 10

G. A 23(b)(2) Injunctive Class Is Warranted. ..... 11

H. Plaintiffs' Proposed Class Limitations Support Class Treatment. ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Google, LLC*,
2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) .......... 6

*Brown v. Google LLC*,
685 F.Supp.3d 909 (N.D. Cal. 2023) .......... 4, 7, 13

*Calhoun v. Google, LLC,*
113 F.4th 1141 (9th Cir. 2024) .......... 4

*Calhoun v. Google, LLC,*
526 F.Supp.3d 605 (N.D. Cal. 2021) .......... 4

*Ellis v. Costco Wholesale Corp.*,
285 F.R.D. 492 (N.D. Cal. 2012) .......... 3

*Hanon v. Dataproducts Corp.*,
976 F.2d 497, 508 (9th Cir. 1992) .......... 3

*In re Google RTB Consumer Priv. Litig.*,
606 F.Supp.3d 935 (N.D. Cal. 2022) .......... 4

*In re Google RTB Consumer Priv. Litig.*,
2024 WL 2242690, at *7, *9 (N.D. Cal. Apr. 4, 2024) .......... 8, 13

*Just Film, Inc. v. Buono*,
847 F.3d 1108 (9th Cir. 2017) .......... 3

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022) .......... 4

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
31 F.4th 651 (9th Cir. 2022) (en banc) .......... 3, 8, 10, 13

*Rodriguez v. Google LLC*,
2024 WL 38302 (N.D. Cal. Jan. 3. 2024) .......... 10, 11

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) .......... 13

*Tyson Foods v. Bouaphakeo*,
577 U.S. 442 (2016) .......... 8

*Wesch v. Yodlee, Inc.*
2021 WL 1399291, at *3 (N.D. Cal. Feb. 16, 2021) .......... 7, 8

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) .......... 11

**Statutes**

Civil Code Section 1798.141 .......... 7

# I. INTRODUCTION

Defendants are right about one thing. It has taken "enormous resources," Opp. 17, to pry—via multiple successful motions to compel—even a single day's data showing a sliver of the pervasive nature of their data collection. That effort, plus the cost of expert analysis of that data, is indisputably beyond the resources of the vast majority of consumers subject to Defendants' mass collection of data. Class treatment is the only feasible way to give millions of Americans who choose not to interact with TikTok a meaningful opportunity to vindicate their rights.

The Court should reconsider its prior order and certify the class. Defendants' opposition erroneously urges reaching the merits of the action, misstates the law governing Plaintiffs' wiretap and privacy claims, harps on aspects of the technical analysis that do not preclude certification, laughs at outliers in that technical analysis while turning a blind eye to its most damning findings, and fails entirely to provide any cogent argument against the proposed class definition refinements. Plaintiffs also submit the continuing analysis of their technical expert, Dr. Shafiq, who has continued to analyze the two-day sample data that Defendants made available after briefing on the class certification motion was completed. While Dr. Shafiq's original analysis contained certain imprecisions, further described in Section II.A below and throughout this brief, his adjusted analysis accounting for Defendants' criticisms still fully supports class certification.

Defendants' opposition also displays an alarmingly flippant attitude toward the undisputed fact that they harvest [REDACTED] on unsuspecting non-TikTok users every day. But behind closed doors, Defendants acknowledged:

[REDACTED]

Ex. 2 at -137.[1] Defendants know—and the classwide evidence will prove—that they collect and retain sufficiently identifying and private information on non-TikTok users [REDACTED] *Id.* This is the truth about Defendants' data collection, and the Court should hold them accountable.

## II. ARGUMENT

### A. Dr. Shafiq Addresses Defendants' Criticisms and Makes Appropriate Adjustments, But They Do Not Impact His Ultimate Opinions.

Dr. Shafiq has analyzed and responded to Mr. Schnell's declaration (Dkt. 269-29) in his Rebuttal Report. Ex. 1. In particular, Dr. Shafiq has adjusted the [REDACTED]. *Id.* ¶¶ 31-46. Dr. Shafiq has also adjusted [REDACTED] *Id.* ¶¶ 4-5. Plaintiffs now rely only on the adjusted findings in Dr. Shafiq's Rebuttal Report and report those findings as relevant throughout this brief.

### B. Defendants Unfairly Attack Dr. Shafiq After They Delayed the Predicate Data Production and Erroneously Seek Merits Determinations at Class Certification.

As stated in the Opening Motion, due to Defendants' delays in producing the Court-ordered data on the Court-ordered schedule, Dr. Shafiq did not have time to complete his analysis, which he estimated would take another 2-4 weeks, i.e., potentially until October 21. Mot. 6-7. Dr. Shafiq and his team have been working at

[1] All exhibits refer to exhibits to the concurrently filed Park Declaration.

breakneck speed to continue analyzing the data and present updated findings in his Rebuttal Report.

Defendants' specific criticisms about the [REDACTED] [REDACTED] in the sample data or about whether the IAB sensitivity classification is actually accurate constitute "question[s] whether the expert's 'study was representative or inaccurate,'" which are "'itself common to the claims made by all class members.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668 (9th Cir. 2022) (en banc) (quoting *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 457 (2016)). Class certification does not include determination of "whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 506–07 (N.D. Cal. 2012) (citation omitted).

**C. Plaintiffs Satisfy the Typicality Requirement.**

Defendants' sole argument against typicality contravenes the law. They assert that "[t]he specific information Defendants received still depends on how each advertiser configures the tools, the nature of a webpage, and a user's interaction with the website." Opp. 7. Setting aside that Defendants have shown no meaningful variation in "how each advertiser configures the tools" while Plaintiffs have shown a high degree of uniformity, Dkt. 179-2 at ¶¶ 76-86, Defendants ignore that "[t]ypicality focuses on the class representative's ***claim—but not the specific facts from which the claim arose*** . . . .'" *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (rejecting argument that plaintiff, whose account had not been debited, was not typical of other class members whose accounts were debited because she was nonetheless subject to the same overall course of misconduct) (emphasis added) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

The distinction between the class representative and other class members in *Just Film* is far more stark than that present here. In *Just Film*, the plaintiff, unlike

other class members, wasn't debited at all, whereas here, there is merely ***variation*** in web browsing activity, which makes Plaintiffs typical for the privacy and property claims. And typicality has undoubtedly been met for the wiretap claims under ECPA and CIPA, where the type of website has no bearing on whether the full-string URL collected from class members constitute "contents" of a communication.

### D. Wiretap Claims: Plaintiffs Have Shown that "Contents" Can Be Determined Classwide.

While Defendants accuse Plaintiffs of "us[ing] the term 'contents' loosely," Opp. 13, they are the ones who ignore well-established caselaw on what constitutes "contents." Notably, Defendants fail to address the Ninth Circuit's recent discussion of CIPA "contents": "the user's unique, persistent cookie identifiers"; "the user's browsing history in the form of the contents of the users' GET requests and information relating to the substance, purport, or meaning of the ***website's portion of the communication with the user***"; "the contents of the user's POST communications"; and "the user's IP address and User-Agent information about their device." *Calhoun v. Google*, LLC, 113 F.4th 1141, 1144, 1147 (9th Cir. 2024) (emphasis added); *accord Calhoun v. Google*, LLC, 526 F.Supp.3d 605, 637 (N.D. Cal. 2021) (CIPA claim).

Further, Defendants' fixation on search terms as a necessary component of a URL to be considered "contents" contradicts the law. In *In re Google RTB Consumer Priv. Litig.*, 606 F.Supp.3d 935, 949 (N.D. Cal. 2022), the court held that ECPA "contents" include the "URL of the page where the impression will be shown" and "referrer URL that caused navigation to the current page." In *Brown v. Google LLC*, 685 F.Supp.3d 909, 935-36 (N.D. Cal. 2023), the court held at summary judgment that search queries like "https%3A%2Fwww.washingtonpost.com%2Fworld %2F2022%2F02%2F18%2Frussia-ukraineupdates%2l"—a URL with no intelligible search term—could constitute "contents" under ECPA "by virtue of including the

particular document within a website that a person views," which "divulge[s] a user's personal interests, queries, and habits." In *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 795-96 & n.10 (N.D. Cal. 2022), the court held that URLs like https://www.medstarhealth.org/doctors/paul-a-sack-md that include the "path" are "content because they concern the substance of a communication."

Here, Plaintiffs have shown that Defendants uniformly collect full-string URLs ( ) from visitors to websites that use the Pixel or EAPI, that these URLs contain information of the page where the impression will be shown" and "the particular document within a website that a person views," and



Dkt. 179-2 at ¶¶ 63, 78, 83; Ex. 1 at ¶¶ 47-63. As to Plaintiffs specifically, Plaintiffs have shown



Ex. 1 at ¶¶ 99-105, 108-113.

Defendants also cite no law that requires that every single URL of the billions of URLs that they collect must pass some threshold of "contents." There is no dispute

that Defendants collect URLs that convey the substance of the communication like the above. To suggest that the wiretap claims cannot be certified because the substantive URLs may be intermingled with other URLs that may not be as substantive, is akin to arguing that Defendants' taking my wallet on its own is actionable but taking my wallet along with other things of less or no value is not. Given the vast breadth of the data Defendants collect, it would also be letting Defendants off the hook because they collect ***too many*** URLs and their data-harvesting apparatus is ***too pervasive***. Other courts have rejected these "too big to fail" arguments, and this Court should do the same. *See Brown v. Google, LLC*, 2022 WL 17961497, at *1 (N.D. Cal. Dec. 12, 2022) (certifying injunctive class and observing: "The notion that Google is too big to be held accountable does not persuade.").

Beyond URLs, Plaintiffs have also shown that the Pixel uniformly intercepts Content Information. Dkt. 179-2 at ¶¶ 65, 78, 83; Ex. 1 at ¶ 90. Defendants brush off this evidence as "contents of a webpage" rather than "contents of a plaintiff's communications," Opp. 13, but the distinction fails given their own acknowledgement that Content Information scrapes the actions that website visitors like Plaintiffs take on a webpage. *Id.* ("the actions taken on a webpage").

### E. Privacy Claims: Plaintiffs Have Presented Systematic Ways to Adjudicate Privacy Claims on a Classwide Basis.

Defendants' arguments are premised on fundamental misunderstandings of fact and law.

**Identifying**: First, Plaintiffs need not demonstrate that data collected on them or class members identifies individuals ***by name*** to obtain class certification (or to prevail on the claims). There is a reasonable expectation of privacy even in "anonymous, aggregated data" because "the reason Google has access to their anonymous, aggregated data [wa]s through the collection and storage of information

from users' private browsing history without consent." *Brown v. Google*, 685 F.Supp.3d 909, 924, 940 n.39 (N.D. Cal. 2023) (denying summary judgment as to invasion of privacy, intrusion upon seclusion, and CIPA claims after having earlier certified injunctive classes, *see* 2022 WL 17961497). In *Wesch v. Yodlee, Inc.*, the court likewise concluded that the plaintiffs could have a "reasonable expectation of privacy in anonymized, aggregated data," because "it would only take a few steps to identify the individual Plaintiffs." 2021 WL 1399291, at *3 (N.D. Cal. Feb. 16, 2021). That is consistent with Civil Code Section 1798.141, misleadingly truncated by Defendants, Opp. 9, which in fact encompasses information "reasonably capable of being associated with, or ***could reasonably be linked, directly or indirectly***, with a particular consumer or household" (emphasis added). Defendants' argument that they have not actually done so, Opp. 6 n.3, is inapposite, because they ***can*** do so. (And Defendants' representation that they "did not use these services" of data brokers is [redacted]. *See* Ex. 3 at -080; Ex. 4.

Even if Defendants were right that collected data must be able to identify a person ***by name***, Plaintiffs have now shown that Defendants can easily [redacted] Defendants gather [redacted] on non-users' browsing activity every day. [redacted] Ex. 5 at 173:12-18. [redacted] Defendants' documents confirm that capability. *See* Ex. 6 at -037; Ex. 1 at ¶ 36 n.40; *see generally*

Ex. 1 at ¶¶ 35-38. Given Dr. Shafiq's calculations that "[redacted]," Ex. 1 at ¶ 36, [redacted] that over the proposed class period, Defendants are able, with only "a few steps," *Wesch*, 2021 WL 1399291, at *3, to [redacted] This kind of statistical evidence is admissible to prove a Defendants' conduct toward a class, and whether the statistical evidence is ultimately sufficient to carry the day is a merits inquiry, not a question to be resolved at the class-certification stage. *Tyson Foods*, 577 U.S. at 457; *Olean*, 31 F.4th at 668.

That is why, in *Google RTB*, the court at class certification held that information like "the URL of the website or app visited by the user; the IP address; the publisher of the website or application visited; various location fields; device information; and detected language" is "personally identifying." 2024 WL 2242690, at *7, *9 (N.D. Cal. Apr. 4, 2024). Here, while Defendants argue that "IP Address/User Agent Is Not Identifying," Opp. 8, they omit the fact that [redacted] Ex. 1 at ¶ 33 [redacted]). Dr. Shafiq has now accounted for that [redacted] and still concludes that IP and User Agent are identifying. *Id.*

While Defendants laugh at Plaintiffs' efforts to show the uniformly identifying nature of the data they collect, Opp. 9 ("comedy"), 12 ("meme-worthy"), their flippant litigation posture is belied by their internal business documents revealing that, [redacted]

[redacted] Ex. 7 at -922 (emphasis added); *see also* Ex. 8 at -836 ([redacted]). It is astounding that Defendants consider such data to be [redacted] but laugh at non-users' attempt to seek equal recognition of their own such data.

Even in the two-day sample data alone, and even accounting for Defendants' and Mr. Schnell's criticisms to remove [redacted]—alongside URLs. Ex. 1 at ¶ 12.

Finally, Defendants do not refute that their two-day sample shows [redacted]. *See* Ex. 1 at ¶¶ 42-43 ([redacted]). They also do not refute that all three named Plaintiffs have [redacted]. *Id.* ¶¶ 98-113. This evidence confirms Plaintiffs' typicality to serve as class members. To the extent that Defendants argue [redacted] such arguments would contravene this Court's order (entered before Plaintiffs had an opportunity to submit their supplemental memorandum) reassuring Plaintiffs that it "does not intend to permit Defendants 'to treat the two-day sample produced as if it constituted the universe of non-TikTok user data that they collected.'" Dkt. 283 at 4. Dr. Shafiq explains why the two-day data sample can appropriately support population-level statistical

inferences but not individual-level statistical inferences. *See* Ex. 1 at ¶¶ 81-85. In short, the two-day sample data is representative as to the overall non-user population, including the individual named Plaintiffs as members of that population, but not as to the individual named Plaintiffs each on their own.

Defendants emphasize that [REDACTED], Opp. 4, but they ignore that Defendants can still trace the browsing history to [REDACTED].

**Sensitive**: Defendants do not dispute the core of the methodology to use an objective sensitivity classification system like the IAB's API but rather point to outliers produced by the API and quibbles about confidence scores. Opp. 11. The IAB's API itself sets a default minimum confidence threshold of 10%. Ex. 1 at ¶ 55. But the Court remains free to consider only websites deemed sensitive with a higher confidence level. For the same reason, it does not matter that Defendants were able to find a handful of URLs that were misclassified as sensitive. While other courts in data privacy class actions have not required that Plaintiffs be able to systematically sort out sensitive from non-sensitive among the billions of URLs collected for class certification, *see supra* at pp.5-6, even if such a requirement were imposed, Plaintiffs have satisfied it by presenting a programmatic way of identifying sensitive websites. The question of prevalence of false positives is a merits question. *Olean*, 31 F.4th at 668, 669 n.14.

### F. Property Claims: Classwide Treatment Is Appropriate.

Defendants' arguments about the financial value for Plaintiffs' data fail. First, Defendants argue that Screenwise here is "being used to establish the financial value for entirely dissimilar data collection efforts" to that in *Rodriguez v. Google LLC*, 2024 WL 38302, at *12 (N.D. Cal. Jan. 3. 2024). Opp. 14. The distinctions are

irrelevant. "The willingness of these companies to provide direct payment to individuals demonstrates the monetary value companies place on collecting and understanding online behavior and personal data." Dkt. 269-31 (Mangum Opening Report), ¶ 74. Google's (or anyone else's) willingness to pay consumers for the data at the given price establishes the relevant market measure.

Second, this analysis does not require "individualized comparisons of the scope of collection, its consistency and thoroughness, and the frequency of a user's online activity." Opp. 14. Screenwise (and SavvyConnect and Nielsen) pay users monthly amounts that "are uniform per user regardless of the total amount of data collected." Dkt. 269-31 at ¶ 103. Similarly, Screenwise and SavvyConnect don't require sensitive information from users, and users "may temporarily pause the data collection" or "may opt to use an alternative device for select online activity" and still qualify. *Id*. There is thus a market for data even from a user who only, as the Court notes, "briefly visits a few websites using the Pixel and shares no sensitive information." Dkt. 242 at 11.

**G. A 23(b)(2) Injunctive Class Is Warranted.**

Defendants argue that Plaintiffs do not have standing to pursue injunctive relief (while simultaneously arguing in their pending summary judgment motion that Plaintiffs consented to data collection). *See* Dkt. 269-1. This precise argument has been rejected by courts. *See Rodriguez*, 2024 WL 38302, at *5 (N.D. Cal. Jan. 3. 2024) ("Google's argument places an impossible burden on Plaintiffs that would preclude injunctive relief altogether: they must stop using the many apps on their phones to avoid consenting to the wrongful conduct, unfairly undercutting standing to seek injunctive relief."); *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 589 (N.D. Cal. 2015) (same).

Defendants' argument that the "next time [Plaintiffs] visit a website, Plaintiffs 'will be doing so with exactly the level of information that they claim they were

owed'" (Opp. 15) fails for at least three reasons. ***First***, it is impossible for any individual to remember the hundreds of thousands of websites on which the Pixel or EAPI was installed. ***Second***, even with superhuman memory, Defendants have over-designated all data revealing websites that use the Pixel or EAPI as Attorneys' Eyes Only, precluding Plaintiffs' access to that data. There is no other way for Plaintiffs to even know which websites use EAPI, as the server-to-server data transmission enabled by that tracker is not publicly investigable. ***Third***, the list of affected websites is not static, as Defendants [REDACTED] [REDACTED]. Ex. 9 at -349.

**H. Plaintiffs' Proposed Class Limitations Support Class Treatment**

The Court should certify the classes as originally proposed, but Plaintiffs, in the Opening Reconsideration Motion, also proposed further limitations to address the Court's concerns about potential overbreadth. *See* Mot. 20-22 (proposing five additional limitations to limit class to non-users for whom Defendants obtained (a) email addresses, (b) phone numbers, (c) web browsing data from webpages classified as sensitive under the IAB taxonomy, (d) web browsing data from webpages that do not disclose Defendants' data collection in their privacy policies, and/or (e) search queries).

Defendants' response is to merely assert, without explaining, that these facially systematic limitations "end up introducing even more individualized issues." Opp. 17. The contrary is true. Each of these limitations, either alone or in combination, can be applied across the data set Defendants provided. Even accounting for Mr. Schnell's prescriptions on how to make the calculations more conservative, Dr. Shafiq [REDACTED] [REDACTED]. Ex. 1 at ¶ 12. The individuals who are tied to [REDACTED]

can be class members. Even if the Court seeks to impose yet additional limitations, Plaintiffs can readily take the [REDACTED], Ex. 1 at ¶¶ 67, 70-71, 74, 77, and (1) run them through the IAB taxonomy to identify a subset of potentially sensitive ones (for privacy and conversion claims) and (2) identify a subset containing search terms or full path string identifying the "particular document within a website that a person views," *Brown*, 685 F.Supp.3d at 935 (for wiretap claims).

To the extent the Court deems any of the limitations necessary or desirable, it can and should adopt them and "construe the class definition more narrowly, or otherwise conform its interpretation of the class definition with the prevailing theory of liability." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1139 (9th Cir. 2016) *accord Olean*, 31 F.4th at 669 n.14 (9th Cir. 2022) ("[U]ltimately, the problem of a potentially 'over-inclusive' class 'can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.'" (citation omitted)); *Google RTB*, 2024 WL 2242690, at *6 (concluding class definition is fail safe but denying class certification "with leave to amend, and to allow for more thorough exposition of the issue on both sides" (citing *Olean*, 31 F.4th at 669 n.14)).

Dated: October 11, 2024

By: /s/ *Jonathan M. Rotter*

Ekwan E. Rhow (CA SBN 174604)
Marc E. Masters (CA SBN 208375)
Christopher J. Lee (CA SBN 322140)
**BIRD, MARELLA, RHOW, LINCENBERG, DROOKS & NESSIM, LLP**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
erhow@birdmarella.com
mmasters@birdmarella.com
clee@birdmarella.com

Jonathan M. Rotter (CA SBN 234137)

Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
**GLANCY PRONGAY & MURRAY, LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (pro hac vice)
**SUSMAN GODFREY L.L.P.**
One Manhattan West
50th Floor
Telephone: (212) 336-8330
Facsimile: (310) 336-8340
gpark@susmangodfrey.com

John W. McCauley (*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jmccauley@susmangodfrey.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record Plaintiffs, hereby certifies that this brief contains fewer than 4,000 words, which complies with the word limit set forth in L.R. 11-6.1.

/s/ *Jonathan M. Rotter*
Jonathan M. Rotter

# CERTIFICATE OF SERVICE

This is to certify that on October 11, 2024, I caused a copy of the foregoing document to be served by ECF on the following individuals:

| | |
|---|---|
| Victor Jih<br>Kelly Yin<br>J. Raef Rothschild<br>Christopher Hurley<br>**WILSON SONSINI GOODRICH & ROSATI**<br>Professional Corporation<br>1900 Avenue of The Stars, 28th Floor<br>Los Angeles, CA 90067<br>luis.li@wsgr.com<br>vjih@wsgr.com<br>kyin@wsgr.com<br>jrothschild@wsgr.com<br>churley@wsgr.com | Caitlin McKelvie<br>**WILSON SONSINI GOODRICH & ROSATI**<br>15 West South Temple<br>Gateway Tower West, Suite 1700<br>Salt Lake City, UT 84101<br>Telephone: 801-401-8510<br>cmckelvie@wsgr.com |
| Dylan Savage<br>Thomas Wakefield<br>**WILSON SONSINI GOODRICH & ROSATI**<br>One Market Plaza<br>Spear Tower, Suite 3300<br>San Francisco, CA 94105-1126<br>Telephone: (415) 947-2000<br>dsavage@wsgr.com<br>twakefield@wsgr.com | Anthony Weibell<br>Sophie Mancall-Bitel<br>**MAYER BROWN**<br>Two Palo Alto Square<br>3000 El Camino Real<br>Palo Alto, California 94306-2112<br>Telephone: (650) 331-2030<br>aweibell@mayerbrown.com<br>smancallbitel@mayerbrown.com |
| Sheryl Shapiro Bassin<br>**WILSON SONSINI GOODRICH & ROSATI**<br>1301 Avenue of the Americas<br>New York, New York 10019<br>Tel: (212) 497-7725<br>sbassin@wsgr.com | Eric Kohan<br>**WILSON SONSINI GOODRICH & ROSATI**<br>650 Page Mill Road<br>Palo Alto, CA 94304-1050<br>Tel: (650) 493-9300<br>ekohan@wsgr.com |

*/s/ Jonathan M. Rotter*
Jonathan M. Rotter