VICTOR JIH,
SBN 186515
KELLY H. YIN,
SBN 328380
WILSON SONSINI GOODRICH & ROSATI, P.C.
1900 Avenue of The Stars,
28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329
vjih@wsgr.com
kyin@wsgr.com

LUIS LI,
SBN 156081
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street,
Suite 1550
Los Angeles, CA 90071
Telephone: (323) 210-2900
luis.li@wsgr.com

SHERYL SHAPIRO BASSIN,
SBN 4662797
DYLAN GRACE SAVAGE,
SBN 310452
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas.
40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974.7329
sbassin@wsgr.com
dsavage@wsgr.com

THOMAS WAKEFIELD,
SBN 330121
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Spear Tower,
Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900
twakefield@wsgr.com

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

BERNADINE GRIFFITH, et al., Individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

TIKTOK INC., a corporation; BYTEDANCE, INC. a corporation,

*Defendants*.

Case No. 5:23-cv-0964-SB-E

**JOINT APPENDIX OF OBJECTIONS**

Judge: Hon. Stanley Blumenfeld, Jr.
Place: Courtroom 6C

Action Filed: May 26, 2023
Trial Date: January 20, 2025

**<u>JOINT APPENDIX OF OBJECTIONS</u>**

Plaintiffs BERNADINE GRIFFITH, PATRICIA SHIH, and JACOB WATTERS ("Plaintiffs"), and Defendants TIKTOK INC. and BYTEDANCE, INC. ("Defendants"), hereby submit this Joint Appendix of Objections in Support of their Joint Brief Re Motion for Summary Judgment.

| Objector | Evidence | Objection (O)/ Response (R) |
|---|---|---|
| Plaintiffs | <u>Fact No. 4 In JAF</u>: Website owners control the installation and configuration of these tools and what is shared (citing to Li Dep. at 38:5-10, 38:17-22 39:6-10, 48:14-17, JAE Ex. 3). | O: The cited deposition testimony of Lizzie Li lacks foundation as to whether website owners "control[ed] the installation and configuration of these tools and what is shared" [FRE 602]; the term "control" is ambiguous/misleading concerning "installation" to the extent it suggests that less than all of the Pixel or Events API can be installed [FRE 403]; testimony as to what website owners did is hearsay [FRE 802].<br><br>R: Ms. Li had personal knowledge that TikTok does not control advertisers' configuration of the Pixel or Events API and testified as TikTok's representative. *See* JAE Ex. 3, Dep. 142-144. She did not testify as to what website owners or advertisers specifically did or did |

| | | |
|---|---|---|
| | | not do. *Id*. Ms. Li's testimony is additionally not hearsay because it is not about anything advertisers have *said*. FRE 801. |
| Plaintiffs | <u>Fact No. 6 In JAF</u>: No sensitive personal information of Plaintiffs was disclosed to or collected by Defendants through use of the Pixel (citing to Schnell September Report ¶¶ 18-19, 29 38, 40, 47, 59, JAE Ex. 29). | O: The issue of whether data is "sensitive" is a legal issue which is not properly within the scope of the JAF (see the Court's Orders re Motions for Summary Judgment, updated 3/1/24 at Sections 2.a.ii and 2.c.vi) and thus not relevant [FRE 402]; for these same reasons, the citation to expert testimony on this purported fact calls for an improper legal conclusion [FRE 702/703/704].<br><br>R: Whether or not Plaintiffs' sensitive personally identifying information was transmitted to TikTok is a factual matter. *See Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023); Dkt. 242. [redacted] It is also |

| | | |
|---|---|---|
| | | indisputably relevant to Plaintiffs' claims because [redacted] is dispositive to many of Plaintiff claims. FRE 402. |
| Plaintiffs | <u>Fact No. 7 In JAF</u>: No sensitive personal information of Plaintiffs was disclosed to Defendants through use of Events API (citing to Schnell September Report ¶¶ 18-19, 29 38, 40, 47, 59, JAE Ex. 29). | O: The issue of whether data is "sensitive" is a legal issue which is not properly within the scope of the JAF (see the Court's Orders re Motions for Summary Judgment, updated 3/1/24 at Sections 2.a.ii and 2.c.vi) and thus not relevant [FRE 402]; for these same reasons, the citation to expert testimony on this purported fact calls for an improper legal conclusion [FRE 702/703/704].<br><br>R: Whether or not Plaintiffs' sensitive personally identifying information was transmitted to TikTok is a factual matter. *See Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023); Dkt. 242. [redacted] *See* Fact No. 33. It is also |

| | | |
|---|---|---|
| | | indisputably relevant to Plaintiffs' claims. FRE 402. |
| Plaintiffs | <u>Fact No. 8 in JAF</u>: The URLs for the Hulu, Etsy, Rite Aid, Build-A-Bear, Upwork and Sweetwater webpages that Plaintiffs claim to have visited are not configured to disclose their name, dates of birth, gender, phone number, email address or physical address (citing Schnell September Report ¶¶ 18, 39-42, 47-48, 56-5759, 62-64, Ex. JAE 29). | O: As Plaintiffs have demonstrated that the websites are configured to disclose the name, dates of birth, gender, phone number, email address or physical address of the visitors to the websites, *see* Shafiq SJ Declaration at ¶¶47-48 (JAE 58); the evidence cited by Defendants is incomplete and should be excluded as its potential for prejudice, confusion, and/or waste of time outweigh its probative value [FRE 403, FRE 702 as to Schnell Report].<br><br>R: Shafiq's summary judgment declaration does not provide evidence that these websites are configured in a manner that discloses this information such that it can be tied to any specific individual *by Defendants. See* Shafiq SJ Declaration at ¶¶ 47-48, JAE Ex. 58; Schnell September Report ¶¶ 18, 39-42, 47-48, 56-5759, 62-64, Ex. JAE 29. Whether or not sensitive, personally |

| | | |
|---|---|---|
| | | identifying information about Plaintiffs was transmitted to TikTok is at the core of Plaintiffs' claims and therefore indisputably relevant. FRE 402. |
| Plaintiffs | <u>Fact No. 10 in JAF</u>: The browsing history for Plaintiffs do not reveal that any of the URLs for Hulu, Etsy, Rite Aid, Build-A-Bear, Upwork of Sweetwater webpages disclosed Plaintiffs' name, date of birth, phone number, email address or physical address (citing Griffith iPhone Artifacts (Webkit Browser Web History tab), JAE Ex. 11, Griffith Desktop Artifacts (Chrome Web History tab), JAE Ex. 12, Shih Macbook Internet Artifacts (Browser History tab), JAE Ex. 21, Shih HD1 Internet Artifacts (Browser History tab), JAE Ex. 22, Shih HD1 Internet Artifacts (Browser History tab, row 16), JAE Ex. 22, Shih HD2 Internet Artifacts | O: When TikTok collects data, it does not collect just the URL but rather also collects other default categories of data, Shafiq SJ Declaration at ¶8 (JAE 58); the evidence cited by Defendants is therefore incomplete and should be excluded as its potential for prejudice, confusion, or waste of time outweigh its probative value [FRE 403].<br><br>R: Other categories of data are not personally identifying in the manner that Plaintiffs suggest. Plaintiffs' objection concedes that their own browsing history does not show that Plaintiffs' name, date of birth, phone number, email address or physical address was disclosed to TikTok. *See* JAE Exs. 12, 22-27. It is thus clearly relevant. FRE 402. |

| | | |
|---|---|---|
| | (Browser History tab), JAE Ex. 23, Shih iPhone Internet Artifacts (Browser History tab), JAE Ex. 24, Watters Desktop Internet Artifacts (Firefox Web History tab, Firefox Web Visits tab, Other History tab), JAE Ex. 25, Watters Galaxy S22 Internet Artifacts (Chrome Tab History tab, Chrome Web History tab, Chrome Web Visits tab), JAE Ex. 26, Watters Galaxy A02s Internet Artifacts (Chrome Web History tab, Chrome Web Visits tab), JAE Ex. 27.).) | |
| Plaintiffs | Fact No. 34 in JAF: No contents of Plaintiffs' communications were disclosed or collected by Defendants through use of the Pixel (citing to Schnell September Report ¶¶ 18-19, 29 38, 40, 47, 59, JAE Ex. 29). | O: The issue of whether data is "contents" under CIPA and/or ECPA is a legal issue which is not properly within the scope of the JAF (see the Court's Orders re Motions for Summary Judgment, updated 3/1/24 at Sections 2.a.ii and 2.c.vi) and thus not relevant [FRE 402]; for these same reasons, the citation to expert testimony on this purported fact discussing "contents" calls for an improper |

| | | |
|---|---|---|
| | | legal conclusion [FRE 702/703/704].<br><br>R: Whether or not the contents of any of Plaintiffs' data were contemporaneously disclosed "in transit" is a factual question of whether the "URL" transmitted contains sufficient information to be "contents" and whether any disclosure was contemporaneous rather than later-in-time. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092-93 (N.D. Cal. 2022). Defendants' expert's determination is therefore properly within the scope of expert testimony and dispositive of Plaintiffs' claims. FRE 402, 704. |
| Plaintiffs | <u>Fact No. 35 in JAF</u>: No contents of Plaintiffs' communications were contemporaneously disclosed or collected by Defendants via the Pixel while those communications were made | O: The issue of whether data is "contents" under CIPA and/or ECPA that was "contemporaneously disclosed" "in transit" are legal issues which are not properly within the scope of the JAF (see the Court's Orders re |

| | | |
|---|---|---|
| | or in transit (citing Schnell July Report ¶¶ 67; 111-26, JAE Ex. 28; Schnell September Report ¶¶ 19-24, 102-114, JAE Ex. 29). | Motions for Summary Judgment, updated 3/1/24 at Sections 2.a.ii and 2.c.vi) and thus not relevant [FRE 402]; for these same reasons, the citation to expert testimony on these purported facts calls for an improper legal conclusion [FRE 702/703/704].<br><br>R: Whether or not the contents of any of Plaintiffs' data were contemporaneously disclosed "in transit" is a factual question of whether the "URL" transmitted contains sufficient information to be "contents" and whether any disclosure was contemporaneous rather than later-in-time. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092-93 (N.D. Cal. 2022). Defendants' expert's determination is therefore properly within the scope of expert testimony and dispositive of Plaintiffs' claims. FRE 402, 704. |

| | | |
|---|---|---|
| Plaintiffs | <u>Fact No. 36 in JAF</u>: No contents of Plaintiffs' communications were disclosed to Defendants through use of Events API (citing Schnell September Report ¶¶ 19, 24, 102 114, JAE Ex. 29). | O: The issue of whether data is "contents" under CIPA and/or ECPA is a legal issue which is not properly within the scope of the JAF (see the Court's Orders re Motions for Summary Judgment, updated 3/1/24 at Sections 2.a.ii and 2.c.vi) and thus not relevant [FRE 402]; for these same reasons, the citation to expert testimony on this purported fact concerning "contents" calls for an improper legal conclusion [FRE 702/703/704].<br><br>R: Courts have recognized that a full-string URL is not a communication's "content" unless it "reproduce[s] a person's personal search engine queries." *E.g., Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092-93 (N.D. Cal. 2022). It is therefore a determination of fact that no such URLs were disclosed to Defendants via Events API and properly within the scope of expert testimony. FRE 704. |

| | | |
|---|---|---|
| Plaintiffs | <u>Fact No. 37 in JAF</u>: No contents of Plaintiffs' communications were contemporaneously disclosed or collected by Defendants via Events API while those communications were made or in transit (Schnell July Report ¶¶ 57-60, JAE Ex. 28). | O: The issue of whether data is "contents" under CIPA and/or ECPA that was "contemporaneously disclosed" "in transit" are legal issues which are not properly within the scope of the JAF (see the Court's Orders re Motions for Summary Judgment, updated 3/1/24 at Sections 2.a.ii and 2.c.vi) and thus not relevant [FRE 402]; for these same reasons, the citation to expert testimony on these purported facts calls for an improper legal conclusion [FRE 702/703/704].<br><br>R: Whether or not the contents of any of Plaintiffs' communications were intercepted contemporaneously by Events API is a question of fact about when and how data was shared, not a legal conclusion. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1092-93 (N.D. Cal. 2022). Defendants' expert's |

| | | |
|---|---|---|
| | | determination is therefore properly within the scope of expert testimony. FRE 402, 704. |
| Plaintiffs | <u>Fact No. 38 in JAF</u>: Information is shared by Events API after it is received by advertisers (citing Schnell July Report ¶¶ 57-60, JAE Ex. 28). | O: The scope of the term "after" implicates whether the data was shared contemporaneously under ECPA and/or CIPA, and is a legal issue which is not properly within the scope of the JAF (see the Court's Orders re Motions for Summary Judgment, updated 3/1/24 at Sections 2.a.ii and 2.c.vi) and thus not relevant [FRE 402]; for these same reasons, the citation to expert testimony on this purported fact calls for an improper legal conclusion [FRE 702/703/704].<br><br>R: Whether information is shared with Defendants by Events API *after* it is received by advertisers is a question of fact—one that has already been answered by the evidence, as the court has recognized. ECF No. 242 at 12. It is not only relevant, but *dispositive* as to whether Events API intercepts the contents of |

| | | |
|---|---|---|
| | | communications. FRE 402; *see*, *e.g.*, Joint Br. at 21:14-22. |
| Plaintiffs | <u>Fact No. 47 in JAF</u>: When Griffith created her Rite Aid account, she was required to agree to Rite Aid's Terms of Use and Privacy Policy (citing Griffith Dep. 68:21-69:11, 132:8-11; 219:22-220:7, JAE Ex. 2). | O: The cited testimony of Griffith states only that she visited the Rite Aid websites "half a dozen times" in the last two or three years (Griffith Dep. 68:21-69:110, has seen the wording of *a* privacy policy (not specifically Rite Aid's) (*id*. at 132:8-11), and that she does not know when her Rite Aid account was created (*id.* at 219:22-220:7). The cited testimony thus does not provide adequate foundation to establish that she was required to agree to Rite Aid's Terms of Use and Privacy Policy and is not relevant [FRE 402/602].<br><br>R: The cited testimony establishes that Griffith visited the Rite Aid website and was aware of privacy policies. *Id*. In conjunction with JAE Exs. 35-40, these exhibits collectively establish that Griffith was aware of the existence of website privacy policies and agreed to Rite-Aid's Privacy Policy. That |

| | | |
|---|---|---|
| | | is plainly relevant to whether she consented to sharing her data because the Policy explicitly discloses that Rite Aid would collect and share "information collected from or about users with third parties" without limitation. FRE 402. |
| Plaintiffs | Fact No. 47 in JAF: When Griffith created her Rite Aid account, she was required to agree to Rite Aid's Terms of Use and Privacy Policy (citing Rite Aid 2024 Create Account at 1, JAE Ex. 32). | O: The Rite Aid 2024 Create Account page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 4), and is not properly authenticated by a knowledgeable witness [FRE 901]; especially given that Griffith has testified that she does not know when her Rite Aid account was created (Griffith Dep. at 219:22-220:7), the existence of this 2024 Create Account page does not provide adequate foundation to establish that Griffith was required to agree to Rite Aid's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly mention the TikTok Pixel and/or |

| | | |
|---|---|---|
| | | Events API and is irrelevant [FRE 402].<br><br>R: "A screenshot of online content may be authenticated by testimony of the person who took the screenshot, so long as the screenshot also contains circumstantial indicia of authenticity." *Iglesia Ni Cristo v. Cayabyab*, 2020 WL 1531349, at *4 (N.D. Cal. Mar. 31, 2020). Further, the authenticity of the Wayback Back is so established that courts can take judicial notice of screenshots from it. *E.g.*, *McGucken v. Triton Elec. Vehicle LLC*, 2022 WL 2101725, at *3 (C.D. Cal. Mar. 21, 2022) ; *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1322–23 (C.D. Cal. 2023); *U.S. Commodity Futures Trading Comm. v. Gramalegui*, 2017 WL 2570022, at *4 (D. Colo. June 14, 2017) (applying presumption of authenticity). Regardless, here the screenshot was authenticated by |

| | | |
|---|---|---|
| | | "testi[mony] about how the Wayback Machine website works and how reliable its contents are." *United States v. Bansal*, 663 F.3d 634, 667 (3d Cir. 2011); *accord Abu-Lughod v. Calis,* 2015 WL 12746198, at *2 (C.D. Cal. May 20, 2015); *see* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, JAE Ex. 31. Griffith admitted to creating an account at some point, and the Ride Aid Privacy Policy she would have agreed to explicitly discloses that its website would collect and share "personal information" with third-parties without limitation. JAE Exs. 2, 33, 45. It is therefore plainly relevant to whether Griffith consented to data collection. FRE 402. |
| Plaintiffs | <u>Fact No. 47 in JAF</u>: When Griffith created her Rite Aid account, she was required to agree to Rite Aid's Terms of Use and Privacy Policy (citing Rite Aid 2022 Create Account at 1, JAE Ex. 33). | O: The Rite Aid 2022 Create Account page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 5), and is not properly authenticated by a knowledgeable witness [FRE 901]; especially given that Griffith has testified that she does not know |

| | | |
|---|---|---|
| | | when her Rite Aid account was created (Griffith Dep. at 219:22-220:7), the existence of this 2024 Create Account page does not provide adequate foundation to establish that Griffith was required to agree to Rite Aid's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly mention the TikTok Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Griffith admitted to creating an account at some point, and the Ride Aid Privacy |

| | | |
|---|---|---|
| | | Policy she would have agreed to explicitly discloses that its website would collect and share "personal information" with third-parties without limitation. JAE Exs. 2, 33, 45. It is therefore plainly relevant to whether Griffith consented to data collection. FRE 402. |
| Plaintiffs | Fact No. 47 in JAF: When Griffith created her Rite Aid account, she was required to agree to Rite Aid's Terms of Use and Privacy Policy (citing Rite Aid 2019 Privacy Policy, JAE Ex. 45). | O: The Rite Aid 2019 Privacy Policy is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; The existence of this Privacy Policy in 2019 does not provide adequate foundation to establish that Griffith was required to agree to Rite Aid's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the Rite Aid 2019 Privacy Policy was enacted before TikTok made the Pixel publicly available in or around January 2020, and could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402]. |

| | | |
|---|---|---|
| | | R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Griffith admitted to creating an account at some point, and the Ride Aid Privacy Policy she would have agreed to explicitly discloses that its website would collect and share "personal information" with third-parties without limitation going forward. JAE Exs. 2, 33, 45. It is therefore plainly relevant to whether Griffith consented to data collection regardless of whether the Pixel was then publicly available. FRE 402. |
| Plaintiffs | <u>Fact No. 48 in JAF</u>: Rite Aid's Privacy Policy informed visitors that it would "collect | O: The Rite Aid 2019 Privacy Policy is a screenshot taken from the Wayback Machine (i.e. |

| | | |
|---|---|---|
| | personal information" and "information about your viewing, search and purchase history and information about the referring URL and the URL clickstream" and "share personal information with third parties who perform services on our behalf" (citing Rite Aid 2019 Privacy Policy, JAE Ex. 45). | archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; The existence of this Privacy Policy in 2019 does not provide adequate foundation to establish that any specific plaintiff was required to agree to Rite Aid's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the Rite Aid 2019 Privacy Policy was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, |

| | | |
|---|---|---|
| | | 663 F.3d at 667. Griffith admitted to creating an account at some point, and the Ride Aid Privacy Policy she would have agreed to explicitly discloses that its website would collect and share "personal information" with third-parties without limitation going forward. JAE Exs. 2, 33, 45. It is therefore plainly relevant to whether Griffith consented to data collection regardless of whether the Pixel was then publicly available. FRE 402. |
| Plaintiffs | <u>Fact No. 49 in JAF</u>: Rite Aid's Privacy Policy informed visitors that it may deploy "cookies, beacons, pixel tags, mobile ad identifiers, and similar technology" and "use certain cookies known as 'Third Party Targeting Cookies' as well as other advertising techniques to share limited identifying information including Online User Activity with advertising partners to provide you with advertising | O: The Rite Aid 2023 Privacy Policy is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 6), and is not properly authenticated by a knowledgeable witness [FRE 901]; The existence of this Privacy Policy in 2023 does not provide adequate foundation to establish that any specific plaintiff was required to agree to Rite Aid's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not |

| | | |
|---|---|---|
| | about products and services tailored to your interests" (citing Rite Aid 2023 Privacy Policy §§10(A)(1); 1(D), JAE Ex. 34). | expressly mention the TikTok Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 6 JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Griffith admitted to creating an account at some point, and the Ride Aid Privacy Policy she would have agreed to explicitly discloses that its website would collect and share "personal information" with third-parties without limitation. JAE Exs. 2, 33, 45. It is therefore plainly relevant to whether Griffith consented to data collection regardless of whether the Pixel or Events API |

| | | |
|---|---|---|
| | | was specifically mentioned. FRE 402. |
| Plaintiffs | <u>Fact No. 50 in JAF</u>: Griffith was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts (citing Hulu 2019 Sign Up page at 1, JAE Ex. 35). | O: The 2019 Sign Up page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 7), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2019 Sign Up page does not provide adequate foundation to establish that Griffith was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2019 Sign Up page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 7, JAE Ex. 31; *Iglesia Ni* |

| | | |
|---|---|---|
| | | *Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether Griffith was required to agree to Hulu's Privacy Policy when she created her accounts is relevant because the Policy explicitly discloses that Hulu would collect and share "information collected from or about users with third parties" without limitation. JAE Exs. 37-40. If she agreed to that, she expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | <u>Fact No. 50 in JAF</u>: Griffith was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts (citing Hulu 2020 Sign Up page at 1, JAE Ex. 36). | O: The 2020 Sign Up page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 8), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2020 Sign Up page does not provide adequate foundation to |

| | | |
|---|---|---|
| | | establish that Griffith was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly mention the TikTok Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 8, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether Griffith was required to agree to Hulu's Privacy Policy when she created her accounts is relevant because the Policy explicitly discloses that Hulu would collect and share "information collected from or about users with third parties" |

| | | |
|---|---|---|
| | | without limitation. JAE Exs. 38-40. If she agreed to that, she expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | <u>Fact No. 50 in JAF</u>: Griffith was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts (citing Hulu 2023 Create Account at 1, JAE Ex. 48). | O: The 2023 Create Account page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2023 Create Account page does not provide adequate foundation to establish that Griffith was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly mention the TikTok Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. |

| | | |
|---|---|---|
| | | Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 5, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether Griffith was required to agree to Hulu's Privacy Policy when she created her accounts is relevant because the Policy explicitly discloses that Hulu would collect and share "information collected from or about users with third parties" without limitation. JAE Exs. 38-40. If she agreed to that, she expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | Fact No. 50 in JAF: Griffith was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts | O: The 2019 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 10), and is not properly authenticated by a knowledgeable witness [FRE 901]; |

| | | |
|---|---|---|
| | (citing Hulu 2019 Privacy Policy §1, JAE Ex. 38). | the existence of this 2019 Privacy Policy page does not provide adequate foundation to establish that Griffith was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2019 Privacy Policy was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402]; this document does not expressly mention the TikTok Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 10, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, |

| | | |
|---|---|---|
| | | 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether Griffith was required to agree to Hulu's Privacy Policy when she created her accounts is relevant because the Policy explicitly discloses that Hulu would collect and share "information collected from or about users with third parties" without limitation. JAE Exs. 38-40. If she agreed to that, she expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | Fact No. 50 in JAF: Griffith was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts citing Griffith Dep. 132:8-11, JAE Ex. 2). | O: The cited testimony of Griffith states only that she has seen the wording of *a* privacy policy (not specifically Hulu's) (*id*. at 132:8-11), and because it does not provide adequate foundation to establish that she was required to agree to Hulu's Terms of Use and Privacy Policy, it is thus not relevant [FRE 402/602]. |

| | | |
|---|---|---|
| | | R: The cited testimony establishes that Griffith recalls seeing and agreeing to "privacy policies." Griffith Dep. Tr. 132, JAE Ex. 2. In conjunction with JAE Exs. 35-40, they collectively establish that Griffith was required to and did agree to Hulu's Privacy Policy when she created her accounts. That is plainly relevant to whether she consented to sharing her data because the Policy explicitly discloses that Hulu would collect and share "information collected from or about users with third parties" without limitation. FRE 402. |
| Plaintiffs | <u>Fact No. 50 in JAF</u>: Griffith was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts (citing Griffith November 2023 Hulu Report at 1, JAE Ex. 13). | O: The existence of a Hulu Report does not provide adequate foundation to establish that Griffith was required to agree to Hulu's Terms of Use and Privacy Policy; it is thus not relevant [FRE 402/602].<br><br>R: The existence of this Hulu report confirms that Griffith created a Hulu account in November 2023. *Id*. at 1, JAE Ex. 13. In |

| | | |
|---|---|---|
| | | conjunction with JAE Exs. 35-40, these exhibits collectively establish that Griffith was required to and did agree to Hulu's Privacy Policy when she created her accounts. That is plainly relevant to whether she consented to sharing her data because the Policy explicitly discloses that Hulu would collect and share "information collected from or about users with third parties" without limitation. FRE 402. |
| Plaintiffs | <u>Fact No. 50 in JAF</u>: Griffith was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts (citing Griffith April 2023 Hulu Report at 1, JAE Ex. 14). | O: The existence of a Hulu Report does not provide adequate foundation to establish that Griffith was required to agree to Hulu's Terms of Use and Privacy Policy; it is thus not relevant [FRE 402/602].<br><br>R: The existence of this Hulu report confirms that Griffith created a Hulu account. *Id*. at 1, JAE Ex. 14. In conjunction with JAE Exs. 35-40, these exhibits collectively establish that Griffith was required to and did agree to Hulu's Privacy Policy when she created her |

| | | |
|---|---|---|
| | | accounts. That is plainly relevant to whether she consented to sharing her data because the Policy explicitly discloses that Hulu would collect and share "information collected from or about users with third parties" without limitation. FRE 402. |
| Plaintiffs | <u>Fact No. 50 in JAF</u>: Griffith was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts (citing Griffith 2020 Hulu Report at 1, JAE Ex. 15). | O: The existence of a Hulu Report does not provide adequate foundation to establish that Griffith was required to agree to Hulu's Terms of Use and Privacy Policy; it is thus not relevant [FRE 402/602].<br><br>R: The existence of this Hulu report confirms that Griffith created a Hulu account. *Id*. at 1, JAE Ex. 15. In conjunction with JAE Exs. 35-40, these exhibits collectively establish that Griffith was required to and did agree to Hulu's Privacy Policy multiple times when she created her accounts. That is plainly relevant to whether she consented to sharing her data because the Policy explicitly discloses that Hulu would collect |

| | | |
|---|---|---|
| | | and share "information collected from or about users with third parties" without limitation. FRE 402. |
| Plaintiffs | Fact No. 51 in JAF: Shih was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts (citing Hulu 2010 Create Account at 1, JAE Ex. 46). | O: The 2010 Create Account page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2010 Create Account page does not provide adequate foundation to establish that Shih was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2010 Create Account page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. |

| | | |
|---|---|---|
| | | Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 5, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether Griffith was required to agree to Hulu's Privacy Policy when she created her accounts is relevant because the Policy explicitly discloses that Hulu would collect and share "information collected from or about users with third parties" without limitation. JAE Exs. 38-40. If she agreed to that, she expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | <u>Fact No. 51 in JAF</u>: Shih was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts (citing Hulu | O: The 2012 Create Account page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of |

| | | |
|---|---|---|
| | 2012 Create Account at 1, JAE Ex. 47). | this 2012 Create Account page does not provide adequate foundation to establish that Shih was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2012 Create Account page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. See Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 6, JAE Ex. 44; Iglesia Ni Cristo, 2020 WL 1531349, at *4; McGucken, 2022 WL 2101725, at *3; EVO Brands, LLC, 657 F. Supp. 3d at 1322–23; Gramalegui, 2017 WL 2570022, at *4; Bansal, 663 F.3d at 667. Whether Shih was required to agree to Hulu's Privacy Policy when she created her |

| | | |
|---|---|---|
| | | accounts is relevant because the Policy explicitly discloses that Hulu would collect and share personal information about users with third parties without limitation. JAE Exs. 37-40. If she agreed to that, she expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | Fact No. 51 in JAF: Shih was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts (citing Shih Hulu Report, JAE Ex. 18 at 1). | O: The existence of a Hulu Report does not provide adequate foundation to establish that she was required to agree to Hulu's Terms of Use and Privacy Policy, it is thus not relevant [FRE 402/602]; the Hulu Report concerned a report indicating that it was created and cancelled in 2019, before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: The existence of this Hulu report confirms that Shih created a Hulu |

| | | |
|---|---|---|
| | | account. *Id*. at 1, JAE Ex. 18. In conjunction with JAE Exhibits 35-40 & 46-47, these exhibits collectively establish that Shih was required to and did agree to Hulu's Privacy Policy when she created her accounts. That is plainly relevant to whether she consented to sharing her data because the Policy explicitly discloses that Hulu would collect and share her data with third-party advertisers without limitation, regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | Fact No. 51 in JAF: Shih was required to agree to Hulu's Terms of Use and Privacy Policy when she created her Hulu accounts (citing Shih Dep. at 205:13-206:14, JAE Ex. 5). | O: The cited testimony of Shih states only that she may have had a Hulu account in the 2011 to 2013 time frame, and because it does not provide adequate foundation to establish that she was required to agree to Hulu's Terms of Use and Privacy Policy, it is thus not relevant [FRE 402/602].<br><br>R: The cited testimony establishes that Shih used her Hulu account at |

| | | |
|---|---|---|
| | | least in 2013 and likely at other points in time. *Id.* at 205:13-206:14, JAE Ex. 5. In conjunction with JAE Exhibits 35-40 & 46-47, these exhibits collectively establish that Shih was required to and did agree to Hulu's Privacy Policy when she created her accounts. That is plainly relevant to whether she consented to sharing her data because the Policy explicitly discloses that Hulu would collect and share her data with third-party advertisers without limitation. FRE 402. |
| Plaintiffs | <u>Fact No. 52 in JAF</u>: When Shih created her Hulu account in 2011, the Privacy Policy disclosed that "information about you is collected, used and shared," including through "information automatically collected . . . via cookies, web beacons or other technologies" and that Hulu partners with "third party Internet advertising companies" that "use cookies, web beacons, | O: The 2012 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 9), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2012 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; |

| | | |
|---|---|---|
| | and other technologies to collect information about your use of the Hulu Services in order to deliver advertisements to you, measure their effectiveness, and personalize advertising content" (citing Hulu 2012 Privacy Policy ("Information Collected About You" and "Third Party Advertising On Hulu"), JAE Ex. 37). | the 2012 Privacy Policy was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 9, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. It is also plainly relevant because, if Shih agreed to this policy, she explicitly consented to Hulu sharing her data with "third party Internet advertising companies" regardless of whether those companies or third-party tools were then publicly available or specifically mentioned. FRE 402. |

| | | |
|---|---|---|
| Plaintiffs | <u>Fact No. 53 in JAF</u>: Since 2019, Hulu's Privacy Policy disclosed that it collects names, email addresses, birth dates, genders, credit card information, billing addresses, ZIP codes as well as IP addresses, devices, browser and software characteristics (such as type and operating system), locations (which may include precise location data), activity on the Hulu Services including information about the videos users view on Hulu (e.g., show titles and episode names), page views, ad data, referral URLs, network state, device identifiers or other unique identifiers such as advertising identifiers and identifiers associated with browser cookies and shares information collected from or about users with third parties, including business partners, social networking services, service providers, advertisers, | O: The 2019 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 10), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2019 Privacy Policy Page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2019 Privacy Policy was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 10, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; |

| | | |
|---|---|---|
| | and other companies that are not affiliated with Hulu, including for advertising purposes (citing Hulu 2019 Privacy Policy §§2; 4, JAE Ex. 38). | *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff was required to agree to Hulu's Privacy Policy when she created her accounts is relevant because the Policy explicitly discloses that Hulu would collect and share "information collected from or about users with third parties" without limitation. JAE Exs. 37-40. If any Plaintiff agreed to that, they expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | <u>Fact No. 53 in JAF</u>: Since 2019, Hulu's Privacy Policy disclosed that it collects names, email addresses, birth dates, genders, credit card information, billing addresses, ZIP codes as well as IP addresses, devices, browser and software characteristics | O: The 2020 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 11), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2020 Privacy Policy page does not provide adequate foundation to establish |

| | | |
|---|---|---|
| | (such as type and operating system), locations (which may include precise location data), activity on the Hulu Services including information about the videos users view on Hulu (e.g., show titles and episode names), page views, ad data, referral URLs, network state, device identifiers or other unique identifiers such as advertising identifiers and identifiers associated with browser cookies and shares information collected from or about users with third parties, including business partners, social networking services, service providers, advertisers, and other companies that are not affiliated with Hulu, including for advertising purposes (citing Hulu 2020 Privacy Policy §§2; 4, JAE Ex. 39). | that any specific plaintiff was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly incorporate the TikTok Pixel or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 11, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This policy is plainly relevant for whether any Plaintiff consented to data sharing because the Policy explicitly discloses that Hulu would collect and share "information collected from or about users with third parties" without meaningful |

| | | |
|---|---|---|
| | | limitation. JAE Exs. 37-40. If any Plaintiff agreed to that, they expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | <u>Fact No. 53 in JAF</u>: Since 2019, Hulu's Privacy Policy disclosed that it collects names, email addresses, birth dates, genders, credit card information, billing addresses, ZIP codes as well as IP addresses, devices, browser and software characteristics (such as type and operating system), locations (which may include precise location data), activity on the Hulu Services including information about the videos users view on Hulu (e.g., show titles and episode names), page views, ad data, referral URLs, network state, device identifiers or other unique identifiers such as advertising identifiers and | O: The 2023 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 12), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2023 Privacy Policy Page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly incorporate the Pixel or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. |

| | | |
|---|---|---|
| | identifiers associated with browser cookies and shares information collected from or about users with third parties, including business partners, social networking services, service providers, advertisers, and other companies that are not affiliated with Hulu, including for advertising purposes (citing Hulu/Disney 2023 Privacy Policy ("Types of Information We Collect"; "Use Of Your Information By The Walt Disney Family Of Companies"; "Sharing Your Information With Other Entities"), JAE Ex. 40). | Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 12, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This policy is plainly relevant for whether any Plaintiff consented to data sharing because the Policy explicitly discloses that Hulu would collect and share "information collected from or about users with third parties" without meaningful limitation. JAE Exs. 37-40. If any Plaintiff agreed to that, they expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | <u>Fact No. 54 in JAF</u>: Since 2019, Hulu's Privacy Policy disclosed that it uses technologies such as cookies and web beacons or pixel tags, which can be embedded in | O: The 2019 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 10), and is not properly authenticated by a knowledgeable witness [FRE 901]; |

| | | |
|---|---|---|
| | web pages, videos, or emails, to collect certain types of information from users' browsers or devices (citing Hulu 2019 Privacy Policy §2, JAE EX. 38). | the existence of this 2019 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2019 Privacy Policy was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed supra at 14-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 12, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This policy is plainly relevant for whether any |

| | | |
|---|---|---|
| | | Plaintiff, including Griffith and Shih, was aware of, and therefore consented to, data sharing via cookies on Hulu's website because the Policy explicitly discloses that Hulu would use them without limitation. JAE Exs. 37-40. If any Plaintiff agreed to that, they expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | Fact No. 54 in JAF: Since 2019, Hulu's Privacy Policy disclosed that it uses technologies such as cookies and web beacons or pixel tags, which can be embedded in web pages, videos, or emails, to collect certain types of information from users' browsers or devices (citing Hulu 2020 Privacy Policy §2, JAE Ex. 39). | O: The 2020 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 11), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2020 Privacy Policy Page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly incorporate the TikTok Pixel or |

| | | |
|---|---|---|
| | | Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 11, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This policy is plainly relevant for whether any Plaintiff, including Griffith and Shih, was aware of, and therefore consented to, data sharing via cookies on Hulu's website because the Policy explicitly discloses that Hulu would use them without limitation. JAE Exs. 37-40. If any plaintiff agreed to that, they expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly |

| | | |
|---|---|---|
| | | available or specifically mentioned. FRE 402. |
| Plaintiffs | <u>Fact No. 54 in JAF</u>: Since 2019, Hulu's Privacy Policy disclosed that it uses technologies such as cookies and web beacons or pixel tags, which can be embedded in web pages, videos, or emails, to collect certain types of information from users' browsers or devices (citing Hulu/Disney 2023 Privacy Policy ("How We Collect Your Information"), JAE Ex. 40). | O: The 2023 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 12), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2023 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Hulu's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly incorporate the TikTok Pixel or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 12, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at |

| | | |
|---|---|---|
| | | *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This policy is plainly relevant for whether any Plaintiff, including Griffith and Shih, was aware of, and therefore consented to, data sharing via cookies on Hulu's website because the Policy explicitly discloses that Hulu would use them without limitation. JAE Exs. 37-40. If any plaintiff agreed to that, they expressly consented to data sharing regardless of whether the Pixel or Events API were then publicly available or specifically mentioned. FRE 402. |
| Plaintiffs | Fact No. 55 in JAF: Griffith was required to agree to Etsy's Terms of Use and Privacy Policy when she created her Etsy account (citing Griffith Dep. at 132:8-11, JAE Ex. 2). | O: The cited testimony of Griffith states only that she has seen the wording of *a* privacy policy (not specifically Etsy's) (*id*. at 132:8-11), and because it does not provide adequate foundation to establish that she was required to agree to Etsy's Terms of Use and Privacy Policy, it is thus not relevant [FRE 402/602]. |

| | | |
|---|---|---|
| | | R: The cited testimony establishes that Griffith was aware of privacy policies when creating accounts. *Id*. In conjunction with JAE Exhibits 41 & 49-54, these exhibits collectively establish that Griffith was required to and did agree to Etsy's Privacy Policy when she created her accounts. That is plainly relevant to whether she consented to sharing her data here because the Policy explicitly discloses that Etsy will collect and share personal information via automatic tools like cookies with third-parties without limitation. FRE 402. |
| Plaintiffs | <u>Fact No. 55 in JAF</u>: Griffith was required to agree to Etsy's Terms of Use and Privacy Policy when she created her Etsy account (citing Griffith Etsy Profile, JAE Ex. 9). | The existence of Griffith's Esty Profile does not provide adequate foundation to establish that Griffith was required to agree to Etsy's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly mention the TikTok Pixel and/or Events API and is irrelevant [FRE 402]. |

| | | |
|---|---|---|
| | | R: Griffith's Etsy profile, JAE Ex. 9, establishes that she made an Etsy account. *Id*. In conjunction with JAE Exhibits 41 & 49-54, these exhibits collectively establish that Griffith was required to and did agree to Etsy's Privacy Policy and likely aware of it when she created her accounts. That is plainly relevant to whether she consented to sharing her data here because the Policy explicitly discloses that Etsy will collect and share personal information via automatic tools like cookies with third-parties without limitation. FRE 402. |
| Plaintiffs | <u>Fact No. 55 in JAF</u>: Griffith was required to agree to Etsy's Terms of Use and Privacy Policy when she created her Etsy account (citing Etsy 2018 Create Account at 1, JAE Ex. 51). | O: The Etsy 2018 Create Account page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this Create Account page from 2018 does not provide adequate foundation to establish that Griffith was required to agree to Etsy's Terms of Use and Privacy Policy, |

| | | |
|---|---|---|
| | | and is thus not relevant [FRE 402/602]; the 2018 Create Account page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 10, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4;*McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether Griffith was required to agree to Etsy's privacy policy as part of creating her account is plainly relevant because she would have expressly consented to a Policy that explicitly discloses that Etsy will collect and share personal |

| | | |
|---|---|---|
| | | information via automatic tools like cookies with third-parties without limitation. JAE Ex. 41; FRE 402. |
| Plaintiffs | <u>Fact No. 55 in JAF</u>: Griffith was required to agree to Etsy's Terms of Use and Privacy Policy when she created her Etsy account (citing Etsy 2018 Privacy Policy §1, JAE Ex. 52). | O: The Etsy 2018 Privacy Policy is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this Create Account page from 2018 does not provide adequate foundation to establish that Griffith was required to agree to Etsy's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2018 Privacy Policy was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams |

| | | |
|---|---|---|
| | | Decl. ¶¶ 3-4, 10, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This Policy is plainly relevant because it explicitly discloses that Etsy will collect and share personal information via automatic tools like cookies with third-parties without limitation on time or specific third-parties. JAE Ex. 41; FRE 402. It is plainly relevant if Griffith expressly consented to such data sharing regardless of whether the Pixel or Events API were publicly available at that time. FRE 402. |
| Plaintiffs | <u>Fact No. 56 in JAF</u>: Shih was required to agree to Etsy's Terms of Use and Privacy Policy when she created her Etsy account (citing Shih Etsy Account Sign Up Email, JAE Ex. 17). | O: The 2017 email, which says nothing about Etsy's Terms of Use and Privacy Policy, does not provide adequate foundation to establish that Shih was required to agree to Etsy's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2017 email was sent before TikTok made |

| | | |
|---|---|---|
| | | the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: This email establishes that Shih made an Etsy account in 2017. JAE Ex. 17. In conjunction with JAE Exhibits 41 & 49-54, these exhibits collectively establish that Shih was required to and did agree to Etsy's Privacy Policy and likely aware of it when she created her accounts. That is plainly relevant to whether she consented to sharing her data here because the Policy explicitly discloses that Etsy will collect and share personal information via automatic tools like cookies with third-parties without limitation. FRE 402. |
| Plaintiffs | <u>Fact No. 56 in JAF</u>: Shih was required to agree to Etsy's Terms of Use and Privacy Policy when she created her Etsy account (citing Etsy 2017 | O: The Etsy 2017 Create Account page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; The 2017 |

| | | |
|---|---|---|
| | Create Account at 1, JAE Ex. 50). | Create Account page does not provide adequate foundation to establish that Shih was required to agree to Etsy's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2017 Create Account page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed supra at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 9, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This document is plainly relevant because it shows that Shih would have had to agree |

| | | |
|---|---|---|
| | | to a Privacy Policy that explicitly discloses that Etsy will collect and share personal information via automatic tools like cookies with third-parties without limitation on time or specific third-parties. JAE Ex. 41; FRE 402. That is express consent to such data sharing regardless of whether the Pixel or Events API were publicly available at that time. FRE 402. |
| Plaintiffs | Fact No. 56 in JAF: Shih was required to agree to Etsy's Terms of Use and Privacy Policy when she created her Etsy account (citing Etsy 2017 Privacy Policy, JAE Ex. 41). | O: The Etsy 2017 Privacy Policy is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; The 2017 Privacy Policy does not provide adequate foundation to establish that Shih was required to agree to Etsy's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2017 Create Account page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel or |

| | | |
|---|---|---|
| | | Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at p. 14-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 8, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This document is plainly relevant because it shows that Shih would have agreed to a Privacy Policy that explicitly discloses that Etsy will collect and share personal information via automatic tools like cookies with third-parties without limitation on time or specific third-parties. JAE Ex. 41; FRE 402. That is express consent to such data sharing regardless of whether the Pixel or Events API were publicly available at that time. FRE 402. |

| | | |
|---|---|---|
| Plaintiffs | <u>Fact No. 57 in JAF</u>: Watters was required to agree to Etsy's Terms of Use and Privacy Policy when he created his Etsy account (citing Watters Dep. 66:17-24; 76:5-25, 91:13-20; 93:22-94:4, JAE Ex. 7). | O: The cited testimony of Watters states that he recalls seeing "the standard terms and conditions that every website makes you agree to when you sign up" (Watters Dep. 66:17-24); but did not recall reviewing the 2020 Privacy Policy (Watters Dep. 67:19-22); he did a "quick skim" of the language he saw at the time his account was made (*id*. at 76:5-25); he knew data "was being shared with third parties, but not explicitly what third parties" (*id*. at 91:13-20); and that Etsy's terms "state that they will share with other third parties. They don't state what third parties those will be" (*id*. at 93:22-94:4), and because of the ambiguity of his testimony above, it does not provide adequate foundation to establish that he was required to agree to Etsy's Terms of Use and Privacy Policy, it is thus not relevant [FRE 402/602].<br><br>R: The cited testimony establishes that Watters was aware that Etsy's |

| | | |
|---|---|---|
| | | privacy policy explicitly stated that it will share users' data "with other third parties." *Id*. In conjunction with JAE Exhibits 41 & 49-54, these exhibits collectively establish that Watters was required to and did agree to Etsy's Privacy Policy when she created her accounts. That is plainly relevant to whether she consented to sharing her data here because the Policy explicitly discloses that Etsy will collect and share personal information via automatic tools like cookies with third-parties without limitation. FRE 402. |
| Plaintiffs | <u>Fact No. 57 in JAF</u>: Watters was required to agree to Etsy's Terms of Use and Privacy Policy when he created his Etsy account (citing Etsy 2020 Sign In, JAE Ex. 49). | O: The Etsy 2020 Sign In page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this Sign In page from 2020 does not provide adequate foundation to establish that Watters was required to agree to Etsy's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; this document does |

| | | |
|---|---|---|
| | | not expressly mention the TikTok Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed supra at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 8, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This document is plainly relevant because it shows that Watters would have agreed to a Privacy Policy (that he testified he was aware of) that explicitly discloses that Etsy will collect and share personal information via automatic tools like cookies with third-parties without limitation on time or specific third-parties. JAE Ex. 41; FRE 402. That is express consent to such data sharing regardless of whether the Pixel or |

| | | |
|---|---|---|
| | | Events API were publicly available at that time. FRE 402. |
| Plaintiffs | Fact No. 58 in JAF: In 2017, Etsy's Privacy Policy explained that "Etsy automatically receives and records … your IP address or unique device identifier, cookies and data about which pages you visit on the Site or on the Apps and stores it in log files" and that Etsy "may combine this automatically collected information with other information we collect about you" and use it "with certain third-party service providers for targeted online and offline marketing" (citing Etsy 2017 Privacy Policy ("Information Collected or Received"), JAE Ex. 41). | O: The 2017 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 13), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2017 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Etsy's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2017 Privacy Policy page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. |

| | | |
|---|---|---|
| | | ¶¶ 3-4, 13, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This document is plainly relevant because it shows that any Plaintiffs with an Etsy account agreed to Privacy Policy that explicitly discloses that Etsy will collect and share personal information via automatic tools like cookies with third-parties without limitation on time or specific third-parties. JAE Ex. 41; FRE 402. That is express consent to such data sharing regardless of whether the Pixel or Events API were publicly available at that time. FRE 402. |
| Plaintiffs | <u>Fact No. 59 in JAF</u>: Etsy's 2017 Privacy Policy disclosed that "certain cookies and other tracking mechanisms on our site are used by third parties for targeted online marketing and other purposes" (Etsy | O: The 2017 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 13), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2017 Privacy |

| | | |
|---|---|---|
| | 2017 Privacy Policy ("Information Uses, Sharing & Disclosure"), JAE Ex. 41). | Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Etsy's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2017 Privacy Policy page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 13, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This document is plainly relevant because it shows that any Plaintiffs with an Etsy |

| | | |
|---|---|---|
| | | account agreed to Privacy Policy that explicitly discloses that Etsy will collect and share personal information via automatic tools like cookies with third-parties without limitation on time or specific third-parties. JAE Ex. 41; FRE 402. That is express consent to such data sharing regardless of whether the Pixel or Events API were publicly available at that time. FRE 402. |
| Plaintiffs | <u>Fact No. 60 in JAF</u>: In 2018, Etsy updated its privacy policy to add that "[i]f you don't want us to collect or process your personal information in the ways described in this policy, you shouldn't use the Services" (citing Etsy 2018 Privacy Policy §1, JAE Ex. 52). | O: The 2018 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2018 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Etsy's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2018 Privacy Policy page was enacted before TikTok made the Pixel publicly available in or around January 2020, and |

| | | |
|---|---|---|
| | | therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 11, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This document is plainly relevant because it shows that any Plaintiffs with an Etsy account that continued to use their account after the 2018 update continued to agree to a Privacy Policy that explicitly discloses that Etsy will collect and share users' personal information. JAE Ex. 41; FRE 402. If they continued to use Etsy, they impliedly, if not expressly, consented to such data sharing |

| | | |
|---|---|---|
| | | regardless of whether the Pixel or Events API were publicly available at that time. FRE 402. |
| Plaintiffs | <u>Fact No. 61 in JAF</u>: Etsy's 2020 Privacy Policy also stated that "Etsy automatically receives and records … your IP address or unique device identifier, cookies and data about which pages you visit on the Site or on the Apps and stores it in log files" and that Etsy "may combine this automatically collected information with other information we collect about you" and use it "with certain third-party service providers for targeted online and offline marketing" (citing Etsy 2020 Privacy Policy §2, JAE Ex. 53). | O: The existence of this 2020 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Etsy's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402/602]; the 2020 Privacy Policy page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed supra at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 12, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; |

| | | |
|---|---|---|
| | | *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This document is plainly relevant because it shows that any Plaintiffs with an Etsy account agreed to a Privacy Policy that explicitly discloses that Etsy will collect and share users' personal information. JAE Ex. 41. They therefore consented to such data sharing regardless of whether the Pixel or Events API were publicly available at that time. FRE 402. |
| Plaintiffs | <u>Fact No. 62 in JAF</u>: Etsy's 2020 Privacy Policy likewise stated that "certain cookies and other similar technologies on the Site are used by third parties for targeted online marketing and other purposes" and that "[i]f you don't want us to collect or process your personal information in the ways described in this policy, you shouldn't use the Services" (citing Etsy 2020 Privacy Policy §6, JAE Ex. 53). | O: The existence of this 2020 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Etsy's Terms of Use and Privacy Policy, and is thus not relevant [FRE 402]; the 2020 Privacy Policy page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402]. |

| | | |
|---|---|---|
| | | R: As discussed *supra* at p. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 12, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This document is plainly relevant because it shows that any Plaintiffs with an Etsy account that continued to use their account after 2020 continued to agree to a Privacy Policy that explicitly discloses that Etsy will collect and share users' personal information. JAE Ex. 53. If they continued to use Etsy, they impliedly, if not expressly, consented to such data sharing regardless of whether the Pixel or Events API were publicly available. FRE 402. |
| Plaintiffs | <u>Fact No. 63 in JAF</u>: Shih was required to agree to Upwork's | O: The 2024 Create Account page is a screenshot taken from the |

| | | |
|---|---|---|
| | Privacy Policy when creating her Upwork accounts (citing Upwork 2024 Create Account, JAE Ex. 42). | Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 14), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this Create Account page from 2024 does not provide adequate foundation to establish that Shih was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly mention the TikTok Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed supra at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 14, JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This document is plainly relevant because it shows |

| | | |
|---|---|---|
| | | that Shih was required to agree to Upwork's Privacy Policy when she created her account that explicitly discloses that Upwork will collect and share users' personal information. JAE Exs. 42-43, 54. If so, she expressly consented to such data sharing regardless of whether the Pixel or Events API were specifically mentioned. FRE 402. |
| Plaintiffs | <u>Fact No. 63 in JAF</u>: Shih was required to agree to Upwork's Privacy Policy when creating her Upwork accounts (citing Shih Upwork Account Creation Email, JAE Ex. 19). | O: The existence of this email does not provide adequate foundation to establish that Shih was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly mention the TikTok Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: The existence of this email establishes that Shih created an upwork account. In conjunction with JAE Ex. 42, this document shows that Shih was required to and did agree to Upwork's Privacy Policy that explicitly discloses that Upwork will collect and share |

| | | |
|---|---|---|
| | | users' personal information. JAE Exs. 42-43, 54. If so, Shih expressly consented to such data sharing regardless of whether the Pixel or Events API were directly mentioned. It is relevant under any standard. FRE 402. |
| Plaintiffs | Fact No. 63 in JAF: Shih was required to agree to Upwork's Privacy Policy when creating her Upwork accounts (citing Shih Upwork Privacy Policy Update Email, JAE Ex. 20). | O: The existence of this email does not provide adequate foundation to establish that Shih was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly mention the TikTok Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: The existence of this email establishes that Shih created an Upwork account and received an update about Upwork's privacy policy. In conjunction with JAE Ex. 42, this document shows that Shih was aware of Upwork's Privacy Policy that explicitly discloses that Upwork will collect and share users' personal information. JAE Exs. 42-43. Since |

| | | |
|---|---|---|
| | | Shih continued to use the service, Shih both impliedly and expressly consented to such data sharing regardless of whether the Pixel or Events API were directly mentioned. It is therefore plainly relevant. FRE 402. |
| Plaintiffs | <u>Fact No. 63 in JAF</u>: Shih was required to agree to Upwork's Privacy Policy when creating her Upwork accounts (citing Shih Dep. at 162:5-165:4, JAE Ex. 5). | O: The cited testimony of Shih states only that, when questioned about privacy policies generally and not specific to Upwork, she has "glanced over" privacy policies in the past and she will check the box and sign up for an account "if that is a necessary process to sign up for the account" (Shih Dep. at 162:5-165:4); and because it does not provide adequate foundation to establish that she was required to agree to Upwork's Privacy Policy, it is thus not relevant [FRE 402/602].<br><br>R: The cited testimony shows that Shih glanced over privacy policies like Upwork's and will agree to them as a general matter. In conjunction with JAE Exs. 42-43 & |

| | | |
|---|---|---|
| | | 54, this document shows that Shih was aware of Upwork's Privacy Policy that explicitly discloses that Upwork will collect and share users' personal information and was required to agree to it. JAE Exs. 42-43, 54. If so, Shih both impliedly and expressly consented to such data sharing regardless of whether the Pixel or Events API were directly mentioned. It is therefore plainly relevant. FRE 402. |
| Plaintiffs | Fact No. 64 in JAF: Watters was required to agree to Upwork's Privacy Policy when creating his Upwork accounts (citing Watters Dep. at 138:1-139:11, JAE Ex. 7). | O: The cited testimony of Watters states only that he accessed Upwork "either early 2018 or sometime in mid-2020" and doesn't recall if he "ever held and account" (Watters Dep. at 138:1-139:11), and because it does not provide adequate foundation to establish that he was required to agree to Upwork's Privacy Policy, it is thus not relevant [FRE 402/602].<br><br>R: The cited testimony shows that Watters accessed Upwork. Watters Dep. at 138:1-139:11, JAE Ex. 7. In conjunction with JAE Exs. 42-43 & |

| | | |
|---|---|---|
| | | 54, this document shows that Watters accessed Upwork and was therefore required to agree to a privacy policy that explicitly discloses that Upwork will collect and share users' personal information and was required to agree to it. JAE Exs. 42-43, 54. If so, Watters expressly consented to such data sharing. It is therefore plainly relevant. FRE 402. |
| Plaintiffs | Fact No. 64 in JAF: Watters was required to agree to Upwork's Privacy Policy when creating his Upwork accounts (citing Upwork 2024 Create Account, JAE Ex. 42). | O: The existence of this Create Account page from 2024 does not provide adequate foundation to establish that Watters was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly mention the TikTok Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 14 JAE Ex. 31; *Iglesia Ni* |

| | | |
|---|---|---|
| | | *Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. This document is plainly relevant because it shows that Watters was required to agree to Upwork's Privacy Policy when he created his account and that it explicitly discloses that Upwork will collect and share users' personal information. JAE Exs. 42-43, 54. If so, he expressly consented to such data sharing regardless of whether the Pixel or Events API were specifically mentioned. FRE 402. |
| Plaintiffs | <u>Fact No. 65 in JAF</u>: Upwork's 2018 Privacy Policy notified users that Upwork and its third party service providers may use "both persistent cookies that remain on your computer … and session ID cookies, which expire at the end of your browser session" or "software technology known as 'web | O: The 2018 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 15), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2018 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was |

| | | |
|---|---|---|
| | beacons' and/or 'tracking tags' to help us . . . to serve relevant advertising to you" and its advertisers "may collect certain information about your visits to and activity on the Service . . . they may set and access their own tracking technologies on your device (including cookies and web beacons), and may use that information to show you targeted advertisements" (citing Upwork 2018 Privacy Policy §1, JAE Ex. 43). | required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; the 2018 Privacy Policy page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed supra at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 15 JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection of their data by tracking technologies and "third party service providers" |

| | | |
|---|---|---|
| | | without limitation. JAE Ex. 43; FRE 402. |
| Plaintiffs | <u>Fact No. 66 in JAF</u>: Upwork's 2018 Privacy Policy disclosed that Upwork collected "information that identifies you as a specific individual and can be used to contact or identify you," including "your name, email address, company address, billing address, and phone number" (citing Upwork 2018 Privacy Policy §1, JAE Ex. 43). | O: The 2018 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 15), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2018 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; the 2018 Privacy Policy page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. |

| | | |
|---|---|---|
| | | ¶¶ 3-4, 15 JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection of their personal data/information by Upwork. JAE Ex. 43; FRE 402. |
| Plaintiffs | <u>Fact No. 67 in JAF</u>: Upwork's 2018 Privacy Policy stated that it "may render Personal Information (generally, email address) into a form of Non-Identifying Information referred to … as 'Hashed Information'" (citing Upwork 2018 Privacy Policy §1, JAE Ex. 43). | O: The 2018 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 15), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2018 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; the 2018 Privacy Policy page was enacted before TikTok made the Pixel publicly available in or around |

| | | |
|---|---|---|
| | | January 2020, and therefore this document could not expressly incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 15 JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection of their personal data/information by Upwork in a hashed form. JAE Ex. 43; FRE 402. |
| Plaintiffs | <u>Fact No. 68 in JAF</u>: Upwork's 2018 Privacy Policy notified users that Upwork and its third party service providers may automatically collect | O: The 2018 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 15), and is not properly authenticated by a |

| | | |
|---|---|---|
| | "information commonly shared when browsers communicate with websites" and that it "may otherwise disclose Non-Identifying Information (including, without limitation, Hashed Information) to third parties" (citing Upwork 2018 Privacy Policy §1, JAE Ex. 43). | knowledgeable witness [FRE 901]; the existence of this 2018 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; the 2018 Privacy Policy page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 15 JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any |

| | | |
|---|---|---|
| | | Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection and disclosure of their non-identifying information by Upwork. JAE Ex. 43; FRE 402. |
| Plaintiffs | Fact No. 69 in JAF: Upwork's 2018 Privacy Policy notified users that it and its "third party service providers, including analytics and third party content providers, may automatically collect certain information from you whenever you access or interact with the Service," including "the browser and operating system you are using, the URL or advertisement that referred you to the Service, the search terms you entered into a search engine that led you to the Service, areas within the Service that you visited, and other information commonly shared when browsers communicate with websites. | O: The 2018 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 15), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2018 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; the 2018 Privacy Policy page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402]. |

| | | |
|---|---|---|
| | We may combine this automatically collected log information with other information we collect about you" (citing Upwork 2018 Privacy Policy §1, JAE Ex. 43). | R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 15 JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection and disclosure of their non-identifying information by Upwork, regardless of whether the Pixel or Events API is specifically mentioned. JAE Ex. 43; FRE 402. |
| Plaintiffs | <u>Fact No. 70 in JAF</u>: Upwork's 2018 Privacy Policy disclosed that it "works with (or may in the future work with) network advertisers, ad agencies, analytics service providers and other vendors to provide us with information regarding | O: The 2018 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org) (see JAE Ex. 31, ¶ 15), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2018 Privacy Policy page does not provide |

| | | |
|---|---|---|
| | traffic on the Service," and that these third parties "may collect certain information about your visits to and activity on the Service as well as other websites or services, they may set and access their own tracking technologies on your device (including cookies and web beacons), and may use that information to show you targeted advertisements" (citing Upwork 2018 Privacy Policy §1, JAE Ex. 43). | adequate foundation to establish that any specific plaintiff was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; the 2018 Privacy Policy page was enacted before TikTok made the Pixel publicly available in or around January 2020, and therefore this document could not incorporate the Pixel and/or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Lowe Decl. ¶¶ 3-4, 15 JAE Ex. 31; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection |

| | | |
|---|---|---|
| | | and disclosure of their non-identifying information by Upwork to third parties without limitation, regardless of whether the Pixel or Events API is specifically mentioned. JAE Ex. 43; FRE 402. |
| Plaintiffs | <u>Fact No. 71 in JAF</u>: Upwork's 2022 Privacy Policy similarly stated that its third party service providers may use "both persistent cookies that remain on your computer … and session ID cookies, which expire at the end of your browser session" or "software technology known as 'web beacons' and/or 'tracking tags' to help us . . . to serve relevant advertising to you" and its advertisers "may collect certain information about your visits to and activity on the Service . . . they may set and access their own tracking technologies on your device (including cookies and web beacons), and may use that information to show you | O: The 2022 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2022 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly incorporate the TikTok Pixel or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams |

| | | |
|---|---|---|
| | targeted advertisements" (citing Upwork 2022 Privacy Policy §1; §5, JAE Ex. 54). | Decl. ¶¶ 3-4, 13, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection and disclosure of their non-identifying information by Upwork to third parties without limitation via cookies, regardless of whether the Pixel or Events API is specifically mentioned. JAE Ex. 54; FRE 402. |
| Plaintiffs | <u>Fact No. 72 in JAF</u>: Upwork's 2022 Privacy Policy disclosed that Upwork collected "information that identifies you as a specific individual and can be used to contact or identify you," including "your name, email address, company address, billing address, and phone number" (citing | O: The 2022 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2022 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Upwork's Privacy Policy, and is thus not |

| | | |
|---|---|---|
| | Upwork 2022 Privacy Policy §1, JAE Ex. 54 ). | relevant [FRE 402/602]; this document does not expressly incorporate the TikTok Pixel or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 13, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection and potential disclosure of their personal information by Upwork to third parties in a hashed form without limitation, regardless of whether the Pixel or Events API is specifically mentioned. JAE Ex. 54; FRE 402. |

| | | |
|---|---|---|
| Plaintiffs | <u>Fact No. 73 in JAF</u>: Upwork's 2022 Privacy Policy stated that it "may render Personal Information (generally, email address) into a form of Non-Identifying Information referred to … as 'Hashed Information'" (citing Upwork 2022 Privacy Policy §1, JAE Ex. 54 ). | O: The 2022 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2022 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly incorporate the TikTok Pixel or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 13, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at |

| | | |
|---|---|---|
| | | *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection and potential disclosure of their personal information by Upwork to third parties in a hashed form without limitation, regardless of whether the Pixel or Events API is specifically mentioned. JAE Ex. 54; FRE 402. |
| Plaintiffs | <u>Fact No. 74 in JAF</u>: Upwork's 2022 Privacy Policy also notified users that Upwork and its third party service providers may automatically collect "information commonly shared when browsers communicate with websites" and that it "may otherwise disclose Non-Identifying Information (including, without limitation, Hashed Information) to third parties" (citing Upwork 2022 Privacy Policy §1; §4, JAE Ex. 54). | O: The 2022 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2022 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly incorporate the TikTok Pixel or Events API and is irrelevant [FRE 402]. |

| | | |
|---|---|---|
| | | R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 13, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection and potential disclosure of their personal information by Upwork to third parties in a hashed form without limitation, regardless of whether the Pixel or Events API is specifically mentioned. JAE Ex. 54; FRE 402. |
| Plaintiffs | <u>Fact No. 75 in JAF</u>: Upwork's 2022 Privacy Policy notified users that it and its "third party service providers, including analytics and third party content providers, may | O: The 2022 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of |

| | | |
|---|---|---|
| | automatically collect certain information from you whenever you access or interact with the Service," including "the browser and operating system you are using, the URL or advertisement that referred you to the Service, the search terms you entered into a search engine that led you to the Service, areas within the Service that you visited, and other information commonly shared when browsers communicate with websites. We may combine this automatically collected log information with other information we collect about you" (citing Upwork 2022 Privacy Policy §1, JAE Ex. 54). | this 2022 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly incorporate the TikTok Pixel or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 13, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3 *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection, potential disclosure, and subsequent use of |

| | | |
|---|---|---|
| | | their personal information by Upwork & third parties in a hashed form without limitation. JAE Ex. 54; FRE 402. That unambiguous language is relevant regardless of whether the Pixel or Events API is specifically mentioned. *Id*. |
| Plaintiffs | <u>Fact No. 76 in JAF</u>: Upwork's 2022 Privacy Policy also disclosed that it "works with (or may in the future work with) network advertisers, ad agencies, analytics service providers and other vendors to provide us with information regarding traffic on the Service," and that these third parties "may collect certain information about your visits to and activity on the Service as well as other websites or services, they may set and access their own tracking technologies on your device (including cookies and web beacons), and may use that information to show you targeted advertisements" | O: The 2022 Privacy Policy page is a screenshot taken from the Wayback Machine (i.e. archive.org), and is not properly authenticated by a knowledgeable witness [FRE 901]; the existence of this 2022 Privacy Policy page does not provide adequate foundation to establish that any specific plaintiff was required to agree to Upwork's Privacy Policy, and is thus not relevant [FRE 402/602]; this document does not expressly incorporate the TikTok Pixel or Events API and is irrelevant [FRE 402].<br><br>R: As discussed *supra* at pp. 15-16, the screenshot from the Wayback Machine was sufficiently authenticated. *See* Schnell Sept. |

| | | |
|---|---|---|
| | (citing Upwork 2022 Privacy Policy §5, JAE Ex. 54). | Decl., JAE Ex. 29 ¶ 36; Williams Decl. ¶¶ 3-4, 13, JAE Ex. 44; *Iglesia Ni Cristo*, 2020 WL 1531349, at *4; *McGucken*, 2022 WL 2101725, at *3; *EVO Brands, LLC*, 657 F. Supp. 3d at 1322–23; *Gramalegui*, 2017 WL 2570022, at *4; *Bansal*, 663 F.3d at 667. Whether any Plaintiff agreed to this policy is plainly relevant because they would have consented to the collection, potential disclosure, and subsequent use of their personal information by Upwork & third parties via technologies like cookies without limitation. JAE Ex. 54; FRE 402. That unambiguous language is relevant to the question of consent regardless of whether the Pixel or Events API is specifically mentioned. *Id*. |
| Plaintiffs | <u>Fact No. 92 in JAF</u>: Plaintiffs have not identified any information to which they have exclusive rights that was disclosed to or collected by Defendants through the Pixel | O: Whether "exclusive rights" are relevant here is a legal issue which is not properly within the scope of the JAF (see the Court's Orders re Motions for Summary Judgment, updated 3/1/24 at Sections 2.a.ii |

| | | |
|---|---|---|
| | or Events API (citing Schnell September Report ¶¶ 18, 20, 39-42, 47, 59, 61, JAE Ex. 29). | and 2.c.vi) and is thus not relevant [FRE 402]; to the extent the evidence on this issue of "exclusive rights" does not take into account a user's aggregated data from across various websites, it is incomplete and should be excluded as its potential for prejudice, confusion, and/or waste of time outweigh its probative value [FRE 403].<br><br>R: It is a question of fact whether the data at issue is private and ordinarily not subject to disclosure. *See* Schnell September Report ¶¶ 18, 20, 39-42, 47, 59, 61, JAE Ex. 29. It is also unquestionably relevant whether the data at issue is of the sort ordinarily disclosed through common online activities or if it is sensitive, personally identifying information that is not typically disclosed, regardless of whether it is aggregated. FRE 402. |
| Plaintiffs | <u>Fact No. 94 in JAF</u>: Any information about Plaintiffs that was disclosed to or | O: Whether "exclusive rights" are relevant here is a legal issue which is not properly within the scope of |

| | | |
|---|---|---|
| | collected by the Pixel or Events API is not exclusively controlled by Plaintiffs (Schnell September Report ¶¶ 18, 20-21, 39-42, 47, 59, 61, JAE Ex. 29). | the JAF (see the Court's Orders re Motions for Summary Judgment, updated 3/1/24 at Sections 2.a.ii and 2.c.vi) and is thus not relevant [FRE 402]; to the extent the evidence on this issue of "exclusive rights" does not take into account a user's aggregated data from across various websites, it is incomplete and should be excluded as its potential for prejudice, confusion, and/or waste of time outweigh its probative value [FRE 403].<br><br>R: It is a question of fact whether the data at issue is private and ordinarily not subject to disclosure. *See* Schnell September Report ¶¶ 18, 20, 39-42, 47, 59, 61, JAE Ex. 29. It is also unquestionably relevant whether the data at issue is of the sort ordinarily disclosed through common online activities or if it is sensitive, personally identifying information that is not typically disclosed, regardless of whether it is aggregated. |

| **Objector** | **Evidence** | **Objection (O)/ Response (R)** |
|---|---|---|
| Defendants | <u>Fact No. 22 in JAF:</u> TikTok Pixel collects the following seven categories of data for all events on websites that use the Pixel: (a) Timestamp; (b) IP Address; (c) User Agent; (d) Cookies; (e) URL; (f) "Event Information"; and (g) "Content Information" (collectively, the "Default Data"). (Shafiq Opening Class Cert. Decl. at ¶¶11, 57-65 (JAE Ex. 30); Shafiq Opening Report ¶¶46-51 (JAE Ex. 57, Dkt. 269-44, at 108-13).) | O: Defendants do not object for purposes of this motion as it is immaterial to the fact that there is no evidence that Plaintiffs' sensitive, personally-identifying information was transmitted to Defendants. However, Defendants object to the extent Plaintiffs seek to use this non-dispute as an admission of its truth given the inaccuracies Defendants have previously identified. *See, e.g.*, JAE Ex. 28, ¶ 85.<br><br>R: Defendants do not make evidentiary objections and cite no Federal Rule of Evidence; they instead argue about the significance of the evidence, which they "do not object" to. |
| Defendants | <u>Fact No. 24 in JAF:</u> Defendants have described [redacted] (TIKTOK-BG- | O: Defendants do not object for purposes of this motion as it is immaterial to the fact that there is no evidence that Plaintiffs' sensitive, personally-identifying information was transmitted to Defendants. However, Defendants |

| | | |
|---|---|---|
| | 000151723 at 742 (JAE Ex. 71); Shafiq Class Cert. Reply Decl. ¶ 77 (JAE Ex. 56.)) | object to the extent Plaintiffs seek to characterize the quoted language as an admission that Probabilistic Matching can always match any data to a specific individual. Defendants further object to the extent Plaintiffs seek to characterize the quoted language to suggest that TikTok can ever match data to a non-TikTok user given the potential to confuse or mislead. FRE 403.<br><br>R: Defendants do not make evidentiary objections; they instead argue about the significance of the evidence, which they "do not object" to, under the guise of FRE 403. |
| Defendants | <u>Fact No. 26 in JAF</u>: Defendants' March 28, 2024 and May 21, 2024 sample data confirm that [redacted] (Shafiq SJ Declaration at ¶¶ 8, 31-33 (JAE Ex. 58); Shafiq | O: The expert report and testimony cited by Plaintiffs does not establish that any personally identifying information about Griffith was transmitted to Defendants, let alone in a manner that could be personally tied to her *by Defendants*. Plaintiffs' misleading |

| | | |
|---|---|---|
| | Opening Report at ¶¶ 59, 62 (JAE Ex. 57, Dkt. 269-44, at 120, 122-23); Supplemented Appendix D to Shafiq Opening Report (JAE Ex. 66).) | characterization should be excluded given the potential for prejudice and confusion. FRE 403.<br><br>R: Dr. Shafiq has found data records in the March 28, 2024 and May 21, 2024 sample data [redacted]<br><br>"Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit[.]" *Maples v. 3M Co.*, 2017 WL 10592131, at *3 (C.D. Cal. May 15, 2017) (citation omitted). Defendants do not challenge the competence of Dr. Shafiq to testify about the matters at |

| | | |
|---|---|---|
| | | issue in this proposed fact, and the basis for Dr. Shafiq's opinions are fully explained in his written declarations and reports cited in the proposed fact, as adjusted by Dr. Shafiq's rebuttal report (Dkt. 297-2). |
| Defendants | Fact No. 27 in JAF: Defendants' March 28, 2024 and May 21, 2024 sample data confirm [redacted]. (Shafiq SJ Declaration at ¶¶ 8, 11-30 (JAE Ex. 58); Shafiq Opening Report at ¶¶60, 63 (JAE Ex. 57, Dkt. 269-44, at 121-22, 123-24); Supplemented Appendix D to Shafiq Opening Report (JAE Ex. 66).) | O: The expert report and testimony cited by Plaintiffs does not establish that any personally identifying information about Watters was transmitted to in a manner that could be personally tied to him *by Defendants*. Plaintiffs' misleading characterization should be excluded given the potential for prejudice and confusion. FRE 403.<br><br>R: Dr. Shafiq has found at least one data record in the March 28, 2024 and May 21, 2024 sample data [redacted] |

| | | |
|---|---|---|
| | | "Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit[.]" *Maples v. 3M Co.*, 2017 WL 10592131, at *3 (C.D. Cal. May 15, 2017) (citation omitted). Defendants do not challenge the competence of Dr. Shafiq to testify about the matters at issue in this proposed fact, and the basis for Dr. Shafiq's opinions are fully explained in his written declarations and reports cited in the proposed fact, as adjusted by Dr. Shafiq's rebuttal report (Dkt. 297-2). |
| Defendants | <u>Fact No. 28 in JAF</u>: Defendants' March 28, 2024 and May 21, 2024 sample data confirm [redacted] (Shafiq SJ Declaration at ¶¶ 9, 31, JAE Ex. 58.) | O: For purposes of this motion, Defendants do not dispute that search terms may have been transmitted to TikTok as it is immaterial to the fact that none could be personally tied to Griffith by Defendants. Defendants object to the extent Plaintiffs seek to use this as an admission otherwise as it |

| | | |
|---|---|---|
| | | would be misleading and substantially outweigh any probative value. FRE 403.<br><br>R: Defendants do not make evidentiary objections; they instead argue about the significance of the evidence, which they "do not dispute," under the guise of FRE 403. |
| Defendants | Fact No. 30 in JAF: Defendants' March 28, 2024 and May 21, 2024 sample data confirm [redacted] (Shafiq SJ Declaration at ¶¶ 34-46 (JAE Ex. 58); Shafiq Opening Report at ¶¶ 64-67 (JAE Ex. 57, Dkt. 269-44, at 124-32); Supplemented Appendix R to Shafiq Opening Report (JAE Ex. 67).) | O: The expert report and testimony cited by Plaintiffs does not establish that Defendants collected any sensitive information on any Plaintiff in a manner that was personally identifying. Even if sensitive information were transmitted, Plaintiffs' characterization that it could be tied to Watters specifically has the potential to confuse or mislead that substantially outweighs any probative value. FRE 403.<br><br>R: "Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the |

| | | |
|---|---|---|
| | | factual basis for the opinion is stated in the affidavit[.]" *Maples v. 3M Co.*, 2017 WL 10592131, at *3 (C.D. Cal. May 15, 2017) (citation omitted). Defendants do not challenge the competence of Dr. Shafiq to testify about the matters at issue in this proposed fact, and the basis for Dr. Shafiq's opinions are fully explained in his written declarations and reports cited in the proposed fact, as adjusted by Dr. Shafiq's rebuttal report (Dkt. 297-2). |
| Defendants | <u>Fact No. 31 in JAF</u>: Plaintiffs' browsing history on websites that use the Pixel or EAPI confirm that [redacted]. (Shafiq SJ Declaration at ¶¶ 34-46 (JAE Ex. 58); Shafiq Opening Report at ¶¶ 64-67 (JAE Ex. 57, Dkt. 269-44, at 124-32); Supplemented Appendix R to Shafiq Opening Report (JAE Ex. 67).) | O: The expert report and testimony cited by Plaintiffs does not establish that Defendants collected any sensitive information on any Plaintiff, let alone in a manner that was personally identifying. (Shafiq SJ Declaration at ¶¶ 34-46 (JAE Ex. 58); Shafiq Opening Report at ¶¶ 64-67 (JAE Ex. 57, Dkt. 269-44, at 108-13). Even if sensitive information were transmitted, Plaintiffs' characterization that it could be tied to any Plaintiff specifically has the potential to |

| | | |
|---|---|---|
| | | confuse or mislead that substantially outweighs any probative value. FRE 403.<br><br>R: Defendants violate this Court's order forbidding parties from putting forth substantive legal arguments in the JAO by disputing the final conclusions reached by Plaintiffs' expert, Dr. Shafiq, under the guise of an evidentiary objection. This is a merits disagreement; not an evidentiary objection.<br><br>"Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit[.]" *Maples v. 3M Co.*, 2017 WL 10592131, at *3 (C.D. Cal. May 15, 2017) (citation omitted). Defendants do not challenge the competence of Dr. Shafiq to testify about the matters at issue in this proposed fact, and the basis for Dr. Shafiq's opinions are |

| | | |
|---|---|---|
| | | fully explained in his written declarations and reports cited in the proposed fact, as adjusted by Dr. Shafiq's rebuttal report (Dkt. 297-2). |
| Defendants | <u>Fact No. 33 in JAF</u>: Extrapolating from the March 28, 2024 and May 21, 2024 sample data produced by Defendants, [redacted] (Shafiq SJ Declaration ¶ 10 (JAE Ex. 58).) | O: Defendants do not dispute this fact for purposes of this motion as it is immaterial to the fact that there is no evidence that any sensitive URLs visited by Plaintiffs were transmitted to TikTok in a manner that was personally identifying. However, Defendants object to the extent that Plaintiffs seek to use this as an admission of its truth elsewhere.<br><br>R: Defendants do not make evidentiary objections and cite no Federal Rule of Evidence; they instead argue about the significance of the evidence, which they "do not dispute."<br><br>Per Dr. Shafiq's Rebuttal Report filed with the Court at Dkt. 297-2, Dr. Shafiq has adjusted these probability calculations downward. |

| | | |
|---|---|---|
| | | *See* Dkt. 297-2 at ¶ 56(a) [redacted]. |
| Defendants | <u>Fact No. 44 in JAF</u>: Plaintiffs' expert Dr. Shafiq found, based on his analysis of a sample, that Defendants collect the Default Data from between 97.2% and 100% of websites that use the Pixel. (Shafiq Class Cert. Decl. ¶ 78 (JAE Ex. 30); Shafiq Opening Report ¶ 47 (JAE Ex. 57 Dkt. 269-44, at 110).) | O: Defendants do not dispute this fact for purposes of this motion as it is immaterial to the fact that there is no evidence that sensitive, personally identifying information about Plaintiffs was transmitted to Defendants. However, Defendants object to the extent that Plaintiffs seek to use this as an admission beyond this motion or to the extent Plaintiffs characterize the Default Data as sensitive and personally identifying. FRE 403.<br><br>R: Defendants do not make evidentiary objections; they instead argue about the significance of the evidence, which they "do not dispute," under the guise of FRE |

| | | |
|---|---|---|
| | | 403. Defendants violate this Court's order forbidding parties from putting forth substantive legal arguments in the JAO by arguing about what is or is not "sensitive" and/or "identifying." |
| Defendants | <u>Fact No. 45 in JAF</u>: Pixel source code contains event listeners that are triggered before a webpage has even finished loading, and these event listeners intercept users' mouse movements, keystrokes, and button clicks. (Shafiq Class Cert. Reply Decl. ¶ 100 (JAE Ex. 56); Shafiq SJ Declaration ¶ 51 (JAE Ex. 58).) | O: Defendants do not dispute this fact for purposes of this motion as it is immaterial to the fact that the Pixel does not simultaneously intercept any communications. However, Defendants object to the extent that Plaintiffs seek to use this as an admission beyond this motion.<br><br>R: Defendants do not make evidentiary objections and cite no Federal Rule of Evidence; they argue about the significance of the evidence, which they "do not dispute." Defendants violate this Court's order forbidding parties from putting forth substantive legal arguments in the JAO by arguing that "the Pixel does not simultaneously intercept any communications." |

| | | |
|---|---|---|
| Defendants | Fact No. 46 in JAF: The lapse of time between a website visitor pressing next and the next webpage starting to load is a matter of milliseconds. (Shafiq SJ Declaration ¶¶ 52-55 (JAE Ex. 58).) | O: Whether the lapse of time is "a matter of milliseconds" or something longer is irrelevant to liability for wiretap claims, which requires "contemporaneous" interception by a third party, not one of the parties to a communication subsequently relaying information it has received. FRE 401. To the extent Plaintiffs are implying that computer operations that happen rapidly in sequence are happening contemporaneously, the statement is confusing and misleading. FRE 403.<br><br>R: Defendants violate this Court's order forbidding parties from putting forth substantive legal arguments in the JAO by disputing the final conclusions reached by Plaintiffs' expert, Dr. Shafiq, under the guise of an evidentiary objection. This is a merits disagreement; not an evidentiary objection. |

| | | |
|---|---|---|
| | | "Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit[.]" *Maples v. 3M Co.*, 2017 WL 10592131, at *3 (C.D. Cal. May 15, 2017) (citation omitted). Defendants do not challenge the competence of Dr. Shafiq to testify about the matters at issue in this proposed fact, and the basis for Dr. Shafiq's opinions are fully explained in his written declarations and reports cited in the proposed fact. |
| | | |

Dated: October 15, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Victor Jih*

*Counsel for Defendants*
TikTok Inc. and ByteDance Inc.

Dated: October 15, 2024

GLANCY PRONGAY & MURRAY LLP

By: /s/ Gregory B. Linkh

*Counsel for Plaintiffs*
Bernadine Griffith, Patricia Shih, and Jacob Watters

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On October 15, 2014, I served true and correct copies of the foregoing document, by causing to be posted the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 15, 2024, at Brooklyn, NY.

*/s/ Gregory B. Linkh*
Gregory B. Linkh