Ekwan E. Rhow (CA SBN 174604)
erhow@birdmarella.com
Marc E. Masters (CA SBN 208375)
mmasters@birdmarella.com
Christopher J. Lee (CA SBN 322140)
clee@birdmarella.com
BIRD, MARELLA, RHOW,
LINCENBERG, DROOKS &
NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
GLANCY PRONGAY & MURRAY, LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
gpark@susmangodfrey.com

John W. McCauley (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jmccauley@susmangodfrey.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNADINE GRIFFITH, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TIKTOK, INC, a corporation; BYTEDANCE, INC., a corporation,<br><br>Defendants. | Case No. 5:23-cv-00964-SB-E<br><br>**DISCOVERY MATTER**<br><br>**SUPPLEMENTAL MEMORANDUM ISO PLAINTIFFS' MOTION TO ENFORCE COURT ORDER COMPELLING PRODUCTION OF SOURCE CODE**<br><br>**PUBLIC REDACTED VERSION**<br><br>Magistrate Judge: Hon. Charles Eick<br>Date: November 1, 2024<br>Time: 9:30 AM<br>Place: Ctrm. 750<br><br>Action Filed:   May 26, 2023<br>Trial Date:     January 21, 2025 |

Defendants claim in the Joint Stipulation there was "no reason" for this motion. Dkt. 292-1 at 2. But clearly there is: The Court ordered Defendants to produce "all current and historical source code . . . responsive to Requests for Production Nos. 75 and 83." Dkt. 130 ("April 8 Order"). That includes source code for "any software used to process, store, and/or use" non-TikTok users' data collected by Defendants. Dkt. 292-1 at 3-4. The limited source code made available by Defendants to date is incomplete; it does not show the full picture of how they process, store, and use unmatched data.[1] Defendants were ordered to produce **all** the responsive source code but have failed to do so. And documents produced by Defendants since Plaintiffs served their portion of the Joint Stipulation reveal that their noncompliance was more far-reaching than Plaintiffs initially suspected.

**Defendants' Failure to Comply**: On October 10, 2024, the same day that Defendants were required to serve their portion of the Joint Stipulation, they informed Plaintiffs for the first time that they "conducted an investigation and determined that the [████████████████████████████████] are not responsive to Plaintiffs' discovery requests or the Court's April 8 Order. However, Defendants will make these additional repositories available for inspection as well and have already started the process of doing so." Ex. 11.[2] On October 17, Defendants informed Plaintiffs that those two repositories would be available for inspection starting on October 24. *Id*.

This belated response is deficient. Defendants' argument that the code repositories identified by Plaintiffs are "not responsive to Plaintiffs' discovery requests or the Court's April 8 Order" is a meritless attempt to shift the burden of identifying the relevant source code repositories from Defendants themselves to Plaintiffs. So is their bald assertion—with no declaration or substantiation—that

---

[1] Defendants refer to non-TikTok user data as "unmatched data"—*i.e.* data that was not matched to a known TikTok user. This memo uses the terms interchangeably.

[2] The exhibit numbers to the Park Declaration filed with this memorandum pick up where exhibits to the McCauley Declaration, Dkt. 290-2, left off.

1

"[t]he two repositories that Plaintiffs claim are missing do not contain code that processes, stores, or uses non-TikTok user data." Dkt. 292-1 at 3. ***It is not and cannot be Plaintiffs' burden to identify for Defendants which of Defendants' own repositories contain the relevant source code, nor do Plaintiffs have any ability to do so.***[3] When Defendants failed to abide by the April 8 Order to produce relevant source code, Plaintiffs made their best effort, using the information they had, to provide Defendants with specific repositories that appear to contain the missing source code. *See* Martens Decl. (Dkt. 292-2) at ¶¶ 10-12. But Plaintiffs' expert acknowledged that the source code may reside in other repositories known only to Defendants. *Id.* at ¶ 13.

Defendants were ordered to produce all historical and current source code showing all the ways they process, store, and use unmatched data. If Plaintiffs' attempt to identify the relevant repositories was incorrect, the burden remains on Defendants to identify which of their own repositories do contain the relevant code. Defendants are the owners of the source code and the party with exclusive knowledge about how their current and historical code is organized. Defendants cannot avoid their obligations by forcing Plaintiffs to guess where Defendants keep the relevant code and, if Plaintiffs cannot accurately do so given the limited information at their disposal, by then pretending that their obligation to comply with the Court's Order vanishes.

For all their rhetoric about how they "complied with this Court's April 8, 2024 source code order," Dkt. 292-1 at 2, notably missing from Defendants' response is a declaration or any substantive explanation of how and why they believe they are in compliance. What steps did Defendants take to identify historical and current source code for software that shows how they process, store, and use non-TikTok user data? How was the small set of source code that they made available for inspection, over a

---

[3] As Plaintiffs successfully argued in their original motion to compel, "it is Defendants' obligation to conduct a diligent search of its own code library, identify the relevant portions, and produce them. Plaintiffs cannot do this work for them, as Plaintiffs do not have access to Defendants' code library." Dkt 120-2 at 15.

month after the Court's deadline for production, selected? Why was other source code excluded? Why did they produce source code "where software functions were called, as a next step in TikTok's data-processing pipeline, but those functions were not present in the produced source code"? *See* Martens Decl. ¶ 10. Without any such explanation, Defendants' bare assertion of compliance is insufficient.

Also missing from Defendants is any response to Plaintiffs' request for "any other source code responsive to Plaintiffs' requests for production 75 and 83." Dkt. 292-1 at 14. Defendants merely assert that the two repositories identified by Plaintiffs' experts allegedly do not contain the missing source code, without even addressing Defendants' failure to produce other repositories that ***do*** contain the relevant code. Again, this is an improper attempt to turn discovery into "a game of hide-and-seek." *Hogue v. Fruehauf Corp.*, 151 F.R.D. 635, 639 (C.D. Ill. 1993).

**Design Documents:** The limited source code that Defendants did make available contained numerous references to software-design documents. Martens Decl. ¶ 11(c). Design documents like these are common in software development and help explain the source code. But Defendants claim they need not produce them because "[d]esign documents are not source code." Dkt. 292-1 at 13. Defendants overlook that Plaintiffs' request for "computer code" in RFP 83 was defined to include, in addition to the code itself, a request to "also produce English-language pseudocode corresponding to and describing the logic implemented by the computer code." Dkt. 290-6 at 9. Design documents that explain or describe the logic of Defendants' source code are responsive to Plaintiffs' request and should be produced.

**Source Code Concerning ▇▇▇:** Documents that Defendants withheld from production until the very last week of discovery, *see* Park Decl. ¶ 4, reveal yet more uses of unmatched data about which Defendants should have produced source code.

Nearly a year ago, at the onset of discovery, Plaintiffs served discovery requests about Pangle, a product that "Defendants market as 'the ad network of TikTok for Business,' and tout that it 'enables advertisers to effectively reach broad

1  audiences by running ads in placements on 3rd party apps.'" *See* Second Amended
2  Compl. (Dkt. 137) at ¶ 62. In short, via Pangle, "Defendants now develop and market
3  products that display ads to non-TikTok users." *Id.* In response to Plaintiffs'
4  discovery requests, Defendants refused to produce relevant discovery and claimed
5  that "unmatched Pixel and Events API data is not used for any Pangle or GAB
6  purpose." Ex. 15 (counsel representation); *see also* Ex. 14 at 6 (verified interrogatory
7  response stating that "TikTok will not respond to this Interrogatory except to state
8  that TikTok does not use unmatched Pixel or Events API data for any purposes
9  relating to Pangle or Global App Bundle.").

Documents produced on October 9, 2024 (two days before the close of fact discovery) ██████████████. One internal chat thread among Defendants' employees about ██████████████

██████████████

██████████████

██████████████ [sic]" Ex. 12 at -271. Another employee chimes in: ██████████████

██████████████ *Id.* at -273.

In a second document, an employee confirms that Defendants ██████

██████████████

██████████████ Ex. 13 at -865. Yet another: ██████

██████████████

██████ *Id.* And another:

██████████████

4

1  *Id.* (annotation added). ████████████████████████████
2  ████████████████████████████████████████
3  ████████████████████████████—notwithstanding internal
4  acknowledgement that ████████████████████████████
5  This is yet another use of unmatched data for which Defendants should have searched
6  for, identified, and produced the relevant source code.

7  (Of course, in addition to source code showing how unmatched data is ██
8  ██████, Defendants also should have responded to Plaintiffs' properly served
9  interrogatories and RFPs on Pangle. Instead, they represented that Pangle is not
10 relevant to this case, when it clearly is, and then attempted to run out the clock on
11 Plaintiffs' ability to seek relief regarding Pangle by withholding documents revealing
12 its relevance until the last week of fact discovery. "Our discovery system depends in
13 large part on self-reporting," and Defendants have not complied with their
14 "obligation to respond accurately and fully." *Hogue*, 151 F.R.D. at 639.)

15 **Requested Relief:** Defendants' objection that "[t]here was no willful violation
16 of the Court's order," Dkt. 292-1 at 3, misses the mark. Under Rule 37(b)(2)(A), the
17 Court may issue "further just orders" when a party "fails to obey an order to provide
18 or permit discovery." "Willfulness, fault, or bad faith is not required," *Infanzon v.*
19 *Allstate Ins. Co.*, 335 F.R.D. 305, 313 (C.D. Cal. 2020) (citation omitted), unless the
20 movant seeks case-dispositive sanctions, *Velez v. 2Bella, Inc.*, 2019 WL 7708872, at
21 *1 (C.D. Cal. Nov. 15, 2019), which Plaintiffs do not seek here. Plaintiffs seek only
22 an order enforcing the April 8 Order and requiring Defendants to produce all current
23 and historical source code for any software they use to process, store, and/or use
24 unmatched data. The Court can and should order such relief under Rule 37(b)(2)(A)
25 or under Rule 37(a)(3)(B)(iv). *See* Dkt. 292-1 at 12.

26 ⁴
27 ████████████████████████████████████████
28 ████████████████████████████████████████

| | | |
|---|---|---|
| 1 | Dated: October 18, 2024 | By: /s/ *Y. Gloria Park* |

Ekwan E. Rhow (CA SBN 174604)
Marc E. Masters (CA SBN 208375)
Christopher J. Lee (CA SBN 322140)
**BIRD, MARELLA, BOXER, WOLPERT, NESSIM, DROOKS, LINCENBERG & RHOW, P.C.**
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
erhow@birdmarella.com
mmasters@birdmarella.com
clee@birdmarella.com

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
**GLANCY PRONGAY & MURRAY, LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (pro hac vice)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (310) 336-8340
gpark@susmangodfrey.com

John W. McCauley (pro hac vice)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jmccauley@susmangodfrey.com

*Attorneys for Plaintiffs*