UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BERNADINE GRIFFITH et al., | **UNDER SEAL**[1] |
| Plaintiffs, | Case No. 5:23-cv-00964-SB-E |
| v. | |
| TIKTOK, INC. et al., | ORDER DENYING MOTION FOR RECONSIDERATION OF ORDER DENYING CLASS CERTIFICATION [DKT. NO. 252] |
| Defendants. | |

After the Court denied Plaintiffs' motion for class certification, Plaintiffs moved for reconsideration or for leave to file a renewed motion.  Dkt. No. 252; *see also* Dkt. No. 254-1 (unredacted motion).  In their opposition, Defendants demonstrated that the report of Plaintiffs' expert Dr. Zubair Shafiq, on which Plaintiffs principally relied, contained numerous serious errors.  Dkt. No. 272-2 (unredacted opp.).  Plaintiffs then filed a reply, accompanied by a new 90-page rebuttal report by Dr. Shafiq, stating that they "now rely only on the adjusted findings in Dr. Shafiq's Rebuttal Report."  Dkt. No. 297-1 at 2 (unredacted).  The Court finds this matter suitable for decision without oral argument and vacates the October 25, 2024 motion hearing.  Fed. R. Civ. P. 78; L.R. 7-15.  Apart from the impropriety of relying principally on a rebuttal report to which Defendants have

---

[1] Because some of the briefing and exhibits filed in connection with the motion for reconsideration are under seal, the Court has preliminarily sealed this order.  The Court expects to unseal the order unless the parties show a compelling reason not to.  Within four business days after entry of this order, the parties shall meet and confer and file a joint statement as to whether any part of this opinion should remain sealed.  If the parties do not agree that the order should be unsealed in its entirety, they shall propose specific redactions and explain the need for each redaction sought.

not had the chance to respond, Plaintiffs have not shown they are entitled to the
relief they seek.  Their motion is denied.

## I.

In denying the motion for class certification, the Court identified a basic
problem with Plaintiffs' request—Plaintiffs sought certification of 19 classes and
subclasses without providing argument specific to any of them, instead
"address[ing] all their arguments to certification of a class in the abstract."  Dkt.
No. 242 at 7.  The Court found that as to Plaintiffs' first set of proposed internet-
wide classes, Plaintiffs failed to show that the named plaintiffs were typical of the
classes or that common issues would predominate.  As to the second set of
proposed classes, which were website-specific, the Court found it "conceivable
that Plaintiffs might be able to show certification is proper," but denied class
certification because Plaintiffs had ignored those proposed classes in their briefing
and at the hearing.  *Id*. at 18.

Plaintiffs' motion for reconsideration does not address, much less remedy,
the fundamental failure the Court emphasized in its denial of class certification.
The motion does not even expressly identify what class(es) it seeks to certify.  In a
single section addressing alternative subclasses, Plaintiffs "urge that their
originally proposed classes are certifiable" but identify additional limitations that
could narrow them.  Dkt. No. 254-1 at 21.  The proposed order provides some
clarity:  it seeks certification of the five original internet-wide classes and their
California subclasses but does not renew the request to certify the website-specific
classes that the Court stated might be viable.  Dkt. No. 252-7.  The motion for
reconsideration, however, does not include any specific discussion of any of these
classes or subclasses, other than to note the limitations contained in the definitions
of Classes 2–5.  Dkt. No. 254-1 at 21–22.  Plaintiffs' failure to fix this central
problem, even after the Court emphasized it in denying the original motion for
class certification, warrants denial of reconsideration even if the Court were to take
the more lenient approach under Rule 23(c)(1)(C) urged by Plaintiffs.[2]

---

[2] Defendants invoke the general rule that motions for reconsideration are
disfavored and rarely granted.  *DiSalle v. Lensi*, No. 2:22-CV-02152-SSS, 2024
WL 3915208, at *1 (C.D. Cal. July 29, 2024).  Rule 23 provides that "[a]n order
that grants or denies class certification may be altered or amended before final
judgment."  Fed. R. Civ. P. 23(c)(1)(C).  While some courts have held that Rule
23(c)(1)(C) does not provide a separate mechanism for seeking reconsideration of
a prior order, *Torrent v. Yakult U.S.A., Inc.*, No. 8:15-CV-00124-CJC, 2016 WL

## II.

Apart from this basic failure, Plaintiffs' motion fails because it relies on a deeply flawed analysis by Dr. Shafiq that Plaintiffs have now abandoned. Defendants' opposition points out numerous ways Dr. Shafiq erred in his September 20 report.  The following are a few of the examples identified by Defendants' expert, Ron Schnell:

- 14 of the 15 events in the sample data that Dr. Shafiq associated with Plaintiff Jacob Watters (including a sensitive medical search Dr. Shafiq had emphasized) involved different third-party cookies and different phones, indicating that they did not come from Watters. Dkt. No. 272-3 ¶¶ 42–43. Plaintiffs do not dispute this error; Dr. Shafiq's October 11 rebuttal report now asserts only 1 event, rather than 15, associated with Watters.  Dkt. No. 297-2 ¶ 43.

- More than half of the content Dr. Shafiq identified as sensitive based on categorization by the Interactive Advertising Bureau (IAB) had a confidence level below 50 percent.  Dkt. No. 272-3 ¶ 58 & n.54.  This resulted in absurd results, such as Dr. Shafiq categorizing a URL for a Memorial Day sale on gardening supplies at Lowe's as sensitive because it involved "Death, Injury, or Military Conflict."  *Id.* ¶ 63.  Even URLs with higher confidence scores were unreliable, such as Dr. Shafiq's categorization of a Party City webpage advertising a nursing school graduation banner as sensitive because it involved "Diseases and Conditions."  *Id.* ¶ 64.

- Dr. Shafiq's code to identify URLs containing search terms was flawed and resulted in greatly inflated numbers.  *Id.* ¶¶ 65–70.  In his rebuttal report, Dr. Shafiq modified his script and concluded that approximately 4 percent of URLs contained search terms—instead of the 20 percent he had originally reported.  Dkt. No. 297-2 ¶ 60.

---

6039188, at *1 (C.D. Cal. Mar. 7, 2016), others have taken a more lenient approach, *see Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-CV-01142-SVW, 2017 WL 960462, at *3 (C.D. Cal. Mar. 10, 2017) (construing renewed motion for class certification as seeking to redress the shortcomings previously identified by the court as contemplated by the earlier denial of the motion).  The Court need not decide which standard to apply because Plaintiffs are not entitled to relief even if they are excused from satisfying the ordinary requirements for reconsideration.

- The script Dr. Shafiq used to identify email addresses was overbroad, identifying numerous entries that were not real email addresses. For example, the three most frequently identified "email addresses" in his results for hashed email addresses, totaling more than 100 million events, are the hashed values for the word "null," the word "undefined," and an empty field. Dkt. No. 272-3 ¶¶ 108–10.

- Similarly, the top five results for hashed phone numbers in Dr. Shafiq's results, totaling more than 28 million events, were for the word "Undefined," the JavaScript term "[object Object]," the "+" character, the "1" digit, and the word "null." *Id*. ¶¶ 100–04.

- Dr. Shafiq's results for unhashed phone numbers included numbers ranging from 1 to 206 characters. *Id*. ¶¶ 87–88. Of the top 100 unhashed phone numbers in Dr. Shafiq's results, only 5 could potentially be actual phone numbers of individuals; more than two-thirds were toll-free numbers. *Id*. ¶ 90.

Faced with these criticisms, Plaintiffs acknowledge in their reply that "Dr. Shafiq's original analysis contained certain imprecisions" and produce a new 90-page rebuttal report, on which they now exclusively rely. Dkt. No. 297-1 at 1; *id*. at 2 ("Plaintiffs now rely only on the adjusted findings in Dr. Shafiq's Rebuttal Report and report those findings as relevant throughout this brief."). The rebuttal report makes adjustments in response to Schnell's critiques but maintains all the same conclusions, in some cases inexplicably reporting more results even with narrowed criteria. *See, e.g.*, Dkt. No. 297-2 ¶¶ 66–67 (explaining that Dr. Shafiq modified his script for plaintext email addresses to eliminate results criticized by Schnell and identified a million more unique addresses than he had in his original report).[3]

---

[3] Dr. Shafiq's rebuttal report still does not appear to address all the problems identified by the Court in its denial of class certification. For example, he continues to assert that the chances of TikTok collecting various types of data for a non-TikTok user are at or near 100 percent without addressing the Court's concerns about the assumptions on which he relies. *See* Dkt. No. 242 at 14 & n.8 (identifying various unsupported assumptions made by Plaintiffs and Dr. Shafiq). The Court declines, however, to assess the overall reliability of Dr. Shafiq's rebuttal report in this context, where Defendants have not had an opportunity to address it.

4

Plaintiffs' approach—first seeking reconsideration of their class certification motion based on new evidence and then replacing that evidence with a completely new report in their reply brief—amounts to seeking a third bite at the apple and is both improper and unfair to Defendants. Dkt. No. 297-1 at 2; *see Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1027 (C.D. Cal. 2018) ("New evidence submitted as part of a reply is improper because it does not allow the defendant an adequate opportunity to respond.") (cleaned up) (striking supplemental expert report submitted with reply in support of class certification motion). Having abandoned the central evidence in support of their motion, Plaintiffs have not shown that they are entitled to reconsideration of the Court's denial of their class certification motion.[4]

## III.

Nor is Plaintiffs' alternative request for time to file a new motion for class certification justified. Plaintiffs take issue with Defendants' delayed production of the evidence on which they now seek to rely. Plaintiffs' frustration does not appear to be wholly unmerited, and the Court previously granted two extensions to allow Plaintiffs to obtain the information they needed. Dkt. No. 85 (granting two-month extension); Dkt. No. 142 at 2 (noting that "there are some indications of overreaching by Plaintiffs and of noncompliance by Defendants" and allowing additional time "to complete the discovery needed for Plaintiffs' class certification motion"). Had Plaintiffs informed the Court in advance of the class certification motion deadline that they still had not received the data necessary to file their motion, the Court might have allowed additional time. But Plaintiffs made no such request. Instead, they filed their class certification motion on June 21, claiming that they had satisfied their burden under Rule 23. Dkt. No. 179-1. Only after the

---

[4] Plaintiffs emphasize the Ninth Circuit's August 20, 2024 decision in *Calhoun v. Google, LLC*, 113 F.4th 1141 (9th Cir. 2024), which was issued after the hearing on the motion for class certification but before the Court denied the motion. To the extent Plaintiffs suggest that *Calhoun* reflects a change in the controlling law that requires a different outcome, the Court disagrees. *Calhoun* was a summary judgment appeal focused exclusively on the issue of consent. It did not even mention the requirements for class certification, and its discussion of "personal information" addressed the meaning of Google's disclosures, not the bounds of privacy protections under California or federal law. *See, e.g., id.* at 1148 ("[T]he parties dispute whether a reasonable person would understand, in the context of all of Google's representations in its privacy policies, what 'personal information' means.").

Court denied their motion did Plaintiffs belatedly seek a five-month extension and
renew their motion for discovery sanctions, which the magistrate judge had denied
seven and a half weeks earlier.  *See* Dkt. No. 248 (order denying motion for
continuance); Dkt. No. 283 (order striking untimely motion for discovery
sanctions).  The deadline for new motions has now passed, and Plaintiffs, who
have now unsuccessfully filed both a motion for class certification and a motion
for reconsideration of the Court's denial, have not shown that an extension is
warranted so that they can have a third chance to seek certification of one or more
of the classes identified in their proposed order.

IV.

        The parties and the Court have expended enormous resources on this case.
Having relied on new deficient evidence in their motion for reconsideration and
then having abandoned that evidence and improperly shifted the basis of their
arguments in their reply brief, Plaintiffs have not shown that they should receive
yet another chance to establish that class certification is appropriate.  Their motion
for reconsideration or for leave to file a renewed motion for class certification is
denied.

Date: October 22, 2024

_____

Stanley Blumenfeld, Jr.
United States District Judge