VICTOR JIH, SBN 186515
vjih@wsgr.com
KELLY H. YIN, SBN 328380
kyin@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329

LUIS LI, SBN 156081
luis.li@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
953 E. 3rd St., Suite 100
Los Angeles, CA 90071
Telephone: (323) 210-2900

SHERYL S. BASSIN, NY SBN 4662797
sbassin@wsgr.com
(admitted *pro hac vice*)
DYLAN G. SAVAGE, CA SBN 310452
dsavage@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas. 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329

THOMAS WAKEFIELD, SBN 330121
twakefield@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900

*Attorneys for Defendants*
*TikTok Inc. and ByteDance Inc.*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

BERNADINE GRIFFITH, et al.,

Plaintiffs,

v.

TIKTOK INC., et al.,

Defendants.

Case No.: 5:23-cv-00964-SB-E

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR REVIEW OF MAGISTRATE JUDGE'S NONDISPOSITIVE RULING AT ECF 358**

Judge: Hon. Stanley Blumenfeld, Jr.
Date: December 13, 2024
Time: 8:30 a.m.
Crtrm.: 6C

Action filed: May 26, 2023
Trial Date: Jan. 21, 2025

TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

III. LEGAL STANDARD ........ 9

A. Review of Magistrate Judge Orders ........ 9

B. Attorney-Client Privilege, Work Product Protection, and Waiver ........ 10

IV. ARGUMENT ........ 11

A. Plaintiffs Fail to Demonstrate The Magistrate Judge's Order Was "Clearly Erroneous" ........ 11

B. Waiver Is Inappropriate Under the *Burlington* Factors ........ 13

C. Defendants Have Not Waived Privilege Through "Insufficient" Log Descriptions ........ 17

D. *In Camera* Review is Not Warranted ........ 19

V. CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Fed'n of Musicians v. 212 Prods. LLC*, 2022 WL 2102868 (C.D. Cal. Sep. 27, 2021) ........ 10, 11

*Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645 (D.N.M. 2007) ........ 14, 15

*Ball v. USAA Life Ins. Co.*, 2016 WL 11513321 (D.S.C. May 16, 2016) ........ 18

*Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643 (D. Nev. 2010) ........ 16

*Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court*, 408 F.3d 1142 (9th Cir. 2005) ........ 1. 2, 8, 9, 10, 11, 12, 13, 14, 15,

*Calendar Research LLC v. Stubhub, Inc.*, 2019 WL 1581406 (C.D. Cal. Mar. 14, 2019) ........ 11, 13

*Centerline Hous. P'ship I, L.P.-Series 2 v. Palm Communities*, 2021 WL 4895746 (C.D. Cal. Sept. 2, 2021) ........ 19

*Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602 (1993) ........ 10

*F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375 (S.D. Cal. 2000) ........ 10

*Fidelity Nat'l Title Ins. Co. v. Captiva Lake Invs., LLC*, 2012 WL 3562207 (E.D. Mo. Aug. 17, 2012) ........ 15

*Fourth Age Ltd. v. Warner Bros. Digital Distribution*, 2014 WL 12584447 (C.D. Cal. Oct. 9, 2014) ........ 10, 12

*Genentech, Inc. v. Trustees of Univ. Pennsylvania*, 2011 WL 5079531 (N.D. Cal. Oct. 24, 2011) ........ 20

*Gibson v. Reed*, 2019 WL 2372480 (W.D. Wash. June 5, 2019) ........ 11

*Grimes v. City & Cty. of San Francisco*, 951 F.2d 236 (9th Cir. 1991) ........ 9

*Humphreys v. Regents of the Univ. of California*, 2006 WL 1409336 (N.D. Cal. May 23, 2006) ........ 11, 14

*In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 2017 WL 6757558 (N.D. Fla. Dec. 29, 2017) ........ 11, 17, 18

*In re Google RTB Consumer Priv. Litig.*, 2022 WL 17072016 (N.D. Cal. Nov. 17, 2022) .......... 19

*In Re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) .......... 12, 19

*In re Human Tissue Prod. Liab. Litig.*, 2009 WL 1097671 (D.N.J. Apr. 23, 2009) .......... 20

*In re Telescopes Antitrust Litig.*, 2022 WL 17331257 (N.D. Cal. Nov. 29, 2022) .......... 19

*In re Viaxx Prod. Liab. Litig.*, 501 F. Supp. 2d 789 (E.D. La. 2007) .......... 20

*In re Texas Auto. Dealers Assn.*, 2003 WL 21911333 (5th Cir. July 25, 2003) .......... 19

*LD v. United Behav. Health*, 2022 WL 4878726 (N.D. Cal. Oct. 3, 2022) .......... 11

*Loop AI Labs Inc. v. Gatti*, 2016 WL 2908415 (N.D. Cal. May 13, 2016) .......... 16

*Martin v. Loadholt*, 2014 WL 3563312 (E.D. Cal. July 18, 2014) .......... 9, 10

*Mayorga v. Ronaldo*, 2023 WL 8047781 (9th Cir. Nov. 21, 2023) .......... 10

*Munguia-Brown v. Equity Residential*, 337 F.R.D. 509 (N.D. Cal. 2021) .......... 11

*Porter v. City & Cty. of San Francisco*, 2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) .......... 16

*Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432 (E.D. Tex. 2003) .......... 16

*S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152 (S.D.N.Y. 2014) .......... 17

*Spencer v. Lopez*, 2022 WL 3353057 (E.D. Cal. Aug. 12, 2022) .......... 9

*Tulip Computers Intern. B.V. v. Dell Computer Corp.*, 2002 WL 31556498 (D. Del. 2002) .......... 18

*United States v. Baca*, 610 F. Supp. 2d 1203 (E.D. Cal. 2009) .......... 10

*United States v. Prieto–Villa*, 910 F.2d 601 (9th Cir.1990) .......... 10

*United States v. Union Pac. R. Co.*,
2007 WL 1500551 (E.D. Cal. May 23, 2007) .......... 10, 11

*United States v. Zolin*,
491 U.S. 554 (1989) .......... 19

*Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc.*,
63 F. Supp. 3d 558 (E.D.N.C. 2014) .......... 20

**STATUTES**

28 U.S.C. § 636(b)(1)(A) .......... 9

**RULES**

Fed. R. Civ. P. 26(b)(5) .......... 10

Fed. R. Civ. P. 72(a) .......... 9

# I. INTRODUCTION

This Motion represents Plaintiffs' latest request for some of the harshest discovery sanctions available on the grounds of unjustified grievances that the Court already rejected. Here, Plaintiffs ask (again) that the Court deem privilege waived for thousands of documents and order *in camera* review of fifteen others. But Plaintiffs' Motion, a mere retread of the same arguments and authorities the Court considered and rejected from their prior briefing, ignores the first enormous hurdle they must overcome: demonstrating that Judge Eick's decision was clearly erroneous or contrary to law.

Plaintiffs do not satisfy this standard. While pure legal questions are reviewed *de novo*, it is beyond dispute that Judge Eick applied the correct legal standards for privilege waiver (the *Burlington* factors) and *in camera* review. Accordingly, the Order may only be set aside if "clearly erroneous," a highly deferential standard that Plaintiffs do not even attempt to overcome. The Motion should be denied on that ground alone.

Regardless, under *de novo* review, Plaintiffs' Motion fails as well. The Motion concerns three of five issues Plaintiffs raised in their Joint Stipulation; they concede the other two have been fully mooted. The three that remain are likewise moot or, to the extent any dispute remains for resolution, meritless.

**Issue #1, Purported Failure to Produce Privilege Logs**: In the Joint Stipulation, Plaintiffs originally charged that Defendants "failed to produce logs corresponding with the vast majority of their productions." ECF 284-1 (Joint Stipulation re: Privilege Issues) at 3. Defendants then did produce logs for the "vast majority" of the documents before the close of discovery (as they had told Plaintiffs they would do), mooting this aspect of Plaintiffs' motion. At oral argument and in the instant Motion, Plaintiffs move the goalposts, now complaining that privilege should be waived for all documents on logs "provided after the briefing deadline

[October 3]" as "untimely and impracticably late." Mot. at 8. Plaintiffs provide no authority for the notion that privilege waiver occurs automatically on a date of Plaintiffs' unilateral choosing; regardless, under *Burlington* even lateness does not *per se* result in waiver.

**Issue #2, Information Purportedly Missing from Logs**: Plaintiffs complain that Defendants failed to provide recipient information in their privilege and redaction logs. Defendants' logs dated October 10, 11, 18, and November 1 contain a "recipient" column, again mooting this aspect of Plaintiffs' Motion. Plaintiffs assert the information was provided too late, pointing to a supplemental log Defendants provided on November 1 in advance of the hearing. But the November 1 log contained recipient information for ***redacted*** documents, i.e., which was apparent on the face of the documents and in Plaintiffs' possession from the moment they were produced. In any event, Plaintiffs do not establish any undue delay warranting waiver under *Burlington*.

Plaintiffs also claim that certain narratives are too vague and/or that some entries lack the name of a lawyer. Those arguments likewise fail. The latter point in particular concerns references to "Legal," which the law clearly states are sufficient in the context of in-house counsel. Plaintiffs' own cited cases also indicate that the remedy, if any, is supplementing the log, not waiver.

**Issue #3, Plaintiffs' Request for *In Camera* Review of 15 Documents**: Plaintiffs' Joint Stipulation identified sixteen "exemplar" documents for which they sought *in camera* review. Defendants produced one with no redactions and two with fewer redactions. Plaintiffs continue to challenge all fifteen that have not been produced in full. The first part of Plaintiffs' argument is that the documents are "technical" in nature and therefore somehow could not contain legal advice. The second is that unrelated privilege downgrades—the result of Defendants' good faith

efforts to tweak privilege determinations and collaborate with Plaintiffs—call into question redactions on other documents. None of this supports *in camera* review.

* * *

Plaintiffs purport to lack information they need to "assess and, where appropriate, challenge the producing party's" assertion of privilege (Mot. at 9-10), but through this Motion do not seek more information regarding the privilege claims. Instead, Plaintiffs demand a sweeping holding of waiver—an outsized penalty that does not correlate to the purported shortcomings. This unjustified request is particularly unpersuasive considering Plaintiffs have been unable to articulate any way in which these privilege determinations bear on an issue of consequence to the case. *See, e.g.*, ECF 364-5 at 5-6. Plaintiffs also attempt to shoehorn in unfounded assertions regarding "delayed discovery," "last-minute," and "eleventh-hour" document dumps (Mot. at 8), which are lifted from Plaintiffs' motion (now denied) to modify the Case Management Order (ECF Nos. 243, 248) and do not bear on this privilege dispute. To the extent they matter at all, Judge Eick questioned Defendants' counsel on them exhaustively and considered any relevant issues. Plaintiffs' Motion should be denied in its entirety.

## II. BACKGROUND

Defendants assume the Court's familiarity with the history of discovery in this case and write to emphasize certain aspects of the background that were omitted or mischaracterized in Plaintiffs' briefing.

Defendants reviewed and logged documents for privilege as expeditiously as possible. Over the last 11 months, Defendants have reviewed over 1.1 million documents and produced almost 300,000. Out of that entire population, Defendants withheld over 7,000 documents, and produced more than 2,000 with redactions, on the grounds of a privilege or protection. These documents appear across 20 privilege and redaction logs, several of which provide more information than is required by

law, *e.g.*, recipient information that is apparent from the face of redacted documents (and which Plaintiffs have had for months).

In February and August, Plaintiffs raised purported concerns with Defendants' redactions and privilege logs. In each instance, Defendants addressed those inquiries thoroughly.

**February correspondence**. Plaintiffs' February letter alleged three issues across 45 total documents: (1) inquiries or challenges to certain redactions, (2) so-called failure to log redactions, and (3) log entries "containing references to 'Legal' with no identification of actual attorneys." ECF 284-5. Defendants agreed to produce all documents as to which Plaintiffs had questions with either no or fewer redactions, to provide an entry for the one remaining unlogged document (which had been inadvertently omitted), and to "supplement[] names for 'Legal' to the extent identifiable," for the two identified documents which retained redactions. ECF 284-8. Defendants reiterated to Plaintiffs that their efforts to provide names for "Legal" were a courtesy only. Following Defendants' provision of supplemental log entries in March, Defendants continued to supply privilege and redaction logs without any challenge from Plaintiffs. *See, e.g.*, ECF 284-4.

**August correspondence**. Then, on August 2 (over four months later), Plaintiffs wrote regarding supposed "defects in Defendants' privilege and redaction logs." ECF 285-2 at 5-6. Plaintiffs did not identify any documents or lines of Defendants' logs they claimed were deficient, but instead described five categories they claimed to be issues: (1) redacting communications between non-lawyers; (2) log entries referring to communications with "Legal"; (3) redacted documents Plaintiffs claimed were unlogged; (4) "fail[ing] to identify the recipients" of documents withheld for privilege; and (5) "fail[ing] to describe the nature of" privileged documents adequately. *Id.* Defendants again responded comprehensively to each of Plaintiff's queries. *Id.* at 3-4. First, Defendants provided case law

supporting their redaction and withholding of communications between non-attorneys, and the propriety of log entries identifying the source of the privilege as "Legal." *Id*. With respect to "unlogged" documents, no examples of which were provided, Defendants worked with their vendor to check (again) the population of redacted documents and were unable to identify any that had not been logged. *Id*. Defendants commented that to the extent Plaintiffs were referring to privileged documents post-dating June 1, 2023 (the date the litigation was filed), the parties had agreed no log was necessary. *Id*. Defendants offered to look into any specific documents Plaintiffs had in mind if they would identify them, offered to clarify with Plaintiffs what additional information if any would be helpful regarding document types, and indicated their willingness to provide a list of "recipients" for documents withheld for privilege. *Id*. Defendants heard nothing for almost a month.

Plaintiffs finally responded on September 26, with sudden urgency after weeks of silence. ECF 285-2 at 2. Referencing a "need to resolve all outstanding issues regarding privilege and redaction logs" before "the impending close of fact discovery"—a crunch Plaintiffs created by ignoring Defendants for nearly a month—Plaintiffs stated they would seek a blanket privilege waiver over all documents Defendants anticipated including on forthcoming "privilege or redaction logs covering recent productions," regardless of when served. *Id*. Tacitly admitting a motion ***before*** the end of discovery was by definition premature, Plaintiffs said they would "typically suggest" "a procedure to resolve those issues after the discovery / motion cutoff," but would "likely need to move" now, to be cautious, "given the Court's order denying the continuance[.]" *Id*. Plaintiffs also provided a list of 73 documents they claimed were not logged or for which the privilege claim was inadequately justified and demanded a meet and confer within two business days. *Id*.

The parties met and conferred on September 30. Defendants stated their intention to provide a privilege log for recently reviewed documents the week of October 7, which they expected to moot most or all of Plaintiffs' supposed concerns. ECF 284-12 ¶ 4. Defendants also provided explanations for the documents Plaintiffs identified as unlogged or inadequately substantiated. *Id.* ¶ 3. With respect to the former, Defendants explained the identified documents were Lark messages reproduced as threads at Plaintiffs' request which had already been produced, redacted, and logged in another format (i.e., as individual Lark chats); post-dated the June 1, 2023 cutoff the parties had agreed upon for logging documents (as also stated a month prior in counsel's August 28 email), or lacked sufficient metadata to make a determination as to timing. *Id.* Defendants nevertheless offered to provide supplemental log entries as a courtesy and, with respect to the redactions Plaintiffs raised, Defendants agreed to review the documents and consider potentially providing more information for Plaintiffs to assess the privilege claim. *Id.* ¶ 5. Defendants stated they would serve the supplemental logs as soon as possible, noting that team members would be observing religious holidays preceding the weekend of October 4-6. *Id.* ¶ 4. In response, Plaintiffs conceded that their planned stipulation was merely a vehicle to preserve potential privilege challenges they may later want to assert. *Id.* ¶ 6.

**October and November logs**. Defendants did what they promised. On October 10 and 11, before the close of discovery, Defendants provided Plaintiffs with privilege and redaction logs covering Defendants' recent productions. ECF 319-3; 319-4. Those logs included all redacted documents identified by Plaintiffs in the Joint Stipulation that were inadvertently left off of prior logs due to vendor or technical error (with one small exception, below), as well as all Lark chats included on prior logs, but which Defendants had subsequently re-produced as threaded conversations at Plaintiffs' request. *Id.* The logs also provided a recipient field for

withheld emails and Lark chat threads, exceeding the parties' agreement, and recipient information for redacted documents produced since August. *Id*. On October 14, Defendants also produced with no or fewer redactions 3 of the 16 documents Plaintiffs claimed in the Joint Stipulation were over-redacted, *see* ECF 284-9 at PRIV-5, PRIV-13, PRIV-14, after further review. ECF 319-6, -7, & -9.

Defendants provided four sets of logs after the close of discovery. On October 18, Defendants provided supplemental privilege and redaction logs. *See* Hurley Decl., ¶ 2. The majority of these documents had been inadvertently omitted from prior logs due to vendor error; the remainder had been identified as privileged after the preparation of the October 10 & 11 privilege and redaction logs during the windup stages of Defendants' privilege review. *Id*. On November 1, Defendants provided a log containing recipient information for redacted documents that had been produced before August (which is apparent on the face of the documents and which Plaintiffs have had for months). ECF 364-2. It also covered one document Plaintiffs referenced in their supplemental memorandum on the joint stipulation as still "unlogged." ECF 319-1. The metadata for that document indicated it postdated the agreed-upon June 1, 2023 cutoff for privilege logging, but the timestamps for two comment bubbles, visible only in the native version of the document, indicated those comments may have predated June 1, 2023. Hurley Decl., ¶ 3. Upon discovery of the issue, Defendants added that document to the November 1 log. *Id*. Also on November 1, Defendants served short supplemental privilege and redaction logs (comprising 45 lines) corresponding to a discrete production of documents that either Plaintiffs had requested or that the Court ordered produced on October 21. *See* Mot. Ex. 44 (ECF 364-3); Ex. 45 (ECF 364-4); ECF 329. Finally, Defendants will be serving as of the date of this filing a one-line privilege log for a document discussed at the October 29 deposition of Maliya Wang.

The October 18 and November 1 logs also included lawyer names (including "Legal" as appropriate) for most log entries not otherwise referencing a lawyer after the addition of recipient information.

**<u>November hearing and order</u>**. On November 1, Judge Eick heard oral argument on Plaintiffs' Joint Stipulation. Judge Eick questioned the parties exhaustively, for almost 90 minutes, regarding the *Burlington* analysis and *in camera* review. Judge Eick's questions concerned facts underlying the relevant legal tests as well as the parties' arguments on how those facts did or did not support their positions.

For example, Judge Eick asked a number of questions about the factual considerations for privilege waiver and *in camera* inspection. Starting with Plaintiffs' counsel, Judge Eick pointed to specific privilege log descriptions cited, noting that "according to [his] understanding of the caselaw, descriptions like this may be found to be sufficient." ECF 364-5 (November 1 Hearing Tr.) at 15-16. He asked Plaintiffs' counsel for an example of what would suffice, but Plaintiffs' counsel struggled to do so. *Id*. at 18. Similarly, Judge Eick told Plaintiffs' counsel that he was "not sure [he] agree[d]" with Plaintiffs that there was enough suspicion to justify *in camera* inspection. *Id*. at 15. He pressed counsel for Defendants about Plaintiffs' arguments about the "overdesignation" of privilege, including reproductions of documents with fewer redactions and the later-dropped claw back request. *Id*. at 49-51. He asked Defendants' counsel why the record did not create enough suspicion for the court to "dive in and at least do a sampling by *in camera review* as a check against your overdesignation.[]" *Id*. at 50. Defendants' counsel responded that corrections and reevaluations of privilege determinations indicate a good-faith effort to work together through the discovery process on close calls, not some "broad problem with overclaiming privilege." *Id*. at 52.

On the timeliness of Defendants' privilege logs, Judge Eick asked both sides a number of questions about the timing and volume of document productions. *Id*. at 43-47. Judge Eick noted that it was difficult to discern the length of any purported delay in Defendants' privilege logs from Plaintiffs' papers (who, as the movants, carry the burden of establishing waiver). *Id*. at 25-26. Plaintiffs' counsel was unable to provide an exact timeframe to compare against given the different sets of RFPs served at different dates. *Id*.

Judge Eick also walked through the legal questions implicated by Plaintiffs' motion, confirming he applied the correct legal standards. He referenced *Burlington* explicitly throughout the hearing, including the exemplar factors set forth in that opinion. ECF 364-5 at 23-25, 26, 32 39-40, 44. He also referenced the correct law on Plaintiffs' more discrete claims, such as the mere fact that a document was passed between non-attorneys (or that a communication did not involve any attorneys) does not mean it is not privileged. *Id*. at 13-14; *see also id.* at 43 (stating he "tend[s] to agree with [Defendants]" on the identification of "Legal" as opposed to a specific attorney). Three days later, Judge Eick issued a minute order denying Plaintiffs' request for privilege waiver and *in camera* inspection. ECF 358.

## III. LEGAL STANDARD

### A. Review of Magistrate Judge Orders

A Magistrate Judge's pretrial discovery orders may only be set aside if "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see also Grimes v. City & Cty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). "[F]actual determinations are reviewed for clear error, while legal conclusions are reviewed to determine whether they are contrary to law." *Spencer v. Lopez*, 2022 WL 3353057, at *1 (E.D. Cal. Aug. 12, 2022).

"A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Martin v. Loadholt*, 2014 WL

3563312, at *1 (E.D. Cal. July 18, 2014). However, "factual findings that underlie the application of the law are reviewed for clear error." *United States v. Baca*, 610 F. Supp. 2d 1203, 1210 (E.D. Cal. 2009) (citing *United States v. Prieto–Villa,* 910 F.2d 601, 604 (9th Cir.1990)). Magistrate judge decisions that apply the correct legal standard are subject to clear error rather than *de novo* review. *See Fourth Age Ltd. v. Warner Bros. Digital Distribution*, 2014 WL 12584447, at *2 (C.D. Cal. Oct. 9, 2014) (magistrate judge's order on request for *in camera* inspection applied correct standard and was not "clearly erroneous"); *F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 381 (S.D. Cal. 2000) ("clearly erroneous" standard applies to matters of discretion and no "clear error" in order on privilege waiver).

This standard is "significantly deferential," and a Magistrate Judge's decision should only be set aside if the district court "is left with the definite and firm conviction that a mistake has been committed." *Fourth Age,* 2014 WL 12584447, at *2 (quoting *Concrete Pipe & Prod. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 623 (1993)).

**B. Attorney-Client Privilege, Work Product Protection, and Waiver**

Under Federal Rule of Civil Procedure 26(b)(5), there is "no *per se* waiver rule when a privilege log is not produced." *Mayorga v. Ronaldo*, 2023 WL 8047781, at *3 (9th Cir. Nov. 21, 2023) (citing *Burlington N. & Santa Fe R.R. Co. v. U.S. Dist. Court*, 408 F.3d 1142, 1147-49 (9th Cir. 2005)). Nor is there *per se* waiver when documents have been inadvertently omitted from prior logs, or where the logs contain insufficient information to assess the privilege claim. *See United States v. Union Pac. R. Co.*, 2007 WL 1500551, at *3 (E.D. Cal. May 23, 2007).

Courts in the Ninth Circuit rather analyze whether privilege has been waived on a case-by-case basis "in the context of a holistic reasonableness analysis." *Am. Fed'n of Musicians v. 212 Prods. LLC*, 2022 WL 2102868 (C.D. Cal. Sep. 27, 2021) (citing *Burlington*, 408 F.3d at 1149). The case-by-case determination considers

several factors, including: "the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged . . .; the timeliness of the objection and accompanying information about the withheld documents . . .; the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy . . . or unusually hard." *Calendar Research LLC v. Stubhub, Inc.*, 2019 WL 1581406, at *4 (C.D. Cal. Mar. 14, 2019).

The attorney-client privilege encompasses and protects confidential communications requesting, providing, or reflecting legal advice, *see Gibson v. Reed*, 2019 WL 2372480, at *1 (W.D. Wash. June 5, 2019), while the work product doctrine protects from disclosure communications or materials prepared in anticipation of litigation. *See Munguia-Brown v. Equity Residential*, 337 F.R.D. 509, 516 (N.D. Cal. 2021). An attorney need not be an author or recipient of a communication for it to be privileged; the privilege protects, for example, communications between two non-lawyers discussing or concerning legal advice provided by counsel. *See In re Abilify (Aripiprazole) Prod. Liab. Litig.*, 2017 WL 6757558, at *6 (N.D. Fla. Dec. 29, 2017) (collecting cases). Log entries must include information sufficient to sustain a claim of privilege. *See LD v. United Behav. Health*, 2022 WL 4878726, at *2 (N.D. Cal. Oct. 3, 2022). Even where a privilege log is deficient or untimely served, the remedy is generally an order to supplement the affected entries—not waiver. *See Union Pac. R. Co.*, 2007 WL 1500551, at *3; *Humphreys v. Regents of the Univ. of California*, 2006 WL 1409336, at *1 (N.D. Cal. May 23, 2006) (no waiver where there is "a good faith effort at compliance").

## IV. ARGUMENT

### A. Plaintiffs Fail to Demonstrate The Magistrate Judge's Order Was "Clearly Erroneous"

Plaintiffs cannot dispute that the Magistrate Judge's Order applied the correct legal standards for privilege waiver and *in camera* review. *See* ECF 358 (citing *Burlington*, 408 F.3d at 1149 and *In Re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992)). Indeed, Plaintiffs cite *Burlington* and *In Re Grand Jury Investigation* in their papers the same cases as the Court. Mot. at 13, 14, 18. Because the Court applied the correct legal standard, its Order may be set aside only on reconsideration if any of its findings are "clearly erroneous." *Fourth Age*, 2014 WL 12584447, at *2. The Court can easily uphold the Order under this "significantly deferential" standard, both for the reasons discussed in the Joint Stipulation briefing and below (which pass muster under even *de novo* review) but also because Plaintiffs make no effort to show clear error at all.

Instead, Plaintiffs attempt to evade "clear error" review solely by reference to the format of the Court's Order denying their motion. Plaintiffs assert that the Court "must review the motion *de novo*" because the Order does not spell out expressly extensive findings of fact. Mot. at 11. Plaintiffs claim that because of this, it is "impossible" to tell whether any conclusion in the order is "right or wrong." But minute orders are hardly uncommon; Plaintiffs supply no authority establishing they are reviewed *per se* as *de novo*.

Moreover, Plaintiffs do not discuss at all the factual record built through the parties' briefing and at the hearing before Judge Eick. Implicit in his decision is a finding of fact regarding Plaintiffs' purported evidence on the representative factors listed in *Burlington*, all of which are factual. *See* 408 F.3d at 1149. Also implicit in his decision is a finding of fact regarding Plaintiffs' supposed evidence meeting the standard for *in camera* review. This is particularly evident when reviewing the transcript from the November 1 hearing, where Judge Eick pressed the parties on a number of factual issues, including Defendants' privilege log descriptions, the record concerning the timing of document requests, productions, and logs, and specific

redactions Plaintiffs claim represented overdesignation. *See supra* at p. 13; *see also, e.g.*, ECF 364-5 at 15-16 (stating that "according to [his] understanding of the caselaw, descriptions like this may be found to be sufficient."). Regardless, Plaintiffs' Motion fails under *de novo* review as well.

### B. Waiver Is Inappropriate Under the *Burlington* Factors

By the close of discovery, Defendants had served privilege and redaction logs covering all documents reviewed and either identified and withheld as wholly privileged or produced with redactions to date. On October 18 and November 1, Defendants produced supplemental privilege and redaction logs corresponding to discrete populations of documents such as those inadvertently omitted from prior logs due to vendor error, or documents identified as privileged after October 11 (during the wrap-up stages of Defendants' privilege review). The logs also contained specific categories of additional information (including information Plaintiffs could already ascertain from the face of redacted documents) that Defendants had agreed in recent weeks to provide and supplied as expeditiously as practicable. *See supra* at pp. 11-13. Defendants did not fail to log anything (and any documents that fell off the log were produced). There can be no waiver on that ground. *See Calendar Research LLC*, 2019 WL 1581406, at*4.

Because the documents were promptly logged, Plaintiffs attempt to pivot. Indeed, unlike Defendants, Plaintiffs' portion of the Joint Stipulation did not mention (let alone address) the *Burlington* factors. *See* ECF 284-1, Joint Stipulation at 14:24-28:16. Plaintiffs discussed the standard for waiver for the first time in their supplemental memorandum, giving it only cursory treatment in a single paragraph and ignoring Defendants' contrary arguments. *See* ECF 317 at pp. 2-4. In the Motion, Plaintiffs argue that "Defendants have waived any applicable privilege due to their unreasonable delays under *Burlington*," because they produced privilege

logs after October 3, 2024—the "motion cutoff" date Plaintiffs unilaterally selected as a deadline. Mot. at 15. Plaintiffs' position is entirely unfounded.

Under *Burlington*, the Court must engage in a case-by-case "holistic reasonableness analysis," considering the specific circumstances of the litigation. 408 F.3d at 1149. The *Burlington* analysis favors Defendants. The document population at issue in this motion is that produced after August 2024. According to Plaintiffs, during that time period, Defendants produced more than "2.9 million pages" of nonprivileged documents. Mot. at 9. Defendants served the corresponding privilege and redaction logs promptly, starting in October—two months later (or less). Defendants did so as expeditiously as possible, but given the volume—the result of Plaintiffs' demand for dozens of complex search strings run across more than thirty custodians—it simply took some time. Waiver is a draconian remedy reserved for extreme circumstances so egregious that it amounts to bad faith; where, as here, a party has made a good faith effort at compliance, *Burlington* confirms that waiver is inappropriate. *See Humphreys v. Regents of the Univ. of California*, 2006 WL 1409336, at *1 (N.D. Cal. May 23, 2006) ("[T]he Court believes that the privilege log contains sufficient information to constitute a good faith effort at compliance[.]"); *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 653 (D.N.M. 2007) (no waiver where logs were "produced in good faith").

Plaintiffs claim that because Defendants are "sophisticated corporate litigants and a repeat player in privacy lawsuits," privilege should be deemed waived. Mot. at 15. The portion of *Burlington* they quote is taken wholly out of context and in actuality supports Defendants. The Court was addressing the fact that "many of the same documents were previously produced in a prior lawsuit," contradicting any claim of burden. *Burlington*, 408 F.3d at 1147-49. The opposite is true here—Defendants have had a substantial number of documents to review, nearly all for the first time.

The record also shows that Plaintiffs bear responsibility for their own inexplicable delays. Plaintiffs disappeared for almost a month after Defendants responded to their correspondence, popping up on September 26 with sudden urgency after they seemingly realized the date. ECF 285-2 at 2. In that September email, Plaintiffs acknowledged that "typically" matters concerning privilege logs (which are often served as a matter of practice at the end of discovery) can be raised "after the discovery / motion cutoff" by agreement or "procedure." *Id*. That is a tacit admission that by any ordinary standard, Defendants' logs were not late (or at a minimum, that their timing is not evidence of undue delay or bad faith). Plaintiffs never asked Defendants to stipulate to any such "procedure." Instead, they jumped to the drastic remedy of blanket waiver, which as discussed is grossly inappropriate.

Plaintiffs' Motion barely addresses any of the foregoing and continues to rely (without explanation) on the same discredited cases from their Joint Stipulation. No case Plaintiffs reference finds waiver with respect to documents included on a privilege log in the ordinary course, and in fact, some counsel the opposite result. S*ee Burlington*, 408 F.3d at 1147-49 (finding of waiver not clearly erroneous where log filed five months late; the same documents were previously produced in a prior lawsuit, undermining any claim of burden; and "even the untimely assertion . . . was insufficient"); *Anaya*, 251 F.R.D. at 653 (no waiver even where proponent "might have done a better job supporting their assertion of privilege . . . in their privilege logs" and, despite serving "multiple privilege logs" that were "inadequat[e]," the logs were "produced in good faith"); *cf. Fidelity Nat'l Title Ins. Co. v. Captiva Lake Invs., LLC*, 2012 WL 3562207, at *3 (E.D. Mo. Aug. 17, 2012) (partial waiver only appropriate where the proponent excluded an entire category of "major claims reports" from the initial privilege log until after an in-house lawyer's deposition where he revealed their existence while offering "no explanation" for the omission); *Robinson v. Texas Auto. Dealers Ass'n*, 214 F.R.D. 432, 455 (E.D. Tex. 2003)

(applying standard disapproved of by Ninth Circuit in *Burlington* to conclude waiver was appropriate where documents were "not listed" in the original privilege log at all), *vacated in part with respect to certain attorney-client communications by In re Texas Auto. Dealers Assn.*, 2003 WL 21911333, at *1 (5th Cir. July 25, 2003); *Bullion Monarch Mining, Inc. v. Newmont USA Ltd.*, 271 F.R.D. 643, 649 (D. Nev. 2010) (only concluding waiver appropriate where party had never produced a log "[s]even months after the close of discovery"); *see also Loop AI Labs Inc. v. Gatti*, 2016 WL 2908415, at *3 (N.D. Cal. May 13, 2016) (plaintiff served log with less than 50 lines seven months after production and after the close of fact discovery, in violation of three court orders; once served, it failed to even identify any subject matter); *Porter v. City & Cty. of San Francisco*, 2018 WL 4215602, at *5-7 (N.D. Cal. Sept. 5, 2018) (party produced no privilege log at all, following prior motion to compel on a privilege log issue and a court warning regarding any further failure to comply). Nor does any of Plaintiffs' authority find waiver because privilege or redaction logs were not served "before [a] motion cutoff." Mot. at 14.

Plaintiffs note that the October and November logs were served after certain depositions of fact witnesses and/or 30(b)(6) corporate witnesses. Mot. at 15. That too, standing alone, is not a basis for waiver. Plaintiffs' arguments regarding the timing of Defendants' production, an effort to revive issues the Court considered in denying their motion to extend the Case Management Order, are a red herring. The population relevant to this motion is ***privileged*** documents, which comprises thousands of log entries, not the millions of pages Plaintiffs invoke. As Defendants said in October, to the extent Plaintiffs have any questions with respect to the discrete set of privileged documents appearing on the October and November logs for witnesses who were previously deposed (and they should not), Defendants will of course consider them in good faith. To date, Plaintiffs have raised none.

### C. Defendants Have Not Waived Privilege Through "Insufficient" Log Descriptions

Plaintiffs complain that Defendants' privilege descriptions are so inadequate as to require a finding of waiver, pointing in particular to Defendants' supposed failure to include a "Recipient" column in their privilege logs. Mot. at 16-17. Plaintiffs acknowledge that Defendants provided this information as a matter of course in logs served on or after October 10. Plaintiffs further acknowledge that Defendants provided this information for documents produced with redactions or withheld from productions prior to August 2024.[1] Plaintiffs complain that this information was provided too late, ignoring that the "Authors" and "Contributors" field on prior logs was populated by the other participants in a Lark chat thread or email chain, i.e., "recipient" information by another name, and that recipients are apparent on the face of the document for any produced with redactions. ECF 287-2. There is no waiver under such circumstances; Plaintiffs' sole case says nothing of the sort. *See S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 162-68 (S.D.N.Y. 2014) (logs purported to describe ninety-eight privileged documents in four log entries and supplemental information produced months after specific objections).

Plaintiffs take issue with privilege log lines they claim lack any attorney name. Plaintiffs obfuscate that this argument concerns references to "Legal," *i.e.*, in-house counsel from the legal department, in log entries. *See* Mot. at 19. As Defendants also explained months ago via email and throughout briefing, the law is clear that is permissible. *See In re Abilify*, 2017 WL 6757558, at *6 ("[I]t is not uncommon within a complex organization that . . . communications among corporate employees . . . frequently will simply refer to the request as coming from [] counsel as opposed

[1] The recipient information in the supplemental log served on November 1 (referenced in Mot. at 17) was for redacted documents. Mot. Ex. 43 (ECF 364-2). There is certainly no "late production" affecting "Plaintiffs' ability" to address privilege issues where Plaintiffs have had the exact same information available to them since the time of production.

to a specific attorney or law firm."); *Ball v. USAA Life Ins. Co.*, 2016 WL 11513321, at *4 (D.S.C. May 16, 2016) (same); *Tulip Computers Intern. B.V. v. Dell Computer Corp.*, 2002 WL 31556498, at *1 (D. Del. 2002) (same). Defendants have raised this body of law at least three times since August, and Plaintiffs have never seriously addressed it, only giving *Abilify* a cursory mention in a footnote. Mot. at 18 n.4; ECF 284-1 at 20 n.2. Their brief, surface-level attempt to distinguish that one case is telling and inaccurate. Nothing in *Abilify* or similar cases says it is a "rare case" that "Legal" will suffice on a privilege log; in fact, the court says the opposite. *See In re Abilify*, 2017 WL 6757558, at *6 (collecting cases and explaining how referring to "legal" rather than a specific attorney is "not uncommon within a complex organization"). Given the nature of large companies like TikTok and the natural way non-lawyers speak, employees frequently refer to in-house counsel not by name but by calling them "Legal," *e.g.*, "Legal has instructed us to do X, Y, and Z" or "Legal has asked for X information before providing a response on Y." Courts permit parties to identify attorneys on privilege logs as "Legal" or the "Legal Department" accordingly. *Id.* at *6 (cited by Plaintiffs, Mot. at 18). The "important inquiry from a privilege perspective is the nature of the communication," i.e., whether it involves legal advice, "and the context in which it is made," i.e., whether it is confidential. *Id.* Nothing about two non-attorney employees discussing legal advice or a request from an in-house attorney on a confidential, internal communication undercuts that principle.

Plaintiffs also contest that privilege descriptions stating a document "reflects legal advice about the 'Pixel'" are inadequate because the "Pixel," "data storage," and "cookies" are what the "case is about." Mot. at 17. Unsurprisingly, Plaintiffs supply no authority for the notion that a log description is deficient merely because it concerns the subject of the litigation. Plaintiffs confirmed as much at the hearing, as

they were unable to articulate any alternative formulation for privilege log lines of this nature. ECF 364-5 at 18:7-25.

**D. *In Camera* Review is Not Warranted**

Plaintiffs' request for *in camera* review of the 15 documents they identify is unwarranted. *See In re Grand Jury Investigation*, 974 F.2d at 1074 (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989)). They first argue that *in camera* review is appropriate wherever a specific attorney is not identified by name (again, which concerns log lines referencing "Legal"), but that is not what their authority states or the law requires. *See supra* at pp. 22-23; *In re Telescopes Antitrust Litig.*, 2022 WL 17331257, at *4 (N.D. Cal. Nov. 29, 2022) (cited in Mot. at 18 but rejecting *in camera* review and noting that "indication of the attorney-client relationship need not be set out in each privilege log entry"); *In re Google RTB Consumer Priv. Litig.*, 2022 WL 17072016, at *5 (N.D. Cal. Nov. 17, 2022) (cited in Mot. at 18 and stating "[t]he disclosures should identify an individual or individuals, not 'Google,'" only "***if known***.") (emphasis added).

Plaintiffs also argue that Defendants fail to justify the assertion of work-product protection for certain documents, but they do not seek *in camera* review for any of the documents they identify. Mot. at 19. In any event, Plaintiffs offer no support for their position that a log must list litigation by name. *Id.*; *see Centerline Hous. P'ship I, L.P.-Series 2 v. Palm Communities*, 2021 WL 4895746, at *9 (C.D. Cal. Sept. 2, 2021) (cited in Mot. at 19 but concerning documents withheld "solely on the basis of the work product doctrine" and suggesting information as to timing, such as the date of the document, may be sufficient).

Finally, Plaintiffs seek in camera review of "technical" documents, assuming without basis that such documents by definition must not contain legal advice or that any attorneys commenting on them must be acting in a business capacity. *See* Mot. at 9, 18; ECF 284-9 at PRIV-01 (TIKTOK-BG-000003068), PRIV-02 (TIKTOK-

BG-000008030), PRIV-03 (TIKTOK-BG-000009045); PRIV-4 (TIKTOK-BG-000009146); PRIV-06 (TIKTOK-BG-000010053); PRIV-7 (TIKTOK-BG-000010067). The log entries for these documents, however, identify the attorneys in question and/or indicate that the redacted text reflects legal advice (which Plaintiffs do not dispute). *See id*. None of the cases cited by Plaintiffs suggest that properly logged, privileged communications lose protection because they take place in documents that are not traditionally "legal," or that the nature of the document alone calls into question the validity of a privilege assertion. They rather involve communications that were not privileged to begin with. *See Genentech, Inc. v. Trustees of Univ. Pennsylvania*, 2011 WL 5079531, at *2 (N.D. Cal. Oct. 24, 2011) (communications at issue did not reflect legal advice or questions from an attorney to provide legal advice); *Veolia Water Sols. & Techs. Support v. Siemens Indus., Inc.*, 63 F. Supp. 3d 558, 569 (E.D.N.C. 2014) (same); *In re Human Tissue Prod. Liab. Litig*., 2009 WL 1097671, at *4 (D.N.J. Apr. 23, 2009) (same); *In re Viaxx Prod. Liab. Litig.*, 501 F. Supp. 2d 789, 797 (E.D. La. 2007) (same).

Instead of addressing the merits of Defendants' privilege assertions for these documents, Plaintiffs point to Defendants' prior agreement to produce certain ***other*** **"**technical" documents with fewer redactions after further assessment and review of privilege. *See* Mot. at 23; Ex. 284-7. As Defendants commented in October, for Plaintiffs to leverage Defendants' efforts to resolve discovery disputes as evidence of wrongdoing is both disappointing and unpersuasive. The original redactions reflect Defendants' principled and diligent approach to preserve assertions of attorney-client privilege in the early stages of the custodial review; it is hardly uncommon to refine or revisit privilege calls as the case progresses or issues arise. As counsel indicated at argument, *see* Mot. Ex. 5, ECF 364-5 at 53-54, the original redactions concern correspondence with in-house counsel and demonstrate Defendants' efforts to make calibrated privilege decisions on the precise subjects Plaintiffs raise (including

business versus legal capacity). *See* ECF 284-17 (comment referencing seeking legal advice regarding Events API, later unredacted as not in itself containing enough of the substance of the request for legal advice); *see also* ECF 284-11 (colloquy with in-house attorney concerning advertiser questions about the operation of the Pixel). Defendants' subsequent agreement to adjust those determinations in response to Plaintiffs' concerns demonstrates good faith, not bad.[2] *See* ECF 284-1 at 32-33 (TIKTOK-BG-000009259, TIKTOK-BG-000009045, TIKTOK-BG-000002638); ECF 317 (Pls' Supp. Memo.) at 5. Nor do redactions which may vary between different copies of the same document—something that is unsurprising in large document reviews—support *in camera* review. The less-redacted version reflects one reviewer's determination that the less-redacted substance did not reveal the substance of the still-redacted legal advice; another reviewer simply reached a different conclusion.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs are not entitled to the relief sought. Their motion should be denied in its entirety.

Dated: November 22, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Dylan G. Savage*
Dylan G. Savage

*Attorney for Defendants*
TikTok Inc. and ByteDance Inc.

---

[2] Plaintiffs attempt to make much of Defendants' request to claw back certain portions of a document used during Becca Wong's deposition, ignoring that the clawback occurred live on the record to preserve Defendants' assertion of privilege. Had Plaintiffs raised the matter with Defendants rather than rushing into Court (it was not mentioned in the pre-Joint Stipulation correspondence, *see* ECF 284-12 ¶ 7), Defendants would have gladly resolved the issue upon further consideration, as they ultimately did.

## CERTIFICATE OF COMPLIANCE

The undersigned counsel for Defendants certifies that this brief contains 6,647 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 22, 2024

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Dylan G. Savage*
Dylan G. Savage

*Attorney for Defendants*
TikTok Inc. and ByteDance Inc.