VICTOR JIH, SBN 186515
vjih@wsgr.com
KELLY H. YIN, SBN 328380
kyin@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329

LUIS LI, SBN 156081
luis.li@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900

SHERYL S. BASSIN, NY SBN 4662797
sbassin@wsgr.com
(admitted *pro hac vice*)
DYLAN G. SAVAGE, CA SBN 310452
dsavage@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas. 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329

THOMAS WAKEFIELD, SBN 330121
twakefield@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BERNADINE GRIFFITH; PATRICIA SHIH; PHILIP CANTORE; JACOB WATTERS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

TIKTOK INC., et al.,

Defendants.

Case No. 5:23-cv-00964-SB-E

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO DEFENDANTS' APPLICATION TO THE CLERK TO TAX COSTS**

Judge Hon. Stanley Blumenfeld, Jr.

Action Filed: May 26, 2023

## I. INTRODUCTION

Plaintiffs initiated this action with the intent to certify a class of 100+ million non-TikTok internet users in the United States. Plaintiffs aggressively litigated this case, resulting in the expenditure of substantial resources by the parties. Having successfully defeated class certification, opposed Plaintiffs' request for reconsideration, and obtained summary judgment, Defendants TikTok Inc. and ByteDance Inc. have prevailed and are entitled to costs.

Defendants are seeking to tax only a fraction of the reasonably and necessarily incurred costs explicitly allowed by the Local Rules, which constitute an even smaller fraction of the expenses that Defendants have incurred in successfully defending against Plaintiffs' claims. The parties met and conferred and addressed Plaintiffs' questions about the costs. As a result of that meet and confer, Defendants agree to reduce the costs for e-discovery production from $672,961 to $414,445 because of de-duplication issues. While the remaining amount remains high, those costs were necessarily incurred as a result of Plaintiffs' litigation choices and strategy.

Plaintiffs make three main arguments. First, Plaintiffs argue that the parties should bear their own costs. Second, Plaintiffs argue that the Court should wait to tax costs pending appeal. Finally, Plaintiffs seek to substantially reduce the costs that are taxed. Especially in light of the reductions Defendants have already made, these arguments are without merit.

## II. DEFENDANTS SHOULD NOT BE FORCED TO BEAR THEIR OWN COSTS

Courts apply a "strong presumption" in favor of awarding costs to the prevailing party and the non-prevailing party bears "heavy burden ... to show why taxable costs are not recoverable." *Ross v. White*, 2020 WL 13588346, at *1 (C.D. Cal. Jan. 29, 2020) (internal citation omitted); *see also Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006). Plaintiffs acknowledge the factors they must show

to rebut that presumption: "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Ass'n of Mexican-Am. Educators v. State of Cal.*, 231 F.3d 572, 593 (9th Cir. 2000). None of them overcome the presumption.

First, in determining whether a case is of "substantial public importance" for the purposes of awarding taxable costs, courts generally consider whether a case is "subject to closer scrutiny or special interest by the court" or has "ramifications beyond the parties and concerns immediately involved in the litigation." *Young v. Buttigieg*, 2023 WL 1997767, at *2 (N.D. Cal. Feb. 14, 2023). Plaintiffs here had difficulty even establishing any claim for themselves, let alone on behalf of a class. That Plaintiffs attempted to inflate their unsubstantiated individual claims into a behemoth class action on behalf of all non-TikTok users does not turn it into a case of substantial public importance. These trumped-up but low-value individual claims did not require special scrutiny or interest by the Court, nor do they have ramifications beyond the litigants.

Unable to show that their own claims implicated a class, let alone the public interest, Plaintiffs attempt to bootstrap themselves to the recent Supreme Court proceedings in *TikTok v. Garland*, 604 U.S. ___ (2025). That case, which concerned the constitutionality of a law *banning* TikTok, involved different legal issues, circumstances, and ramifications.Banning an online platform for 170 million Americans implicates the public interest; this case does not.

Second, this was not a close case. While there is no uniform standard as to what makes a case "close and difficult" for the purposes of awarding costs, courts have generally considered the length of the final decision, the number of parties involved in the litigation, whether the decision involved a "long or complicated trial," or whether the decision turned on a "determination of credibility at trial." *See Farstone Tech., Inc. v. Apple Inc.*, 2016 WL 5799290, at *3 (C.D. Cal. Sept. 30, 2016). There

were not an unusual number of litigants in the case and the Court readily rejected Plaintiffs' attempt to make this a class action. No trial was needed nor were any credibility determinations necessary. The Court was able to dispose of all the claims on summary judgment. Adjudication of these issues took time only because of the allegations Plaintiffs made that they could not support with evidence (Dkt No. 385 at 1-2), their insistence on pursuing these claims for a nationwide class despite obvious typicality and predominance problems (Dkt No. 242 at 7-8), and a "deeply flawed analysis" by an expert that Plaintiffs themselves abandoned (Dkt No. 337 at 3). That Defendants won on summary judgment strongly suggests that, on the merits, this case was easily resolveable despite Plaintiffs' attempt to overcomplicate, overstate, and overlitigate. *See, e.g.*, *Hamilton v. TBC Corp.*, 2020 WL 5982391, at *2 (C.D. Cal. Feb. 13, 2020) (case was not close when "resolved in an 11-page summary judgment order focusing on the flaws in Plaintiffs' only expert's testimony").

Third, awarding costs will not chill future meritorious actions. Plaintiffs argue that awarding costs against counsel would chill counsel's willingness to undertake such actions in the future. But they provide no evidence that a cost award in this case would deter their ambitions in future cases. Beyond the lack of evidence, this factor is not concerned with chilling litigation in general, but with chilling future <u>meritorious</u> actions. As this Court has acknowledged time and again, the parties expended enormous resources on this case even after class certification was denied and the case only involved the claims of three individuals with a much more limited potential for recovery. *See* Dkt No. 385 at 4 ("The resources expended on this case are vastly disproportionate to the value of Plaintiffs' individual claims."). Plaintiffs have not shown that the costs Defendants seek to tax here are of a sufficient magnitude to deter future litigation, particularly in light of the other resources expended on this litigation. Further, the Court granted summary judgment because, even after extensive discovery, Plaintiffs lacked evidence to support any of their claims. *Id.* at 14-15, 18 & 21. Awarding costs here would not deter counsel from bringing cases that have

merit, are supported with evidence, and are appropriately litigated. That said, even if there were some potential chilling effect, that alone is insufficient to prevent taxing costs in favor of the prevailing party. *Hamilton*, 2020 WL 5982391, at *3.

Fourth, Plaintiffs make no argument or showing that Plaintiffs have limited financial resources. The burden is on Plaintiffs here to establish financial hardship; they "must provide the court with sufficient documentation such as affidavits, statements of assets and income, and a schedule of expenses." *Rodriguez v. New Hampshire Ball Bearings, Inc.*, 2019 WL 6711685, at *3 (C.D. Cal. Aug. 30, 2019) (internal citation omitted). Plaintiffs fail to do so.

Fifth, Plaintiffs have also not met their burden to show that economic disparity should prevent the awarding of costs. Where, as here, "Plaintiffs have not submitted any evidence regarding the financial condition or alleged inability of Plaintiffs to pay these costs," any alleged economic disparity is insufficient to overcome the presumption that costs will be taxed. *T.P. v. Walt Disney Parks & Resorts U.S. Inc.*, 2022 WL 1054935, at *2 (C.D. Cal. Mar. 3, 2022). A "Court cannot simply guess as to the financial condition of the Plaintiffs." *Id.*

Evaluation of economic disparity should also take into account the resources of the law firms that instigated this action. Plaintiffs have submitted no evidence that they themselves financed this action. The resources that have been expended by Plaintiffs likely far exceed their bank accounts and certainly did exceed the value of their individual claims. *See* Dkt No. 337 at 6 ("The parties and the Court have expended enormous resources on this case."); Dkt No. 242 at 7 ("The parties have expended enormous resources on this motion: the eight expert reports alone span hundreds of pages."); Dkt No. 385 at 4 ("The resources expended on this case are vastly disproportionate to the value of Plaintiffs' individual claims."). Since this litigation was fueled by the deeper pockets of the financially robust, well-capitalized law firms employing Plaintiffs' counsel, it is only appropriate that those firms' resources be taken into account. These resources are apparent from Plaintiffs'

continued aggressive litigation of this matter. As this Court observed, a claim that these three individuals are at an economic disparity with Defendants is "in some tension with their approach to this case; even after denial of class certification, they obtained new expert reports totaling nearly 300 pages from experts who are being compensated at rates between $750 and $1,075 per hour." Dkt No. 283 at 4. That approach suffused their litigation strategy from the filing of the complaint through their most recent filing.

Even had Plaintiffs established economic disparity with evidence, instead of assuming it, taxing costs is still warranted. "Economic disparity, by itself, [does not] rebut the strong presumption in favor of awarding costs." *Camfield v. Bd. of Trs. of Redondo Beach Unified Sch. Dist.*, 2018 WL 910459, at *4 (C.D. Cal. Feb. 14, 2018) (citing *Mam v. City of Fullerton*, 2014 WL 12573550, at *3 (C.D. Cal. Jul. 24, 2014)). Courts "routinely tax costs in favor of corporate defendants against individual plaintiffs." *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, 2018 WL 11354865, at *2 (C.D. Cal. Sept. 11, 2018). This is true even where there is a "vast disparity" in resources, because such a disparity does not necessarily result in financial hardship to the losing party, especially where, as here, there is no evidence that the losing party will be financially impacted by an award of costs. *Haitayan v. 7-Eleven, Inc.*, 2018 WL 5263210, at *3 (C.D. Cal. Aug. 31, 2018). "[T]his factor alone cannot justify denying costs because there is almost always a financial disparity between a corporate entity and individual litigants." *Id.*

## III. THE COURT SHOULD NOT STAY TAXING COSTS PENDING APPEAL

In assessing whether to stay an order taxing costs pending appeal, courts look at "(1) the applicant's likelihood of success on the merits; (2) whether not granting a stay will irreparably injure the applicant; (3) whether granting a stay will substantially injure the other parties; and (4) where the public interest lies." *Hamilton*, 2020 WL 5982391, at *2. The first two factors "are the most critical." *Id.* (internal quotations

omitted).

The balance of factors do not support a stay. First, Plaintiffs make no argument on their likelihood of success on appeal. Simply saying that the Court's rulings "may" be vacated or reversed does not establish likelihood. "It is not enough that the chance of success on the merits be 'better than negligible.'" *Nken v. Holder*, 556 U.S. 418, 434 (2009). The failure to offer any real argument on likelihood of success on appeal is fatal to the stay request. *Schroeder v. Ace Towing Servs., Inc.*, 2015 WL 477298, at *3 (D. Haw. Feb. 5, 2015); *cf. Nken*, 556 U.S. at 434 (holding the first two factors "are the most critical"). As for the second and third factors, Plaintiffs concede that they "may not be irreparably harmed absent a stay" but focus on the fact that Defendants would not be harmed by a stay. Dkt No. 399 at 8-9. Taken together, the second and third factors together are thus neutral at best. *See Newman v. Underhill*, 2024 WL 1647218, at *2 (C.D. Cal. Mar. 29, 2024). Finally, in terms of public interest, Plaintiffs repeat their arguments about chilling meritorious actions addressed above. Taxing costs here would not deter future meritorious claims.

## IV. THE COURT SHOULD NOT FURTHER REDUCE DEFENDANTS' COSTS

**Deposition costs.** Plaintiffs make two arguments. First, Plaintiffs claim that the deposition transcripts were not necessary. Deposition costs are taxable when a deposition "appears reasonably necessary to a party at the time the deposition was taken, even if the deposition may not have been used at trial." *Bryant v. OptumRX Pharmacy, Inc.*, 2017 WL 5714723, at *2 (C.D. Cal. Sept. 8, 2017) (internal quotation omitted). Deposition costs are reasonably necessary if used for "discovery, dispositive motions, and overall defense strategy." *Shorter v. S. Cal. Buick Pontiac GMC Dealers Inc.*, 2019 WL 994964, at *3 (C.D. Cal. Jan. 7, 2019). Additionally, depositions taken for impeachment purposes are taxable. *Indep. Iron Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656, 679 (9th Cir. 1963); *Harrington v. City of Portland*, 1990 WL 177406, at *3 (D. Or. Nov. 8, 1990) ("A deposition taken for impeachment

purposes qualifies for consideration as a taxable cost.").

The deposition transcripts at issue here were necessary. Sixteen were cited in class certification or summary judgment briefing or were for witnesses for whom Plaintiffs designated deposition testimony to be used at trial. Dkt No. 399-1 ¶ 10. The remaining eight transcripts are for the parties' experts. All but one of those experts was designated for trial; the only exception—Dr. Stivers—was slated to rebut an expert that Plaintiffs ultimately withdrew. The transcript was ordered, however, before he was withdrawn. McKelvie Decl. ¶ 4. Thus, that transcript was reasonably anticipated as necessary when it was ordered. *Corridean v. Restore Fin. Servs. Network, LLC*, 2007 WL 1989622, at *4 (D. Or. July 6, 2007) ("A deposition … must only be reasonably necessary at the time it was taken, without regard to later developments that may eventually render the deposition unneeded at the time of trial or summary disposition.")

Second, Plaintiffs argue that additional documentation is necessary. There is no such requirement under the Local Rules. Consistent with Local Rule 54-3.5(a), Defendants attached itemized invoices for the transcripts and provided an explanation of why higher rates per-page were reasonable under the circumstances. Additionally, following the Local Rules and the Central District of California's Bill of Costs Handbook, Defendants' attorney verified the bill of costs and signed a declaration stating that the items therein are correct and necessarily incurred.[1] Beyond that, the burden rests "on the losing party to establish proper grounds for denying statutorily authorized costs." *Weco Supply Co. v. Sherwin-Williams Co.*, 2013 WL 56639, at *4 (E.D. Cal. Jan. 3, 2013); *see also Barnett v. S. Cal. Edison Co. Long Term Disability Plan*, 2013 WL 6230270, at *2 (E.D. Cal. Dec. 2, 2013).

**Production costs.** Defendants agree to reduce the amount sought for production costs. Defendants initially requested in their Application to the Clerk to

[1] https://www.cacd.uscourts.gov/court-procedures/filing-procedures/bill-costs.

Tax Costs $672,961 for the cost of physically replicating or reproducing 1,706 gigabytes of material necessarily obtained for use in the case. *See* Dkt No. 397. During the parties' meet and confer, Plaintiffs claimed that only 1,092 gigabytes was actually being hosted by them. They further identified 32.27 gigabytes of duplicated communications in that production. *See* McKelvie Decl. ¶ 6. To simplify the Court's resolution of this issue, Defendants will seek recovery of costs for only 1060 gigabytes of production charges. Even though Defendants have a reasonable basis to apply this reduction against both their native or image production, which have different rates, they will apply the reduction to the image production, which has the higher cost, which results in a greater reduction. Thus, Defendants now seek $3,185 in charges for 31.85 GB of native production and reduce their request to $411,260 for the remaining 1028.15 GB in image production.

Plaintiffs' remaining objections to the production costs have no merit. First, Plaintiffs complain about the timing of Defendants' document productions. There is no need to reargue that issue. Even if Plaintiffs believe that documents should have been produced faster, it does not change the cost Defendants incurred in making those productions.

Second, Plaintiffs claim that the particular costs are not recoverable. But costs necessary to replicate electronic discovery "in any format in which the material is required to be produced" are taxable, L.R. 54-3.10(g), including optical character recognition, preservation of metadata, and conversion to a non-editable (*e.g.*, TIFF) format, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 931 (9th Cir. 2015). The costs sought here were necessary to comply with the Stipulated Discovery Order, which mandated the production of documents with those characteristics here. *Compare* Dkt No. 34 at 5-6, *with* Dkt No. 394-4 ¶¶ 4-5. Defendants were separately charged for other non-taxable services, such as data ingestion and processing. *See* McKelvie Decl. ¶ 5.

Third, Plaintiffs claim that Defendants needlessly increased the size of internal chat message productions when Defendants changed from production of single message .txt files to threaded message PDFs. Plaintiffs, however, complained about the production of single message .txt files; Defendants only produced the chats in the threaded PDF format—at great expense—at Plaintiffs' insistence. *See* McKelvie Decl. ¶ 7.[2] The file size results from the differences in the file types, such as additional graphical renditions (*e.g.*, message replies and emoji reactions) displayed in the PDF files. McKelvie Decl. ¶ 8. These production costs were necessary for production in the format required by Plaintiffs and are therefore taxable. L.R. 54-3.10(g); *Online DVD-Rental*, 779 F.3d at 931.

Fourth, Plaintiffs claim Defendants paid too much. They base this on a survey that both explicitly disclaims reliability and only applies to non-production discovery costs. Complexdiscovery.com published survey results, with the disclaimer "its non-scientific nature means it should be used as a guide rather than a definitive pricing standard," showing an average "per GB cost to *process* electronically stored information based on volume *at ingestion*."[3] Defendants were separately charged for processing data at ingestion, which Defendants do not seek to tax. McKelvie Decl. ¶ 5. Plaintiffs counsel also claim that they have negotiated document production in other cases for $0.03 per page for unspecified services, which Plaintiffs have not claimed are commensurate with all services covered in Defendants' production costs. Dkt No. 399-1 ¶ 8. While Plaintiffs try to impose this figure upon Defendants for this matter, they did not even do so for themselves–they "agreed to an alternative [undisclosed] pricing model for this case." *Id.*

[2] Defendants incurred substantial expense in generating the threaded messages, which, although recoverable, Defendants have not sought to tax. Defendants produced the threaded messages with the metadata available. McKelvie Decl. ¶ 8.

[3] https://complexdiscovery.com/buyers-guide/ediscovery-pricing-overview-winter-2024.

The rates here are the best Defendants could negotiate and are the rates Defendants paid. Dkt No. 394-4 ¶¶ 4-5. They are consistent with rates taxed in other matters for TIFF conversion alone, *see, e.g.*, *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, 2015 WL 9274092, at *9-10 (D. Haw. Nov. 25, 2015) (awarding costs for $400 per-GB TIFF creation); *CSP Techs., Inc. v. Sud-Chemie AG*, 2015 WL 2405528, at *4-5 (S.D. Ind. May 20, 2015) (awarding costs for $850 per-GB TIFF conversion services).

Dated: January 27, 2025

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/ Caitlin McKelvie*
Caitlin McKelvie

*Attorney for Defendants*
TikTok Inc. and ByteDance Inc.