VICTOR JIH, SBN 186515
vjih@wsgr.com
KELLY H. YIN, SBN 328380
kyin@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1900 Avenue of The Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329

LUIS LI, SBN 156081
luis.li@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900

SHERYL S. BASSIN, NY SBN 4662797
sbassin@wsgr.com
(admitted *pro hac vice*)
DYLAN G. SAVAGE, CA SBN 310452
dsavage@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas. 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329

THOMAS WAKEFIELD, SBN 330121
twakefield@wsgr.com
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (424) 446-6900

*Attorneys for Defendants TikTok Inc. and ByteDance Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

BERNADINE GRIFFITH, et. al

Plaintiffs,

v.

TIKTOK INC., et al.,

Defendants.

Case No. 5:23-cv-00964-SB-E

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO RETAX COSTS**

Judge Hon. Stanley Blumenfeld, Jr.

## I. INTRODUCTION

Plaintiffs initiated this action with the intent to certify a class of 100+ million non-TikTok internet users in the United States. Plaintiffs aggressively litigated this case, resulting in the expenditure of substantial resources by the parties. Having successfully defeated class certification, opposed Plaintiffs' request for reconsideration, and obtained summary judgment, Defendants TikTok Inc. and ByteDance Inc. have prevailed and are entitled to costs. The Clerk correctly entered a Bill of Costs in the amount of $460,941.65 (Dkt. 409), and Plaintiffs' motion to retax costs should be denied.

The Clerk's bill of costs properly reflects the limited costs Defendants sought and are entitled to tax. Defendants voluntarily sought only a fraction of the reasonably and necessarily incurred costs explicitly allowed by the Local Rules, which constitute an even smaller fraction of the expenses that Defendants have incurred in successfully defending against Plaintiffs' claims. While the amount is high, those costs were necessarily incurred as a result of Plaintiffs' litigation choices and strategy.

Plaintiffs make three main arguments. With a handful of exceptions on the margins, all were raised nearly verbatim in Plaintiffs' prior brief and properly rejected. First, Plaintiffs argue that the parties should bear their own costs. Second, Plaintiffs argue that the Court should wait to tax costs pending appeal. Finally, Plaintiffs seek to substantially reduce the costs that are taxed. Especially in light of the reductions Defendants have already made, these arguments are without merit.

## II. DEFENDANTS SHOULD NOT BE FORCED TO BEAR THEIR OWN COSTS

Courts apply a "strong presumption" in favor of awarding costs to the prevailing party and the non-prevailing party bears "heavy burden . . . to show why taxable costs are not recoverable." *Ross v. White*, 2020 WL 13588346, at *1 (C.D. Cal. Jan. 29, 2020) (internal citation omitted); *see also Dawson v. City of Seattle*,

435 F.3d 1054, 1070 (9th Cir. 2006). Plaintiffs acknowledge the factors they must show to rebut that strong presumption: "(1) the substantial public importance of the case, (2) the closeness and difficulty of the issues in the case, (3) the chilling effect on future similar actions, (4) the plaintiff's limited financial resources, and (5) the economic disparity between the parties." *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 593 (9th Cir. 2000). None of them overcome the presumption.

First, in determining whether a case is of "substantial public importance" for the purposes of awarding taxable costs, courts generally consider whether a case is "subject to closer scrutiny or special interest by the court" or has "ramifications beyond the parties and concerns immediately involved in the litigation." *Young v. Buttigieg*, 2023 WL 1997767, at *2 (N.D. Cal. Feb. 14, 2023). Plaintiffs here had difficulty even establishing any claim for themselves, let alone on behalf of a class. That Plaintiffs attempted to inflate their unsubstantiated individual claims into a behemoth class action on behalf of all non-TikTok users does not turn the case into one of substantial public importance. These trumped-up but low-value individual claims did not require special scrutiny or interest by the Court, nor do they have ramifications beyond the litigants.

Unable to show that their own claims implicated a class, let alone the public interest, Plaintiffs attempt to bootstrap themselves to the recent Supreme Court proceedings in *TikTok v. Garland*, 604 U.S. ___ (2025). That case, which concerned the constitutionality of a law *banning* TikTok, involved different legal issues, circumstances, and ramifications. Banning an online platform for 170 million Americans implicates the public interest; this case does not.

Second, this was not a close case. While there is no uniform standard as to what makes a case "close and difficult" for the purposes of awarding costs, courts have generally considered the length of the final decision, the number of parties involved in the litigation, whether the decision involved a "long or complicated

trial," or whether the decision turned on a "determination of credibility at trial." *See Farstone Tech., Inc. v. Apple Inc.*, 2016 WL 5799290, at *3 (C.D. Cal. Sept. 30, 2016). There were not an unusual number of litigants in the case and the Court readily rejected Plaintiffs' attempt to make this a class action. No trial was needed nor were any credibility determinations necessary. The Court was able to dispose of all the claims on summary judgment. Adjudication of these issues took time only because of the allegations Plaintiffs made that they could not support with evidence (Dkt No. 385 at 1-2), their insistence on pursuing these claims for a nationwide class despite obvious typicality and predominance problems (Dkt No. 242 at 7-8), and a "deeply flawed analysis" by an expert that Plaintiffs themselves abandoned (Dkt. No. 337 at 3). That Defendants won on summary judgment strongly suggests that, on the merits, this case was easily resolveable despite Plaintiffs' attempt to overcomplicate, overstate, and overlitigate. *See, e.g.*, *Hamilton v. TBC Corp.*, 2020 WL 5982391, at *2 (C.D. Cal. Feb. 13, 2020) (case was not close when "resolved in an 11-page summary judgment order focusing on the flaws in Plaintiffs' only expert's testimony").

Third, awarding costs will not chill future meritorious actions. Plaintiffs argue that awarding costs against counsel would chill counsel's willingness to undertake such actions in the future. But they provide no evidence that a cost award in this case would deter their ambitions in future cases. Beyond the lack of evidence, this factor is not concerned with chilling litigation in general, but with chilling future <u>meritorious</u> actions. As this Court has acknowledged time and again, the parties expended enormous resources on this case even after class certification was denied and the case only involved the claims of three individuals with a much more limited potential for recovery. *See* Dkt No. 385 at 4 ("The resources expended on this case are vastly disproportionate to the value of Plaintiffs' individual claims."); Dkt No. 337 at 6 ("The parties and the Court have expended enormous resources on this case."); Dkt No. 242 at 7 ("The parties have expended enormous

resources on this motion: the eight expert reports alone span hundreds of pages."). Plaintiffs have not shown that the costs Defendants seek to tax here are of a sufficient magnitude to deter future meritorious litigation, particularly in light of the other resources expended on this litigation. Further, the Court granted summary judgment because, even after extensive discovery, Plaintiffs lacked evidence to support any of their claims. Dkt No. 385 at 14-15, 18 & 21. Awarding costs here would not deter counsel from bringing cases that have merit, are supported with evidence, and are appropriately litigated. That said, even if there were some potential chilling effect that is not attributable to Plaintiffs' own strategic decisions, that alone is insufficient to prevent taxing costs in favor of the prevailing party. *Hamilton*, 2020 WL 5982391, at *3.

Fourth, Plaintiffs make no argument or showing that Plaintiffs have limited financial resources. The burden is on Plaintiffs here to establish financial hardship; they "must provide the court with sufficient documentation such as affidavits, statements of assets and income, and a schedule of expenses." *Rodriguez v. New Hampshire Ball Bearings, Inc.*, 2019 WL 6711685, at *3 (C.D. Cal. Aug. 30, 2019) (internal citation omitted). Plaintiffs fail to do so.

Fifth, Plaintiffs have also not met their burden to show that economic disparity should prevent the awarding of costs. Where, as here, "Plaintiffs have not submitted any evidence regarding the financial condition or alleged inability of Plaintiffs to pay these costs," any alleged economic disparity is insufficient to overcome the presumption that costs will be taxed. *T.P. v. Walt Disney Parks & Resorts U.S. Inc.*, 2022 WL 1054935, at *2 (C.D. Cal. Mar. 3, 2022). A "Court cannot simply guess as to the financial condition of the Plaintiffs." *Id.*

Plaintiffs focus on the alleged financial disparity between Plaintiffs' counsel and Defendants. *See* Dkt. 410-1 at 8 ("Counsel's finances are dwarfed by those of Defendants"). But Plaintiffs provide no evidence of their counsel's financial condition or any alleged inability to pay the taxed costs, nor do Plaintiffs foreclose

the possibility that a third-party funding source can or must pay such sums. Any such claim regarding an inability to pay the taxed costs is belied by the substantial resources expended in this litigation, which vastly exceeded the value of Plaintiffs' individual claims. *See e.g.*, Dkt No. 385 at 4. This litigation was fueled by the deeper pockets of the financially robust, well-capitalized law firms (or other sources) employing Plaintiffs' counsel. These resources are apparent from Plaintiffs' continued aggressive litigation of this matter. As this Court observed, a claim that Plaintiffs are at an economic disparity with Defendants is "in some tension with their approach to this case; even after denial of class certification, they obtained new expert reports totaling nearly 300 pages from experts who are being compensated at rates between $750 and $1,075 per hour." Dkt. 283 at 4. That approach suffused their litigation strategy from the filing of the complaint through their most recent filing.

Even had Plaintiffs established economic disparity with evidence, instead of assuming it, taxing costs is still warranted. "Economic disparity, by itself, [does not] rebut the strong presumption in favor of awarding costs." *Camfield v. Bd. of Trs. of Redondo Beach Unified Sch. Dist.*, 2018 WL 910459, at *4 (C.D. Cal. Feb. 14, 2018) (citing *Mam v. City of Fullerton*, 2014 WL 12573550, at *3 (C.D. Cal. Jul. 24, 2014)). Courts "routinely tax costs in favor of corporate defendants against individual plaintiffs." *In re 5-Hour Energy Mktg. and Sales Practices Lit.*, 2018 WL 11354865, at *2 (C.D. Cal. Sept. 11, 2018). This is true even where there is a "vast disparity" in resources, because such a disparity does not necessarily result in financial hardship to the losing party, especially where, as here, Plaintiffs have submitted no evidence that they, as the losing party, will be financially impacted by an award of costs. *Haitayan v. 7-Eleven, Inc.*, 2018 WL 5263210, at *3 (C.D. Cal. Aug. 31, 2018). "[T]his factor alone cannot justify denying costs because there is almost always a financial disparity between a corporate entity and individual litigants." *Id.*; *see also Camfield*, 2018 WL 910459 at *4 (disparity between

plaintiffs' counsel, a solo practitioner, and defendant, a school district worth nearly $100,000,000, was insufficient to justify reducing costs).

## III. THE COURT SHOULD NOT STAY TAXING COSTS PENDING APPEAL

In assessing whether to stay an order taxing costs pending appeal, courts look at "(1) the applicant's likelihood of success on the merits; (2) whether not granting a stay will irreparably injure the applicant; (3) whether granting a stay will substantially injure the other parties; and (4) where the public interest lies." *Hamilton v. TBC Corp.*, 2020 WL 5982391, at *2 (C.D. Cal. Feb. 13, 2020). The first two factors "are the most critical." *Id.* (internal quotations omitted).

The balance of factors do not support a stay. First, Plaintiffs make no argument on their likelihood of success on appeal. Simply saying that the Court's rulings "may" be vacated or reversed does not establish likelihood. "It is not enough that the chance of success on the merits be 'better than negligible.'" *Nken*, 556 U.S. at 434. The failure to offer any real argument on likelihood of success on appeal is fatal to the stay request. *Schroeder v. Ace Towing Servs., Inc.*, 2015 WL 477298, at *3 (D. Haw. Feb. 5, 2015); *cf. Nken*, 556 U.S. at 434 (holding the first two factors "are the most critical"). As for the second and third factors, Plaintiffs concede that they "may not be irreparably harmed absent a stay" but focus on the fact that Defendants would not be harmed by a stay. Dkt. 410-1 at 10. Taken together, the second and third factors together are thus neutral at best. *See Newman v. Underhill*, 2024 WL 1647218, at *2 (C.D. Cal. Mar. 29, 2024). Finally, in terms of public interest, Plaintiffs repeat their arguments about chilling meritorious actions addressed above. Taxing costs here would not deter future meritorious claims.

## IV. THE COURT SHOULD NOT FURTHER REDUCE DEFENDANTS' COSTS

Defendants voluntarily agreed to reduce the amount sought for document production costs by $258,516. Defendants initially requested $672,961 in

production costs in their Application to the Clerk to Tax Costs. *See* Dkt No. 397. During the parties' meet and confer, Plaintiffs claimed reductions based on the volume of data Plaintiffs hosted and sought further reductions for duplicated communications. *See* McKelvie Decl. ¶ 3. To simplify the Court's resolution of this issue, Defendants agreed to reduce their request to $414,445 in production costs, fully addressing these concerns. The Clerk's bill of costs reflects this agreed-upon reduction.

Plaintiffs' remaining arguments have no merit. First, Plaintiffs complain about the timing of Defendants' document productions. There is no need to reargue that issue, which has no relevance to the instant motion. Even if Plaintiffs believe that documents should have been produced faster, it does not change the cost Defendants incurred in making those productions.

Second, Plaintiffs claim that the particular costs are not recoverable because they were not sufficiently described, quibbling with language in the supporting declaration from Defendants' vendor. But costs necessary to replicate electronic discovery "in any format in which the material is required to be produced" are taxable, L.R. 54-3.10(g), including optical character recognition, preservation of metadata, and conversion to a non-editable (e.g., TIFF) format. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 931 (9th Cir. 2015). The costs sought here were necessary to comply with the Stipulated Discovery Order, which mandated the production of documents with those characteristics here. *Compare* Dkt No. 34 at 5-6 *with* Dkt. 394-4 at ¶¶ 4-5. Defendants were separately charged for other non-taxable services, such as data ingestion and processing; Defendants removed those amounts from the costs Defendants sought. *See* McKelvie Decl. ¶ 4.

Third, Plaintiffs claim that Defendants needlessly increased the size of internal chat message productions when Defendants changed from production of single message .txt files to threaded message PDFs. Plaintiffs, however, complained about the production of single message .txt files; Defendants only produced the

chats in the threaded PDF format—at great expense—because Plaintiffs insisted. *See id.* ¶ 4.[1] The file size results from the differences in the file types, such as additional graphical renditions (e.g., message replies, emoji reactions, date, and time) displayed in the PDF files. *Id.* ¶ 5. And while Plaintiffs claim that the increase in document size was unreasonable, they do not dispute that the PDFs would result in a larger document size, that they requested reproduction in a readable, threaded format (i.e., imaged PDF), that the files increased in size because Defendants accommodated Plaintiffs' demand that the files be produced in a different format, or that Defendants produced the chats initially as individual messages to comply with Plaintiffs' demands for documents as quickly as possible. Nor do they identify what they claim the increase in size should have been upon conversion to PDF. These production costs were necessary for production in the format required by Plaintiffs and are therefore taxable. L.R. 54-3.10(g), *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 931.

Fourth, Plaintiffs complain that Defendants produced overlapping, duplicated conversation threads. As an accommodation to Plaintiffs' objections, Defendants already agreed to reduce costs for supposedly "duplicative" messages by the amount Plaintiffs initially identified. *See*, *supra* at 7-8. Moreover, as Plaintiffs' counsel is undoubtedly aware from their own extensive experience with e-discovery, deduplication and threading are not an exact science. What might appear to be multiple versions of messages or threads may not indeed be identical (or recognized as identical by the review software) and can be produced in spite of the parties' best efforts. It is especially reasonable in a case such as this one, which called for the review and production of millions of pages of chats, that the production would contain such documents. As discussed above, Defendants expended significant resources on rendering threads of Lark chats in response to Plaintiffs' request and

[1] Defendants incurred substantial expense in generating the threaded messages, which, although recoverable, Defendants have not sought to tax. Defendants produced the threaded messages with the metadata available. McKelvie Decl. ¶ 5.

mitigating the number of duplicate conversations produced where they involved multiple custodians. Plaintiffs otherwise provide no evidence that the hosting costs they incurred were unreasonable for a lawsuit of this size.

Fifth, Plaintiffs claim Defendants paid too much because E&Y's rates are "above-market." They base this on a survey that both explicitly disclaims reliability and only applies to non-production discovery costs. Complexdiscovery.com published survey results, with the disclaimer "its non-scientific nature means it should be used as a guide rather than a definitive pricing standard," showing an average "per GB cost to *process* electronically stored information based on volume *at ingestion*."[2] Defendants were separately charged for processing data at ingestion, which Defendants do not seek to tax. McKelvie Decl. ¶ 2. Plaintiffs' counsel claim that they have negotiated document production in other cases for $0.03 per page for unspecified services, which Plaintiffs have not claimed are commensurate with all services covered in Defendants' production costs. Dkt. 410-1 at 19.[3] While Plaintiffs try to impose this figure upon Defendants for this matter, they did not even do so for themselves–they "agreed to an alternative [undisclosed] pricing model for this case." Dkt. 399-1 ¶ 8.

The rates here are the best Defendants could negotiate and are the rates Defendants paid. Dkt. 394-4 ¶¶ 4-5. They are consistent with rates taxed in other matters for TIFF conversion alone, *see, e.g.*, *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, 2015 WL 9274092, at *9–10 (D. Haw. Nov. 25, 2015) (awarding costs for $400 per-GB TIFF creation); *CSP Techs., Inc. v. Sud-Chemie AG*, 2015 WL 2405528, at *4–5 (S.D. Ind. May 20, 2015) (awarding costs for $850 per-GB TIFF conversion services). Furthermore, Plaintiffs' discovery requests called for a wide

---

[2] https://complexdiscovery.com/buyers-guide/ediscovery-pricing-overview-winter-2024

[3] Plaintiffs cite to Rotter Declaration ¶8 as support for their discovery vendor's previously offered rates. *See* Dkt. 410-1 at 19. But Rotter Declaration ¶ 8 is opposing counsel's statement regarding the truth and correctness of Exhibit 2, a Lark conversation. Discovery vendor rates are not discussed in the Rotter Declaration.

array of documents, from low resolution txt files to high resolution images and powerpoints, which could not be processed at the same per-page rate. Given the needs of this case, a per-gigabyte rate is reasonable.

Dated: April 7, 2025

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Caitlin McKelvie*
Caitlin McKelvie

*Attorneys for Defendants*
TIKTOK INC. and BYTEDANCE INC.