Ekwan E. Rhow (CA SBN 174604)
erhow@birdmarella.com
Marc E. Masters (CA SBN 208375)
mmasters@birdmarella.com
Christopher Jumin Lee (SBN 322140)
clee@birdmarella.com
BIRD, MARELLA, RHOW, LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (*pro hac vice*)
GLANCY PRONGAY & MURRAY, LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars
14th Floor
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
gpark@susmangodfrey.com

John W. McCauley (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
jmccauley@susmangodfrey.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BERNADINE GRIFFITH, *et al*, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

TIKTOK, INC, a corporation; BYTEDANCE, INC., a corporation,

Defendants.

CASE NO. 5:23-cv-00964-SB-E

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION TO RETAX COSTS OR IN THE ALTERNATIVE STAY TAXATION PENDING APPEAL**

JUDGE: Hon. Stanley Blumenfeld, Jr.
Date: May 9, 2025
Time: 9:30 A.M.

Action Filed: May 26, 2023
Trial Date: N/A

## INTRODUCTION

Defendants, in their Response To Plaintiffs' Motion to Retax Costs [Dkt. 419] ("Def. Br."), fail to meaningfully refute Plaintiffs' arguments in Plaintiffs' Brief in Support of Motion to Retax Costs or in the Alternative Stay Taxation Pending Appeal [Dkt. 410-1] ("Opening Brief").

In particular, Defendants have not successfully rebutted Plaintiffs' arguments that (1) this case raises unique public interest implications that are important to the national discourse, (2) an award of costs may also chill the bringing of meritorious actions, including ones factually and legally similar to those that have recently settled, (3) given that Defendants are worth upwards of ***$300 billion***, the financial disparity between the parties is enormous, and (4) this case presents novel legal issues that were both close and difficult. For these reasons, the Court should exercise its discretion to not award costs.

Defendants also have not persuasively challenged Plaintiffs' argument that, if the Court decides to award costs, it should stay taxation until Plaintiffs' pending appeal is resolved. At the very least, the Court should delay its decision until after Plaintiffs have filed their opening appellate brief on May 19, 2025 to allow the Court to evaluate the merits of the appeal before deciding whether to award costs.

Finally, Defendants fail to establish that their cost request was reasonable and not inflated. To the extent the Court awards costs, it should award a lower amount of costs to account for problems with discovery created by Defendants alone.

## ARGUMENT

### I. Plaintiffs Have Rebutted The Presumption That Prevailing Party Bears Costs

#### A. This Case Raises Significant Public Interest Implications

Defendants' argument that this case has no substantial public importance is belied by the facts. They argue, without support, that "[b]anning an online platform

for 170 million Americans implicates the public interest; ***this case does not***." Def. Br. at 2 (emphasis added). However, this argument ignores the concerns of the ***other*** 170 million Americans—those who do not use the TikTok app—whose personal data is captured without consent despite never having signed up for TikTok. As discussed in Plaintiffs' Opening Brief, this concern is not hypothetical, and is in fact shared by the federal government. *See* Plaintiffs' Opening Brief, at *6 ("The former Attorney General also specifically recognized the national security concern of "TikTok's collection of ***non-user data***." Reply Br. for Respondent at 16, *TikTok v. Garland*, 604 U.S. ___ (2025) (Nos. 24-656, 24-657) (emphasis added); *see also* Oral Arg. Tr. (Jan. 10, 2025) at 115:21-116:1 (Solicitor General Prelogar) ("TikTok collects unprecedented amounts of personal data. And, as Justice Sotomayor noted, it's not just about the 170 million American users but also about their ***non-user contacts***, who might not even be engaging with the platform." (emphasis added)). Accordingly, this case raises serious questions about the extent to which companies track individuals through tools like the Pixel and Events API, and whether Americans can maintain control over their data online. That is undeniably a matter of public concern.

**B. Chilling of Meritorious Claims**

Defendants claim, without support, that "awarding costs will not chill future meritorious actions." Def. Br. at 3. But an award of costs will chill future meritorious actions because counsel, who have every incentive to carefully evaluate potential matters before investing their time and money, never know with certainty at the outset of a meritorious litigation whether it will in fact be successful. Indeed, neither do defendants – that is why most cases don't resolve immediately upon filing. So many variables can and sometimes do prevent otherwise meritorious lawsuits from succeeding. Meritorious cases, and especially meritorious cases that require a large investment, are inherently uncertain, and imposing large cost awards will chill counsel's willingness to take on important cases that, like every case, have uncertain outcomes. That is especially true where, as here, Plaintiffs do not control the costs

created by Defendants' choice to produce documents inefficiently and at above-market rates.

To the extent Defendants are arguing that the type of case Plaintiffs brought here, in which they seek to vindicate the privacy rights of millions of American internet users, is inherently unmeritorious, Defendants fail to consider that several factually and legally similar cases have either reached resolution or are in more advanced litigation postures. *See In re Facebook Internet Tracking Litig*., 5:12-MD-02314-EJD (final approval of settlement granted, ); *Brown v. Google, LLC*, 4:20-cv-5146-YGR (N.D. Cal.) (preliminary approval of settlement granted); *Rodriguez v. Google LLC*, 3:20-cv-04688-RS (N.D. Cal) (class certification granted, summary judgment denied, case proceeding to trial); *Calhoun v. Google LLC*, 4:20-cv-3664-YGR (N.D. Cal.) (district court's grant of summary judgment to defendant reversed by Ninth Circuit and remanded back to the district court).

In sum, these cases are important and their outcomes are inherently uncertain. An award of costs would mistakenly send a chilling message that plaintiffs who pursue claims in cutting-edge digital privacy litigation may face steep penalties for doing so.

### C. Defendants Cannot Dispute The Financial Disparity Between The Parties

Defendants argue that "Plaintiffs focus on the *alleged* financial disparity between Plaintiffs' counsel and Defendants." The disparity is not merely "alleged", but is obvious and extreme. Defendants' parent company is worth over $300 billion. Plaintiffs' counsel—like virtually all law firms—operate at a scale that doesn't even register in comparison.[1] Each of the cases cited by Defendants concerning financial disparity, Def. Br. at 5, either concerned a municipality or a company with a smaller

---

[1] Defendants speculate that "other sources" may be funding Plaintiffs' Counsel, Def. Br. at 5, but that speculation is incorrect. Plaintiffs' Counsel is self-funded.

market capitalization than the $300 billion market value of Defendants.[2] None resemble the financial gulf here. In a case involving a global tech conglomerate, the disparity is extreme and plainly relevant to the equitable analysis.

### D. Defendants Have Not Demonstrated How The Issues In the Case Were Not Close And Difficult

Defendants' argument that the issues were not close and difficult, Def. Br. at 2-3, is without merit. The issues in this case were factually and legally similar to *Facebook Tracking*, *Brown*, *Rodriguez*, and *Calhoun*, all of which ultimately settled or are in a more advanced litigation posture. Furthermore, Defendants did not address the arguments made by Plaintiffs, in the Opening Brief at 7-8, that the Ninth Circuit has not yet squarely addressed the legal issues at stake, nor the fact that Plaintiffs prevailed on summary judgment with respect to user consent. The complexity of the issues and Plaintiffs' success on key points underscore that this was a difficult case.

## II. Defendants Have Not Demonstrated That The Court Should Not Stay Costs Pending Appeal

Defendants argue that Plaintiffs have not shown a likelihood of success on appeal. Def. Br. at 6. But Plaintiffs have already explained—at length—that this case raises close, complex, and novel legal questions that have not yet been addressed by

---

[2] Defendants' statement that Plaintiffs attempted to "overcomplicate, overstate, and overlitigate", Def. Br. at 3, is belied by a comparison to other factually and legally similar cases. For example, Plaintiffs retained experts for the following issues: (1) technical issues regarding the Pixel and Events API, (2) damages, (3) privacy, and (4) claims administration. Similar cases used not only similar, but often identical, experts. *See Calhoun v. Google LLC* (plaintiffs retained two technical experts (including Dr. Zubair Shafiq), two privacy experts, Dr. Russell W. Mangum III as a damages expert, and a claims administration expert); *Brown v. Google LLC* (plaintiffs retained a technical expert, a damages expert, Bruce Schneier as a privacy expert, and a survey expert); *Rodriguez v. Google LLC* (plaintiffs retained a technical expert, damages expert, Mr. Schneier as a privacy expert, a survey expert, and a clams administration expert). Plaintiffs' efforts here are in line with those in other internet privacy cases.

the Ninth Circuit. *See* Opening Br. at 7–8. Those issues will be squarely presented in Plaintiffs' appellate brief, due on May 19, 2025. The Court should, at minimum, defer ruling until that brief is on file so the Court has the opportunity to review it in considering the closeness of the issues.

Also, while Defendants argue that "whether granting a stay will substantially injure other parties" is "neutral at best", TikTok, a multi-billion dollar company, faces no hardship from a short delay in cost recovery—especially when the equities so clearly favor caution.

Finally, Defendants ignore the broader equities. The significant public interest questions raised by this case—and the chilling effect that premature taxation will have—further justify a brief stay until the appeal is resolved.

### III. Defendants Have Not Been Able to Adequately Explain The Inflated Costs Of Document Production

Despite Defendants' contentions, Def. Br. at 7, the timing of the production is directly relevant to the issue of costs. The purpose of document discovery on Defendants was to obtain responsive evidence that could be used at class certification, at summary judgment, and/or at trial. To provide documents at such a late stage limited the usefulness of the documents. It would be inequitable to make Plaintiffs bear the cost of materials they were effectively blocked from using in a timely fashion.

Furthermore, this eleventh-hour document dump was not only full of duplicative and/or redundant Lark chats, but seemingly included many irrelevant and/or nonresponsive chats. Requiring Plaintiffs to pay for this document production is fundamentally unfair when the bulk of those documents were irrelevant, unnecessary, or excessive in volume. This is akin to producing needles in a haystack, and then forcing Plaintiffs to pay for the whole haystack. Discovery is intended to facilitate the fair and efficient exchange of material evidence—not to burden the opposing party with avoidable costs. Compelling Plaintiffs to pay for irrelevant production penalizes them for what was, at best, Defendants' lack of discernment, and

at worst, strategic overproduction.

Defendants have also provided no credible explanation for the ballooning file sizes of the Lark charts. While Defendants state that "[t]he file size results from the differences in the file types, such as additional graphical renditions (e.g., message replies, emoji reactions, date, and time) displayed in the PDF files," Def. Br. at 8, they have not provided any explanation, in a declaration or otherwise, as to how relatively minor additions could cause the size of the messages to inflate in the manner described in Plaintiffs' Opening Brief. For example, they have not explained why the inclusion of emoji reactions (which are at most a few KB), text replies, date, or time, would cause a file to expand by hundreds of KB. If this is due to some idiosyncratic nature of a Lark chat, which Defendants have not argued, Plaintiffs should not have to bear the costs of such idiosyncrasies.

Defendants also argue that Plaintiffs don't "identify what they claim the increase in size should have been upon conversion to PDF." Def. Br. at 8. To the contrary, in their Opening Brief, Plaintiffs requested that, in the event costs are awarded, the Court "should reduce the Lark chat data size by 50%, from 890 GB (after Defendants' reduction) to 445 GB, to account for the needlessly large digital sizes and costly way in which Defendants decided to produce the threads." Opening Br. at 18. Given the evidence of inflated document size per page described in Plaintiffs' Opening Brief, a 50% reduction is reasonable.

Finally, Defendants' statement that "[t]he rates here are the best Defendants could negotiate" with Ernst & Young, Def. Br. at 9, is highly suspect.[3] They offer no documentation of any actual negotiation—no bids, no comparisons, no declaration

[3] As noted in Plaintiffs' Opening Brief at 19, Defendants' citation to *Broadband iTV, Inc. v. Hawaiian Telcom, Inc.*, 2015 WL 9274092, at *9-10 (D. Haw. Nov. 25, 2015), and *CSP Techs., Inc. v. Sud-Chemie AG,* 2015 WL 2405528, at *4-5 (S.D. Ind. May 20, 2015), are ten years old, and subsequent advances in technology have lowered the costs of production.

from anyone involved. Further, the discrepancy between Defendants' negotiated rates and those found at EDiscovery Pricing Overview – Winter 2024, detailed in Plaintiffs' Opening Brief, is even more significant when considering that (1) Defendants' Counsel is a large law firm that, due to its size and volume of business, should be able to negotiate better terms than most, and (2) the large volume of documents in this case should have warranted a *lower* rate. The payments of these high rates, when lower ones were available, is not "***necessarily*** obtained for use in the case", as required by 28 U.S.C. §1920(4).

**CONCLUSION**

For the foregoing reasons, as well as those in the Opening Brief, Plaintiffs respectfully request that the Clerk's Bill of Costs be disallowed, and the Court order each party to bear its own costs. In the alternative, Plaintiffs respectfully urge the Court to defer consideration of taxable costs until after completion of the appeal. If the Court does proceed to address costs at this juncture, Plaintiffs request that the costs requested by Defendants be reduced or declined in the manner detailed above and in the Opening Brief.

DATED: April 14, 2025 By: /s/ *Gregory B. Linkh*

Ekwan E. Rhow (CA SBN 174604)
Marc E. Masters (CA SBN 208375)
Christopher J. Lee (CA SBN 322140)
BIRD, MARELLA, RHOW, LINCENBERG, DROOKS & NESSIM, LLP
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
erhow@birdmarella.com
mmasters@birdmarella.com
clee@birdmarella.com

Jonathan M. Rotter (CA SBN 234137)
Kara M. Wolke (CA SBN 241521)
Gregory B. Linkh (pro hac vice)
GLANCY PRONGAY & MURRAY, LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067-2561
Telephone: (310) 201-9150
jrotter@glancylaw.com
kwolke@glancylaw.com
glinkh@glancylaw.com

Kalpana Srinivasan (CA SBN 237460)
Steven Sklaver (CA SBN 237612)
Michael Gervais (CA SBN 330731)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ksrinivasan@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Y. Gloria Park (*pro hac vice*)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, NY 10001
Telephone: (212) 336-8330
Facsimile: (310) 336-8340
gpark@susmangodfrey.com

**Attorneys for Plaintiffs**

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record Plaintiffs, hereby certifies that this brief contains 2,155 words, which complies with the word limit set forth in L.R. 11-6.1.

*/s/ Gregory B. Linkh*
Gregory B. Linkh

**CERTIFICATE OF SERVICE**

This is to certify that on April 14, 2025, I caused a copy of the foregoing document to be served by ECF on the following individuals:

Victor Jih
Kelly H. Yin
Christopher Hurley
Wilson Sonsini Goodrich & Rosati
1900 Avenue of the Stars, 28th Floor
Los Angeles, CA 90067
Telephone: (424) 446-6900
Facsimile: (866) 974-7329
vjih@wsgr.com
kyin@wsgr.com
churley@wsgr.com

Luis Li
Mark R. Yohalem
Wilson Sonsini Goodrich & Rosati
953 East Third Street, Suite 100
Los Angeles, CA 90013
Telephone: (323) 210-2900
luis.li@wsgr.com
mark.yohalem@wsgr.com

Sheryl S. Bassin
Dylan G. Savage
Wilson Sonsini Goodrich & Rosati
1301 Ave of the Americas, 40th Floor
New York, NY 10019
Telephone: (212) 999-5800
sbassin@wsgr.com
dsavage@wsgr.com

Thomas Wakefield
Wilson Sonsini Goodrich & Rosati
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
Telephone: (415) 947-2000
twakefield@wsgr.com

Caitlin McKelvie
Wilson Sonsini Goodrich & Rosati
15 W S. Temple, Suite 1700
Salt Lake City, UT 84101
Telephone: (801) 401-8537
cmckelvie@wsgr.com

Eric Thomas Kohan
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
Telephone: 650-493-9300
ekohan@wsgr.com

*/s/ Gregory B. Linkh*
Gregory B. Linkh